UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOE SOLO**, and **BLEACHTECH
L.L.C.**, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

                                        No. 14-CV-12719
  vs.                                 Hon. Gerald E. Rosen

**UNITED PARCEL SERVICE
COMPANY**,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS**

**I. INTRODUCTION**

In this putative class action, Plaintiffs allege that Defendant United Parcel

Service Company ("UPS") intentionally overcharges customers who purchase

additional liability coverage for packages with a declared value of over $300, in

violation of the agreement made between UPS and its customers. The case is

materially identical to its companion case, *Sivak v. United Parcel Service Co.*,

which was dismissed by this Court pursuant to Fed. R. Civ. P. 12(b)(6) on July 1,

2014. 28 F. Supp. 3d 701 (E.D. Mich. 2014). In that case, an individual resident

1

of Michigan and a nonprofit corporation in Ohio that had purchased "declared value coverage" -- extra insurance for packages shipped that have a value in excess of $300 -- brought suit in this Court on behalf of themselves and a putative class, alleging that UPS violated the terms of the shipping contract made between UPS and its customers. *Id.* at 704-05. The plaintiffs' claims rested entirely on their argument that the language in UPS's shipping contract, most reasonably interpreted, provided that any individual purchasing declared value coverage for a package valued in excess of $300 was to pay $0.85 per $100 of package value *after* the first $100 -- the plaintiffs maintained that the contract specified that declared value coverage on the first $100 of package value was to be provided for free. *Id.* at 708-10. After UPS moved to dismiss, the Court held that (1) the terms of the contract unambiguously stated that the declared value coverage cost was to be $0.85 per $100 of package value for the *total* package value, not just any amount beyond $100, *id.* at 711-13; (2) the plaintiffs' unjust enrichment claim relied on their faulty interpretation of the contract and thus failed, *id.* at 713-14; (3) the plaintiffs' claims under 49 U.S.C. § 13708 failed both because they relied on the plaintiffs' faulty interpretation of the shipping contract and because § 13708 cannot support mere "overbilling" claims, *id.* at 715-19; and (4) plaintiffs' RICO claims failed because they did not allege sufficient fraudulent conduct, *id.* at 719-22.

2

The claims in the instant case are the same as those of *Sivak*, with the exception of the *Sivak* RICO claims, which Plaintiffs do not assert here.[1]  Plaintiffs here allege that UPS violated the terms of the shipping contract, was unjustly enriched by that violation, and violated 49 U.S.C. § 13708.  Plaintiffs' theories as to why Defendant's conduct was unlawful are also the same as those of *Sivak*, and Defendant has now moved to dismiss the case, relying on the same arguments that allowed it to prevail in *Sivak*.

Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the motion "on the briefs." *See* L.R. 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Because the facts of this case are materially identical to those of *Sivak*, the Court focuses here on the few distinctions between the two cases and the procedural relationship between them, and refers the reader to *Sivak* for a more complete treatment of the overlapping facts.  *See* 28 F. Supp. 3d at 705-10. Plaintiff Joe Solo, a resident of California, "from time to time ships packages using

---

[1] As explained below, Plaintiffs attempted to consolidate this case with *Sivak*, but were unsuccessful for procedural reasons.

3

UPS." Pl.'s Compl. ¶ 11-12. On December 26, 2013, Solo shipped a package via UPS with a declared value of $565, and purchased declared value coverage from UPS for the full value of his package. *Id.* ¶¶ 13-14. Similarly, Plaintiff BleachTech, a privately-held Ohio corporation, uses UPS's services, and shipped various packages between September 2012 and November 2013 that were valued above $300, purchasing declared value coverage for each. *Id.* ¶¶ 15-17. Plaintiffs, like those in *Sivak*, allege that they were improperly charged "for the first $100 of the declared value coverage," *id.* ¶ 17, which Plaintiffs argue was "to [be] provide[d] at no additional charge" pursuant to the terms of the UPS shipping contract that governs the transaction, *id.* ¶ 56.

