# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: March 18, 2016

Ms. Caitlin Sinclaire Blythe
Ms. Ruth N. Borenstein
Morrison & Foerster
425 Market Street
San Francisco, CA 94105

Ms. Diana Gjonaj
Mr. Paul Francis Novak
Milberg
777 Woodward Avenue, Suite 800
Detroit, MI 48226

Mr. Gregory Bryant Koltun
Morrison & Foerster
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

Ms. Bonnie L. Mayfield
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304

Mr. Andrew J. McGuinness
P. O. Box 7711
Ann Arbor, MI

Re: Case No. 15-1426, *Joe Solo, et al v. United Parcel Service Co.*
    Originating Case No. : 2:14-cv-12719

Dear Counsel,

The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                          Yours very truly,

                                          Deborah S. Hunt, Clerk

                                          Cathryn Lovely
                                          Deputy Clerk

cc:  Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0066p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

JOE SOLO; BLEACHTECH L.L.C., on behalf of themselves and all others similarly situated,
        *Plaintiffs-Appellants*,

    *v*.

UNITED PARCEL SERVICE CO.,
        *Defendant-Appellee*.

No. 15-1426

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-12719—Gerald E. Rosen, Chief District Judge.

Argued: December 9, 2015

Decided and Filed: March 18, 2016

Before: STRANCH, DONALD, and LIPEZ, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:** Andrew J. McGuinness, ANDREW J. MCGUINNESS, ESQ., Ann Arbor, Michigan, for Appellants. Caitlin Sinclaire Blythe, MORRISON & FOERSTER LLP, San Francisco, California, for Appellee. **ON BRIEF:** Andrew J. McGuinness, ANDREW J. MCGUINNESS, ESQ., Ann Arbor, Michigan, Paul F. Novak, Diana Gjonaj, MILBERG LLP, Detroit, Michigan, for Appellants. Caitlin Sinclaire Blythe, Ruth N. Borenstein, MORRISON & FOERSTER LLP, San Francisco, California, Gregory B. Koltun, MORRISON & FOERSTER LLP, Los Angeles, California, Bonnie L. Mayfield, DYKEMA GOSSETT PLLC, Bloomfield Hills, Michigan, for Appellee.

---

[*]The Honorable Kermit V. Lipez, Circuit Judge for the United States Court of Appeals for the First Circuit, sitting by designation.

1

## OPINION

JANE B. STRANCH, Circuit Judge. Appellants Joe Solo and BleachTech L.L.C. filed a putative class action suit alleging that United Parcel Service Co. (UPS) overcharges customers for liability coverage against loss or damage for packages with a declared value of $300 or more. The complaint sought recovery based on four counts: breach of contract, declaratory relief pursuant to 28 U.S.C. § 2201, violation of 49 U.S.C. § 13708(b) (regulating billing and collecting practices for motor carriers), and, in the alternative, unjust enrichment. The district court dismissed all claims pursuant to Federal Rule of Procedure 12(b)(6), agreeing with UPS that the language of the shipping contract at issue unambiguously precluded the interpretation on which plaintiffs relied. For the following reasons, we affirm the dismissal of Solo and BleachTech's claim under 49 U.S.C. § 13708(b), reverse the dismissal of the remaining claims, and remand the case to the district court for further proceedings consistent with this opinion.

### I. BACKGROUND

Named appellants are Joe Solo and BleachTech L.L.C. R. 1, ¶¶11, 15. Each uses UPS "from time to time" to ship packages with a declared value over $300. *Id*. at ¶¶ 12, 16. Solo is a resident and citizen of California. *Id*. at ¶11. On December 26, 2013, he shipped a package via UPS with a declared value of $565. *Id*. at ¶13. BleachTech is a privately-held Ohio limited liability company that operates plants in Ohio and Virginia and serves customers throughout the Midwest, including Michigan. *Id*. at ¶15. Between September 17, 2012, and November 26, 2013, BleachTech used UPS to ship packages with declared values between $326 and $1,634 a number of times. *Id*. at ¶16.

