UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE SOLO, ET AL.,

              Plaintiffs,                   No. 14-12719

v.                                District Judge Gerald E. Rosen
                                Magistrate Judge R. Steven Whalen

UNITED PARCEL SERVICE CO.,

              Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Compel Answers to Interrogatory No. 1 [Doc. #40]. For the reasons discussed below, the motion will be GRANTED IN PART.

## I.    BACKGROUND

This is a putative consumer class action case in which Plaintiffs claim that Defendant United Parcel Service Co. ("UPS") breached its contract with shippers by overcharging for shipments that had a declared value of over $300. Specifically, UPS's pricing table contained "declared value service" charges that increased incrementally with the declared value of the package being shipped. From zero to $100, the charge was zero, and from $100.01 to $50,000, the charge was $0.85 "for each $100.00...of the total value declared." Plaintiffs claim that for packages with a declared value of over $300, UPS charged $0.85 for the first $100 of value, in violation of the contractually binding pricing table.

Plaintiffs' Interrogatory No. 1 reads as follows:

A.      Separately for Direct Shippers and Third-Party Retailer Shippers, provide the total number of Qualifying Shipments carried by UPS from each Originating State for the time periods indicated in the

chart attached as Exhibit A hereto and made part hereof.

B.      Separately for Direct Shippers and Third-Party Retailer Shippers, identify the number of Qualifying Shipments carried by UPS from December 30, 2013, to the close of the calendar month immediately preceding the response to this interrogatory.

C.      Separately for Direct Shippers and Third-Party Retailer Shippers, identify the number of Qualifying Shipments carried by UPS from June 30, 2013, to December 29, 2013.

D.      For each of the totals in answer to the above Interrogatory No. 1A-1C, quantify on a monthly basis the Qualifying Shipments you contend were not subject to UPS's published pricing tables for declaring excess value, including the pricing tables contained in the Declared Value of Carriage charts on pages 70 and 136 of the UPS Rate and Service Guide updated on July 8, 2013; and identify the agreements, terms, pricing tables, or rates that were used to price coverage for loss or damage for such Qualifying Shipments, and the customers to whom they applied.

Because there is a nation-wide class, the statutes of limitations vary from state to state.  Exhibit A to the interrogatory identifies five distinct time periods, each ending on December 29, 2013, with the longest period beginning in 2008.

UPS contends that providing the package-specific information requested in Interrogatory No. 1 would be excessively burdensome in terms of both time, manpower, and costs. Karl Wixtrom, a Senior Program Manager with UPS, submitted a declaration stating as follows.[1] Due to the enormous amount of data that runs through UPS's billing system, the "package level detail" requested by Plaintiffs is maintained in a "live" format (i.e., a format that is easily accessible electronically) for only limited time period; it is then archived on backup tapes. Based on the facts in Mr. Wixtrom's declaration, UPS argues that the cost and burden of responding to the interrogatory on a package-level

---

[1] Because Mr. Wixtrom's declaration contains proprietary information, it was filed under seal. The Court has reviewed the sealed declaration, but this Opinion and Order references only the redacted, publically filed version.

basis, going back as far as 2008, would be overwhelming:

> "UPS estimates that it would take at least six months just to restore the archived tapes as described above, at a cost of $120,000 in labor, requiring UPS employees to take on responsibilities outside of their regular duties. Further, that estimate does not include the time and expense of analyzing the data once extracted in order to answer Interrogatory No. 1, which would require extensive additional analysis of each account number and the manual review of contract language for individual shipper. Such a process would also require a substantial amount of time and resources on the part of UPS." *Brief in Support of Defendant's Response* [Doc. #50], at 8 (Pg. ID 1145).

Mr. Wixtrom indicated that limiting the Plaintiffs' request to a six-month period would reduce the costs.

