**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**Southern Division**

| | |
|---|---|
| JOE SOLO, et al., | Case No.: 2:14-cv-12719 |
| Plaintiffs, | Hon. Gerald E. Rosen |
| vs. | Mag. Judge R. Steven Whalen |
| UNITED PARCEL SERVICE CO., | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Elizabeth McKenna
Charles Slidders
MILBERG LLP
One Pennsylvania Plaza, 50th Floor
New York, NY  10119
Phone: (212) 594-5300
emckenna@milberg.com
cslidders@milberg.com

Daniel R. Karon (*admitted*)
Beau D. Hollowell
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Paul T. Friedman
MORRISON & FOERSTER LLP
CityPoint One Ropemaker Street
London EC2Y 9AW
United Kingdom
Phone: 44 (20) 79204006
pfreidman@mofo.com

Greg B. Koltun
MORRISON & FOERSTER LLP
707 Wilshire Blvd
Los Angeles, CA  90017-3543
Phone: (213 892-5200
gkoltun@mofo.com

Caitlin Sinclaire Blythe
Ian K. Bausback
MORRISON & FOERSTER LLP
425 Market St
San Francisco, CA  94105-2482
Phone: (415) 268-7000
cblythe@mofo.com
ibausback@mofo.com

Bonnie Mayfield (P40275)
DYKEMA GOSSETT PLLC
39577 Woodward Ave, Suite 300
Bloomfield Hills, MI  48304
Phone: (248) 203-0851
bmayfield@dykema.com

*Counsel for Defendant*

**PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE WHALEN'S**
**JANUARY 10, 2017, OPINION AND ORDER RE. MOTION TO COMPEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ............................................................................2

BACKGROUND ............................................................................3

THE LEGAL STANDARD ...............................................................6

ARGUMENT .................................................................................8

I.     UPS Has Produced No Evidence Sufficient To Overcome The Legal
       Presumption That The Producing Party Bears Its Own Costs Of
       Production Absent Demonstrated Undue Burden .................................9

II.    The Court Erroneously Shifted The Costs Of Production To Plaintiffs
       Without Any Mention Of The *Zubulake* Factors...................................11

III.   An Analysis Of The *Zubulake* Factors Does Not Support Cost-
       Shifting to Plaintiffs...................................................................11

IV.    UPS Converted The Data Into An Inaccessible Format After It Was
       Reasonably Foreseeable That It Was Relevant. ...................................14

CONCLUSION ...............................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beacon Journal Publishing Co., Inc. v. Blackwell*,
   389 F.3d 683 (6th Cir. 2004) ..................................................................8

*Cason-Merenda v. Detroit Med. Ctr.*,
   No. 06-15601, 2008 WL 2714239 (E.D. Mich. July 7, 2008)...................8, 9, 10

*U.S. ex rel. Guardiola v. Renown Health*,
   No. 3:12-cv-00295, 2015 WL 5056726 (D. Nev. Aug. 25, 2015) ...........9, 10, 11

*Hamilton's Bogarts, Inc. v. Michigan*,
   501 F.3d 644 (6th Cir. 2007) ..................................................................8

*John B. v. Goetz*,
   531 F.3d 448 (6th Cir. 2008) ..................................................................9

*Jones v. Caruso*,
   No. 1:07-cv-392, 2009 WL 2488052 (W.D. Mich. Aug. 12, 2009)....................7

*Laethem Equip. Co. v. Deere & Co.*,
   261 F.R.D. 127 (E.D. Mich. 2009) ...............................................................9, 10

*Lafountain v. Martin*,
   No. 1:07-cv-76, 2010 WL 748215 (W.D. Mich. March 1, 2010) .......................7

*MFS & Co., LLC v. Caterpillar, Inc.*,
   No. 09-14063, 2012 WL 195510 (E.D. Mich. Jan. 24, 2012)............................6

