UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE SOLO and BLEACHTECH, L.L.C.,

    Plaintiffs,

v.

Case No. 14-12719
HON. DENISE PAGE HOOD

UNITED PARCEL SERVICE CO.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S**
**MOTION TO STAY OR DISMISS PROCEEDINGS [#76]**

**I.    INTRODUCTION**

This case was randomly reassigned from Judge Gerald E. Rosen to this Court upon Judge Rosen's retirement. The case was filed on July 11, 2014. On August 29, 2014, Defendant filed a Motion to Dismiss, and Judge Rosen issued an Order granting Defendant's Motion to Dismiss on March 27, 2015. On March 18, 2016, the Sixth Circuit issued an Opinion reversing Judge Rosen's Order as to three of the four counts. The parties filed a joint discovery plan and a scheduling conference was held on May 17, 2016. Six months later, on November 18, 2016, Defendant filed the

1

instant Motion to Stay or Dismiss Proceedings[1] ("Motion to Stay"). Dkt No. 76. The Motion to Stay, which has been fully briefed, is premised on the belief that Plaintiffs' claims are covered by an arbitration provision, such that Plaintiffs are obligated to arbitrate those claims.

For the reasons that follow, the Court denies Defendant's Motion to Stay or Dismiss Proceedings.

## II. BACKGROUND

Many of the facts of this case and additional procedural history are set forth in the Sixth Circuit's Opinion, *see Solo v. United Parcel Service Co.*, 819 F.3d 788, 791-93 (6th Cir. 2016), all of which are incorporated herein. The following additional information is material to addressing the Motion to Stay.

There are three remaining claims for relief on behalf of each Plaintiff and a putative nationwide class of purchasers for declared value "coverage . . . in excess of $300.00": (1) breach of contract; (2) unjust enrichment; and (3) declaratory relief. Dkt.

---

[1]The Sixth Circuit has held that a court may not compel parties to arbitrate outside of its jurisdiction and, instead, must dismiss or stay an action that is subject to arbitration in another forum. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003). Defendant's motion to dismiss is rooted in the fact that BleachTech is an Ohio company and Solo is a California resident, which means that this Court could not compel them to arbitrate in their respective states of residence (which, according to Defendant, is where the UPS Terms dictate the arbitrations are to be conducted).

No. 1, at ¶¶ 45, 53-64, 73-83. All three claims are based on the theory that Defendant charges more for declared value of packages than permitted by contract. *Id*. The Complaint pleads the breach of contract and unjust enrichment claims in the alternative.

BleachTech alleges it "uses UPS's package shipping services" and paid declared value charges on eight packages. *Id*. at ¶ 16. Solo alleges that from "time to time [he] ships packages using UPS," including one package with more than $300 in declared value on December 26, 2013. *Id*. at ¶¶ 12-13. Plaintiffs seek to recover for 21 UPS shipments by BleachTech between January 18, 2010 and December 29, 2013, each with a declared value over $300, and 1 UPS shipment by Solo at The UPS Store in Marina Del Ray, California on December 26, 2013, a shipment with a declared value over $300. BleachTech proposes to represent a class of similarly situated "direct" shippers; Solo proposes to represent a class of similarly situated "indirect" shippers.

The basic shipping contract between UPS and shippers is comprised of: (1) the UPS Tariff/Terms and Conditions of Service ("UPS Terms"); (2) the UPS Rate and Service Guide ("UPS Guide"); and (3) the Source Document used to tender the

shipment to UPS. Dkt. No. 76, Ex. A §§ 2, 54.² Shippers can also negotiate customized agreements that modify provisions or prices set forth in the UPS Terms or Guide. Even where a shipper has a customized agreement, the UPS Terms still set forth the "general terms and conditions of contract under which [UPS] is engaged in the transportation of shipments." *Id*. at § 1.

The UPS Terms provide that "[i]n tendering a shipment for service, the shipper agrees that the version of the [UPS] Terms and the applicable [UPS] Guide in effect at the time of shipping will apply to the shipment and its transportation." *Id.* The UPS Terms further state that "[a]ll shipments are subject to the terms and conditions contained in the [UPS] Terms." *Id.* at § 54. The UPS Terms are published periodically in the UPS Guide and the current version is available electronically at all times at ups.com. *Id*. at § 1.

As of December 30, 2013, the UPS Terms have contained an agreement to individually arbitrate all claims arising from or related to UPS services. *Id*. § 50. The obligation is mutual. Section 50 provides prominently, in bolded type:

> **Claimant and UPS agree that, except for disputes that qualify for state courts of limited jurisdiction (such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits on their jurisdictions over civil disputes), any controversy or claim,**

---

²BleachTech signed a customized contract with Defendant in 2012. BleachTech's customized contract incorporated the UPS Terms by reference.