The underlying Shipping Contract -- the interpretation of which determines the outcome of the case -- is the same contract at issue in *Sivak*. As the Court explained in that case, the Shipping Contract provided as follows:

> *UPS's liability for loss or damage to each UPS domestic package or international shipment, or to each pallet in a UPS Worldwide Express Freight™ shipment, is limited to a value of $100*, except as set forth below. Unless a greater value is recorded in the declared value field of the UPS Source Document or the UPS Automated Shipping System used, the shipper agrees that the released value of each domestic package or international shipment, or pallet is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation, and that UPS shall not be liable for more than $100 for each domestic package or international shipment or pallet.
>
> *To increase UPS's limit of liability for loss or damage above $100, the shipper must declare a value in excess of $100 for each package or pallet in the declared value field of the UPS Source Document or*

4

> *the UPS Automated Shipping System used and pay an additional charge.*

Shipping Contract, Dkt. #1, Ex. A, § 50 (emphasis added); *Sivak*, 28 F. Supp. 3d at 705. The Contract also provided tables indicating the specific rates for liability coverage, depending on the declared value of the package. For example, for shipping of domestic packages, the rates were as follows:

| Declared Value for Carriage | Package | Package | |
|---|---|---|---|
| | – UPS's liability for loss or damage to a shipment is limited to $100.00 without a declaration of value. | – $0.00-$100.00 | $0.00 |
| | – The maximum declared value is $50,000.00 per package. UPS's liability for loss or damage can be increased up to $50,000.00 (subject to terms and conditions) by making a declaration of value for an additional charge. | – $100.01-$50,000.00 for each $100.00 (or portion of $100.00) of the total value declared | $0.85 |
| | | – Minimum | $2.55 |
| | – Declared Value charges for freight collect and third-party shipments may be billed to your shipper account. | | |
| | – Refer to ups.com/terms for more information. | | |

UPS Rate and Service Guide, Dkt. #1, Ex. B, at 70.

Also as in *Sivak* and relevant here, the Contract provided that a customer (termed a "shipper" in the Contract) was required to raise certain billing disputes with UPS within 180 days of receiving the invoice giving rise to the dispute:

> Shippers requesting an invoice adjustment (e.g., adjustment of Charges based on an incorrect rate, billable weight, account number, failure to tender a shipment, type of service, shipping charge correction, etc.) or a refund due to a duplicate payment must notify UPS of the request within 180 days of receiving the contested invoice, or any billing dispute is waived. Notification to UPS of a request for an invoice adjustment must be made in writing using one of the following methods:
>
> –Submit a request through UPS's online Billing Center at ups.com/billing;
> –Email a request to UPS through ups.com®; or
> –Mail a request to United Parcel Service, P.O. Box 7247- 0244, Philadelphia, PA 19170-0001;

5

> The notification to UPS must include the date of shipment, the tracking number for each disputed charge, and the reason for the disputed charge. A partial payment against an invoice is not considered a request for an invoice adjustment or notice to UPS of a disputed charge. UPS reserves the right to refuse to issue any invoice adjustment until all outstanding charges owing to UPS have been paid in full.

Shipping Contract, Dkt. #1, Ex. A, § 47.1; *Sivak*, 28 F. Supp. 3d at 705. UPS required that any claims were to be submitted in writing and received by UPS within the 180-day deadline. *Sivak*, 28 F. Supp. 3d at 705. Plaintiffs in this case allege that they satisfied the 180-day deadline and gave UPS proper notice that they were overcharged. Pl.'s Compl. ¶ 18.

Plaintiffs' basic argument as to how Defendant breached is identical to its arguments in *Sivak*:

> Plaintiffs contend that "UPS plainly states in its Terms that the first $100 of coverage is free or at no additional charge, whether or not a shipper purchases additional declared value coverage." But the problem, according to Plaintiffs, is that when a shipper declares a value in excess of $100.00 and is therefore charged $0.85 per each portion of $100.00, UPS does not actually provide the first $100.00 of coverage for free:

> "Despite the promise by UPS that the first $100 of declared value coverage is free or at no additional charge, UPS has systematically charged and caused its agent and sales network to charge customers an additional amount for coverage for the first $100 when they purchase additional declared value coverage."