Appellee UPS is a Delaware corporation headquartered in Atlanta, Georgia, and wholly-owned subsidiary of United Parcel Service, Inc. *Id*. at, ¶20. It is one of the world's largest package delivery companies—UPS delivered an average of 16.3 million packages per day worldwide in 2012. *Id*. at ¶32.

This case concerns the fee charged for liability coverage against package loss or damage, which UPS refers to as "declared value coverage." Solo and BleachTech claim that "UPS has for years been systematically overcharging customers for the first $100 of declared value coverage, which UPS in its standardized published rates claims to provide at no additional charge for each shipment." *Id*. at ¶1. Each alleges to have paid an additional charge above that set forth in UPS's published rates when they shipped packages with a declared value greater than $300. *Id*. at ¶¶14, 17. They seek relief on behalf of a nation-wide class composed of "[a]ll persons residing in the United States who purchased from defendant UPS, directly or through an Authorized Outlet, coverage for loss or damage for shipments with a declared value in excess of $300.00" under theories of breach of contract, 49 U.S.C. § 13708(b), and, alternatively, unjust enrichment. *Id*. at ¶¶45, 53-83. They also seek declaratory relief under 28 U.S.C. § 2201. *Id*. at ¶¶58-64.

Solo and BleachTech (hereinafter, collectively Solo or "he") assert that customers are unlikely to notice this improper fee because the additional declared value charges are not itemized on their bills. *Id*. at ¶36. Solo claims that UPS is aware of this problem but seeks to limit its own liability by enforcing a 180-day limitation period to contested billing claims. *Id*. at ¶39. For those who do notice the improper charge and timely contest it (generally shippers large enough to retain shipping auditors), UPS allegedly engages in a "refund mitigation scheme." *Id*. at ¶41. Solo alleges that "shipping auditors who have made pre-suit notice of the declared value overcharge have routinely gotten their clients credited for the charge for the first $100 of coverage, and UPS has acknowledged that the charge was not proper." *Id*. at ¶40. Despite these acknowledgments, however, UPS has not rewritten the Service Guide provision. *Id*. On appeal, Solo contends that the language of the Service Guide provision is at least ambiguous, and therefore the district court's dismissal must be reversed so that the matter can be submitted to the jury.

    **A.**    **The Shipping Contract**

Solo alleges that UPS makes an "explicit representation and/or contractual promise" to provide the first $100 of liability coverage at no charge in the "Shipping Contract," which incorporates UPS's Tariff/Terms and Conditions of Service (UPS Terms) and its Rate and

Service Guide (Service Guide).[1] R. 1, ¶28; R. 17-2, PageID 347. The UPS Terms state that, "UPS's liability for loss or damage to each UPS domestic package or international shipment ... is limited to a value of $100" unless the shipper records a declared value greater than $100 and pays "an additional charge." *Id*. at 343-44 §§50, 50.2. The Service Guide sets forth the additional charges for domestic shipments as follows:

**Domestic Value-Added Services**

| Description | Fee | |
|---|---|---|
| **Package** | **Package** | |
| - UPS's liability for loss or damage to a shipment is limited to $100.00 without a declaration of value. | - $0.00-$100.00 | $0.00 |
| - The maximum declared value is $50,000.00 per package. UPS's liability for loss or damage can be increased up to $50,000.00 (subject to terms and conditions) by making a declaration of value for an additional charge. | - $100.01-$50,000.00 for each $100.00 (or portion of $100.00) of the total value declared | $0.85 |
| | - Minimum | $2.55 |
| - Declared Value charges for freight collect and third-party shipments may be billed to your shipper account. | | |
| - Refer to ups.com/terms for more information. | | |

R. 1, PageID 137. Accordingly, UPS's liability for loss or damage to packages with no declared value, or a declared value between $0.00 and $100, is capped at $100. Liability coverage can be increased for packages with a declared value between $100.01 and $50,000 for a charge of $0.85 per each $100 (or portion thereof) "of the total value declared." *Id*. There is a minimum charge of $2.55 to increase liability beyond the default cap. *Id*.