Instead, UPS provided an estimate of the number of packages with declared value over $300 that were shipped during the period June 30, 2013 to December 29, 2013. The estimate was based on a methodology described in the sealed version of UPS's response. UPS isolated this particular six-month period based on two defenses: (1) contracts after December of 2013 contain a mandatory arbitration clause, and (2) UPS terms state that a customer must give notice of a billing dispute within 180 days, or the issue is waived. Therefore, UPS contends, June 30, 2013 through December 29, 2013 is "the time period most likely to be deemed relevant if Plaintiffs' claims are ultimately permitted to proceed on a classwide basis." *Id.*, at 18-19 (Pg. ID 1155-56).

## II.   DISCUSSION

The 2015 amendments to the Federal Rules of Civil Procedure emphasize two general principles that are germane to this case. First, the parties have a heightened duty of cooperation in procedural matters such as discovery. In this regard, Rule 1 was amended "to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way." Fed.R.Civ.P. 1, Advisory

Committee's Note to the 2015 amendment. Secondly, Rule 26(b)(1) emphasizes the principle of proportionality, stating that discovery should be "proportional to the needs of the case...and whether the burden or expense of the proposed discovery outweighs the benefit." Linking the concepts of cooperation and proportionality, the Advisory Committee's Notes to Rule 1 state, "Effective advocacy is consistent with–and indeed depends upon-cooperative and proportional use of procedure." These principles are particularly important when, as here, the discovery sought comprehends a broad-ranging and massive amount of data.

Having reviewed the Wixtrom declaration, I am persuaded that UPS has carried its burden of showing that producing package-specific information going as far back as 2008 would be extraordinarily burdensome, particularly at this stage of the proceedings. Given the scope of UPS's business operations and the exigencies of its proprietary billing system, there is a valid business reason for maintaining "live" data for a limited period of time and storing older data on backup tapes. Fed.R.Civ.P. 26(b)(2)(B) provides that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Courts have held that information stored on backup tapes is not "reasonably accessible." *Laethem Equipment Co. v. Deere & Co.*, 261 F.R.D. 127, 145 (E.D. Mich. 2009)(citing the Sedona Principles); *Nissan North America, Inc. v. Johnson elec. North America, Inc.*, 2011 WL 1002835, *3-4 (E.D. Mich. 2011)(holding that plaintiff's backup systems were not reasonably accessible). The Wixtrom declaration also supports a finding of undue burden: extracting all of the requested data would take six months, would cost at least $120,00,

and even then would require the creation of software to make the data useable.[2] Undertaking this task would also require the diversion of manpower from other duties.

Against this burden, the relevance of the information as requested is not proportional to the needs of the case at this time. The potential relevance of data before June 30, 2013 and after December 29, 2013 depends on the disposition of two as-yet unresolved issues: (1) the effect of the arbitration clause on transactions after December 29, 2013, and (2) the impact of the 180-day window for customers to file billing complaints. While the decision of those issues is not before me, and without second-guessing what the ultimate decision might be, I do not view UPS's position as frivolous or completely lacking in merit. And if UPS does ultimately prevail on those issues, the burden and expense of producing such a broad range of information will have been for naught.

I agree with UPS that if it does prevail on the above issues, the most likely period that will be found relevant will be the six-month time frame from June 30, 2013 to

---

[2] In *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 301-302 (S.D.N.Y. 2012), the court found that "accessibility" was a function of the *source* of electronically stored information ("ESI"), not the mere fact that the data sought is voluminous. In other words, material stored on a computer user's desktop or on a company's "live" network may be easily accessible, even if voluminous. On the other hand, material that is stored off-line may not be reasonably accessible if the method of extracting it entails substantial burdens and costs. The court cited Judge Scheindlin's decision in *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 318-19 (S.D.N.Y. 2003), which held that "[w]hether electronic data is accessible turns largely on the media on which it is stored." *Chen-Oster* recounted *Zubalake's* five categories of ESI, listed in descending order of accessibility: "(1) active, on-line data; (2) near-line data; (3) data that is archived or stored off-line; (4) backup media designed for disaster recovery rather than routine use; and (5) erased, fragmented, or damaged data." *Chen-Oster* at 301, citing *Zubalake* at 318-19. In this case, UPS's data that is stored on backup tapes would fall within either category (3) or (4), and, consistent with the Sedona approach, would be considered "not reasonably accessible," owing to the manner in which it is stored.