*Quinby v. West LB AG*,
   245 F.R.D. 94 (S.D.N.Y. 2006) .....................................................................14

*Solo v. United Parcel Service Co.*,
   819 F.3d 788 (6th Cir. 2016) ..................................................................4

*Stryker Corp. v. Ridgeway*,
   Nos. 113-cv-1066, 1:14-cv-889, 2015 WL 4425947 (W.D. Mich.
   July 20, 2015)...................................................................................7, 11

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003); 216 F.R.D. 280 (S.D.N.Y. 2003) ..........*passim*

**Other Authorities**

Fed R. Civ. P. 26(2)(B) ..............................................................................................8

Fed. R. Civ. P. 72(a)..............................................................................................1, 6

## <u>Concise Statement of Issues Presented</u>

Should this Court sustain Plaintiffs' objection to the Magistrate Judge's order shifting the costs associated with UPS producing an initial set of six-month's of data central to the consumer claims in this class action where (i) UPS was on notice of the potential relevance of the data before it stored it on back-up tapes after the action was originally filed; (ii) UPS has failed to present any tangible evidence of the costs involved; and (iii) the Magistrate Judge failed to identify, apply, or weigh the *Zubulake* factors applicable to cost shifting under the Federal Rules of Civil Procedure?

Plaintiffs' state:  Yes.

## <u>Controlling or Most Appropriate Authority</u>

Fed. R. Civ. P. 26

Fed. R. Civ. P. 72

*Cason-Merenda v. Detroit Med. Ctr.*, 2008 WL 2714239 (E.D. Mich. July 7, 2008)

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003)

*Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003)

## BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiffs Joe Solo and

BleachTech LLC (collectively "Plaintiffs"), through counsel, hereby respectfully

object to Magistrate Judge Whalen's January 10, 2017, Opinion and Order (ECF

No. 89) (the "Opinion and Order" or "Order").

Plaintiffs specifically object to the Order's mandate that if the parties are

unable to agree on an acceptable sampling methodology of the requested data at

issue, then Plaintiffs (an individual and a small private company) will have the

option of requesting that Defendant United Parcel Service Co. ("Defendant" or

"UPS"), a company with $58 billion in annual revenue, produce package-specific

data for the period June 30, 2013, to December 29, 2013, with Plaintiffs bearing

the entire cost of production.  *See* ECF No. 89 at 7-8.

For the following reasons, the Opinion and Order is erroneous and contrary

to law:

> 1)    There was insufficient evidence before the Court to overcome the presumption that UPS must pay its own costs in complying with its discovery obligations;
>
> 2)    The Court failed to consider, much to less analyze or apply, the relevant factors for ESI cost-shifting cases set forth in the Federal Rules of Civil Procedure, as derived from the seminal case, *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003) ("*Zubulake*");

3)    An analysis and application of the *Zubulake* factors does not support shifting the burden of production to the Plaintiffs, but instead requires Defendant to bear the cost of production; and

4)    Plaintiffs should not incur the expense associated with UPS's decision to convert the data into an inaccessible format when it was reasonably foreseeable that it was discoverable material.

## INTRODUCTION

This consumer class action alleges that UPS breached its contracts with shippers and is liable for claims of unjust enrichment to customers of its franchise, "The UPS Store" outlets, and other third party shippers, because it overcharged for "declared value coverage" for loss or damage.  In Plaintiffs' First Set of Interrogatories to Defendant (*see* ECF No. 40, Exh. A), Plaintiffs requested that UPS produce information identifying the actual number of shipments described in detail that correspond with Plaintiffs allegations that UPS overcharged members of the putative class.  UPS refused to do so, necessitating Plaintiffs' Motion to Compel Answers to Interrogatory No. 1 (ECF No. 40) (the "Motion to Compel").