4

**whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration.**

*Id*. "Claimant" is defined as "the person asserting the claim or seeking recourse[.]"

*Id*.

The UPS Terms include other provisions related to arbitration, including the following:

- WAIVING THE RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES;

- WAIVING THE RIGHT TO HAVE A COURT, OTHER THAN A STATE COURT OF LIMITED JURISDICTION AS DEFINED ABOVE, RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES; and

- WAIVING THE RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, JOIN AS A CLASS MEMBER, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN ANY CLASS, MASS, CONSOLIDATED OR COMBINED ACTION OR ARBITRATION FILED AGAINST CLAIMANT, UPS AND/OR RELATED THIRD PARTIES.

*Id*. (emphasis in original). The UPS Terms state that "[a]ll issues are for the arbitrator to decide, except that issues relating to the scope, application, and enforceability of the arbitration provision are for a court to decide." *Id*.

Plaintiffs' breach of contract claim assumes a contract directly with Defendant.

*Id.* at ¶¶ 53-57. The unjust enrichment claim assumes shipment through a third-party retailer like The UPS Store, and alleges that Defendant charges the retailer the allegedly-excessive price for declared value service set forth in the Guide and causes the retailer to charge its customers the rates from the Guide, thereby passing on the alleged overcharges. *Id.* at ¶¶ 73-83. Plaintiffs' unjust enrichment theory seeks to enforce Defendant's obligations under the UPS Terms and the UPS Guide. *See id.*; Dkt. No. 20 at 18 ("[The] unjust enrichment claim 'seek[s] recovery solely for the [carrier's] alleged breach of its own, self-imposed undertakings.'").)

## III. APPLICABLE LAW & ANALYSIS

### A. Applicable Law

The Federal Arbitration Act mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA broadly applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). The "central" purpose of the FAA is to "ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479

(1989)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts"); see also *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-45, 352 (2011) (class action waiver could not invalidate arbitration clause, and to require otherwise would frustrate Congressional purpose).

In light of the strong federal policy favoring arbitration embodied in the FAA, parties must be compelled to arbitrate where: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Arbitration clauses will be enforced unless the party resisting arbitration can show that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). The resisting party's burden is significant, as courts are required to "'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). *See also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).

**B.     Analysis**

For purposes of this case, Plaintiffs are focused on shipments they (and other members of the putative class) made prior to December 30, 2013, the effective date of UPS Terms containing the arbitration provision.

*1.     Defendant's Positions*

Defendant argues that the FAA applies to all of the claims asserted by Plaintiffs against Defendant, even if the claims stem from transactions made prior to December 30, 2013, because each Plaintiff entered into a valid, enforceable agreement to arbitrate any claim filed on after December 30, 2013. Defendant relies on the language in the arbitration provision that "**any controversy or claim, . . . regardless of the date of accrual of such dispute**, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration." Based on that language, Defendant contends that, whether Plaintiffs' claims are based on packages shipped before or after December 30, 2013, the Plaintiffs agreed to arbitrate them.

Defendant asserts that BleachTech manifested its agreement to the arbitration provision in four ways: (1) based on its customized contract; (2) by utilizing Defendant to ship goods on or after December 30, 2013 (it is undisputed that BleachTech did so many times, including by clicking through notifications on Defendant's website prior to placing its shipping orders); (3) clicking through specific

8

notice of the arbitration several times when processing its shipments, including on January 9, 13, and 16, 20114; and (4) receiving notice in November 2013 via the first page of its invoice(s) from Defendant that the pending arbitration provision was being added and "inviting" BleachTech to review it.

Defendant asserts that Solo manifested his agreement to the arbitration provision through a third party, The UPS Store, in May 2016, when he shipped a package via Defendant. Asserting that California law applies to Solo's claims, Defendant also suggests that Solo is equitably estopped from avoiding the arbitration provision in the UPS Terms because his claims are based on or inextricably intertwined with the obligations imposed by the UPS Terms and Guide.