> This "problem" actually kicks in when a shipper declares a value in excess of $300.00. This is because the Service Guide provides . . . for a $2.55 minimum for additional coverage, which divided by $0.85 equates to 3 portions of $100.00. In other words, when a customer

6

declares a value between $100.01 and $300.00, UPS charges the customer $2.55 for additional declared value coverage without apportioning $0.85 per $100.00 in coverage.

But when a customer declares a value above $300.00, Plaintiffs claim that UPS overcharges that customer by $0.85 by failing to account for the first $100.00 in free coverage that they assert the Shipping Contract promises.

*Id.* at 708-09 (citations omitted).

On December 27, 2013, Plaintiffs' counsel filed two separate lawsuits challenging the manner in which UPS charges its customers for declared value coverage: one in the Eastern District of Michigan (*Sivak*) and one in the Central District of California (*Solo v. UPS*, No. 13-9515). *Sivak*, 28 F. Supp. 3d at 722-23. UPS responded to the *Sivak* matter first; moving to dismiss that case on February 2, 2014. *Id.* at 723. "While that motion remained pending, the parties -- without judicial involvement -- discussed consolidating both matters" in the Eastern District of Michigan. *Id.* Before they were able to reach such an agreement, however, the *Sivak* Court granted UPS's motion to dismiss on July 1, 2014. *Id.* The Solo Plaintiffs then voluntarily dismissed their complaint in the Central District of California without prejudice, refiled the case in the Eastern District of Michigan as a companion case to *Sivak* (the instant matter), and filed a motion pursuant to Fed. R. Civ. P. 60(b)(6) in the *Sivak* matter, requesting that the Court "(1) vacate its July 1, 2014 judgment under Rule 60(b)'s catch-all provision; (2) consolidate *Sivak* and Solo; (3) permit the filing of a single consolidated amended

7

complaint . . . ; (4) deem UPS's previously filed Motion to Dismiss to be refiled against this new complaint . . . ; and (5) dismiss the single consolidated amended complaint with 'a new, one-sentence judgment . . . on the basis of its July 1, 2014 Opinion and Order.'" *Id.* (third omission in original). Presumably, Plaintiffs' attorneys made this request with the expectation that the outcome of the motion to dismiss in this matter would be the same as that of *Sivak*, and consolidating the motions and dismissing them together would speed the eventual appeal. The *Sivak* Court denied the plaintiffs' motion, however, finding that while the plaintiffs' motive was well-intentioned and in the interest of judicial economy, the plaintiffs failed to show that "principles of equity require[d] the Court to vacate its judgment." *Id.* at 724. The Court also noted that "Plaintiffs' promised forthcoming appeal in the *Sivak* matter will govern the *Solo* matter." *Id.* at 725.

The *Sivak* plaintiffs did not file an appeal, however. Their briefing in this matter explains the reason for this: Plaintiffs' counsel believes that Plaintiffs in the *Solo* matter better meet the 180-day notice requirement in the Shipping Contract than did the plaintiffs in the *Sivak* matter. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss, Dkt. # 20, at 1 ("To avoid two appeals, only one case could go up -- and in *Solo* each named plaintiff meets any arguable notice requirement in the UPS terms (a defense that this Court did not reach in *Sivak*). While plaintiffs view the UPS terms to be unenforceable, they wished to avoid the risk of affirmance on an

8

alternative ground that had not been reached by the trial court."). The *Sivak* plaintiffs also mentioned this issue in their Rule 60(b)(6) motion. *See Sivak*, 28 F. Supp. 3d at 725 n.5.

Plaintiffs' complaint in the instant case raises issues entirely encompassed by those in *Sivak*, though it does not raise the RICO claim that the *Sivak* plaintiffs alleged. Relying on the same Shipping Contract as the *Sivak* plaintiffs, Plaintiffs here allege that Defendants breached the Contract by "charg[ing] Plaintiffs for the initial $100 of coverage that it was obliged to provide at no additional charge," Pl.'s Compl., ¶ 56 (Count I); violated 49 U.S.C. § 13708(b) by presenting false or misleading information in the Shipping Contract, *id.* ¶ 69 (Count III); and was unjustly enriched when third-party retailers paid overcharges arising from the initial $100 of coverage to UPS, *id.* ¶ 82 (Count IV).[2] Defendant filed its Motion to Dismiss on August 29, 2014 date (Dkt. # 17) and that motion is now fully briefed.