The UPS Terms also include a "Third-Party Retailer" provision that limits liability in any action for loss, damage, or delay of a package shipped by a third-party retailer, including all UPS store locations. R. 17-2, PageID 322 §15. Third-party retailers are not agents of UPS. *Id*.

     **B.**      **Procedural History**

This case was originally filed in the Central District of California on December 27, 2013 along with a nearly identical companion case in the Eastern District of Michigan, *Sivak v. United Parcel Service Co.*, 28 F. Supp. 3d 701 (E.D. Mich. 2014). In response to the plaintiffs' complaint in *Sivak*, UPS initially filed an answer that included among its affirmative defenses the argument that the plaintiffs lacked standing because they were "not in direct contractual privity

---

[1] The parties agree that the version of the UPS contract in effect in July 2013 govern their relationship. They refer to the UPS Tariff/Terms of July 8, 2013, which states that "the shipper agrees that the version of the Terms and the applicable Service Guide in effect at the time of shipping will apply to the shipment and its transportation." Since then, no modification has been made to the tables that impacts the claims in this litigation.

with UPS." Defendant United Parcel Service Co.'s First Amended Answer to Complaint at 17, *Sivak v. United Parcel Service Co.* (filed Jan. 6, 2014) (No. 13-15263). After an amended complaint was subsequently filed, UPS responded with a motion to dismiss that was granted on other grounds. *Sivak*, 28 F. Supp. 3d at 723.

The *Solo* plaintiffs then voluntarily dismissed their complaint without prejudice and refiled it in the Eastern District of Michigan. They requested that the court vacate its order of dismissal under Federal Rule of Civil Procedure 60(b)'s catch-all provision, consolidate *Sivak* with *Solo*, and dismiss the single consolidated amended complaint, presumably to facilitate a swift appeal. The district court denied the motion, finding that plaintiffs failed to show that "principles of equity require[d] the Court to vacate its judgment." R. 24, PageID 452.

UPS filed a motion to dismiss Solo's complaint on August 29, 2014. On March 27, 2015, the district court granted the motion and dismissed the complaint with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In so doing, the district court incorporated its order dismissing *Sivak*. *Id.* at 447 ("Because the facts of this case are materially identical to those in *Sivak*, the court focuses here on the few distinctions between the two cases and the procedural relationship between them, and refers the reader to *Sivak* for a more complete treatment of the overlapping facts.").

Solo timely appealed the district court's order of dismissal. He maintains that the district court erred in concluding, among other things, that UPS's interpretation of the Shipping Contract was the only permissible reading. Solo contends that "[a]t the very least, Plaintiffs-Appellants' reading is reasonable, thereby creating a jury issue." Solo also challenges the court's dismissal of the unjust enrichment and 49 U.S.C. § 13708(b) claims.

## II. ANALYSIS

The district court's order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

The court "consider[s] the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 2014) (noting documents that a defendant attaches to a motion to dismiss are also considered part of the pleadings if referred to in the complaint and central to the claim). Issues not examined by the district court are ordinarily not considered on appeal. *See e.g., Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

A federal court sitting in diversity applies the choice of law provisions of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Michigan courts follow the Restatement (Second) of Conflict of Laws. *Kipin Indus., Inc. v. Van Deilen Intern., Inc.*, 182 F.3d 490, 493 (6th Cir. 1999). Under this approach, in the absence of an express choice of law provision, Michigan courts apply forum law unless (1) no substantial relationship exists between the forum state and the contract, or (2) the application of forum law would conflict with the policy interest of a state with a greater connection to the contract than the forum state. *NILAC Intern. Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). The UPS Shipping Contract contained no choice of law provision and the parties agree that the district court correctly applied Michigan law to the state claims.[2]

---

[2]The district court observed that the same principles of contract interpretation apply under California, Ohio, and Michigan law. Because the choice of law analysis would have no impact on the outcome of the breach of contract and unjust enrichment claims, the court applied forum law.