December 29, 2013.[3] The degree of relevance of information from this more limited period is high, and Plaintiff properly seeks discovery of this narrower set of data. But while the burden on UPS of producing the information is less, it is not insubstantial. The appropriate balance between the Plaintiff's need for the information and the burden of producing it may be struck through statistical sampling, without prejudice to production of the entire set of data at a later time. *See Quintana v. Claire's Boutiques, Inc.*, 2014 WL 234219, *2 (N.D.Cal. 2014)("In the specific context of class action discovery, sampling advances the goal of proportionality advanced under Fed. R. Civ. P. 26(b)(3)(c)(iii)"); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357-58 (S.D. Ohio 2006)("[L]imiting discovery to a statistically significant representative sampling...will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and et afford the defendant a reasonable opportunity to explore, discovery and establish an evidentiary basis for its defenses."); *Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492, 503 (E.D. Cal. 2012)("To relieve the burden on a party, a court may order 'sampling' of records.").

The estimate that UPS produced for the six-month period encompassing the latter half of 2013 was based on a method that extrapolated "live" data from a more recent period. At the time this motion was filed, Plaintiffs were not privy to UPS's methodology, given that it involved disclosure of proprietary information. However, now that a protective order has been entered [Doc. #74], UPS will disclose its methodology under the "attorneys' eyes only" provision. It may be that Plaintiff is satisfied that UPS's methodology is sufficient. If not, the parties will meet, confer, and agree on a mutually

---

[3] If UPS does not prevail on these issues, Plaintiffs' discovery request for this broader range of information can be revisited, with the possibility of some form of sampling to lessen the burden.

-6-

acceptable sampling methodology. *See Quintana*, at *2 ("[T]he court leaves it to the parties to work out the particulars of how the sample is selected (e.g., cluster sampling, stratified sampling, etc.)"). The method may include UPS again generating the more easily accessible "live" data for the most recent period.

As in *Smith v. Lowe's Home Centers*, sampling strikes a fair balance between Plaintiff's right to relevant information and the burden on UPS in producing a large amount of data. Because in general, the responding party bears the cost of production, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978), UPS will pay the costs associated with producing the statistical sample. However, if the parties are unable to agree on an acceptable sampling methodology, then Plaintiff will have the option of requesting that UPS produce the package-specific data for the period June 30, 2013 to December 29, 2013, with Plaintiff bearing the entire cost of production.

### III.    CONCLUSION

Consistent with the above discussion, Plaintiffs' Motion to Compel Answers to Interrogatory No. 1 [Doc. #40] is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE.

Plaintiff's request for the production of package-specific information going back as far as 2008 is DENIED WITHOUT PREJUDICE.

Plaintiff's motion is GRANTED to the extent that the parties will meet, confer, and devise a mutually agreeable methodology for obtaining a sampling of the requested data for the time period June 30, 2013 to December 29, 2013. UPS will provide the data thus sampled to Plaintiff, and UPS shall bear the cost of the production.

If the parties are unable to agree on an acceptable sampling methodology, then Plaintiff will have the option of requesting that UPS produce the package-specific data

for the period June 30, 2013 to December 29, 2013, with Plaintiff bearing the entire cost of production.

      IT IS SO ORDERED.


                                s/R. Steven Whalen _____
                                R. STEVEN WHALEN
                                United States Magistrate Judge

Dated: January 10, 2017


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 10, 2017, electronically and/or by U.S. mail.

                                s/Carolyn M. Ciesla _____
                                Case Manager