The Opinion and Order requires Plaintiffs, Joe Solo, an individual, and BleachTech, a small Ohio company with 50 employees, to pay UPS, a corporation that generates well over $50 billion in yearly revenue, [1] the ***entire cost*** of

---

[1] UPS's most recently filed Form 10-K shows that UPS and its subsidiaries generated more than $58 billion for the year ending December 2015 with a net

producing its own data, in direct contravention of the well-established presumption that each party is responsible for the costs of compliance with its discovery obligations. The Opinion and Order is clearly erroneous and contrary to law because (1) the Court did not have a sufficient basis to ignore the presumption that Defendant is to incur the expense of satisfying its own discovery obligations; (2) the Order fails to even *consider*, much less analyze or apply, the *Zubulake* factors relevant to a determination of whether to shift the costs of ESI discovery to the requesting party; (3) the Court's application of the *Zubulake* factors in this case would not have justified shifting the burden from the producing party to the Plaintiffs; and (4) Plaintiffs should not incur the expense associated with UPS's decision to convert the data into an inaccessible format when it was reasonably foreseeable that it was discoverable material.

## BACKGROUND

To establish the scope of the case and the putative class(es), Plaintiffs served Interrogatory No. 1 to quantify the number of shipments with a declared value of $300.01 to $50,000.00 ("qualifying shipments")." *See* ECF No. 40, Exh. A. The Interrogatory sought data for specified, relevant time periods, including, but not limited to, the period from June 30, 2013 to December 29, 2013. UPS's liability

---

income of $4.8 billion while paying out more than $2.5 billion in dividends to shareholders. *See* ECF No. 40, Exh. 1 at 20, n.19.

for loss or damage to a shipment is limited to $100 unless the customer declares a higher value at the time of shipment.  UPS's pricing table shows a price of $0 for the first $100 of declared value (ECF No. 40 at 1).  However, for every shipment with a declared value over $300,[2] UPS overcharged customers by an increment approaching $1.00 (equal to $0.85 in 2013) for the first $100 of declared value.  *Id.*  This is contrary to UPS's own published pricing table.  *Id.* at 1-2.  UPS admits that it did charge such fees.  *Id.* at 2-3.[3]

UPS served its responses and objections to Interrogatory No. 1 in redacted form as containing "confidential" information.[4]  UPS refused to provide the information requested (i.e., actual qualifying shipment data relevant to establish class size, the amount of the claims, and to identify class members).  Instead, UPS eventually (but not until *after* briefing and oral argument on the Motion to Compel) provided only an *estimate* for a fraction of the requested data, for a single sixth-

---

[2] That is, every direct shipment (e.g., by a business or individual who shipped a package under a UPS account or at a UPS-owned facility, or via its website) with a declared value over $300 before or after December 30, 2013; and every retail shipment (e.g., indirect shipper such as those who shipped via a Third-Party Retailer, like The UPS Store) with a declared value over $200 before December 30, 2013, or over $300 after that date.  *See* ECF No. 40 at 2-3.

[3] The Sixth Circuit previously reversed dismissal of Plaintiffs' contract and unjust enrichment claims, finding that UPS's pricing table terms are ambiguous.  *See Solo v. United Parcel Service Co.*, 819 F.3d 788 (6th Cir. 2016).

[4] *See* UPS's Responses and Objections to Plaintiffs' First Set of Interrogatories, attached to ECF No. 40, Exh. B.

month period in late 2013. UPS claimed that providing the actual data would be unduly burdensome and expensive.  Despite several meet and confers to address the issues, counsel for the parties were unable to reach a resolution, and Plaintiffs filed their Motion to Compel on August 4, 2016.  Defendant responded on August 18, 2016, and Plaintiffs reply was filed on August 26, 2016 (ECF Nos. 40, 50, 55). The Court's Opinion and Order was rendered on January 10, 2017 (ECF No. 89).