Defendant relies on a number of cases in support of its argument that Plaintiffs agreed to arbitrate existing disputes when they accepted the arbitration provision after December 30, 2013. Defendant suggests that, consistent with the express terms of the FAA, the Sixth Circuit and its district courts (as well as courts across the nation) apply arbitration provisions retroactively when they contain language similar to the language in the UPS Terms, even where the provision does not expressly apply no matter when the disputes accrue (as Defendant contends is the case here). Citing *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650-52 (6th Cir.2008) (agreement requiring arbitration of "any dispute or claim arising from or in connection with this agreement

9

or the services provided" applied retroactively, *i.e.*, not limited to disputes arising out of that contract or after that contract was executed); *Love v. Merrill Lynch*, 2012 WL 1698159, at *4 (S.D. Ohio May 15, 2012) (arbitration clause was retroactive because it applied to "any controversy which may arise," and "controversies 'occurring prior, on, or subsequent to the date' of the agreement"); *Levin v. Alms & Assocs.*, 634 F.3d 260, 266-67 (4th Cir. 2011) (arbitration clause contained in only the most recent of successive contracts providing that "[a]ny dispute shall be submitted to binding arbitration" was "broad enough to encompass" disputes arising from earlier contracts without arbitration obligation).³

Another district court recently held that the arbitration provision at issue in this case "in plain language captures any potential preexisting claims, . . ." *Simoni v. UPS,*

---

³Defendant also cites the following cases: *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc*., 198 F.3d 88, 99 (2d Cir. 1999) (relevant inquiry is whether claims fall within language used in arbitration clause, not when they arose); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993) (agreement to arbitrate "[a]ny controversy . . . arising out of [plaintiff's] business *or* this agreement" applied even where facts "giving rise" to dispute happened before agreement was executed); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 n.4, 1028 (11th Cir. 1982) (arbitration agreement covering "any controversy between us arising out of your business or this agreement" applied to disputes relating to acts that pre-dated agreement), *abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173, 1223-24 (N.D. Cal. 2007) (arbitration agreement covering "[a]ny dispute or claim arising out of or relating to" the agreement, the services provided thereunder, or "any other services provided" applied to claims arising from earlier agreements without arbitration provision); *Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 61-62 (D.D.C. 2011) (arbitration provision in subsequent agreement, requiring arbitration of "conflicts between parties" and containing no language limiting subject matter or temporal scope, encompassed claims arising out of earlier agreement).

*Inc.*, No. 14-4374 (Dkt. No. 20, August 20, 2015 Hearing on Defendant's Motion to Compel Arbitration/Dismiss, Tr. at 24:6-15) (granting defendant's motion to compel arbitration).

Defendant concludes that it has not waived its right to arbitrate the disputes at issue. *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) ("Because of the presumption in favor of arbitration under the Federal Arbitration Act," a party's waiver of its right to arbitration is "not lightly infer[red]"). In the Sixth Circuit, a party can waive its right to arbitrate only by: "(1) taking actions that are completely inconsistent with any reliance on the arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Johnson Assocs. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (internal quotation marks omitted). "Both inconsistency and actual prejudice are required." *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 827-28 (6th Cir. 2015).

Defendant maintains that it raised the arbitration clause in its first filing and has repeatedly raised and preserved that right ever since, including in its Answer, in a joint statement before the scheduling conference, and in person at the scheduling conference. For that reason, Defendant asserts that it did not delay in asserting its right to arbitrate and Plaintiffs have not been prejudiced. Defendant also asserts that it sought to bifurcate discovery to focus only on facts relevant to arbitration but

Plaintiffs objected and insisted on full merits discovery. Allegedly, Judge Rosen acknowledged Defendant's objection at the scheduling conference and, though he ordered full discovery, also clarified that it would not construe Defendant's participation in discovery as a waiver of Defendant's right to pursue arbitration. Defendant argues that it did not waive its right to arbitrate by filing a motion to dismiss. Citing *Cooper v. Asset Acceptance, LLC*, 532 F. App'x 639 (7th Cir. 2013) (no waiver where defendant removed to federal court, moved to dismiss, and participated in several scheduling conferences and discovery before moving to compel arbitration); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 749 F.Supp. 851, 852, 854 (M.D. Tenn. 1990) (no waiver where defendant moved to dismiss, district court granted motion, and Sixth Circuit reversed, after which defendant moved for a stay of proceedings pending arbitration). Defendant states that the limited discovery it conducted (Plaintiffs' shipping histories and relationships with Defendant) was appropriate before bringing the motion to stay because it confirmed the applicability of the arbitration provision to this cause of action.

## 2. *Plaintiffs' Positions*

Relying on Michigan law, Plaintiffs contend that the arbitration provision is unenforceable because Defendant reserved itself the right to unilaterally modify its terms without notice. Due to this reservation of a unilateral right to change any term

means that there is no mutuality - no consideration - to establish an agreement that can be arbitrated. Citing *Volt Info. Sciences*, 489 U.S. at 478-79 ("we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so," and that "[a]rbitration under the Act is a matter of consent, not coercion . . .").