## III. DISCUSSION

### A.    Rule 12(b)(6) Standard

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500

---

[2] Plaintiffs also seek a declaratory judgment on their claims (Count II). Pl.'s Compl. ¶¶ 58-64.

F.3d 523, 527 (6th Cir. 2007).   To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face."   *Id.* at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."   *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).   However, the Court "need not accept as true legal conclusions or unwarranted factual inferences."   *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

If the well-pled facts in Plaintiffs' Complaint -- accepted as true -- are insufficient for Plaintiffs to recover on a claim, that claim must be dismissed. *Iqbal*, 556 U.S. at 680 ("Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiffs' complaint must be dismissed.").

**B.**    **Plaintiffs' Claims Fail for the Reasons Described in *Sivak***

10

Plaintiffs recognize that the ruling in *Sivak* fully encompasses Plaintiffs' claims here. "If UPS's construction is the only permissible construction [of the Shipping Contract] as a matter of law . . . as this Court ruled in . . . *Sivak* . . . , then each of plaintiffs' claims fail." Pl.'s Resp. to Def.'s Mot. to Dismiss, at 1. Indeed, as noted above, when Plaintiffs initially requested to consolidate this case with *Sivak*, they requested that the Court simply dismiss the consolidated complaint with a "one-sentence judgment" so that the appeal could be expedited. *Sivak*, 28 F. Supp. 3d at 725. Accordingly, the Court declines to rephrase the analysis of *Sivak*, and instead summarizes the reasons -- fully articulated in that case -- why Plaintiffs' claims here must fail.

First, regarding Plaintiffs' breach of contract claim (Count I), Plaintiffs argue that Defendant's (and the *Sivak* Court's) interpretation of the Shipping Contract "turns on a laser-focused isolation of the word 'total' in the phrase 'for each $100.00 (or portion of $100.00 of the total value declared." Pl.'s Resp. to Def.'s Mot. to Dismiss at 2. Plaintiffs assert that "the contract language . . . plainly limits the $0.85 to one-hundred dollar increments over the first $100." *Id.* at 9-10. These are the same arguments that were raised in *Sivak*, and the Court does not modify its analysis here. As the Court explained in *Sivak*, when reading the language of the Rate and Service Guide describing the payment structure for purchase of declared value coverage both alone and with the Shipping Contract as

11

a whole, "the Shipping Contract unambiguously precludes Plaintiffs' constrained

contractual interpretation."   The Court made clear why this is so in several key

sentences:

> [Under the Supping Contract,] an $0.85 charge applies "for each
> $100.00 . . . of the *total value declared*." Though the term "total
> value declared" is not defined in the Shipping Contract, its core
> modifier—"total"—plainly means relating to the "whole," "not
> divided" and "of or relating to something in its entirety." Black's
> Law Dictionary (9th ed. 2009); Webster's Third New
> International Dictionary, Unabridged (2014). The Shipping
> Contract's use of the phrase "total" therefore unambiguously means
> that packages shipped with a declared value of between $100.01 and
> $50,000.00 are charged $0.85 for each $100.00 (or portion of $100.00
> thereof) *of the total value declared*.

*Sivak*, 28 F. Supp. 3d at 712 (omission in original).   The first $100 of declared

value is, of course, part of the total value declared when taking that term for its

plain meaning, and accordingly, the contract indicates that an $0.85 charge applies

to that declared value.   *See id.*   Accordingly, the Court rests on the analysis

provided in *Sivak* in dismissing Count I of Plaintiffs' Complaint.  And as the *Sivak*

Court noted, "Counts I and . . . II -- Breach of Contract and Declaratory Relief --

expressly arise out of the terms of the Shipping Contract and rise and fall

together."  *Id.* at 711.  Accordingly, Plaintiffs' Count II here must be dismissed as

well.[3]

---

[3] Counts I and II are state law claims.  The Court in *Sivak* interpreted the Shipping
Contract under Michigan law.  *Sivak*, 28 F. Supp. 3d at 711.  Typically, a federal
court sitting in diversity must apply the forum state's choice of law rules to

Next, regarding Plaintiffs' claim under 49 U.S.C. § 13708(b) -- that UPS published in its Service Guide "false or misleading information," in violation of the statute -- the *Sivak* Court held that

> Plaintiffs premise their Section 13708 claim solely on their view of the Shipping Contract. Having comprehensively addressed this constrained view above, Plaintiffs' Section 13708 theory collapses and therefore fails to state a claim for relief. They have not set forth any facts indicating that UPS failed to disclose "the actual rates, charges, or allowances" and "whether and to whom any allowance or reduction in charges [was] made."