### A.    Breach of Contract

In Michigan, contract interpretation is a question of law and therefore subject to de novo review. *Port Huron Educ. Assn. v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996). The language of a contract must be construed according to its plain and ordinary meaning, rather than technical or constrained constructions. *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846, 848 (Mich. 1996). "Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided." *McCoig Materials, LLC v. Galui Const., Inc.*, 818 N.W.2d 410, 416 (Mich. 2012). When the language at issue is clear and unambiguous, its meaning is a question of law. *Port Huron*, 550 N.W.2d at 237. However, if the language is "unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Id*. *See also Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999) (explaining that "if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists").

Solo's position is that the fee chart's placement of the cost for additional liability coverage under the indented category (-$100.01-$50,000.00) applies the fees only to the declared package values as specified in that category. Language under that monetary range heading specifying the additional fee of $0.85 for each $100 "of the total value declared," then "limits the $0.85 [charge] to one-hundred dollar increments over the first $100." Solo argues that the numeric range of "$100.01-$50,000" qualifies "total," "such that *for all of the increments in this range* there is a charge of $0.85 for the total value declared." Yet, despite this language, UPS actually charges customers $0.85 for the first $100 on packages with a declared value greater than $100. R. 1, ¶28. Solo explains that this practice becomes problematic when a package has a declared value over $300 because, at this amount, additional charges exceed the minimum charge of $2.55.[3]  "The effect of this uniform practice is that customers who purchase declared value coverage from UPS in excess of $300 under rates in effect as of July 8, 2013, paid for the first $100 in coverage that was supposed to be provided at no additional charge." *Id*. at ¶30.

---

[3] Solo takes no issue with the minimum charge and does not understand it to have any influence on the meaning of the provision at issue. He notes that "a minimum charge is frequently imposed to offset an administrative cost, such as tracking the excess value declaration here."

The district court instead accepted the argument of UPS that the meaning of "total value declared" is clear from the four corners of the contract because "total" is an unambiguous term that should be given its plain and ordinary meaning—here, the full amount of a package's declared value. Thus, it determined that UPS complies with the Service Guide when including the first $100 increment in its fee calculation for liability coverage.

The parties do not dispute the language in the Service Guide—they dispute what that language may reasonably mean. Viewing the agreements, the parties agree that UPS limits its liability to $100 for packages shipped when no value in excess of $100 is declared and paid for the package: under the Domestic Value-Added Services chart, Fee section, Package heading, the indented category for packages (-$0.00-$100.00) specifies a corresponding fee of $0.00. Nor do the parties dispute that it is the next indented category for packages (-$100.01-$50,000) that specifies a fee of $0.85 for each $100 of "total value declared." Though the decision below concedes that the term "total value declared" is not defined in the parties' agreements, *Sivak*, 28 F. Supp. 3d at 712, it relies on dictionary definitions of "total" to accept UPS's argument that, within the $100.01-$50,000 category, the $0.85 charge applies to every $100 increment, including the first $100 that would have been covered at no charge on a package with a declared value under $100.01 or no declared value.

To determine whether a complaint states a claim upon which relief may be granted, we consider the complaint in its entirety. *Tellabs*, 551 U.S. at 322. On a Rule 12(b)(6) motion, we must accept all well-pleaded factual allegations as true. *Id*. The complaint alleges that when customers have complained about having the fee applied to the first $100 of value declared, "UPS routinely acknowledges the overcharge and credits the account," R. 1, ¶6; that "UPS has implemented a practice of crediting with refunds those few customers who complain of the overcharge," *id*. at ¶9; and that, in addition to obtaining credit for the charge, "UPS has acknowledged that the charge was not proper," *id*. at ¶40. On the complaint before us, we must accept as true the allegation that UPS itself acknowledges the validity of Solo's reading of the contractual provision. *See Ashcroft*, 556 U.S. at 678 (a court reviewing a Rule 12(b)(6) motion to dismiss "must accept as true all of the allegations contained in a complaint," though not the legal conclusions).

Having considered the arguments and all well-pleaded allegations of the complaint, we conclude that reasonable minds could differ on the correct interpretation of the Service Guide provision. Because the provision is at least ambiguous, its meaning is a question of fact that is not properly answered by the court at this early stage in the proceedings.