The Opinion and Order determined, solely on the basis of the self-serving and conclusory declaration of UPS employee, Karl Wixtrom (ECF No. 52), that for UPS to "produc[e] package-specific information *going as far back as 2008* would be extraordinarily burdensome, particularly at this stage of the proceeding." *See* ECF No. 89 at 2-4 (emphasis added).  The Order apparently adopted, unquestioningly, Mr. Wixtrom's unsubstantiated assertion that it would cost UPS $120,000 to extract *all the data going back as far as 2008*.  *Id.* at 2.

Moreover, the Court acknowledged that "[t]he degree or relevance of information from this more limited period [June 30, 2013 to December 29, 2013] is high, and Plaintiff[s] properly seek[]discovery of this narrower set of data." *Id.* at 6.  However, despite the "high" degree of relevance of Plaintiffs' discovery request, the Magistrate Judge shifted the cost of UPS's compliance with Plaintiffs' "proper" discovery request to *Plaintiffs*, based solely on the unsupported basis that the burden on UPS to produce the data for the limited six-month period "is not

insubstantial." *Id.* The only evidence of the expense associated with UPS's production was the cost of $120,000 to extract **all** of the data from 2008 – UPS did not provide evidence of the costs associated with extracting the data from the limited six-month period.[5]

In finding that the cost of producing the six-month's of data is "not insubstantial" the Magistrate Judge held that "[t]he appropriate balance between the Plaintiff's need for the information and the burden of producing it may be struck through statistical sampling." ECF No. 89 at 6. The parties were ordered to "meet, confer, and agree on a mutually acceptable methodology." *Id.* at 7. The Opinion and Order concluded "if the parties are unable to agree on an acceptable sampling methodology, then Plaintiff[s] will have the option of requesting that UPS produce the package-specific data for the period June 30, 2013 to December 29, 2013, **with Plaintiff bearing the entire cost of production.**" *Id.* (emphasis added).

## THE LEGAL STANDARD

This Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). *See also MFS & Co., LLC*

---

[5] The Opinion and Order does not find how much it would cost for UPS to produce the actual data for the initially limited six-month period, as UPS did not provide a cost breakdown for that period. Rather, the Order only gives a cost estimate if UPS was to produce *all* its data from 2008 to the present.

*v. Caterpillar, Inc.,* No. 09-14063, 2012 WL 195510, at *2 (E.D. Mich. Jan. 24, 2012) (overturning a magistrate judge's order that denied motions to compel and granted a motion to quash) (quoting Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A)). "Findings of fact are reviewed under the 'clearly erroneous' standard, and legal conclusions are reviewed under the 'contrary to law' standard." *Stryker Corp. v. Ridgeway*, Nos. 113-cv-1066, 1:14-cv-889, 2015 WL 4425947, at *1 (W.D. Mich. July 20, 2015) (citing *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992)).

Even if there is evidence to support a decision, "[c]lear error is present when the Court 'is 'left with the definite and firm conviction that a mistake has been committed.''" *Jones v. Caruso*, No. 1:07-cv-392, 2009 WL 2488052, at *1 (W.D. Mich. Aug. 12, 2009) ("'a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'") (other citations omitted)); *Stryker Corp.*, 2015 WL 4425947, at *1 (citing *Gandee*, 785 F.Supp. at 686). A magistrate judge's opinion is "contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Lafountain v. Martin*, No. 1:07-cv-76, 2010 WL 748215, at *1 (W.D. Mich. March 1, 2010) (other citations omitted). Legal conclusions "are reviewed de novo." *Stryker*

*Corp.*, 2015 WL 4425947, at *1 (citing *United States v. Curtis*, 237 F.3d 598, 607 (6th Cir. 2001)).[6]

## ARGUMENT

In finding that the costs associated with producing data for the limited six-month period were not "insubstantial" and effectively shifting those costs to the Plaintiffs, without considering Rule 26(B)(2)(iii), or analyzing and applying the widely adopted and accepted factors enunciated and applied in *Zubulake* ,the Court's Order is clearly erroneous and contrary to law.  *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003). Plaintiffs respectfully request that the Court adopt the Plaintiffs' objection and order UPS to produce the package-specific data from June 30-December 29, 2013, in the event the parties cannot negotiate and stipulate to a less costly sampling that would be deemed both admissible and adequate, at UPS's sole expense.