Plaintiffs argue that there was, and cannot be, an agreement to arbitrate the pre-arbitration clause shipments made by Plaintiffs – which are the only shipments at issue in this case. Dkt. No. 85, PgID 1916 (Defendant's "motion fails because the Complaint seeks only to pursue claims on behalf of BleachTech and Solo for shipments made before the . . . arbitration clause even came into play."). Plaintiffs argue that Defendant's position is contradicted by the express provisions of the UPS Terms upon which Defendant insists support its position: "In tendering a shipment for service, the shipper agrees that the version of the [UPS] Terms and the applicable [UPS] Guide in effect at the time of shipping will apply to the shipment and its transportation." Dkt. No. 76, Ex. A at § 1. Plaintiffs contend that Defendant's motion asks the Court to "honor the provisions of the contract that [Defendant] itself declared to supply the applicable Terms (*sans* arbitration), and to that contract some other Terms (containing the chimerical arbitration clause) that are inconsistent with the expressly applicable ones." Dkt. No. 85, PgID 1916.

Plaintiffs assert that Solo did not agree to arbitrate any claims because: (1) The

UPS Store was not Solo's agent for purposes of the arbitration provision/agreement; and (2) equitable estoppel does not operate to bind Solo to arbitrate his claims. Plaintiffs argue that for shippers like Solo, it was the independently-owned third party retailer (such as The UPS Store) who contracted with Defendant, not Solo. Plaintiffs state that Defendant is trying to impute an arbitration agreement to Solo that it (and Defendant) never agreed to because there is no contract between Defendant and Solo, as Defendant acknowledged at oral argument before the Sixth Circuit.

Plaintiffs state that Defendant waived any right it had to arbitrate Plaintiff's claims based on its failure to do so earlier. Plaintiffs note that: (1) Defendant failed to "move" for arbitration until two years and four months after the Complaint was filed (12 of which was while the case was on appeal from its dismissal by Judge Rosen), and (2) even after the appellate decision, Defendant waited eight months to file the motion to stay/dismiss. Plaintiffs assert that Defendant's choice to litigate the merits through its motion to dismiss, a choice that led to extensive costs and delays, plus the attendant discovery, discovery disputes, and delay after the case was remanded, demonstrate actual prejudice to Plaintiffs.

Plaintiff states that it is clear that Defendant knew that it could arbitrate BleachTech's claims as early as January 13, 2014. On that date, Defendant's in house counsel emailed Defendant's lead outside litigation counsel information about

14

BleachTech, including a screen shot showing BleachTech's UPS account (shipper) number [UPS023302] and its location in Seville, Ohio. Plaintiff asserts that means that, no later than January 13, 2014, Defendant knew BleachTech's UPS account number and that BleachTech had continued to ship products with Defendant. And, that meant those products were being shipped pursuant to the UPS Terms applicable effective December 30, 2013, which included the arbitration provision Defendant now seeks to apply. Based on that information, Plaintiffs contend that Defendant knew about BleachTech's shipments six months before this action was filed in this Court (less than a month after the original case was filed in California) and about eight months before it filed its Rule 12(b)(6) motion to dismiss in this case.

### 3. *The Court's Conclusion*

The Court finds that Defendant has waived its right to arbitrate by taking actions inconsistent with reliance on the arbitration provision <u>and</u> delaying its assertion of the need to arbitrate, to the actual prejudice of Plaintiffs. Specifically, Defendant did not seek to compel arbitration until more than two years after the Complaint was filed, as it opted to move for dismissal of the Complaint on the merits. Defendant took actions inconsistent with reliance on the arbitration provision when it sought to dismiss the Complaint on the merits, rather than because of the arbitration provision. And, not only did Defendant wait more than two years to seek to resolve the litigation pursuant to the arbitration provision, it did not file the instant motion

15

regarding the arbitration provision until eight months after the Sixth Circuit remanded the case to this Court. Such inconsistent actions and inordinate delay resulted in actual prejudice to Plaintiffs, including costs that they would not have been incurred had Defendant sought to arbitrate previously. The Court concludes that Defendant's motion to stay or dismiss the proceedings is unwarranted.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion to Stay or Dismiss Proceedings [Dkt No. 76] is **DENIED**.

IT IS ORDERED.

                      S/Denise Page Hood
                      Denise Page Hood
                      Chief Judge, United States District Court

Dated: September 6, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 6, 2017, by electronic and/or ordinary mail.

                      S/LaShawn R. Saulsberry
                      Case Manager