*Id.* at 715-16.  But, as the Court explained, even if Plaintiffs' breach-of-contract theory were valid, § 13708(b) could not provide relief under that theory.  "Section 13708(a) and (b) address 'truth-in-billing,' mandating that bills *reflect the actual charges assessed* -- including an explanation of discounts that are applied off the four corners of an invoice. It simply does not apply to Plaintiffs' allegations that UPS's bills reflect charges that were *more* than agreed to."   *Id.* at 718-19

---

determine the applicable law.  But here, the parties are in agreement that "the same general principles relied on by the Court in *Sivak* also apply under both California and Ohio law" -- the two states in which Plaintiffs here are domiciled.  Def.'s Mot. to Dismiss, Dkt. # 17, at 12; *see also* Pl.'s Resp. to Def.'s Mot. to Dismiss, Dkt. # 20, at 6-7.  Accordingly, there is no need for the Court to determine which law applies here, as that analysis would have no impact on the ultimate outcome of Counts I and II.  *See Tech. for Energy Corp. v. Scandpower, A/S*, 880 F.2d 875, 877 (6th Cir. 1989) ("[The district court] concluded defendants would prevail under either state's law, [and so] the Court deemed it unnecessary to solve the choice of law puzzle. [Plaintiff] does not contest the District Court's application of California law to its claims; indeed, it argues California law 'is clearly applicable.' Like the District Court, we find it unnecessary to reach the choice-of-law question.").

13

(emphasis added).  Plaintiffs explain their disagreement with this analysis in their briefing, but they concede that this claim is identical to that of *Sivak*.  See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 21 ("UPS argues -- and this Court found in *Sivak* -- that § 13708 does not apply to overcharges, but only 'off-bill discounting . . . .'  Plaintiffs respectfully submit that this Court's detailed discussion . . . in its *Sivak* opinion demonstrates that § 13708(b) is not directed at off-bill discounting.").  Accordingly, the Court rests on the analysis provided in *Sivak* in dismissing Count III of Plaintiffs' Complaint in the instant matter.

Last, regarding Plaintiffs' unjust enrichment claim (Count IV), "Plaintiffs' [claim] only relies upon the existence of the Shipping Contract to form the basis of their claim that UPS systematically overcharges those who declare values in excess of $300." *Id.* at 714.  And, as in *Sivak*,

> It is clear . . . that Plaintiffs and UPS have a contractual relationship by virtue of Plaintiffs shipping packages pursuant to the Shipping Contract, and that this contractual relationship precludes Plaintiffs from bringing their unjust enrichment claim.  Simply, . . . this Court [cannot] imply a contract where there is an express contract covering the same subject matter.

*Id.*  Accordingly, for the reasons fully described in *Sivak*, Plaintiffs' Count IV must be dismissed.[4]

---

[4] The parties spend considerable pages in their briefs arguing whether federal law preempts Plaintiffs' unjust enrichment claim.  *See* Def.'s Mot. to Dismiss, at 17-18; Pl.'s Resp. to Def.'s Mot. to Dismiss, at 15-21.  The *Sivak* Court found that the plaintiffs' unjust enrichment claim failed even if not preempted, and thus explicitly

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. # 17) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Complaint is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

> s/Gerald E. Rosen
> Chief Judge, United States District Court

Dated:  March 27, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 27, 2015, by electronic and/or ordinary mail.

> s/Julie Owens
> Case Manager, (313) 234-5135

---

declined to reach the preemption issue.  *Sivak*, 28 F. Supp. 2d at 711 n.4.  Because the analysis is the same here, there is no need for the Court to resolve the preemption issue in the instant case.