### B.    Unjust Enrichment

The district court found that Solo's unjust enrichment claim was precluded by the existence of an express contract concerning the subject matter at issue. *Sivak*, 28 F. Supp. 3d. at 714. Taking the facts in the light most favorable to the plaintiff, the court reasoned, it must accept Solo's argument that the Shipping Contract was valid and bound the parties. *Id*. at 714 n.5. On appeal, Solo contends that this determination was made in error because a party may present pleadings in the alternative that need not be consistent. Fed R. Civ. P. 8(a)(3), (d)(3). Solo brought the claim as Count IV and labeled it: Unjust Enrichment (In the Alternative).

####    1.    Unjust Enrichment Pleaded in the Alternative

The courts of Michigan will imply a contract when a plaintiff can establish that no express contract concerning the subject matter exists and that the defendant has received a benefit from the plaintiff and retained it, resulting in an inequity. *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. 2006). *Peabody v. DiMeglio*, 856 N.W.2d 245, 251 (Mich. Ct. App. 2014) ("'[T]he law operates to imply a contract in order to prevent unjust enrichment,' and ... this will not occur if there is already an express contract on the same subject matter.") (internal citation omitted). Rule 8(a)(3) permits pleadings in the alternative "when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 833-34 (E.D. Mich. 2014) (citing *Cascade Elec. Co. v. Rice*, 245 N.W.2d 774, 777 (1976)).

Though Solo argues that the Shipping Contract is a valid and binding agreement between the parties for the purpose of his breach of contract claim, it would be improper to prematurely conclude that UPS will not dispute this allegation in subsequent stages of the proceedings. *See Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir. 1996) (allowing plaintiff to proceed under both breach of contract and unjust enrichment theories where

defendant "kept its options open, and may deny the existence of a contract on remand to the district court"). Here, UPS immediately moved for dismissal and did not file an answer to the complaint, whereas in *Sivak*, UPS first answered and denied privity of contract before moving for dismissal upon the filing of an amended complaint. In light of the lack of information about the relationship between UPS and its third party retailers, and mindful of the procedural history in *Sivak*, Solo's complaint specifically raised this issue, alleging: "to the extent customers who ship via UPS through a third party retailer or other Authorized Outlet lack contractual privity with UPS . . ," R. 1, ¶64(c), "in the alternative, plaintiffs and members of the Class seek relief for unjust enrichment," *id*. at ¶83.

Based on the record of the *Sivak* litigation and the allegations of this complaint, which must be taken in the light most favorable to Solo, the issue of whether UPS may deny the existence of the contract on remand is before the court. Solo's unjust enrichment claim—that a benefit was unjustly conferred on UPS when customers paid an extra charge on packages despite UPS's representations that it provided a portion of this service for free—is not precluded by his breach of contract claim. At this stage, Solo has properly pled alternative claims.

2. Preemption of Unjust Enrichment by Federal Law

Having determined that the parties were subject to an express contract, the district court did not reach UPS's contention, raised far more extensively here, that Solo's unjust enrichment claim should be dismissed as preempted by the Federal Aviation Administration Authorization Act (FAAAA). The FAAAA was enacted to "ensure that the States would not undo federal deregulation with regulation of their own." *Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364, 367-68 (2008) (examining state regulations affecting shipment of tobacco). It bars states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service" of any motor or air carrier. 49 U.S.C. §§ 14501(c)(1), 41713(b)(4)(A). UPS's redeveloped argument contends that Solo's unjust enrichment claim "falls squarely within" this preemptive scope.

We are not inclined to decide this matter before it has been fully briefed by both parties and considered by the district court in the first instance. However, several Supreme Court cases and the similarly worded Airline Deregulation Act (ADA) provide guidance on the scope of the

No 15-1426　　　　　　*Solo, et al. v. United Parcel Service*　　　　　　Page 11

preemption provisions in the FAAAA.[4]  We review them here as instructive for the issue on remand.