---

[6] While the more tolerant abuse-of-discretion standard does not apply to this objection, it is illustrative to note that it is an abuse of discretion for a court to fail to apply a governing standard to a discretionary standard.  *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (an abuse of discretion exists when a ruling "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.") (internal citations and quotations omitted); *Beacon Journal Publishing Co., Inc. v. Blackwell*, 389 F.3d 683, 685-85 (6th Cir. 2004) ("[w]hile clearly erroneous fact-finding constitutes abuse of discretion, so, too, does the improper application of governing law.") (citing *Blue Cross & Blue Shield Mut. v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

## I.   There is No Evidence Sufficient To Overcome The Legal Presumption That The Producing Party Bears Its Own Costs Of Production Absent Demonstrated Undue Burden.

Cost-shifting should be considered only when electronic discovery imposes an "undue burden or expense" on the responding party.  The responding party, here UPS, "must bear the expense of complying with discovery requests" unless it demonstrates "undue burden or cost."  *See* Fed R. Civ. P. 26(2)(B); *Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2008 WL 2714239, at *3 (E.D. Mich. July 7, 2008) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)); *U.S. ex rel. Guardiola v. Renown Health*, No. 3:12-cv-00295, 2015 WL 5056726, at *9 (D. Nev. Aug. 25, 2015) ("the presumption is that the responding party must bear the expense of complying with discovery requests[,]") (quoting *Oppenheimer*, 437 U.S. at 358). Furthermore, "[a]ny principled approach to electronic evidence must respect this presumption." *Guardiola*, 2015 WL 5056726, at *9 (citing *Zubulake* 217 F.R.D. at 317-18).  Accordingly, "[a]bsent a specific objection, party agreement, or court order, the reasonable costs of retrieving and reviewing electronically stored information should be borne by the responding party." *Cason-Merenda*, 2008 WL 2714239, at *4 (quoting The Sedona Principles: Second Edition, June 2007);[7]*Guardiola*, 2015 WL 5056726, at *9 (citation omitted).

---

[7] The Sedona Principles have been cited favorably by the Sixth Circuit. *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). *See also Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 145 (E.D. Mich. 2009).

"[C]lose calls should be resolved in favor of the presumption." *Zubulake*, 217 F.R.D. at 320.

Here, Plaintiffs are simply requesting that, initially, the Court order production of the "highly" relevant data from the limited six-month period from June 30, 2013, to December 29, 2013. There is no evidence in the record discussing the costs associated with this limited production. The Court's finding that the cost of production is "not insubstantial" is, respectfully, without basis.

Furthermore, the finding alone that the cost of production is not insubstantial does not equate to a finding of "undue burden" and is not sufficient to overcome "the presumption that that the responding party must bear the expense of complying with discovery requests." *Guardiola*, 2015 WL 5056726, at *9. In determining whether the expense of production amounts to an undue burden, a court must evaluate the cost of production in comparison with the amount in controversy.[8] Here, there is no consideration of an amount in controversy, and consequently, any estimated cost of production is a numerator in search of a

---

[8] *See, e.g.*, *Guardiola*, 2015 WL 5056726, at *10 ("'[a] response to a discovery request costing $100,000 sounds (and is) costly, but in a case potentially worth millions of dollars, the cost … may not be unduly burdensome.'" (quoting *Zubulake*, 217 F.R.D. at 321).

denominator – by itself, it cannot be assigned its appropriate weight in the "undue burden" analysis.

## II.   The Court Erroneously Shifted The Costs Of Production To Plaintiffs Without Any Mention Of The *Zubulake* Factors.