In *American Airlines, Inc. v. Wolens*, the Supreme Court determined that the ADA's preemption provision did not foreclose suits alleging breach of the carrier's "own self-imposed undertakings" as these did not constitute a "violation of state-imposed obligations." 513 U.S. 219, 228 (1995). There, the Supreme Court considered a class action brought by members of American Airlines' frequent flyer program who alleged that retroactive modification of the program terms violated the Illinois Consumer Fraud Act and constituted a breach of contract. *Id*. at 224-25. The Court held that the Consumer Fraud Act claim fell within the preemption provision of the ADA, noting the Act "serves as a means to guide and police the marketing practices of the airlines; the Act does not simply give effect to bargains offered by the airlines and accepted by airline customers." *Id*. at 228. The Court, however, found that the ADA's preemption clause did not shelter airlines from breach of contract claims because "[a] remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services." *Id*. at 229.

Further defining what may constitute a "state imposed obligation," the Supreme Court recently explained that "the reasoning of *Wolens* neither dooms nor spares" all claims based in state common law. *Nw., Inc. v. Ginsberg*, 134 S. Ct. 1422, 1431 (2014). In *Northwest Inc.*, the Court concluded that a cause of action for breach of the covenant of good faith and fair dealing was preempted by the ADA. *Id*. at 1426. There, due to plaintiff's ceaseless filing of grievances, Northwest Airlines terminated his WorldPerks "Platinum Elite" status based on the WorldPerks agreement: "'[a]buse of the ... program (including ... improper conduct as determined by [Northwest] in its sole judgment[ ) ] ... may result in cancellation of the member's account.'" *Id*. at 1426-27 (alterations in original). The passenger filed a class action claiming, among other things, that the airline had violated the duty of good faith and fair dealing by terminating his status.

---

[4]*See Rowe*, 552 U.S. at 370 (noting that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well") (internal citation omitted).

The Court looked to whether the passenger's "implied covenant claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook," and found the obligation fell into the former category. *Id*. at 1431. Under governing state law, the duty of good faith and fair dealing applied to all contracts and could not be disclaimed. *Id*. at 1432. The Court concluded that "[w]hen the application of the implied covenant depends on state policy, a breach of implied covenant claim cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract." *Id*.

Here, UPS argues that under *Northwest Inc.*, Solo's unjust enrichment claim— "predicated on the absence of a contract"—"requires the enforcement of state law and policy and is therefore preempted by the FAAAA." However, as there are significant differences between *Northwest Inc.* and the case before us, further consideration is warranted.

In *Northwest Inc.*, for instance, the Supreme Court found it determinative that the duty of good faith and fair dealing applied to "every contract" under the governing state law. *Nw. Inc.*, 134 S. Ct. at 1433. In this way, the doctrine acted as a tool used by the state to "ensure that a party does not 'violate community standards of decency, fairness, or reasonableness.'" *Id*. at 1431-32 (internal citation omitted). The doctrine of unjust enrichment does not synonymously apply to all contracts as a matter of state policy. Instead, unjust enrichment serves to "effectuate the intentions of parties or to protect their reasonable expectations," and thus looks to the particular parties to a transaction rather than a universal, state imposed obligation. *Id*. Moreover, Solo's claim is based in fraud—specifically, that UPS allegedly made an explicit representation to customers that it would offer the first $100 of liability coverage free of charge and then failed to follow through. This scenario may resemble that of *Wolens*, where the plaintiff sought the aid of the court to "hold[] parties to their agreements," specifically, "to business judgments an airline made public about its rates and services." 513 U.S. at 229.

As explained above, we conclude that Solo may plead unjust enrichment in the alternative. On remand, both parties will have the opportunity to fully form their arguments on the preemption issue, to be considered by the district court as the case progresses.

### C. 49 U.S.C. § 13708(b)

Billing and collection obligations of motor carriers are set forth in 49 U.S.C. § 13708, which reads in relevant part:

> (b) False or misleading information.--No person may cause a motor carrier to present false or misleading information on a document about the actual rate, charge, or allowance to any party to the transaction.

49 U.S.C. § 13708(b).

Solo alleges that "one or more affiliates or employees of defendant developed the content of, formatted, and/or published or caused defendant to publish the UPS Service Guide, including the excess declared value rates and tables," or, in the alternative, "defendant caused UPS Inc. to publish the UPS Service Guide and to present false or misleading information regarding excess declared value charges therein." R. 1, PageID 16. On appeal, Solo adds that "UPS can be both 'a person' and 'a motor carrier,' and is, in fact, both."