The Opinion and Order is contrary to law because it improperly, but effectively, shifted the entire cost of production to Plaintiffs without any discussion of the seven cost-shifting factors enunciated in *Zubulake*, the seminal case law for cost-shifting ESI discovery.  The *Zubulake* factors are considered the "gold standard" in evaluating cost-shifting ESI discovery disputes, and have been approved and adopted in the Sixth Circuit. *See, e.g.*, *Guardiola*, 2015 WL 5056726, at \*2 (quoting *Tierno v. Rite Aid Corp.*, No. C-05-02520, 2008 WL 3287035, at \*4 (N.D. Cal. July 31, 2008)); *Laethem Equip. Co.*, 261 F.R.D. at 145; *Cason-Merenda*, 2008 U.S. Dist. LEXIS 51962, at \*11.  The failure to consider the *Zubalake* factors alone renders the Order and Opinion contrary to law.

## III.   An Analysis Of The *Zubulake* Factors Does Not Support Cost-Shifting to Plaintiffs.

An application of the *Zubulake* factors as they pertain to this case does not support shifting the costs of production to the Plaintiffs.  *Zubulake* "held that courts should consider seven factors in the cost-shifting analysis, weighted in the following order" and an analysis of each factor clearly weighs in favor of the Plaintiffs. *Guardiola*, 2015 WL5056726, at \*10 (citing *Zubulake*, 217 F.R.D. at

324); *see also Stryker Corp.*, 2015 WL 4425947, at *1 (citing *Zubulake*, 217 F.R.D. at 322).

The ***first*** *Zubulake* factor is "the extent to which the request is specifically tailored to discover relevant information."  In reference to this factor, Plaintiffs targeted the definition of qualifying shipments to their claims.  Moreover, the Order itself held that data the six-month period at issue has a "high degree of relevance."  ECF No. 89 at 6.

The ***second*** *Zubulake* factor concerns the availability of the requested data from other sources, and here it is clear that the data is proprietary and only available from UPS.  Indeed, UPS concedes that its backup tape systems are the only source for this information.  *See* ECF No. 50 at 2, 8.  Furthermore, because UPS admits that this proprietary data is only available from its records, there is simply no other source.  The requested data is part of UPS's core business, which develops, implements, and maintains computer systems, software, and data to bill each of its customers for declared value coverage.

The ***third*** *Zubulake* factor concerns the total cost of production for the six months of data, compared to the amount in controversy. Only UPS has the information to determine the total amount in controversy, and as noted previously, the Court failed to recognize the amount in controversy as a factor. Given that UPS shipped 16.3 million packages *per day* worldwide in 2012, however, *Solo*, 819

12

F.3d 788, 791, the amount in controversy is likely to be in the tens of millions of dollars.

The **fourth** *Zubulake* factor is a comparison of the resources available to each party, and it is clear that the resources available to UPS (a company with over $50 billion in annual revenue) far exceeds the Plaintiffs' resources: an individual and a small Ohio company with approximately 50 employees.

The **fifth** *Zubulake* factor is the relative ability of each party to control costs and its incentive to do so. This factor also favors the Plaintiffs: UPS will be responsible for the limited production, can control its costs, and has the incentive to do so.[9] As discussed, *infra*, UPS could have retained this data when the prior lawsuits were filed in December 2013, but it chose not to do so.[10]

The **sixth** *Zubulake* factor concerns the importance of the issues at stake in the litigation. The Order acknowledges that the information requested is "highly

---

[9] The Order provides UPS with no incentive whatsoever to agree on a valid sampling methodology. Instead, it creates exactly the opposite incentive (since UPS would be "penalized" by having to pay 50% of the costs of any sampling). In addition, current technology frequently enables parties to index and extract data from backup tapes without the need to "restore" the tapes – UPS thus has much more ability to control its costs to obtain the six months of data, but has no incentive to do so if Plaintiffs are ordered to pay 100% of its costs.

[10] "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Helmert*, No. 4:08-cv-00342, 2010 WL 2179180, at *8 (citing *Zubulake,* 220 F.R.D. at 216 (other citations omitted)).

relevant," and clearly important to the issues at stake in the litigation. The subject data would demonstrate the class of shipments encompassed by Plaintiffs' breach of contract and unjust enrichment claims. UPS did not challenge at oral argument Plaintiffs' representation to the Magistrate Judge that counsel for UPS effectively disavowed UPS's own estimate for most litigation purposes, by refusing to acknowledge that that estimate would be admissible, much less adequate to sustain a jury verdict. *See* Reply Brief In Support of Motion to Compel, ECF No. 55, at 11.

The **seventh** (and therefore least weighted) *Zubulake* factor concerns the relative benefits to the parties of obtaining the information. Here, the information is important to the Plaintiffs to determine scope of the case, and will help quantify the amounts in controversy—a factor that is important to all parties, and may facilitate settlement discussions and resource allocation decisions. Accordingly, this factor, too, militates against cost shifting.

Each *Zubulake* factor favors the Plaintiffs. A proper analysis and evaluation of all the *Zubulake* factors clearly demonstrates that the burden of production should not be shifted to them.

### IV.   UPS Converted The Data Into An Inaccessible Format After It Was Reasonably Foreseeable That It Was Relevant.

As discussed previously, the data that is the subject of this Objection (from the period June 30-December 29, 2013) was "live" data when UPS was placed on notice of this litigation, and therefore it was reasonably foreseeable that the data

14

would be subject to discovery. Despite the likelihood that the data would be subject to discovery, UPS decided to change the file format of the data and reduce its accessibility.

> [I]f a party creates its own burden or expense by converting into an inaccessible format data that it should have reasonably foreseen would be discoverable material at a time when it should have anticipated litigation, then it should not be entitled to shift the costs of restoring and searching the data. This would permit parties to maintain data in whatever format they choose, but discourage them from converting evidence to inaccessible formats because the party responsible for the conversion will bear the cost of restoring the data. Furthermore, it would prevent parties from taking unfair advantage of a self-inflicted burden by shifting part of the costs of undoing the burden to an adversary.

*Quinby v. West LB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006); *see also Sedona Principles on Proportionality*.

UPS created an additional expense by archiving the live data for June 30-December 29, 2013, shipments when it was reasonably foreseeable that this data would be subject to discovery in this litigation. The burden of retrieving that data should therefore fall on UPS – and not the Plaintiffs – for this additional reason.

## CONCLUSION

For the aforementioned reasons, the Opinion and Order is clearly erroneous and contrary to law, Plaintiffs' specific Objection should be adopted, and the Defendant ordered to produce the package-specific data for the period June 30, 2013, to December 29, 2013, at its sole expense.

Dated:  January 24, 2017                    Respectfully submitted,

                                            Andrew J. McGuinness (P42074)
                                            ANDREW J. MCGUINNESS, ESQ.
                                            122 S. Main St., Suite 118
                                            P.O. Box 7711
                                            Ann Arbor, MI  48107
                                            Phone: (734) 274-9374

                                            Elizabeth McKenna
                                            Charles Slidders
                                            MILBERG LLP
                                            One Pennsylvania Plaza, 50th Floor
                                            New York, NY  10119
                                            Phone: (212) 594-5300
                                            emckenna@milberg.com
                                            cslidders@milberg.com

                                            Daniel R. Karon (*admitted*)
                                            Beau D. Hollowell
                                            KARON LLC
                                            700 W. St. Clair Ave., Suite 200
                                            Cleveland, OH 44113
                                            Phone: (216) 622-1851

                                            *Counsel for Plaintiffs and Proposed Class*

16

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy of the foregoing was filed with the Court using the ECF system, which will send notification of such filing to all parties who have appeared through their attorneys of record.

/s/ *Andrew J. McGuinness*