Neither we nor our sister circuits have yet examined the scope of § 13708. We disagree with the district court that the language of § 13708(b) is ambiguous and see no need to look to its sparse legislative history.[5] *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (explaining that when "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," our inquiry into statutory construction ceases). Thus, we are content to consider Solo's argument within the framework of the plain wording of the statute.

It is plausible, as Solo claims, that the Service Guide constitutes a "document" about the "actual rate [or] charge" for declared value coverage within the meaning of § 13708(b). However, Solo has not sufficiently alleged that a "person" caused a "motor carrier" to commit the misconduct at issue. Neither the articulation presented in the complaint (that the "person" is an—as yet unknown—UPS employee/affiliate and the "motor carrier" is UPS or that the

---

[5] Section 13708(b) replaced Section 7(b) of the repealed Negotiated Rates Act of 1993, which contained two clauses. *Negotiated Rates Act of 1993*, Pub. L. No. 103-180, § 7, 107 Stat. 2044, *repealed by* ICC Termination Act of 1995, § 102(a), Pub. L. No. 104-88, 109 Stat. 803, 804. The first mandated "truth-in-billing" requirements, whereby the bills issued by motor carriers to customers must reflect "the actual rates, charges or allowances for the transportation service." *Id*. The second clause prohibited "any person from causing a motor carrier to present false or misleading information on a document about the actual rate, charge or allowance to any party to the transaction." *Id*.

"person" is UPS and the "motor carrier" is its parent corporation) nor that offered on appeal (that UPS is both the "person" and the "motor carrier") states a colorable claim.

Solo relies heavily on *Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, to support his claim. 2012 WL 4049955 (S.D.N.Y. Sept. 14, 2012). However, the court in *Grocery Haulers* found that the plaintiff shipper had failed to state a claim under § 13708(b). *Id*. at *9. There, the shipper had engaged a motor carrier to deliver food to retailer locations and alleged that "[the carrier] submitted inaccurate mileage figures in a number of its Invoices and billed [the shipper] based on these inaccurate miles for at least one delivery" as well as billing for "State road use taxes that it did not actually incur." *Id*. at *8. The court concluded that while the defendant carrier could be both a "legal person and a motor carrier" for the purpose of the statute, § 13708(b) was not satisfied where the shipper alleged the carrier *caused itself* to engage in the relevant conduct. *Id*. at *9. Because "[t]here is a legal distinction between performing an act directly and causing an act to be done" and the shipper accused the carrier of "only the former; [while] subsection (b) addresses only the latter," the court resolved this claim in the carrier's favor. *Id*. at *9, 19.

We find that Solo's claim succumbs to the same flaw. It is insufficient, according to the plain wording of the statute, that UPS (or an employee or affiliate) caused itself to publish the information at issue. Because "UPS operates through a complex web of affiliates, franchisees, third-party retailers and other 'authorized outlets,'" Solo asserts that he "require[s] an opportunity for discovery to learn precisely where the money goes, and what UPS-related entity caused defendant or another motor carrier to publish the misleading Service Guide." This is insufficient even under the lenient pleading standard of Federal Rule of Civil Procedure 8(a)(2), which "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Ashcroft*, 556 U.S. at 679. We affirm the district court's dismissal of this claim.

### III. CONCLUSION

Based on the foregoing reasoning, we AFFIRM the dismissal of Solo's claim under 49 U.S.C. § 13708(b), REVERSE the dismissal of the remaining claims, and REMAND the case to the district court for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 15-1426

JOE SOLO; BLEACHTECH L.L.C., on behalf
of themselves and all others similarly situated,
      Plaintiffs - Appellants,

v.

UNITED PARCEL SERVICE CO.,
      Defendant - Appellee.

**FILED**
Mar 18, 2016
DEBORAH S. HUNT, Clerk

Before: STRANCH, DONALD, and LIPEZ, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's dismissal of Solo's claim under 49 § 13708(b) is AFFIRMED, its dismissal of the remaining claims is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk