UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
111 S Main St, 3rd Floor
P.O. Box 7711
Ann Arbor, MI 48107
Telephone: (734) 274-9374
drewmcg@topclasslaw.com

Daniel R. Karon (admitted)
Beau D. Hollowell (admitted)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH 44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

Sanford P. Dumain (admitted)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC
100 Garden City Plaza, Ste 500
Garden City, NY 11530
Telephone: (212) 594-5300
sdumain@milberg.com

*Counsel for Plaintiff and the Proposed Class*

Paul T. Friedman (admitted)
Caitlin Sinclair Blythe (admitted)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
CBlythe@mofo.com

Gregory B. Koltun (admitted)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 892-5200

Sonal Hope Mithani (P51984)
Joseph Vernon (P68951)
Caroline Giordano (P76658)
MILLER CANFIELD PADDOCK & STONE PLC
101 North Main Street, 7th Floor
Ann Arbor, MI 48104
Telephone: (734) 668-7786
mithani@millercanfield.com
vernon@millercanfield.com
giordano@millercanfield.com

*Counsel for Defendant*

PLAINTIFF'S UNOPPOSED MOTION AND BRIEF IN SUPPORT FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

After more than 7½ years of litigation—including three appeals—the parties have reached a proposed Amended Class Action Settlement Agreement ("Settlement Agreement"). They did so with the assistance of an experienced mediator, the Hon. Gerald Rosen (Ret.), who was the judge assigned originally to this litigation. Accordingly, Plaintiff moves this Court for entry of an order (1) directing the parties to provide notice to the proposed settlement class under Rule 23(e) and (2) designating Andrew J. McGuinness, Daniel R. Karon, and Sanford P. Dumain as interim class counsel pursuant to Rule 23(g). The motion is unopposed.

Specifically, Plaintiff seeks entry of order substantially in the form of Exhibit 1-E, attached, that:

- Provisionally certifies a Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

- Provisionally appoints Bleachtech LLC as representative of the Settlement Class;

- Designates Andrew J. McGuinness, Daniel R. Karon, and Sanford P. Dumain as interim Class Counsel under Rule 23(g)(2);

- Appoints Epiq Class Action & Claims Solutions, Inc., as Settlement Administrator;

- Authorizes and approves the promulgation of Class Notice as detailed in the Settlement Agreement; and

- Schedules a Final Fairness Hearing date the later of at least 100 days from the date of filing of this Motion or 75 days after entry of an order granting this Motion.

In support of this Motion, Plaintiff submits the following Brief in Support.

TABLE OF CONTENTS

Table of Authorities ........ iii

Issues Presented ........ vi

Introduction ........ 1

**Background** ........ 2

Plaintiff's Claims ........ 2

UPS's Principal Defenses ........ 4

Procedural History ........ 5

Settlement Negotiations and Terms ........ 7

**Argument** ........ 14

I. THE NOTICE PLAN IS ROBUST AND SHOULD BE APPROVED. ........ 15

Individual Notice ........ 18

Media Plan ........ 21

Settlement Website, Toll-free Telephone Number, and Postal Mailing Address ........ 22

II. THE SETTLEMENT SATISFIES THE SIXTH CIRCUIT'S TEST FOR FAIRNESS, REASONABLENESS, AND ADEQUACY. ........ 23

A. No fraud or collusion exists because the parties negotiated their settlement at arm's length. ........ 26

B. The Settlement will speed payment to Class Members and avoid the risks and expenses attendant to further prolonged complex litigation. ........ 27

C. Sufficient discovery occurred for Plaintiff to have access to sufficient information about UPS's pertinent business practices. ........ 29

D. Success on the merits is not guaranteed ........ 30

E. Class Counsel believe the settlement is reasonable given the strengths and weaknesses of the claims. ........ 31

F. The Settlement is fair to Absent Class Members. ........ 36

G. The Settlement serves the public interest. ........ 37

III. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION. ....38

A. The Settlement satisfies Rule 23(a). ....39

1. Rule 23's implicit requirements. ....39
2. Numerosity is established. ....40
3. Class claims present common issues of law or fact. ....40
4. Plaintiff's claims are typical of Class Members' claims ....41
5. Plaintiff and Class Counsel are adequate ....42

B. The Rule 23(b) factors are satisfied ....43

1. Common issues of law and fact predominate. ....43
2. The class action device is superior in this action. ....45

IV. THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING. ....46

**Conclusion** ....47

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..............................31, 38, 45

*Coulter-Owens v. Rodale*, No. 14-12688, 2016 U.S. Dist. LEXIS 134234 (E.D. Mich. Sept. 29, 2016) ..........................................................................32

*Dallas v. Alcatel-Lucent USA, Inc*., No. 09–14596, 2013 U.S. Dist. LEXIS 71204 (E.D. Mich. May 20, 2013) ...........................................................................26

*Doe v. Coliseum Bar & Grill, Inc.*, No. 17-12212, 2020 U.S Dist. LEXIS 196306 (E.D. Mich. Oct. 22, 2020)............................................................................26

*Doe v. Déjà vu Consulting, Inc.*, 925 F.3d 886 (6th Cir. 2019) .....................*seriatim*

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..............................................16

*Friske v. Bonnier Corp*., No. 16-12799, 2019 U.S. Dist. LEXIS 105820 (E.D. Mich. June 25, 2019)................................................................................24

*Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S Dist LEXIS 146655 (E.D. Mich. Aug. 14, 2020) ................................................24

*Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th Cir. 2016)...............35

*Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2017 U.S. Dist. LEXIS 93000 (S.D. Ohio June 17, 2017).................................................................46

*Gradisher v. Check Enforcement Unit, Inc*., 203 F.R.D. 271 (W.D. Mich. 2001)..41

*Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452 (6th Cir. 2020) .......... 41, 43-45

*In re Delphi Corp. Sec.*, 248 F.R.D. 483 (E.D. Mich. 2008)............................27, 37

*In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664 (6th Cir. 2020)................38, 39

*In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 U.S. App. LEXIS 13882 (6th Cir. May 24, 2018).....................................................................16, 17

*In re Telectronics Pacing Sys, Inc*., 137 F. Supp. 2d 985 (S.D. Ohio 2001)...........26

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,722 F.3d 838 (6th Cir. 2013) ....................................................................................41

*IUE-CWA v. GMC*, 238 F.R.D. 583 (E.D. Mich. 2006).................................*seriatim*

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004).........................................44

*Larue v. Selfiestyler, Inc.*, No. 2:19-cv-03617, 2002 U.S. Dist. LEXIS 228605 (S.D. Ohio Dec. 4, 2020).............................................................................26

*Martin v. Trott Law, P.C.*, No. 12838, 2018 U.S. Dist. LEXIS 167531, at *24 (E.D. Mich. Sept. 28, 2018)........................................................................35

*Peck v. Air Evac EMS, Inc.*, No. 5:18-CV-615, 2019 U.S. Dist. LEXIS 119011 (E.D. Ky. June 5, 2019)...........................................................................23

*Pelzer v. Vassalle*, 655 Fed. Appx. 352 (6th Cir. 2016)....................................37, 38

*Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007)...........................................................................................40, 45

*Reese v. CNH Am. LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). .........................40

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 526 (6th Cir. 2015).......................39

*Salem v. Mich. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 177624, at *9–10 (E.D. Mich. Dec. 22, 2016) ..........................................................................39

*Steiner v. Fruehauf Corp.*, 121 F.R.D. 304 (E.D. Mich. July 20, 1988).................25

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ............................*seriatim*

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .............................................24

**Rules**

Rule 23 ....................................................................................................*seriatim*

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715...........................................47

**Treatises**

Federal Judicial Center, Manual for Complex Litigation (Fourth)................*seriatim*

William B. Rubenstein, Newberg on Class Action (4th Ed. 2020).........................39

# ISSUES PRESENTED

1. Should this Court, pursuant to Rule 23(e)(1)(B)(i), find that it will likely be able to approve the proposed class settlement?

2. Should this Court direct notice as outlined in the Settlement Agreement to the proposed settlement class pursuant to Rule 23(e)(1)(B)?

3. Should this Court appoint Plaintiff as interim representative of the Settlement Class?

4. Should this Court designate Andrew J. McGuinness, Daniel R. Karon, and Sanford P. Dumain as interim Class Counsel pursuant to Rule 23(g)(3)?

5. Should this Court appoint Epiq Class Action & Claims Solutions, Inc., as Settlement Administrator?

6. Should this Court schedule a Final Fairness Hearing?

Plaintiff answers "Yes" to these questions. Defendant does not oppose this Motion.

BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**Introduction**

Plaintiff, on behalf of itself and a Settlement Class[1] of similarly situated UPS account holders on whose behalf it has vigorously prosecuted this class action for over 7½ years, seeks this Court's preliminary approval of a proposed class settlement. If this Court approves the settlement, UPS will pay $4,850,000 cash consideration—comprised of direct payments and account credits—into a Settlement Common Fund for the benefit of the Class. UPS will also pay as part of the Settlement Common Fund one-half of the notice and administration costs. UPS has further agreed to injunctive relief for three years that clarifies its pricing table for declared value coverage to avoid future claims and confusion.

The settlement represents a strong recovery for the Class. It results from intense and repeated arm's length negotiations overseen by an experienced mediator after Class Counsel undertook substantial and hard-fought discovery and vetted the claims for over 7 1/2 years through dispositive motion practice and three appeals.

In short, the settlement is fair, reasonable, and adequate under the governing Rule 23 standards. Moreover, the notice plan outlined in the Settlement Agreement

[1] Capitalized terms used in this brief are defined in the parties' Class Action Settlement Agreement. Exhibit 1, attached.

satisfies the requirements of due process and Rule 23.

## Background

Plaintiff's Claims.

Plaintiff's Amended Complaint ("Complaint") seeks contract damages, declaratory, and injunctive relief on behalf of all people and companies with a UPS account who purchased from UPS additional coverage for loss or damage under its "declared value coverage" service pursuant to its published pricing tables. Plaintiff alleges that for years UPS overcharged certain customers for the first $100 of declared value coverage, which UPS, in its published rates, promised to provide at no additional charge.

UPS's applicable Service Guide states that "UPS's liability for loss or damage to a shipment is limited to $100 without a declaration of value." UPS's liability for loss or damage can be increased (subject to terms and conditions) by making a declaration of value for an additional charge." Complaint, Dkt. 141, PageID 2876.

The pricing table for "Value Added Services" for "Declared Value for Carriage" in the Service Guide specifies the price for additional declared value coverage as follows for each shipment:

| | |
|---|---|
| $0.00-$100.00 | $0.00 |
| $100.01–$50,000.00 for each $100.00 (or portion of $100.00) of the total value declared | $0.85 |
| Minimum | $2.55 |

*Id.*

Plaintiff contends that under this pricing table UPS agreed that the first $100 of coverage would be at no additional charge when a shipper purchased declared value coverage. Despite this promise, Plaintiff alleges that UPS charged shippers an additional amount for the first $100 coverage when shippers purchased excess declared value coverage over the amount that would otherwise equate with the minimum charge for the corresponding shipment.[2]

Plaintiff claims that UPS's incremental charge for the first $100 of value for packages shipped with a declared value breach its contract with shippers, and that UPS attempted to insulate itself from liability by imposing a 180-day "billing disputes" notice requirement through a contract of adhesion. Plaintiff seeks

[2] The UPS minimum charge under the Retail Rates pricing table applied to declared value declarations up to $200 and up to $300 under UPS's Standard Rates pricing table. Plaintiff has not challenged UPS's minimum charge for declared value coverage in this action. Thus, Plaintiff has not alleged that UPS overcharged customers whose respective declarations of value did not exceed these amounts. Accordingly, only shipments with declarations in excess of these amounts are "Covered Shipments" under the settlement.

damages for breach of contract and declaratory and injunctive relief on its own behalf and on behalf of the Class.

UPS Principal Defenses.

UPS first argues that the pricing table supports its charge for the first $100 of declared value when it states that the incremental charge applies to the "total value declared." The contract and quasi-contract (unjust enrichment) claims were initially dismissed as a matter of law on this basis. (As discussed below, the Court of Appeals reversed that ruling, holding that the language was "at least ambiguous" and that it could therefore not be resolved as a matter of law. *Solo v. UPS*, 819 F.3d 788, 796 (6th Cir. 2016).)

UPS further argues that its interpretation of the pricing tables are (i) consistent with industry practice; and (ii) that many of its customers—particularly larger shippers—have been well aware of its interpretation for years. UPS hopes to introduce at trial as extrinsic evidence testimony that customers and industry experts have long had an understanding of the disputed pricing table that supports its position.

Additionally, UPS contends that the 180-day "billing disputes" requirement in its terms is valid and enforceable, based on comparable provisions that have long been upheld by courts, thereby drastically reducing its total exposure in this action, even if Plaintiff prevails on its contract claim.

Procedural History.

This litigation began on December 27, 2013, with the filing of two class actions (in California and in this Court) challenging UPS's practice of charging an incremental charge on the first $100 of declared value where shippers declared a package value in excess of $300. (*Sivak v. United Parcel Service Co.,* Case No. 2:13-cv-15263 (E.D. Mich. Dec. 27, 2013); *Solo v. United Parcel Serv. Co.,* No. CV13-09515 (C.D. Cal. Dec. 27, 2013).) Plaintiffs voluntarily dismissed *Solo* and refiled it here as a companion case to *Sivak*. Before consolidation, Judge Rosen (ret.) dismissed *Sivak* as a matter of law. On July 11, 2014, instead of appealing *Sivak*, Plaintiffs' counsel refiled Solo's and BleachTech's claims in a class action here.

UPS renewed its motion to dismiss in *Solo*. On March 27, 2015, the Court granted UPS's motion, holding that the first $100 of declared value was part of the total value declared, taking that term for its plain meaning.

Plaintiffs appealed the Court's dismissal order. (First appeal.) On March 18, 2016, the Sixth Circuit issued an order reversing in part the Court dismissal and reinstating the breach of contract and unjust enrichment claims. The court of appeals held that because the disputed contract provision was at least ambiguous, its meaning was a question of fact that was not properly resolved as a matter of law. The Sixth Circuit further held, in relevant part, that Solo's unjust enrichment

claim was not precluded by his breach of contract claim because UPS disputed the existence of the contract, and therefore that this claim was properly pleaded in the alternative.

Following remand to this Court, document and deposition discovery ensued. Afterward, UPS moved to compel mandatory arbitration under the terms of the parties' agreement by a Motion to Stay or Dismiss Proceedings. On September 6, 2017, this Court denied UPS's motion. UPS filed a Motion for Clarification, which this Court also denied on February 7, 2018.

UPS appealed the Court's order denying its Motion for Clarification. (Second appeal.) Plaintiff moved to dismiss UPS's appeal for lack of jurisdiction. On October 16, 2018, the Sixth Circuit dismissed this appeal for lack of jurisdiction because this Court's denial of UPS's motion for clarification was not a final and appealable order under 28 U.S.C. §§ 1291 or 1292.

UPS also appealed the Court's order denying its Motion to Stay or Dismiss Proceedings. (Third appeal.) On January 23, 2020, the Sixth Circuit affirmed this Court's order denying UPS's motion. The court of appeals held that the arbitration agreement was not applicable because it was not found in the contract that was in place during the period when the Complaint alleged that UPS charged an improper fee. It found that the shipping contracts indicated that the parties intended all disputes about shipping to be resolved according to the version of the terms in

effect at the time of shipping—not an older or newer version—such that disputes concerning shipments pre-dating December 30, 2013, were not subject to arbitration.

Finally, the court explained that even had the scope of the arbitration agreement been ambiguous, this Court properly concluded that UPS waived its right to arbitrate because it spent two years vigorously litigating the merits of the claims in this Court and in the first appeal before bringing its arbitration motion.

Settlement negotiations and terms.

After remand to this Court the parties mediated with Judge Rosen (Ret.) of JAMS, Detroit, on June 27, 2018, June 26, 2020, and September 1, 2020. McGuinness Decl. ¶¶ 23, 24 (Exh. 2, attached). No settlement was reached at the first session, while the first appeal was pending. The second and third sessions occurred after the plaintiffs won the second and third appeals. At the third session, the parties agreed in principle to settle this case on a class basis according to the terms in the Settlement Agreement.

This lawsuit originally sought relief on behalf of two categories of shippers: “direct” shippers, such as BleachTech who had UPS accounts and shipped packages with UPS without using an intermediary, and “indirect” shippers (including Mr. Solo) who shipped through a third-party retailer or other intermediary, such as The UPS Store. Because indirect shippers contract with the

intermediary and not UPS plaintiffs' counsel pursued indirect purchasers' claims under an unjust enrichment theory.

As a result of discovery and through settlement negotiations, Plaintiffs' counsel adduced substantial evidence that, per shipping records supplied by UPS, Solo had not paid an incremental charge for the first $100 of declared value under the challenged UPS pricing table. Moreover, Plaintiffs' counsel adduced substantial evidence that most of the customers of The UPS Store and other third-party shippers did not pay an incremental charge for the first $100 of declared value pursuant to UPS's interpretation of its pricing table for declared value for coverage service. McGuinness Decl. ¶ 25. As a result, with the consent of the parties and Mr. Solo and with leave of Court, on December 30, 2020, counsel filed an Amended Complaint on behalf of Bleachtech representing a class of direct shippers only that did not include Mr. Solo as a plaintiff.[3]

The parties have agreed to settle on behalf of a class of people and companies described below and contemplate the preliminary and final certification of a Settlement Class. Class Counsel—Andrew J. McGuinness, Daniel R. Karon, and Sanford P. Dumain—represent Plaintiff and seek interim and final appointment as Class Counsel on behalf of the Settlement Class.

---

[3]Indirect shippers are not included in the Class defined in the Settlement Agreement and are not releasing any claims. Importantly, Plaintiff's counsel did not negotiate a release of any potential claims to indirect purchasers.

The Amended Complaint alleges that UPS breached its contracts with Plaintiff and Class Members and seeks compensatory, declaratory, and injunctive relief. Defendant denies it committed any wrongdoing.

The following is a summary of the principal terms of the settlement.

***Settlement Class***:

> Except as excluded below, all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates.

Excluded from the Class and the releases in Section 13 of the Settlement Agreement are any packages with a declaration of value that was later voided, any packages shipped under an account of a The UPS Store location, and any packages shipped through any other Third-Party Retailer (as defined by the July 8, 2013 UPS Tariff/Terms and Conditions of Service—United States (attached as Exhibit A to the Amended Complaint, ECF No. 141) to the extent the claim is asserted by a customer of a Third-Party Retailer, which packages will not be deemed Covered Packages.

Also excluded is any entity in which Defendant has or had a controlling interest or that has a controlling interest in Defendant, all The UPS Store locations, and all other authorized UPS shipping agents and partners, including authorized

outlets to the extent their packages were not shipped pursuant to a contract with UPS during the Class Period to purchase declared value coverage at the rates set forth in the disputed pricing tables published in the applicable UPS Service Guide. Finally excluded are UPS's legal representatives, assigns, and successors; the Court and any member of its staff; and any Class Member who timely submits a valid Request for Exclusion or is found by the Court to have adequately opted out.

The Class is readily ascertainable from UPS's electronic records.

***Benefits***: The settlement will provide a common fund equal to $4,850,000 payments and account credits, together with UPS's fifty percent share of the Notice and Administration Expenses. UPS will also include injunctive relief for three years from the execution date of the Settlement Agreement.[4] If UPS desires to make certain changes to its pricing table, it must notify Class Counsel in advance. If Class Counsel objects to these proposed changes and the parties cannot agree, the Settlement Agreement provides a mechanism for expedited private mediation before Judge Rosen (ret.) or another agreeable mediator at UPS's expense. If the parties still cannot resolve their differences, UPS must seek the Court's approval before implementing changes within the scope of the injunction. Changes required

[4] The effective duration of the injunctive relief obtained is much longer than three years. UPS's counsel, in consultation with Plaintiff's counsel, worked with his client to clarify the language of the disputed pricing table over a year ago, during settlement negotiations.

by law and changes to the incremental price charge amount alone (including elimination of the incremental charge altogether) are not covered.

***Notice***: By 30 days after entry of the Preliminary Approval Order ("Notice Date"), the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc., will email a Short Form Notice to Putative Class Members with valid email contact information and mail the Postcard Notice to Putative Class Members without a known email address. Epiq will update the address list supplied by UPS before mailing the Postcard Notice. Also by the Notice Date Epiq will publish the Publication Notice, targeting at least 14 million impressions through the Google Display Network for 30 days, in a form similar to Exhibit 1-D, attached.

***Distribution of the Net Settlement Fund:*** This is a non-reversionary common fund settlement where Epiq will distribute the net proceeds to Class Members on a pro rata basis—that is, in proportion to each Class Member's Qualifying Shipments relative to all such shipments. Claims forms are not required, though Class Members might be required reasonably to verify their identity and payment information to the Epiq if UPS's records are not sufficient to verify the same.

Class Members will receive their *pro rata* distribution of the Net Settlement Fund via account credit if they have Active Accounts with UPS. UPS will issue

these account credits no later than 45 days after the Effective Date.[5]

UPS will process unapplied account credits pursuant to its standard business practices, which involves direct payments to customers with unapplied credits where the customer can be located (and UPS does not retain credits where the customer cannot be located).[6] In no event will any account credits revert to UPS. UPS is required to certify to Epiq the total number of account credits issued. Epiq will then credit UPS against its $4,850,000 cash obligation an amount equal to the credits issued, unless otherwise ordered by the Court.

---

[5] The Effective Date is:

i. Thirty-seven Days after the entry of the Judgment or the entry of the Court's order on attorneys' fees and costs, whichever occurs later, where the time for appeal has expired and no appeal has been filed; or

ii. If any appeal, petition for rehearing, motion to reconsider, or other review of the Judgment has been filed or sought, 37 Days after the Judgment is affirmed without substantial or material change, or the appeal is dismissed or otherwise disposed of (unless any such substantial or material change is accepted by the Parties), and no other appeal, petition for rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired; or

iii. If any appeal, petition for rehearing, motion to reconsider, or other review of the Court's order on attorneys' fees and costs has been filed or sought, 37 Days after the Court's order on attorneys' fees and costs is resolved, or the appeal is resolved, dismissed or otherwise disposed of and no other appeal, petition for rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

[6] So if an "active" account does not incur any new charges within a defined period of time, UPS will return the credit to the owner.

Epiq will mail *pro rata* distribution checks to Class Members who do not have Active Accounts. The checks will be good for 90 days. Checks that remain uncashed after that time will constitute "Unused Class Funds." Unused Class Funds will be donated to the National Consumer Law Center, a § 501(c)(3) non-profit public interest law firm engaged in the education, training, and promotion of consumer protection law, as a *cy pres* award upon approval by the Court.

***Requests for Exclusion:*** Class members may opt out of the Settlement by mailing a written request to the Settlement Administrator postmarked at least 30 days before the final fairness hearing. This date will be included in the postcard notice and long form notice.

***Objections:*** Any class member who does not request exclusion from the class may object to the Settlement by filing with the Court written notice of intent to object and serving copies on counsel. The information required for a valid objection is detailed in the long form notice and Settlement Agreement. Objections must be postmarked and mailed at least 30 days before the final fairness hearing. Any class member who submits a valid objection to the Settlement may appear at the hearing.

***Service Awards for Class Representative***: Class counsel will request a service award of up to $5,000 for Plaintiff.

***Attorneys' Fees and Costs***: Class Counsel will apply to the Court by

motion for an award of attorneys' fees of up to 33 1/3% of the Settlement Common Fund (inclusive of UPS's payment of 50 percent of the notice and administration costs) and additionally seek reimbursement of their reasonable litigation expenses.

***Release***: If approved, the Settlement will release UPS from liability for all claims asserted or that could have been asserted based upon the facts alleged in the Complaint that it overcharged Class Members for declared value coverage based upon its published pricing tables for that service, including any claim under any federal or state law. Class Members who do not opt out will release any claims encompassed by the release terms for shipments pre-dating the Class Period. Nothing in the Agreement shall release any claim by a shipper arising from or relating to charges for protection other than for the first $100 of declared value for carriage.

**Argument**

The proposed settlement is fair, reasonable, and adequate, and the proposed Notice Plan is robust. Plaintiff's counsel negotiated it with several key, pro-consumer features that are frequently not obtained in consumer class action settlements:

- *There is no claims process*. The entire Net Settlement Fund will be distributed, in cash or through account credits that are cash equivalents, without the necessity of class members filing a claim. This standout feature alone distinguishes this settlement from most other consumer class action settlements, which typically achieve no greater than a seven percent claim rate (meaning around 93 percent of class members get nothing in exchange

for releasing their claims);

- This is a *non-reverter* settlement. This means UPS will not recover any of the Net Settlement Fund that is unable to be distributed to class members (e.g., uncashed checks). Instead, the National Consumer Law Center, a nonprofit law firm dedicated to advancing consumer rights, or other Court-approved non-profit will receive *cy pres* funds;

- As a result of this action, UPS has already changed its challenged contract terms to address Plaintiff's claims and has agreed to injunctive relief designed to avoid future consumer confusion over declared value coverage for three years; and

- In addition to its substantial cash consideration, UPS has agreed to pay half of the notice and administration costs. Typically, all such costs are paid from the common settlement fund, thus reducing the amount available to class members. Given the large class size here (over 1.5 million putative Class Members), administrative costs threatened to swamp the available cash contribution to the settlement fund. However, Plaintiff's counsel successfully secured UPS's agreement to fund half of these costs, approximately $750,000. This additional consideration lifts the total Settlement Common Fund to a projected $5.6 million, and encourages UPS to help minimize notice and administration costs.

I. THE NOTICE PLAN IS ROBUST AND THE COURT SHOULD APPROVE IT.

Under Rule 23 in its current form, parties proposing a settlement "must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Rule 23(e)(1)(A). Rule 23 "require[es] the court only to 'direct notice in a reasonable manner.'"[7] "All that the notice must do is 'fairly apprise the prospective members of the class of the terms of the proposed

[7] *UAW v. Gen. Motors Corp*, 497 F.3d 615, 630 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(B)).

settlement' so that the class members may come to their own conclusions about whether the settlement serves their interests."[8] Notice "should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[9] Rule 23 "requires the class to provide notice of the nature of the action; the definition of the class certified; the class claims, issues, or defenses; information on how a class member can enter an appearance with their lawyer; information on how class members can opt into or out of the settlement; and the binding effect of the settlement agreement."[10]

Notice should provide "'individual notice to all members who can be identified through reasonable effort.'"[11] "Due process does not, however, require actual notice to each party intended to be bound by the adjudication of a

---

[8] *Id.* "There is no textual warrant for requiring a notice to lay out every reason a class member might object to the settlement." *Id.* (citing Fed. R. Civ. P. 23(e)(1)(B); other citation omitted).

[9] *Id.* at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).

[10] *Doe v. Déjà vu Consulting, Inc.*, 925 F.3d 886, 900 (6th Cir. 2019) (citing Fed. R. Civ. P. 23(c)(2)(B)).

[11] *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 U.S. App. LEXIS 13882, at *12 (6th Cir. May 24, 2018) (quoting *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008) (quoting Fed. R. Civ. P. 23(c)(2)(B))); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974); *see also* Federal Judicial Center, Manual for Complex Litigation, Fourth, § 21.311, n. 882.

representative action.'"[12]

In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide. This Guide instructs that "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%."

The Parties have tasked Epiq with settlement administration, including notice. Epiq is well known, experienced, and highly regarded in this area and assisted in developing the proposed notice plan. McGuinness Decl. ¶ 33. Cameron Azari is Epiq's Senior Vice President and Director of Legal Notice for Hilsoft (an Epiq unit). He is one of the country's foremost class notice experts. *See generally*, Exhibit 3, attached.

Epiq has crafted a Notice Program that it expects will reach more than 90 percent of Class Members. Azari Decl. ¶15. This high penetration rate results from the fact that physical addresses and/or email addresses will be available for virtually every Class Member through UPS's records. *Id.* ¶ 10. Upon receipt of Class Member data, Epiq will combine and deduplicate all lists to find the most likely current physical address and/or email address for each Class Member. Epiq

---

[12] *In re Packaged Ice Antitrust Litig.*, 2018 U.S. App. LEXIS 13882, at *12 (quoting *Fidel*, 534 at 513–14) (emphasis in original; other citations omitted).

will use this Class Member data to provide individual notice via email or summary postcard notice. Epiq will supplement this individual notice effort by Internet banner advertising. *Id.* ¶ 11.

Epiq will enhance notice reach with a settlement website. *Id.* Azari opines that the Notice Program's projected reach is consistent with or exceeds other court-approved notice programs, the best notice practicable under the circumstances, and designed to satisfy the requirements of due process, including the desire-to-actually-inform requirement. *Id.* 15.[13]

Epiq's Notice Program includes the following components designed to notify Class Members consistent with Rule 23 and due process:

**Individual Notice**

*Step 1: Email Notice*

Epiq will send an email notice to all identified Class Members for whom a facially valid email address is available. *Id.* ¶ 16.[14] Epiq will follow industry standard best practices for this effort. *Id.* Epiq will draft this email notice in such a way that the subject line, the sender, and the body of the message overcome SPAM filters and reasonably ensure readership. *Id.* For example, the email notice will use

---

[13] *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

[14] In 2018, Rule 23 was amended specifically to authorize email notice. *See* Fed. R. Civ. Proc. 23(c)(2)(B).

an embedded html text format. *Id.* This format will provide easy-to-read text without graphics, tables, images, attachments, and other elements that increase the likelihood that the message could be blocked by ISPs or SPAM filters. *Id.*

Epiq will send the email notices from an IP address known to major email providers as one not used to send bulk SPAM or junk email blasts. *Id.* Epiq will transmit each email notice with a digital signature to the header and content of the email notice. *Id.* This will allow ISPs to programmatically authenticate that the email notices are from Epiq's authorized mail servers. *Id.* Each email notice will also be transmitted with a unique message identifier. *Id.*

The email notice will include an embedded link to the settlement website. *Id.* By clicking the link, Class Members will be able to easily access the Long Form Notice, Settlement Agreement, and other information about the Settlement. *Id.*

If the receiving email server cannot deliver the message, a bounce code will be returned along with the unique message identifier. *Id.* ¶ 17. For any email notice for which Epiq receives a bounce code indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical autoreplies, Epiq will make at least two additional attempts to deliver the Notice by email. *Id.*

*Step 2: Direct Mail*

Epiq will send a summary Postcard Notice to all identified Class Members

for whom a facially valid email address is not available but for whom it has a physical address. *Id.* ¶ 18. Epiq will also send a postcard notice to all Class Members with an undeliverable email notice after several attempts. *Id.* The postcard notice will direct the recipients to the settlement website where they can access additional information. *Id.* Epiq will send the postcard notice via USPS first class mail. *Id.*

Before mailing the postcard notice, Epiq will check all mailing addresses against the USPS's National Change of Address database. *Id.* ¶ 19.[15] Epiq will also certify the addresses via the Coding Accuracy Support System to ensure the quality of the zip code and verify the addresses through Delivery Point Validation to ensure accuracy. *Id.* This address-updating process is standard for the industry and for most promotional mailings. *Id.*

Epiq will remail to any new address available through USPS information any postcard notices returned as undeliverable—i.e., to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired but which address is still during the period in which the USPS returns the piece with the address indicated, or to better addresses that may be found using a third-party

[15] The NCOA database contains records of all permanent change-of-address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms, and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

lookup service. *Id.* ¶ 20. Upon successfully locating better addresses, Epiq will promptly remail postcard notices. *Id.*

**Media Plan**

*Targeted Internet Banner Advertising*

Internet advertising has become a standard component in legal-notice programs. *Id.* ¶ 21. The Internet is an efficient and cost-effective method for targeting class members as part of providing notice of class certification or class-action settlement. *Id.* According to MRI-Simmons syndicated research, 89.5 percent of U.S. adults are online. *Id.*

The Notice Program includes targeted banner advertising on a selected advertising network, targeted to adults. *Id.* ¶ 22. These Internet banner notices will link directly to the settlement website, thereby allowing visitors easy access to case information and documents. *Id.* The Internet banner notices will use language from the Notices, which will allow visitors to identify themselves as potential Class Members. *Id.*

The Notice Program includes Internet banner notices in several sizes (728x90, 300x250, 300x600, and 970x250), that will be placed on the advertising network Google Display Network. *Id.* ¶ 23. All Internet banner notices will run on desktop, mobile, and tablet devices and will be distributed and targeted to adults nationwide. *Id.* Epiq will also target (remarket) Internet banner notices to people

who visit the settlement website. *Id.* The Internet banner notices will run for 30 days and will generate approximately 14.5 million impressions. *Id.*[16] Clicking on the banner notices will link the reader to the settlement website where detailed information about the case will be available. *Id.*

**Settlement Website, Toll-free Telephone Number, and Postal Mailing Address**

Epiq will establish a settlement website with an easy-to-remember domain name. *Id.* ¶ 24. The website will allow Class Members to obtain detailed information about the case and review key documents, including the Long Form Notice, Request for Exclusion Form, Settlement Agreement, Preliminary Approval Order, Final Approval Order, and other important documents, as well as answers to frequently asked questions. *Id.* The website address will be displayed prominently on all Notice documents. *Id.*

Epiq will also establish a toll-free telephone number to allow Class Members to call for additional information, listen to answers to frequently asked questions, and request a Notice. *Id.* ¶ 25. Epiq will prominently display the telephone number on all Notice documents. *Id.* The automated telephone system will be available

[16] Epiq will use the third-party ad management platform, ClickCease, to audit the digital banner notice ad placements. This platform tracks all banner notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and it quarantines dangerous IP addresses. This process helps reduce wasted, fraudulent, or otherwise invalid traffic (e.g., ads being seen by bots or non-humans, ads not being viewable).

24 hours per day, 7 days per week. *Id.* Live operators will also be available.

Finally, Epiq will establish and maintain a post office box for correspondence about the case, allowing Class Members to contact Epiq by mail with any requests or questions. *Id.* ¶ 26.

Taken together, the parties' Notice Program provides for the best notice practicable under the circumstances, conforms to all aspects of Rule 23, comports with due process, and reflects the guidance for effective notice set out in the Manual for Complex Litigation, Fourth.[17]

## II.   THE SETTLEMENT SATISFIES THE SIXTH CIRCUIT'S TEST FOR FAIRNESS, REASONABLENESS, AND ADEQUACY.

The Settlement Agreement meets the standard under Rule 23(e) for this Court to direct that notice of the proposed settlement be sent to the class.[18] The

---

[17] Manual for Complex Litigation, Fourth, § 21.3 ("It is important to develop appropriate means for providing information to, and obtaining information from, class members, and for handling inquiries from potential or actual class member.")

[18] Effective December 2018, amendments proposed by the Rule 23 committee of the Federal Civil Rules committee went into effect formalizing what had over the years become the dominant process for approval of proposed class settlements: a motion for preliminary approval, followed by notice and an opportunity for objections to be filed, followed by a final fairness hearing. The changes essentially codified this practice, but do not use the phrase "preliminary approval," which was also absent from the prior version of the rule. Instead, the current rule focuses on whether there has been an adequate showing that the court should "direct notice" based on a finding that it will "likely be able to approve" the proposed settlement at or after the final fairness hearing. Fed. R. Civ. P. 23(e)(1)(B). *See e.g.*, *Peck v. Air Evac EMS, Inc.*, No. 5:18-CV-615, 2019 U.S. Dist. LEXIS 119011, at *14 (E.D. Ky. June 5, 2019) (The Sixth Circuit's traditional factors are "are somewhat

discretionary determination of whether to approve a proposed settlement should be exercised in the context of the public policy favoring the pretrial settlement of disputes, including class action lawsuits.[19] At the preliminary approval stage, "the judge makes a preliminary fairness evaluation . . . . Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."[20]

"[T]he Court need not, and indeed, should not decide the [merits]. This is

---

duplicative of the new considerations set forth in Rule 23(e).").

Because most of the case law discusses these standards in terms of "preliminary approval," the following discussion uses that phrase with the understanding that while not formally an "approval," the object of the inquiry is the same: whether the Court will likely be able to approve the proposed settlement and therefore should direct that notice be given to the class, appoint interim class counsel, and set a final fairness hearing date. *Id.* at *15 ("[D]ue to the dearth of any Sixth Circuit case law on the new Rule 23(e) provisions[, this Court may] review each of the Sixth Circuit factors as well.").

[19] *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *Doe v. Déjà vu Consulting, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) (*UAW* is seminal case that "established a set of factors to determine the fairness of class-action settlements.") (citing *UAW*, 497 F.3d at 631); *Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S Dist. LEXIS 146655, at *10 (E.D. Mich. Aug. 14, 2020) ("Sixth Circuit and courts in this district have recognized that the law favors the settlement of class-action lawsuits.") (citing *UAW*, 497 F.3d at 632).

[20] *Friske v. Bonnier Corp.*, No. 16-12799, 2019 U.S. Dist. LEXIS 105820, at *14–15 (E.D. Mich. June 25, 2019) (quoting Manual for Complex Litigation, Fourth, § 21.632–.633. *See also Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) (Preliminary approval "should be based on its familiarity with the issues, the results of discovery, and the character of the negotiations prior to the entry of the

because . . . the very point of compromise is to avoid determining contested issues and to avoid the expense and uncertainty of litigation."[21] The "task is not whether one side is right [but t]he question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement."[22] "Otherwise, [courts] would be compelled to defeat the purpose of a settlement in order to approve a settlement."[23] Thus, the court's "role in passing upon the propriety of a class action settlement is limited to a determination of whether the terms proposed are fair and reasonable to those affected."[24]

The Sixth Circuit has "established a seven-factor test [known as the *UAW* factors] to assess whether a class-action settlement is 'fair, reasonable, and adequate' under Federal Rule of Civil Procedure 23(e)."[25] Those "factors include: (1) the 'risk of fraud or collusion,' (2) the 'complexity, expense and likely duration

---

decree. Preliminary approval is critical for a decree which is the product of arms-length negotiations. With such approval a decree is presumptively reasonable.").

[21] *IUE-CWA v. GMC*, 238 F.R.D. 583, 595 (E.D. Mich. 2006). *See also UAW*, 497 F.3d. at 631 (observing that preliminary approval inquiry does not require merits decision).

[22] *UAW*, 497 F.3d at 632.

[23] *Id*.

[24] *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. July 20, 1988) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *see UAW*, 497 F.3d at 631 ("Before approving a settlement, a district court must conclude that it fair, reasonable, and adequate.").

[25] *Déjà Vu*, 925 F.3d at 894 (quoting *UAW*, 497 F.3d at 631).

of the litigation,' (3) the 'amount of discovery engaged in by the parties,' (4) the 'likelihood of success on the merits,' (5) the 'opinions of class counsel and class representatives,' (6) the 'reaction of absent class members,' and (7) the 'public interest.'"[26]

In considering these factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case."[27] While Plaintiff does not presently seek final approval of the Settlement Agreement, an assessment of these same factors will assist the Court in determining whether it will "likely be able to approve" the settlement after a final fairness hearing. Rule 23 (e)(1)(B).

**A. No fraud or collusion exists because the parties negotiated their settlement at arm's length.**

Courts "'presume the absence of fraud or collusion in [class-action] settlements, unless evidence to the contrary is offered."[28] Courts also find

---

[26] *Id.* at 894–95 (quoting *UAW*, 497 F.3d at 631); *Doe v. Coliseum Bar & Grill, Inc.*, No. 17-12212, 2020 U.S Dist. LEXIS 196306, at *4 (E.D. Mich. Oct. 22, 2020) ("several factors guide the inquiry") (citing *UAW*, 497 F.3d at 631).

[27] *IUE-CWA*, 238 F.R.D. at 594–95.

[28] *See, e.g.*, *Larue v. Selfiestyler, Inc.*, No. 2:19-cv-03617, 2002 U.S. Dist. LEXIS 228605, *6 (S.D. Ohio Dec. 4, 2020) (quoting *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001)). *See also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009); *IUE-CWA*, 238 F.R.D. at 5987–98.

settlements that are a product of private mediation satisfy the arms-length requirement.[29]

The parties negotiated this Settlement at arm's length and over several months with the assistance three mediation sessions with Judge Rosen (ret.) as well as several intervening phone calls with him. McGuinness Decl. ¶¶ 23-24. Judge Rosen had strong familiarity with the claims because he was assigned to *Sivak* and *Solo* before retirement, and *Solo* was remanded to his docket after the Sixth Circuit reinstated the case.

**B. The Settlement will speed payment to Class Members and avoid the risks and expenses attendant to further prolonged complex litigation.**

"[T]here is no such thing as risk-free, expense-free litigation."[30] "Courts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class-action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'"[31] Class actions are inherently complex and settlement avoids the costs and delays associated with

---

[29] *See, e.g.*, *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09–14596, 2013 U.S. Dist. LEXIS 71204, at *22–23 (E.D. Mich. May 20, 2013); *In re Auto. Parts Antitrust Litig.*, 2020 U.S. Dist. LEXIS 174177, at *169 (E.D. Mich. Sept. 23, 2020).

[30] *IUE-CWA*, 238 F.R.D. at 596.

[31] *Déjà Vu*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

them.[32] "'[C]omplex litigation of this sort is costly and time-consuming . . . .'"[33]

This case is no exception. Absent the proposed settlement, the parties will have had to pursue additional discovery, fight multiple discovery motions, engage in expensive ESI negotiations and additional document productions, and brief and argue class certification and, most likely, summary judgment. McGuinness Decl. ¶¶ 12, 15. Additionally, the assigned Magistrate Judge ruled early on that Plaintiff may be responsible for huge e-discovery costs, including part of UPS's costs of restoring backup tapes of voluminous customer transaction data removed from its servers after this litigation was filed. That ruling, if upheld,[34] threatens substantially to increase the litigation costs to the Class. *Id.* ¶ 20-22. This is particularly so considering that the Class includes over 1.5 million customers and over 100 million shipments. In contrast, the settlement avoids this and other ongoing discovery disputes and provides (prospectively) prompt resolution of class claims in this already seven-year-old-plus litigation.

---

[32] *See In re Delphi Corp. Sec.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("'For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated with them.'") (citation omitted).

[33] *IUE-CWA*, 238 F.R.D. at 596 (quoting *UAW*, 2006 U.S. Dist. LEXIS 14890, at *56 (citing *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*))).

[34] Plaintiff timely objected to the Magistrate Judge's discovery order under Rule 72, which objection this Court has not yet resolved.

### C. Sufficient discovery occurred for Plaintiff to have access to sufficient information about UPS's pertinent business practices.

The Sixth Circuit's standard does not require the court to "possess sufficient 'evidence to decide the merits of the issue because the compromise is proposed in order to avoid further litigation.'"[35] Rather, "'the district judge need only have sufficient facts before [her] to intelligently approve or disapprove the settlement.'"[36]

The discovery conducted satisfies the threshold necessary to demonstrate that class counsel had information sufficient to evaluate Plaintiff's claims. McGuinness Decl. ¶¶ 161-19. Discovery had previously been underway when the parties settled, such that before mediation Class Counsel had access to important discovery to weigh the advantages and risks of continued litigation and to make informed settlement recommendations to Plaintiff. *Id*. In addition to the depositions of important witnesses, UPS produced over 23,000 pages of documents, including substantial ESI. *Id.*

---

[35] *IUE-CWA*, 238 F.R.D. at 597 (quoting *UAW*, 2006 U.S. Dist. LEXIS 14890, at *59 (other citations omitted)).

[36] *Id.* at 597–98 (quoting *UAW*, 2006 U.S. Dist. LEXIS at *59–60) (other citations omitted). *See also.*, *Id.* at 598 (collecting cases); *Déjà Vu*, 925 F.3d at 898–99 ("[C]ourts have held that settlements are permissible where 'notwithstanding the status of discovery, Plaintiff's negotiators had access to a plethora of information regarding the facts of their case.'") (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

**D. Success on the merits is not guaranteed.**

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute."[37] In assessing the parties' settlement, the Court's task "is not to decide whether one side is right or even whether one side has the better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement."[38] The ultimate question for the Court is whether the interests of the class are better served if the litigation is resolved by the settlement rather than continued litigation.[39] While this factor requires that the Court understand the relative strengths of the claims and defenses somewhat, it need not resolve them.[40]

While Plaintiff is confident in the merits of this case, UPS insists that its actions were consistent with the law. UPS possesses several potent defenses, including its arguments that no liability exists because its pricing table, read literally, favors its interpretation. McGuinness Decl. ¶ 14. It also argues that a jury will be persuaded by evidence it will seek to introduce that the shipping industry practice is to charge for such coverage the way UPS did. It will also argue that at

---

[37] *UAW*, 497 F.3d at 631.

[38] *Id.* at 632.

[39] *See IUE-CWA*, 238 F.R.D. at 595.

[40] *Id.*.

least certain Class Members were fully aware of UPS's practice of charging for the first $100 of declared value, and will seek to introduce extrinsic evidence in support of this defense. and charges. *Id*. ¶ 13. UPS further has a substantial argument that its exposure is drastically limited by the 180-day notice deadline for "billing disputes."

Because liability, ultimately, is a jury question, there is a risk that the Class would not prevail at trial on some or all claims. These critical disagreements and considerations support preliminary approval of the settlement.

In addition to risks on the merits, if there is no settlement UPS will likely oppose class certification, without which the action is not viable. In particular, UPS may challenge manageability under Rule 23(b)(3), by arguing that it must be permitted to call numerous customers it claims had the same understanding of the disputed pricing terms as UPS. McGuinness Decl. ¶ 13. While Plaintiff does not concede that such evidence would be admissible, or that manageability (or any other Rule 23 criterion) is lacking, settlement eliminates the risk that this Court my decline to certify a class based on manageability grounds since manageability is not a factor for certification of a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

**E. Class Counsel believe the settlement is reasonable given the strengths and weaknesses of the claims.**

Courts give substantial weight to the experience of the attorneys who

prosecuted the case and negotiated the settlement.[41] This Court has consistently held that "where class counsel is experienced and diligent, their 'endorsement of the settlement is entitled to significant weight.'"[42] Since counsel for both parties have extensive experience, their positive outlook toward the fairness of the settlement favors approving it.[43] Class Counsel have extensive experience and expertise in consumer class actions. McGuinness Decl. ¶¶ They have thoroughly analyzed the facts and law and concluded that the settlement is in the best interest of the Class. McGuinness Decl. ¶ 3-8. Plaintiff participated in the mediations and fully supports the settlement. *Id.* at ¶¶ 23, 27.

Because Plaintiff disputes the applicability of UPS's 180-day "billing disputes" deadline to the contract claim at issue, Class Counsel negotiated a Settlement Agreement that provides relief to Class Members with Covered

---

[41] *Id.* at 597 (citing *UAW*, 2006 U.S. Dist. LEXIS 14890, at *57 (other citations omitted); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 525 (E.D. Mich. 2003) ("in approving a proposed settlement, the court also considers the opinion of experienced counsel as to the merits of the settlement").

[42] *Coulter-Owens v. Rodale*, No. 14-12688, 2016 U.S. Dist. LEXIS 134234, at *10 (E.D. Mich. Sept. 29, 2016) (quoting *Sheick v. Automotive Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010)).

[43] *Déjà vu*, 925 F.3d at 899 ("counsel representing both parties had extensive experience, which supports the District Court's finding that counsels' positive outlook toward the fairness of the settlement weighed in favor of approving the Settlement Agreement.").

Shipments extending back an additional 2.5 years, to January 1, 2011.[44] At the same time, in recognition of UPS's notice deadline defense and the relative strength of claims that occurred within 180 days of the filing of Plaintiff's original Complaint, the Parties' allocation formula embraces a thoughtful point system to ensure fairness to all class members.[45] For every Covered Package shipped with a declared value in excess of $200 for shippers subject to Retail Rates or in excess of $300 for shippers not subject to Retail Rates ("Covered Package") between July 1, 2013, and December 29, 2013 (approximately180 days before the filing of the original complaint), each Covered Package is entitled to two claim points. For every Covered Package shipped between January 1, 2011, and June 30, 2013 (the extra 2½ years subject to UPS's notice deadline defense), each Covered Package is entitled to one claim point.[46]

      Here is how the allocation process will operate:

---

[44] In exchange for the ability to claim all the way back to January 1, 2011, claims of class members who shipped before 2011, which claims were likewise outside UPS's 180-day notice period, are released, but only for those who remain in the Class, and therefore receive notice and compensation for their post-January 1, 2011, Covered Package shipments. One benefit of this feature is to reduce administrative costs substantially, while providing—and enhancing—the recovery to all Class Members.

[45] Plaintiff BleachTech shipped Covered Packages both before and after 7/1/2013.

[46] For the period from January 1, 2011, to December 31, 2012, because UPS's records reflect total number of packages with declared value without regard to whether declared value charge exceeds the minimum charge, the Settlement Administrator will estimate the percentage of declared value packages with charges over the minimum charge to arrive at the number of Covered Packages.

| Shipping Dates | Packages Shipped | Claim Points Per Package | Claim Points Awarded |
|---|---|---|---|
| July 1, 2013 through December 29, 2013 | 12,795,917 | 2 points per package | 25,591,834 points |
| January 1, 2011 through June 30, 2013 | 83,569,924 | 1 point per package | 83,569.924 points |

Epiq will calculate each Class Member's number of claim points according to Covered Packages. For example, if a Class Member shipped three Covered Packages between July 1, 2013, and December 29, 2013, this Class Member will receive two claim points per shipment for a total of six claim points. If another Class Member shipped three Covered Packages between January 1, 2011, and June 30, 2013, that Class Member will receive one claim point per Covered Package for a total of three claim points. Most of UPS's direct shipper accounts are long-term business customers. Class Counsel therefore anticipate that most Class Members have shipped Covered Packages in each of the two time periods and will receive two and one claim point(s) per package, respectively.

Within 10 days of the Effective Date, the Settlement Administrator will divide the Net Settlement Fund by the total number of claim points calculated under the preceding paragraph to determine the value of one claim point ("Claim Point Value"). Each Class Member will then be entitled to a share of the Net Settlement Fund equal to the number of claim points that Class Member accrued

multiplied by the Claim Point Value. This approach recognizes the relative strength of Class Members' claims while providing compensation for Class Members whose shipments fall outside the asserted notice deadline.

To assess the adequacy of the settlement the Court must consider the overall value of the settlement. The following calculations compute the overall value of the settlement (equal to the Settlement Common Fund)[47] allocated to the two groupings of Covered Packages (pre- and post- July 1, 2013):

Packages shipped converted to points:

Two-point Covered Packages (est.): 12,795,917 x 2 = 25,591,834

One-point Covered Packages (est.): 83,569,924 x 1 = 83,569,924

Total points: 109,161,758

Total estimated value of settlement: $4,850,000 + $748,118 (UPS payment of one-half of notice and administration costs) = $5,598,118

Estimated value per claim point (total Covered Packages / total value) = $0.0513

Estimated Settlement Common Fund allocation:

Value allocated to Covered Packages shipped after 7/1/2013= 25,591,834 x $0.0513 = $1,312,861

Value allocated to Covered Packages shipped before 7/1/2013= 83,569,924 x $0.0513 = $4,287,137

Class counsel believes that this allocation—and the overall settlement

---

47 The total settlement value equates to any cash or cash-equivalent consideration (inclusive of any attorney's fees and costs awarded) plus notice and administration costs. *See Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269, 282 (6th Cir. 2016); *Martin v. Trott Law, P.C.*, No. 12838, 2018 U.S. Dist. LEXIS 167531, at *24 (E.D. Mich. Sept. 28, 2018) ("[I]t is sensible to include the expenses of settlement administration in the Total Benefit to the class.")

consideration—is fair, reasonable, and adequate. McGuinness Decl. ¶¶ 27, 28.

They reach this conclusion for the following main reasons:

(1) Measured against Covered Packages shipped within the 180-day notice deadline (core claims), the overall value of the settlement per package would amount to $0.4375 per package. This is slightly more than one-half of the *maximum* claim recovery of $0.85 per package alleged in the Complaint; and

(2) Importantly, the vast majority of Class Members are businesses (since they have their own UPS accounts) large and small, who ship regularly over a period of years. This is important in evaluating the reasonableness of the settlement consideration because:

a. The vast majority of Class Members will recover from both "buckets" of the allocation, for their shipments of Covered Packages both before and after 7/1/2013. And even though shipments within the 180-day notice period receive twice as many points, because the temporal scope of the pre-7/1/2013 bucket is five times larger (2.5 years vs. 6 months), ongoing business customers with a relatively steady shipping history will likely recover more dollars for pre-7/1/2013 Covered Package shipments than post-7/1/2013 ones; and

b. Because Plaintiff (appropriately) challenges the 180-day limitation, UPS naturally is unwilling to settle without a release of pre-7/1/2013 claims. Class Counsel was able to negotiate a substantially *larger* Settlement Common Fund by including those claims than they would have been able to achieve by limiting the Class to post-7/1/2013 shipments. At the end of the day, those who shipped within the 180-day notice period care about dollars received, not points. *Class Members who shipped within 180-day period therefore benefitted by including pre-7/1/2013 shipments in the Class Period by achieving a much larger Settlement Common Fund than would otherwise have been possible*. McGuinness Decl. ¶26.

Accordingly, this Court should conclude that the settlement being proposed is most likely fair and reasonable under the circumstances, and that it will most likely be able to approve it after a final fairness hearing.

**F.      The Settlement is fair to Absent Class Members.**

"This factor assesses whether the proposed settlement[] 'appears to be the result of arm's length negotiations between the parties and fairly resolves all claims which were or could have been asserted.'"[48] Experienced counsel is also "an essential check on the process, safeguarding the rights of absent class members."

As outlined above, all Approved Claimants will receive a *pro rata* portion of the Net Settlement Fund. Exhibit 1, ¶ 3.2.3. The settlement is even-handed and does not improperly favor Plaintiff, who receives compensation for Covered Shipments in the same manner as all other Class Members.[49]

**G.      The Settlement serves the public interest.**

"Courts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'"[50] The public's interest is served "'by conserving the resources of the parties and the court

---

[48] *In re Delphi Corp. Sec.*, 248 F.R.D. at 498 (quoting *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 U.S. Dist. LEXIS 20440, at *42 (E.D. Mich. Dec. 20, 1996)).

[49] *See Pelzer v. Vassalle*, 655 Fed. Appx. 352 (6th Cir. 2016) (approving class settlement where release was restructured not to prevent absent class members from defending collection actions based on fraudulent affidavits).

[50] *Déjà vu*, 925 F.3d at 899 (quoting *Cardizem*, 218 F.R.D. at 532).

. . . .'"[51]

Not only will this settlement end prolonged litigation and conserve judicial resources, but also it will provide ongoing public benefits via injunctive relief that will reduce the prospect of consumer confusion. McGuinness Decl. ¶¶ 12, 32.

## III.   THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION.

For settlement purposes only, the parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the settlement class and appoint the Class Representative and Class Counsel to represent the Class.[52] Before granting preliminary approval of a class action settlement, the Court must determine that the proposed settlement class is a proper class for settlement purposes,[53] meeting the requirements of Rule 23(a) and (b)(3).[54] For Rule 23(a), that is commonality, numerosity, typicality, and adequacy of representation. For Rule 23(b), that is predominance and superiority.[55]

When considering a class for settlement purposes only, "[t]he Supreme

---

[51] *IUE-CWA*, 238 F.R.D. at 599 (quoting *UAW*, 2006 U.S. Dist. LEXIS 14890, at *67 (quoting *In re Cardizem*, 218 F.R.D. at 530)).

[52] *See* Manual for Complex Litigation, Fourth, § 21.612 (explaining the benefits of settlement classes).

[53] *Id.* at § 21.632.

[54] *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020); *Pelzer v. Vassalle*, 655 Fed. App'x. 352, 363 (6th Cir. 2016).

[55] *Pelzer*, 655 Fed. App'x. 2at 363.

Court observed in *Amchem* that . . . 'a District Court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.'"[56] The Sixth Circuit notes: "As one leading treatise comments, courts 'regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.'"[57]

Here, Plaintiff seeks certification under Rule 23(b)(2) and (3), which, require that UPS acted on grounds that apply generally to the class, such that final injunctive relief is appropriate respecting the class as a whole and that common questions of law or fact predominate, such that maintaining the suit as a class action is superior to other methods of adjudication.

**A. The Settlement satisfies Rule 23(a).**

1. Rule 23's implicit requirements.

"Despite the specificity of Rule 23, courts have grafted on to it two additional criteria, often referred to as the 'implicit requirements' of class certification: that the class be 'definite' or 'ascertainable' and that the class representative be a member of the class."[58] In the Sixth Circuit, ascertainable

---

[56] *In re Nat'l Prescription Opiate Litig.*, at 674 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citing Fed. R. Civ. P. 23(b)(3)(D))).

[57] *Id.* at 674 (quoting William B. Rubenstein, Newberg on Class Action § 4:63 (5th Ed. 2020)).

[58] *Salem v. Mich. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 177624, at *9–10 (E.D. Mich. Dec. 22, 2016) (quoting Newberg on Class Actions § 3.1 (5th ed.)).

means the "proposed class is defined by objective criteria . . . ."[59]

Plaintiff has defined the Class objectively as set forth in the class definition and in a manner that requires no subjective inquiry to determine inclusion. Also, Plaintiff's documents and deposition testimony demonstrate that it is a Class Member.

2.   Numerosity is established.

The class comprises approximately 1,604,932 accounts[60] based on written discovery and defense counsel's representations. McGuinness Decl. ¶31. Thus, per Rule 23(a)(1), the class plainly is "'so numerous that joinder of all members is impracticable.'"[61]

3.   Class claims present common issues of law or fact.

Under Rule 23(a)(2), commonality "'simply requires a common question of law or fact.'"[62] A single common question of law or fact will suffice.[63] The

---

[59] *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 526 (6th Cir. 2015).

[60] Become some businesses have more than one account, the number of Class Members is somewhat less. UPS has not provided a precise number at this time, but Class Counsel believe that there are over 1.5 million Class Members. Because each account will receive notice and compensation as described, it is not essential in this case to pinpoint a precise Class Member count.

[61] *IUE-CWA*, 238 F.R.D. at 591 (quoting Fed. R. Civ. P. 23(a)(1)).

[62] *Id.* (quoting *Reese v. CNH Am. LLC*, 227 F.R.D. 483, 486 (E.D. Mich. 2005) (other citations omitted)).

[63] *Id. See also Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592,

commonality inquiry "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit."[64]

This action is premised on standard contractual pricing table applicable to all Class Members. Whether Defendant breached the terms contained in this table presents a common question capable of a common answer that will drive this lawsuit's resolution.[65]

4. Plaintiff's claims are typical of Class Members' claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "Like commonality, the typicality requirement is not onerous, and is satisfied if there is a strong similarity of legal theories, 'even if substantial factual distinctions exist between the named

---

619 (6th Cir. 2007); *Reese v. CNH Am. LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005).

[64] *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013); *Gradisher v. Check Enforcement Unit, Inc*., 203 F.R.D. 271, 277 (W.D. Mich. 2001) ("The commonality requirement is generally met where the defendant has engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.").

[65] *See, e.g.*, *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 458 (6th Cir. 2020) ("To satisfy commonality, Plaintiff's 'claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012)); *Whirlpool*, 722 F.3d at 850 ("[T]here need be only one common question to certify a class.").

and unnamed class members.'"[66] "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."[67] The typicality requirement also focuses on the type of injury suffered by the Class and the interests of Class Members.[68]

Plaintiff's and Class Members money damages and injunctive relief claims relate to UPS's alleged breach of contract involving its pricing table. In this manner, Plaintiff's claims arise out the same event or practice or course of conduct that gives rise to the claims of other class members, meaning Rule 23(b)(3)'s typicality requirement is satisfied.

5. Plaintiff and Class Counsel are adequate.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This means "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class

---

[66] *IUE-CWA*, 238 F.R.D. at 592 (quoting *Rankin v. Rots*, 220 F.R.D. 511, 518 (E.D. Mich. 2004)).

[67] *Id.* (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082 (footnote and quotation omitted)).

[68] *See Id.* at 592.

through qualified counsel."[69] Plaintiff's interests are consistent with, and not antagonistic to, the interests of the class. Plaintiff's active pursuit of this matter over more than seven and a half years of litigation—including motion practice, three appeals, discovery, and mediation—demonstrate an engaged representative.

To test for counsel's adequacy, "the court must consider: 1) the work counsel has done in identifying or investigating potential claims in the action, 2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, 3) counsel's knowledge of the applicable law, and 4) the resources counsel will commit to representing the class."[70] Class Counsel investigated, developed, and pursued Plaintiff's claims. They have extensive experience in complex class action litigation, McGuinness Decl. ¶¶3-8, and have zealously represented Plaintiff and the Class.

**B. The Rule 23(b) factors are satisfied.**

1. Common issues of law and fact predominate.

Rule 23(b)(2) requires that, for injunctive relief, a party "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

---

[69] *Id.* at 592 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) (other citations omitted)).

[70] *Id.* (citing Fed. R. Civ. P. 23(g)(1)(C)).

Because this action involves a form contract, the proposed classwide injunctive relief plainly satisfies this requirement.

Rule 23(b)(3), applicable to class actions seeking damages, requires that "common questions will predominate over individual ones."[71] "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.'"[72] "'[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'"[73]

Class Members made and paid for shipments with UPS utilizing its declared value service. This was done pursuant to UPS's pricing table, such that adjudicating the merits of Plaintiff's claim would similarly resolve all Class Members' identical claims. This common fact and Plaintiff's allegations based upon it fuel Plaintiff's lawsuit and predominate over any arguably individualized

---

[71] *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459 (6th Cir. 2020) (emphasis in original) (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012)).

[72] *Id.* at 459–60 (quoting *Young*, 693 F.3d at 544 (quoting *Randleman v. FId. Nat. Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011)).

[73] *Id.* at 460 (quoting *Young*, 693 F.3d at 544 (quoting *Beattie v. CenturyTel. Inc.*, 511 F.3d 554, 564 (6th Cir. 2007))).

facts that might affect Class Members.[74]

2. The class action device is superior in this action.

Also, for a Rule 23(b)(3) class to be certified, a class action must be "a superior way to resolve the controversy."[75] "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification.'"[76] "'The policy at the very core of the class-action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"[77] Courts "look to the purpose of class-action litigation. 'Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'"[78]

In assessing superiority, courts normally consider (i) the alternatives to a class action and whether members have an interest in controlling their own cases;

---

[74] *See, e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey.").

[75] *Hicks*, 965 F.3d at 463.

[76] *Id.* at 465 (quoting *Young*, at 545 (quoting *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007))).

[77] *Id.* at 463 (quoting *Young*, 693 F.3d at 545 (quoting *Amchem*, 521 U.S. at 617)).

[78] *Id.* at 465 (quoting *Young*, 693 F.3d at 545 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980))).

and (ii) whether the case will be manageable as a class. However, in the settlement context the proponent of the class need not establish manageability because it is proposed that there be no trial.[79]

Assuming individual actions (in lieu of a class action) were viable, the class device is superior on its face. This is so because the alternative to a single action would be potentially over a million individual actions, swamping the courts and resulting in huge inefficiencies.[80] However, Class Members suffered damages of a maximum of $0.85 per Covered Shipment. For virtually all of the 1.5-plus million Class Members, it would simply not be worthwhile pursing individual actions to recover such *de minimus* injuries. Accordingly, classwide settlement is plainly superior because individual actions in most instances would simply not be economically viable, such that the alternative to a class is in reality not individual actions at all, but no recovery.[81] Indeed, Class Members have shown no interest over the life of this litigation in controlling their individual cases, further demonstrating the preference for this Court handling their claims on a class basis.[82]

---

[79] *Amchem*, 521 U.S. at 620.

[80] *Id* ("The alternative to adjudicating this case as a class action is for the Court to handle thousands, perhaps tens of thousands, of individual cases.").

[81] *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2017 U.S. Dist. LEXIS 93000, at * 27 (S.D. Ohio June 17, 2017) ("The reality is that few individual plaintiffs would sue or receive any redress at all in individual actions.").

[82] Of course, dissatisfied Class Members may opt out.

IV. THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING.

Plaintiff asks that this Court schedule a final fairness hearing at least 100 days from the filing of this Motion but no less than 75 days from entry of an order granting this Motion.[83] That date will drive the other dates in the Settlement Agreement and will allow the Court to populate the schedule set forth in the proposed Order of Preliminary Approval. Exhibit 1-E, attached.

**Conclusion**

For the foregoing reasons, Plaintiff asks that this Court order the Parties to notify Class Members of the proposed settlement, and grant the other relief requestee in this Motion.

Dated: August 20, 2021

Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
111 S Main St., 3rd Floor
P.O. Box 7711
Ann Arbor, MI 48107
Telephone: (734) 274-9374
drewmcg@topclasslaw.com

83 This timeframe is driven primarily by the Class Action Fairness Act notice requirements, 28 U.S.C. §1715 (b) & (d).

Daniel R. Karon (admitted)
Beau D. Hollowell (admitted)
Karon LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

Sanford P. Dumain (admitted)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC
100 Garden City Plaza, Ste 500
Garden City, NY  11530
Telephone: (212) 594-5300
sdumain@milberg.com

*Counsel for Plaintiff and the Proposed Class*

# EXHIBITS

1. Class Action Settlement Agreement (with sub-exhibits A-E)

2. Declaration of Andrew J. McGuinness, Class Counsel.

3. Declaration of Cameron Aziz, Vice President of Epiq Class Action & Claims Solutions, Inc., and the Director of Legal Notice for Hilsoft Notifications.

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy

of the foregoing was filed with the Court using the ECF system, which will send

notification to all parties who have appeared through their attorneys of record.

/s/Andrew J. McGuinness
Andrew J. McGuinness

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

| | |
|---|---|
| BLEACHTECH L.L.C., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC., an Ohio Corporation,<br><br>Defendant. | Case No. 2:14-cv-12719<br><br>Hon. Denise Page Hood<br><br>CLASS ACTION |

**AMENDED CLASS ACTION SETTLEMENT AGREEMENT**

This Amended Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") is entered into, subject to approval of the Court and entry of final judgment, between Plaintiff BleachTech L.L.C. ("Plaintiff" or "BleachTech"), individually and as Class Representative of the Class, as defined below, and Defendant United Parcel Service, Inc., an Ohio corporation ("Defendant," or "UPS"). Plaintiff and Defendant are, at times, individually referred to herein as a "Party" and collectively as the "Parties."

**RECITALS**

A. On July 11, 2014, plaintiffs Joe Solo and BleachTech filed a putative class action complaint against UPS in the United States District Court for the Eastern District of Michigan, Case No. 2:14-cv-12719 (the "Litigation"). On December 30, 2020, with leave of Court, BleachTech filed an Amended Complaint (hereinafter, the "Complaint"). The Complaint excluded Joe Solo as a party, and Mr. Solo is not party to this Agreement.

B. This Agreement is to settle the Litigation on behalf of a class of persons described below and contemplates the preliminary and final certification of a Settlement Class, as defined below, by the Court. As used in this Agreement, "Class Counsel" refers to Andrew J.

McGuinness, Daniel R. Karon, and Sanford P. Dumain, each of whom represent Plaintiff and seek interim and final appointment by the Court as Class Counsel on behalf of the Settlement Class contemplated hereby.

C. The Complaint alleges that Defendant has breached its contract(s) with Plaintiff and Class Members, and seeks compensatory, declaratory, and injunctive relief. Defendant denies that it committed any wrongdoing.

D. The Parties participated in three mediation sessions before the Hon. Gerald E. Rosen (Ret.), on June 27, 2018; June 26, 2020; and September 1, 2020. At the third session, the Parties reached an agreement in principle to settle the Litigation on the terms set forth in this Agreement.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

**1. RECITALS AND DEFINITIONS**

1.1 Recitals. The recitals set forth above are incorporated by reference and are explicitly made part of this Agreement.

1.2 Definitions. As used in this Agreement, capitalized terms shall have the meanings provided below and elsewhere in the Agreement:

(a) "Active Account" means a UPS six-character account number that has not been closed, either by the shipper, by UPS, or under UPS's internal automatic account closure rules.

(b) "Cash Payment" means $4,850,000 (U.S.) less the Total Account Credits.

(c) "Class Counsel" has the meaning set forth in the Recitals.

(d) "Class Member" means a member of the Settlement Class, excluding members

who have timely filed valid Requests for Exclusion. "Putative Class Member" means a person who meets the definition of a member of the Settlement Class defined below, regardless whether such person has requested exclusion from the Class or whether the Class has been certified.

(e)     "Class Representative" means BleachTech.

(f)     "Covered Packages" means packages described in the Settlement Class (defined below).

(g)     "Days" means calendar days.

(h)     "Effective Date" means the later of:

i.     Thirty-seven (37) Days after the entry of the Judgment or the entry of the Court's order on attorneys' fees and costs, whichever occurs later, where the time for appeal has expired and no appeal has been filed; or

ii.     If any appeal, petition for rehearing, motion to reconsider, or other review of the Judgment has been filed or sought, thirty-seven (37) Days after the Judgment is affirmed without substantial or material change, or the appeal is dismissed or otherwise disposed of (unless any such substantial or material change is accepted by the Parties), and no other appeal, petition for rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired; or

iii.     If any appeal, petition for rehearing, motion to reconsider, or other review of the Court's order on attorneys' fees and costs has been filed or sought, thirty-seven (37) Days after the Court's order on attorneys' fees and costs is resolved, or the appeal is resolved, dismissed or otherwise disposed of and no other appeal, petition for rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

(i)     "Final Approval Hearing" means the hearing pursuant to Federal Rule of Civil

Procedure 23(e)(2), at or after which the Court shall:

       (i)     determine whether to grant final approval of the Settlement;

       (ii)    consider any objections to this Settlement and all responses thereto; and

       (iii)   consider Class Counsel's requests for an award of attorneys' fees, costs

and expenses, and Service Awards.

       (j)     "Judgment" shall mean the order, substantially in the form of the attached

Exhibit A, finally approving the Settlement, entering judgment in favor of Plaintiff and the Class,

and entering any injunctive relief.

       (k)    "Long Form Notice" means the Notice of Proposed Settlement of Class Action

that will be published on the Settlement Website established by the Settlement Administrator and

to be emailed or mailed to Class Members upon request, substantially in the form attached as

Exhibit B.

       (l)     "Net Settlement Fund" shall mean $4,850,000 less any Court-approved

(1) Service Award to the Class Representative; (2) Court-approved attorneys' fees plus Class

Counsel's expenses incurred in this litigation; and (3) fifty percent of Notice and Administration

Expenses.

       (m)   "Notice" shall mean, collectively, the communications by which Class Members

are sought to be notified of the Settlement and of the Court's Preliminary Approval of the

Settlement, including any instructions for submitting Requests for Exclusion.

       (n)    "Notice and Administration Expenses" means expenses to send notice and

administer the Settlement as contemplated by the Agreement.

       (o)    The "Notice Date" shall be thirty (30) Days after entry of the Preliminary

Approval Order. The Settlement Administrator shall complete emailing a Short Form Notice for

Putative Class Members with valid email contact information, or mail the Postcard Notice to

Putative Class Members without a known email address, based on a list of last known mail addresses supplied by UPS as may be updated by the Settlement Administrator, by the Notice Date. The Settlement Administrator shall cause the Publication Notice to be published by the Notice Date. The Notice Date may be delayed by the Court for good cause shown.

(p)     "Opt Out" means a Putative Class Member who validly submits a timely Request for Exclusion as provided in this Agreement and in the Long Form Notice.

(q)     "Party" and "Parties" shall have the meaning set forth in the introductory paragraph of this Agreement.

(r)     "Person(s)" shall mean any natural person, individual, corporation, association, partnership, limited liability company, trust, or any other type of legal entity.

(s)     "Plaintiff" shall have the meaning set forth in the introductory paragraph of this Agreement.

(t)     "Postcard Notice" means a Short Form Notice via postcard substantially in the form of Exhibit C attached hereto. The Settlement Administrator will mail the Postcard Notice by United States Mail, First Class postage prepaid, to the last known physical address of all Class Members without a valid email address, using last known mailing addresses or mailing addresses as updated by the Settlement Administrator.

(u)     "Publication Notice" shall be one or more banner ads in a form similar to Exhibit D attached, to be published online as described in Section 8.3 as recommended by the Settlement Administrator reasonably to notify Putative Class Members without Active Accounts for whom UPS lacks known email or mailing addresses.

(v)     "Preliminary Approval" or "Preliminary Approval Order" shall mean the Court's entry of an order directing that Notice be given pursuant to Federal Rule of Civil Procedure 23(e)(1), i.e., upon a finding that giving notice is justified by the Parties' showing that

the Court will likely be able to (i) approve this proposed Settlement under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal, and shall be substantially in the form of Exhibit E attached hereto.

(w)      "Released Claims" shall have the meaning set forth in Section 13.1 of this Agreement.

(x)      "Released Parties" shall mean UPS and each of its past or present employees, agents, officers, directors, shareholders, insurers, attorneys, advisors, consultants, representatives, parents, subsidiaries, affiliates, joint venturers, and divisions, and each of their predecessors, successors, heirs, and assigns.

(y)      "Releasing Parties" shall mean Plaintiff and Class Representative, for and on behalf of itself, each Class Member, and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns.

(z)      "Request for Exclusion" shall mean a request to be excluded from the Settlement Class, submitted in accordance with the terms and conditions of this Settlement Agreement and the instructions provided in the Long Form Notice.

(aa)     "Service Award" shall mean any cash award to be paid to the Class Representative for its effort in litigating and settling this Litigation for the Settlement Class.

(bb)     "Settlement" means the class settlement contemplated by this Agreement, in substantial compliance with the terms hereof, including any mutually agreeable amendment written and signed by the Parties or any modification mandated by the Court to which the Parties jointly agree.

(cc)     "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc.

(dd)     "Settlement Class" shall mean:

> Except as excluded below, all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates.

Specifically excluded from the scope of the Class and the releases set forth in Section 13 of this Agreement are any packages with a declaration of value that was later voided, any packages shipped under an account of a The UPS Store location, and any packages shipped through any other Third-Party Retailer (as defined by the July 8, 2013 UPS Tariff/Terms and Conditions of Service – United States (attached as Exhibit A to the Amended Complaint)) to the extent the claim is asserted by a customer of such Third-Party Retailer, which packages will not be deemed Covered Packages. Also excluded is any entity in which Defendant has or had a controlling interest or which has a controlling interest in Defendant and all The UPS Store locations, and all other authorized UPS shipping agents and partners, including authorized outlets, to the extent that their packages were not shipped pursuant to a contract with UPS during the Class Period to purchase declared value coverage at the rates set forth in the pricing tables published in the applicable UPS Service Guide. Also excluded are UPS's legal representatives, assigns, and successors; the Court and any member of its staff; and any Putative Class Member who timely submits a valid Request for Exclusion or is found by the Court to have adequately opted out of the Class.

(ee)    "Settlement Common Fund" means the total cash consideration paid by Defendant and credits given as part of the Settlement, equal to $4,850,000 (U.S.), together with Defendant's fifty percent share of the Notice and Administration Expenses.

(ff)    "Settlement Website" means the website established by the Settlement Administrator containing the Long Form Notice, electronic version of the Request for Exclusion form, and other pertinent information to facilitate the Settlement.

(gg) "Short Form Notice" means the Important Notice About a Class Action that the Settlement Administrator will email to all Class Members for whom UPS has supplied an email address, substantially in the form attached as Exhibit C. The email Short Form Notice shall direct Class Members to the Settlement Website, where the full Long Form Notice including opt out instructions and electronic Request for Exclusion Form will be available.

(hh) "Total Account Credits" means the dollar amount of credits issued to Active Accounts.

(ii) "Unused Class Funds" shall mean distribution checks issued to Class Members that remain uncashed past the checks' ninety (90) day stale date.

1.3 Singular and Plural. Definitions used herein shall apply to the singular and the plural forms of each term defined.

1.4 Gender. Definitions used herein shall apply to the masculine, feminine, and neuter genders of each term defined.

1.5 Terms of Inclusion. Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

**2. COOPERATION BY THE PARTIES**

2.1 The Parties and their counsel agree to cooperate fully with each other and the Settlement Administrator to promptly execute all documents and take all steps necessary to effectuate the terms and conditions of this Settlement Agreement. The Parties and their counsel further agree to support the final approval of the Settlement Agreement, including against any objection thereto and any appeal of the Judgment.

**3. MONETARY CONSIDERATION TO THE CLASS**

3.1 In exchange for the terms and conditions set forth in this Settlement Agreement, including without limitation the releases set forth in Section 13 below, Defendant will provide the following monetary consideration:

3.1.1 Settlement Common Fund. Defendant shall cause $700,000.00 (U.S.) of the Cash Payment to be made in immediately available funds into an interest-bearing Qualified Settlement Fund account established by the Settlement Administrator for the benefit of the Settlement Class within fifteen (15) Days of Preliminary Approval of the Settlement. Within ten (10) days of the Effective Date, Defendant shall cause the amount approved by the Court for attorneys' fees and expenses and the Service Award to be paid into the Qualified Settlement Fund. Defendant shall provide an estimate of Total Account Credits to the Settlement Administrator as soon as practicable after the Settlement Administrator calculates the Claim Point Value. Based on this estimate, Defendant shall cause the estimated remainder of the Cash Payment ($4,850,000 (U.S.) less the amounts previously paid to the Qualified Settlement Fund under this Section and less estimated Total Account Credits) to be paid into the Qualified Settlement Fund within thirty (30) days of the Effective Date. To the extent Defendant is unable to issue all estimated Total Account Credits (e.g., because an account was cancelled after estimate of Total Account Credits), it shall make an additional payment into the Qualified Settlement Fund in the amount of such un-issued credits within ten days of the certification of Total Account Credits pursuant to Section 3.2.5 below. Additionally, Defendant shall pay fifty percent (50%) of all valid invoices for Settlement administration, including notice costs, issued by the Settlement Administrator.

3.2 Distribution of the Net Settlement Fund. This is a non-reversionary common fund settlement, whose net proceeds are to be distributed by the Settlement Administrator and UPS to

Class Members. The Net Settlement Fund shall be distributed on a per claim point basis according to the formula in Sections 3.2.1-3.2.3 of this Agreement. Claims forms are not required; however, Class Members may be required reasonably to (1) attest to the number of Covered Packages they sent between January 1, 2011 and June 30, 2013, or (2) verify their identity and payment information at the request of the Settlement Administrator if UPS's records are not sufficient to verify same.

   3.2.1 For every U.S. origin package shipped under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates ("Covered Package") between July 1, 2013, and December 29, 2013, each Covered Package will be entitled to two (2) claim points. Covered Packages shipped during this period shall be determined by reference to UPS records.

   3.2.2 For every Covered Package shipped between January 1, 2011, and June 30, 2013, each Covered Package will be entitled to one (1) claim point. Covered Packages shipped during this period shall be determined by reference to UPS records. For the period from January 1, 2011 to December 31, 2012, because UPS records reflect total number of packages with declared value (without regard to whether declared value charge exceeds the minimum charge), the Settlement Administrator will use an estimate of the percentage of declared value packages with charges over the minimum charge to arrive at the number of Covered Packages.

   3.2.3 Within ten (10) Days of the Effective Date, the Settlement Administrator shall divide the Net Settlement Fund by the total number of claim points calculated under Sections 3.2.1 and 3.2.2 above to determine the value of one claim point ("Claim Point Value"). Each Class Member will be entitled to a share of the Net Settlement Fund equal to the number of claim points that Class Member is entitled to multiplied by the Claim Point Value.

3.2.4    Class Members shall receive their per claim point distribution of the Net Settlement Fund via account credit if they have Active Accounts with UPS. These account credits (the "Total Account Credits") will be issued by UPS no later than forty-five (45) Days after the Effective Date. As to Class Members who do not use their credits, UPS will attempt to locate the Class Member and pay the unused credits in accordance with UPS's regular business practices as to credit balances in inactive accounts. UPS will in no event retain such unused credits.

3.2.5    UPS shall document by amount and Class Member each account credit issued, and certify under oath or declaration subject to penalty of perjury the total amount of such credits within ten (10) Days of issuing such credits.

3.2.6    For Class Members who do not have Active Accounts, the Settlement Administrator shall mail checks to each such Class Member with the per claim point distribution within sixty (60) Days of the Effective Date or receipt of the mailing addresses from UPS, whichever comes later. Distribution checks will be good for ninety (90) Days after the date on the check.

3.2.7    Distribution checks uncashed after ninety (90) Days, shall constitute "Unused Class Funds." Unused Class Funds will be donated to the National Consumer Law Center, a § 501(c)(3) non-profit public interest law firm engaged in the education, training, and promotion of consumer protection law, as *cy pres* award, or such other suitable non-profit organization as recommended by Class Counsel and approved by the Court. In the absence of any approved *cy pres* award, Unused Class Funds shall be redistributed to or on behalf of Class Members as directed by the Court.

**4. NON-MONETARY CONSIDERATION TO THE CLASS**

4.1 In addition to the consideration described in Section 3 above, as part of this Settlement, UPS will also provide the following consideration ("Injunctive Relief"):

4.1.1 UPS represents that it has modified its published U.S. Rate and Service Guides to include the following text in the "fee" column of its Declared Value for Carriage pricing tables:

| | |
|---|---|
| – Value from $100.01 to $300.00 | [fee in dollars] |
| – Value over $300.00, charge for each $100.00 (or portion of $100.00) of the total value declared (from $0.00 to total value declared) | [fee in dollars] |

Without limiting the generality of the foregoing, the following example1 will be deemed compliant with the Injunctive Relief consideration obtained on behalf of Class Members as part of the Settlement:

| Available Options | Description | Fee |
|---|---|---|
| **Declared Value for Carriage** | – UPS's liability for loss or damage for each domestic package or international shipment, or to each pallet in a UPS Worldwide Express Freight® Midday or UPS Worldwide Express Freight® shipment is limited to $100.00 without a declaration of value.<br>– The maximum declared value is $50,000.00 per package/$100,000.00 per pallet shipped via UPS Worldwide Express Freight Midday and UPS Worldwide Express Freight services. UPS's liability for loss or damage can be increased up to $50,000.00 per package or $100,000.00 per pallet by making a declaration of value for an additional charge (subject to terms and conditions). Certain domestic packages are eligible for the enhanced maximum declared value of $70,000.00, subject to restrictions set forth in the "UPS Tariff/Terms and Conditions of Service – United States" available at ups.com/terms and also set forth in "Maximum Declared Values" on page 8.<br>– Declarations of value from $100.01 to $300.00 are subject to a charge of $3.45. Declarations of value over $300.00 incur a charge for each $100.00 (or portion of $100.00) of the total value declared, including the first $100.00. For example, a declaration of $950.00 value incurs a charge of $11.50 (10 times $1.15).<br>– For international shipments with a declared value of more than $50,000.00, multiply the total declared value by the rate to determine the declared value charge for the shipment.<br>– For packages tendered to a UPS driver with a declared value amount of more than $1,000.00, the shipper must retain a high-value shipment summary signed by the driver. The UPS Shipping System provides this form when the shipping label is requested.<br>– Declared value charges can be included in charges billed to receivers or third parties. | – Value from $100.01 to $300.00 $3.45<br>– Value over $300.00, charge for each $100.00 (or portion of $100.00) of the total value declared (from $0.00 to total value declared) $1.15<br>– For international shipments with a declared value of more than $50,000.00: $0.009 times the declared value |

[1] All dollar figures—including without limitation the incremental declared value charge and minimum declared value charge—shown in this example are illustrative only, and not binding upon UPS as part of this Settlement Agreement.

4.1.2 The inclusion of the textual changes in the "fee" column of the UPS declared value pricing table above will be required for a period of three (3) years from the date of signing of this Agreement. UPS may in that period notify Class Counsel of a proposed change of the language or format of the language required by such Injunctive Relief to reflect changes in the law or a change in UPS's business practices (including, for example, changes in the appearance or format of the U.S. Rate and Service Guide). Font or type size do not require advance notice; nor does a change to reflect a change in declared value pricing that does not assess a charge for the first increment of protection (currently $100). If Class Counsel notifies UPS Counsel within seven (7) Days of an objection to the proposed change, and the objection cannot be resolved amicably, UPS may seek leave of Court on shortened notice prior to its proposed modification(s), or, at UPS's option and sole expense, any dispute regarding the proposed change shall be resolved through expedited mediation with the Hon. Gerald Rosen (Ret.) or other mediator mutually agreeable to the parties.

**5. ATTORNEY FEES AND COSTS AND SERVICE AWARDS**

5.1 Application for Attorneys' Fees and Expenses and Service Awards for the Plaintiffs. Pursuant to the common fund doctrine and/or any applicable statutory fee provision and consistent with this Agreement, Class Counsel will apply to the Court by motion for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Common Fund. Additionally, Class Counsel may apply to the Court for reimbursement of Class Counsel's reasonable expenses incurred throughout this Litigation. Class Counsel may also seek a Service Award of up to $5,000.00 for the Class Representative, and reimbursement of any Notice and Administration Expenses incurred by Plaintiff or Class Counsel. Each of these requests as approved by the Court shall be paid from the Settlement Common Fund. Attorneys' fees and expenses awarded by the Court shall be allocated among Plaintiff's attorneys in a manner that, in Class Counsel's opinion,

fairly compensates them for their respective contributions to the progress of and results obtained in the Litigation. Defendant and its agents agree not to oppose the applications for attorneys' fees or expenses, for Service Award, or Notice and Administration Expenses made in accordance with the term of this Agreement.

5.2 The Parties agree that this Settlement Agreement is not contingent upon the Court's approval or allowance of any specific attorneys' fee award, reimbursement of expenses, or the approval of any specific Service Award. In the event the Court approves the Settlement, but declines to award Class Counsel's attorneys' fees or costs in the amount requested by Class Counsel the Settlement Agreement will nevertheless be binding on the Parties to the extent permissible under applicable law.

5.3 Class Counsel and the Class Representative agree to provide the Settlement Administrator all identification information necessary to effectuate the payment of any fee award and Service Awards including, but not limited to, Taxpayer Identification Number(s), completed Internal Revenue Service Form W-9(s), and wire transfer information.

5.4 UPS shall not be liable for any additional fees or expenses of the Class Representatives or any Class Member in connection with the Litigation beyond those contemplated in this Agreement. Class Counsel agree that they will not seek any additional fees or costs from UPS in connection with the Litigation or the Settlement of the Litigation beyond those contemplated in this Agreement, and will look only to the Settlement Common Fund for payment of their court costs, fees and expenses. UPS expressly agrees that it will not seek to recover its Court costs, attorneys' fees, or expenses once the Court enters a dismissal of the Litigation.

5.5 Disbursement of Attorneys' Fees and Expenses and Plaintiff's Service Award.

5.5.1 Class Counsel's attorneys' fees and expenses, as approved by the Court shall be

paid from the Settlement Common Fund to Class Counsel within twenty (20) days of the Effective Date.

5.5.2 Upon approval by the Court and pursuant to written directions from Class Counsel to the Settlement Administrator, any Service Award to the Class Representative shall be paid from the Settlement Common Fund within twenty (20) Days of the Effective Date. The Class Representative's per claim point share of the Net Settlement Fund as Class Members shall be processed separately along with other Class Members.

**6. PRELIMINARY APPROVAL OF SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

6.1 Class Counsel shall prepare the motion seeking a Preliminary Approval Order, which Defendants shall not oppose so long as it reflects the terms of this Settlement Agreement.

6.2 Without limitation, the Court shall be asked to approve the terms and conditions of this Settlement Agreement, the Notice to the Class, the method of Notice, the procedure for distributing the Net Settlement Fund, and to conditionally appoint the Class Representative and Class Counsel for the Settlement Class as part of its Preliminary Approval. The Parties stipulate and agree that, subject to Court approval and for purposes of the Agreement only, the Settlement Class defined above should be conditionally certified solely for purposes of the Settlement embodied in this Agreement.

**7. SETTLEMENT ADMINISTRATOR**

7.1 The Settlement Administrator will work without limitation to: (i) provide Notice to potential Class Members in the manner set forth in the Preliminary Approval Order; (ii) establish and maintain the Settlement Website; (iii) identify and obtain updated contact information for Putative Class Members as necessary; (iv) respond to queries from Putative Class Members; (v) confirm the issuance of credits and process payments to Class Members; and (vi) provide any necessary certifications to the Court concerning the administration and

processing of the Settlement. The Settlement Administrator will also be available to respond to inquiries from Class Counsel, counsel for Defendant, and the Court.

7.2    UPS shall, within ten (10) Days of entry of the Preliminary Approval Order (if not previously supplied), cause to be provided to the Settlement Administrator an Excel spreadsheet of the names and last known email addresses and mailing addresses of Putative Class Members ("Class Member List"). The Settlement Administrator shall maintain the confidentiality of the Class Member List, Class Member account data, or other Class Member information and shall use the information contained in the Class Member List and other Class Member information solely for purposes of implementing this Settlement or as directed by the Court.

7.3    The Settlement Administrator shall provide regular reports to Class Counsel and to counsel for Defendant regarding the status of the Settlement administration, including the updating of addresses, number of short form notices emailed and mailed, number of Requests for Exclusion, number of class members and Covered Packages identified, number and amounts of account credits and distribution checks, and the total dollar amount of cashed and uncashed checks.

7.4    The Settlement Administrator shall be paid for the work directed by the Court or contemplated by this Agreement and the Settlement, 50% paid directly by Defendant and 50% paid from the Settlement Common Fund. The Settlement Administrator shall withdraw 50% of its Notice and Administration Expenses from the Settlement Common Fund after and within twenty (20) Days of the Effective Date.

7.5    The Settlement Administrator shall establish an interest-bearing Qualified Settlement Fund to receive and hold the Settlement Common Fund; to distribute attorneys' fees, expense reimbursements, and Service Award as authorized by the Court; and to distribute the Net Settlement Fund (aside from account credits) in accordance with the terms of the Settlement

Agreement as finally approved by the Court.

**8. NOTICE OF SETTLEMENT AND ADMINISTRATION OF CLAIMS**

8.1 For all Class Members for whom UPS has supplied an email address, the Settlement Administrator shall send via email a Short Form Notice by the Notice Date. The email Short Form Notice shall direct Class Members to the Settlement Website, where the full Long Form Notice including opt out instructions will be available.

8.2 For all Class Members without an email address on file with UPS, and for those Class Members whose Short Form Notice sent via email is returned as undeliverable, the Settlement Administrator shall send via United States Mail, First Class postage prepaid, a copy of the Postcard Notice by the Notice Date. The Postcard Notice shall direct Class Members to the Settlement Website, where the full Long Form Notice including opt out instructions will be available. The Postcard Notice shall be sent to the last known addresses provided by UPS. For Class Members whose Postcard Notices are returned as undeliverable, the Settlement Administrator shall use commercially reasonable efforts to locate forwarding or updated addresses and re-send the Postcard Notice to such updated addresses.

8.3 The Settlement Administrator shall also implement, no later than the Notice Date, an internet publication notice program through the Google Display Network for 30 days duration targeting at least 14 million impressions. The Publication Notice shall use banner advertisements substantially in the form of Exhibit D, attached.

8.4 Defendant will bear responsibility for notifying the appropriate federal and state officials of this Settlement Agreement to the extent required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

8.5 No later than fifteen (15) Days before the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel and counsel for Defendant the following

information:

(a)      The number of email Short Form Notices sent to Putative Class Members by the Settlement Administrator;

(b)      The number of Postcard Notices sent to Putative Class Members by the Settlement Administrator;

(c)      The approximate number of visits to the Settlement Website from the date of entry of a Preliminary Approval Order;

(d)      Any information about any objections to the Settlement that the Settlement Administrator has not previously forwarded;

(e)      A report stating the total number of Putative Class Members who have submitted timely and valid Requests for Exclusion, including a listing of the names and addresses of such Opt Outs and reporting the number of claim points allocated to the Putative Class Members who have submitted timely and valid Requests for Exclusion divided by the total claim points available to the Settlement Class, as calculated by the Settlement Administrator (the "Exclusion Percentage"); and

(f)      Any other tracking information reasonably requested by Class Counsel or counsel for Defendant.

8.6      Class Counsel shall file with the Court the list of Opt Outs not later than seven (7) Days before the Final Approval Hearing. Class Counsel's submission shall differentiate between the timely, valid Opt Outs and untimely or invalid Opt Outs as determined by the Settlement Administrator.

**9. REQUESTS FOR EXCLUSION**

9.1 Putative Class Members who wish to exclude themselves from the Class, the Settlement, its benefits, and from the release of claims pursuant to the Settlement must submit a Request for Exclusion. To be effective, a Request for Exclusion must be valid and timely. To be valid, a Request for Exclusion must: (a) identify the full name and address of the Putative Class Member requesting exclusion; (b) be dated and personally signed (original or electronic signatures accepted) by the Putative Class Member or responsible individual requesting exclusion, or by a person documented to be acting under valid power of attorney, guardianship, or other legal authority to sign on behalf of the Putative Class member or his estate; and (c) contain a statement that reasonably indicates a desire to be excluded from the Settlement. The following statement shall be deemed to meet the requirement of subpart (c) of the preceding sentence: "I want to opt out of the Settlement Class certified in the *Bleachtech v. UPS* case." Additionally, the Request for Exclusion must provide EITHER the unique I.D. number(s) contained in an email or contained on a postcard sent by the Settlement Administrator to the Putative Class Member OR the UPS account number(s) of such Putative Class Member. Requests for Exclusion that do not meet these requirements will not operate to exclude a Class member from the Settlement. Mass or class opt-outs will not be allowed.

9.2 To be timely, the Request for Exclusion must be emailed or postmarked no later than thirty (30) Days before the Final Approval Hearing (the "opt-out deadline"). If the opt-out deadline would otherwise fall on a Sunday or federal holiday, the opt-out deadline shall be the next day that is not a Sunday or federal holiday. The opt-out deadline shall be stated in the Short Form Notice, Postcard Notice, and in the Long Form Notice. Request for Exclusion Forms shall be available for download from the Settlement Website and, upon request by a Class Member, made available by the Settlement Administrator through First Class Mail. A Class Member who

submits a valid and timely Request for Exclusion is not eligible to receive any payment or credit under this Agreement.

9.3 The Settlement Administrator shall promptly log each Request for Exclusion that is received and shall forward copies of the log and all such Requests for Exclusion to Class Counsel and counsel for Defendant within fifteen (15) business days after the opt-out deadline.

9.4 Within seven (7) business days after the opt-out deadline fixed for Putative Class Members to request exclusion from the Class, Class Counsel and counsel for Defendant shall forward to the Settlement Administrator copies of any Requests for Exclusion received by them.

9.5 UPS, at its sole discretion, has the right (but not the obligation) to terminate the Settlement Agreement if (1) the Exclusion Percentage amounts to 5% or more of the total claim points available to the Settlement Class, as calculated by the Settlement Administrator; and (2) UPS notifies Class Counsel in writing that it has elected to terminate the Settlement Agreement within seven (7) Days of notice of the Exclusion Percentage from the Settlement Administrator (after the opt-out deadline passes). If the Settlement Agreement is terminated, it will be deemed null, void, and unenforceable.

**10. OBJECTIONS**

10.1 Class Members who do not request exclusion from the Class may object to the Settlement. Class Members who choose to object to the Settlement must file written notices of intent to object with the Court and serve copies of any such objection on counsel for the Parties, as set forth in more detail in below. Any Class Member who submits a valid objection may appear at the Final Approval Hearing in person, by video or audio feed if the Court so orders, or by counsel and be heard to the extent permitted under applicable law and allowed by the Court, concerning the fairness, reasonableness and adequacy of the Settlement, and on Class Counsel’s application for Service Award, of attorneys’ fees, and reimbursement of costs and expenses. The

right to object to the Settlement must be exercised individually by a Class Member and, except in the case of a deceased or incapacitated Class Member or where a Class Member is represented by counsel, not by another Person acting or purporting to act in a representative capacity.

10.2 To be considered valid, an objection must: (1) clearly identify the case name and number "*BleachTech v. UPS*, Case No. 2:14-cv-12719"; (2) be filed with the Court no later than thirty (30) Days before the Final Approval Hearing; (3) be postmarked and mailed to Class Counsel and Defendant's Counsel at the addresses listed in the Long Form Notice no later than thirty (30) Days before the Final Approval Hearing (unless the Class Member filed an objection via the Court's ECF system, such that copies will be transmitted electronically to these counsel); (4) set forth the full name, current address, and telephone number, and the unique I.D. number assigned by the Settlement Administrator of the objecting Class Member; (5) set forth a statement of the position the Class Member wishes to assert, including the factual and legal grounds for the position; (6) state whether the Class Member intends to appear and requests to be heard, in person or through counsel, at the Final Approval Hearing, and set forth the names and a full summary of testimony of any witnesses that the Class Member might want to call in connection with the objection; (7) provide copies of all documents that the Class Member wishes to submit in support of his or her position; (8) provide the name(s), address(es) and phone number(s) of any attorney(s) representing the Class Member; (9) identify by case name, case number and court each class action settlements objected to by the Class Member and his or her counsel (if any) in the last three years; and (10) include the Class Member's signature. If a Class Member, their counsel, or any person with whom they are working in bringing the objection has objected to a class action settlement on more than three occasions, the Class Member shall, (i) list all cases in which such objections were filed, and by whom; (ii) state the outcome of the objection; (iii) state the amount of money, if any, paid in connection with the objection to

objector, to their counsel, or to anyone else, including by whom such payment was made and whether it was disclosed to the court overseeing the proposed settlement. Only objections fulfilling these requirements will be deemed adequate.

10.3 Any Class Member who does not file a timely and adequate notice of intent to object in accordance with this section waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement. To the extent any Class Member objects to the Settlement, and such objection is overruled in whole or in part, such Class Member will be forever bound by the Judgment of the Court.

10.4 Counsel for the Parties may seek expedited leave from the Court to depose an objector prior to the scheduled Final Approval (Fairness) Hearing if such objector does not voluntarily agree thereto, and may request expedited production of information and things prior to the deposition of any nonprivileged matter that is relevant to the objection and proportionate to the needs of the case.

**11. FINAL APPROVAL**

11.1 If the Court preliminarily approves the Settlement Agreement, Class Counsel shall submit a motion for final approval of the Settlement by the Court, as well as a motion for attorneys' fees, expenses, and any requested Service Award, at a date set by the Court, but no later than forth-five (45) Days before the Final Approval Hearing. The Parties may submit supplemental memoranda in support of the motions for final Settlement approval and for attorneys' fees, expenses, and Service Awards at a date set by the Court, but no later than seven (7) Days before the Final Approval Hearing.

11.2 The Notice to the Class shall contain a date, time, and location for the Final Approval Hearing to be conducted by the Court, subject to later change by the Court. The Parties shall jointly request the Court to set a Final Approval Hearing 75 Days from the date the Court

enters an order granting preliminary approval of the Settlement Agreement, but not before 100 Days after Class Counsel files the Motion for Preliminary Approval of the Settlement.

11.3 If the Court finally approves the Settlement as fair, reasonable, and adequate, the Parties shall jointly ask the Court to enter a Judgment substantially in the form of Exhibit A, attached, which shall, *inter alia*:

(a) Certify the Settlement Class;

(b) Grant final approval to the Settlement Agreement as fair, reasonable, and adequate, in good faith and in the best interests of the Class, and order the Parties to carry out the provisions of this Settlement Agreement;

(c) Grant the Injunctive Relief set forth in this Settlement Agreement; and

(d) Reserve continuing jurisdiction by the Court to preside over any ongoing proceedings relating to this Settlement Agreement and the Injunctive Relief contemplated herein.

**12. CREDITS AND PAYMENTS**

12.1 Class Members will be entitled to only their per claim point distribution, described above in Section 3.2, subject to verification by the Settlement Administrator.

12.2 Payments will be made to Class Members either via Active Account credit or via physical check mailed to the last known address, as outlined in Section 3.2 of this Agreement.

12.3 The Settlement Administrator shall mail distribution checks to be drawn on the Net Settlement Fund to Class Members without Active Accounts no later than sixty (60) days after the Effective Date; provided, however, that in no event will such payments be made until the Settlement Common Fund is fully funded by Defendant, pursuant to Section 3.1.1 above, and the appropriate per claim point distribution amount is determined.

12.4 Other than any Service Award, the payments or credits set forth above shall be the

only payments or credits to which any Class Member will be entitled pursuant to this Settlement Agreement.

**13. RELEASES**

13.1 The Releasing Parties (as defined in Section 1.2(y) above), upon the Effective Date, hereby fully and irrevocably release and forever discharge the Released Parties (as defined in Section 1.2(x) above), from any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, including any claim under any federal or state law, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any claim under any federal or state law, asserted or which could have been asserted arising from or relating to allegations in the Complaint or an incremental charge for the first $100 of declared value on a package tendered for shipment before December 29, 2013, where the declared value charge was above the minimum charge (collectively the "Released Claims"). Notwithstanding the foregoing, nothing in the Agreement shall release any claim by a shipper arising from or relating to charges for protection other than for the first $100 of declared value for carriage. The Released Claims specifically encompass all packages shipped by any Class Member before December 29, 2013, including packages shipped prior to January 1, 2011, and specifically exclude packages shipped after December 29, 2013.

13.2 Class Representative, on behalf of itself and all Class Members, hereby waives any and all provisions, rights, and benefits conferred by section 1542 of the California Civil Code or any comparable statutory or common law provision of any other jurisdiction, including, but not limited to Michigan. California Civil Code Section 1542 reads as follows:

Certain Claims Not Affected By General Release:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**.

Class Representative, on behalf of itself and of all Class Members, expressly acknowledges that Class Representative and the Class Members are waiving the protections of section 1542 and of any comparable statutory or common law provision of any other jurisdiction, including Michigan.

13.3 Subject to the Court's entry of the Judgment, the Released Parties hereby completely release any and all claims and causes of action they may have had against the Plaintiff and Class Counsel relating to the Litigation.

13.4 Notwithstanding the entry of Judgment and without affecting the finality of same, the Court shall retain jurisdiction of the Litigation until such time as the Court determines that the Settlement is fully consummated according to the terms and conditions of this Agreement.

**14. AMENDMENT**

14.1 This Agreement may be modified, amended or supplemented only by written agreement signed by or on behalf of all Parties and, if such modification, amendment or supplement is to be executed and become effective subsequent to the entry of the Preliminary Approval Order, only with the approval of the Court.

**15. AUTOMATIC TERMINATION OF SETTLEMENT AGREEMENT AND TERMINATION RIGHTS**

15.1 If, for any reason, this Settlement Agreement does not become final on terms substantially similar to those submitted, or if such approval is reversed or substantially altered on appeal, and if each Party does not agree to any such substantial modification:

(a) Except as expressly stated herein, this Settlement Agreement and all

judicial rulings made pursuant to the provisions of this Settlement Agreement (including all rulings regarding either Class certification or the Class Action Fairness Act) shall automatically become null and void and have no further force or effect, and all proceedings that have taken place with regard to this Settlement Agreement and the Settlement shall be without prejudice to the rights and contentions of the Parties hereto;

(b) This Settlement Agreement, all of its provisions (including, without limitation, any provisions concerning Class certification), and all negotiations, statements, and proceedings relating to this Settlement Agreement shall be without prejudice to the rights of any of the Parties, each of whom shall be restored to their respective positions as of September 1, 2020.

(c) This Settlement Agreement, any provision of this Settlement Agreement, and the fact of this Settlement Agreement having been made, shall not be admissible or entered into evidence for any purpose whatsoever in the Litigation or any other proceeding except as may be necessary to account for the lapse of time due to the Settlement proceedings. Information produced or conveyed in the course of mediation shall remain confidential and subject to the confidentiality terms of the Court's mediation orders, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

(d) The Common Settlement Fund, net of any Settlement Notice and Administration Expenses paid or incurred, shall be promptly transferred to the Defendant.

This section shall survive any termination of this Settlement Agreement.

**16. INCORPORATION OF EXHIBITS**

16.1 All exhibits attached hereto are hereby incorporated by reference as though set forth fully herein and are a material part of this Settlement Agreement. Any notice or other exhibit attached hereto that requires approval of the Court must be approved without substantial

change from its current form in order for this Settlement Agreement to become effective, unless the Parties agree in writing to such changes.

**17. GOVERNING LAW AND COMPLIANCE WITH TERMS OF SETTLEMENT AGREEMENT**

17.1 All questions with respect to the construction of this Settlement Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of Michigan, without giving effect to its law of conflicts of laws.

**18. NO ADMISSION OF WRONGDOING OR THE VALIDITY OF ANY DEFENSE**

18.1 Defendant has indicated its intent vigorously to contest each and every claim in the Litigation, and continues vigorously to deny all of the material allegations in the Litigation. Defendant enters into this Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind. Defendant nonetheless has concluded that it is in its best interests that the Litigation be settled on the terms and conditions set forth in this Settlement Agreement in light of the expense that would be necessary to defend the Litigation, the benefits of disposing of protracted and complex litigation, and the desire of Defendant to conduct its business unhampered by the distractions of continued litigation.

18.2 Neither the execution and delivery of this Settlement Agreement nor compliance with its terms shall constitute an admission or concession by Defendant of the truth of any of the allegations in the Litigation, or of any fault, liability, or wrongdoing of any kind by the Defendant. Defendant expressly denies fault and liability. Moreover, the Parties agree that this Settlement is not, and shall not be represented as, a concession of any weakness or flaw in Plaintiff's claims or of the validity of any defense.

18.3 To the extent permitted by law, this Settlement Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted for claims covered by the releases in this Agreement.

**19. PREPARATION OF SETTLEMENT AGREEMENT, SEPARATE COUNSEL, AND AUTHORITY TO ENTER SETTLEMENT AGREEMENT**

19.1 The Parties and their counsel have each participated and cooperated in the drafting and preparation of this Settlement Agreement. Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any Party as drafter of the Settlement Agreement.

19.2 The Parties each acknowledge that they have been represented by counsel of their own choice throughout all of the negotiations that led to the execution of this Settlement Agreement and in connection with the preparation and execution of this Settlement Agreement.

19.3 The Parties each represent and warrant that each of the Persons executing this Settlement Agreement is duly empowered and authorized to do so.

**20. HEADINGS**

20.1 The headings contained in this Settlement Agreement are for reference only and are not to be construed in any way as part of the Settlement Agreement.

**21. COUNTERPARTS AND AUTHORIZATION**

21.1 This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties did not sign the same counterparts.

**22. ENTIRE AGREEMENT**

22.1 This Settlement Agreement represents the entire agreement between the Parties

with respect to the subject matter hereof and supersede all prior contemporaneous oral and written agreements and discussions. Each of the Parties covenants that it has not entered into this Settlement Agreement as a result of any representation, agreement, inducement or coercion, except to the extent specifically provided herein. Each Party further covenants that the consideration recited herein is the only consideration for entering into this Settlement Agreement and that no promises or representations of another or further consideration have been made by any Person.

**23. CONFIDENTIALITY**

23.1 Any and all negotiations related to the Settlement and the Agreement will remain strictly confidential and shall not be discussed with anyone other than the Class Representative and UPS, their retained attorneys, their accountants and financial or tax advisers, auditors, retained consultants, the Court and its staff, and the mediator Hon. Gerald E. Rosen (Ret.) and his staff, unless otherwise agreed to by Class Counsel and UPS or unless otherwise ordered by the Court.

**24. DOCUMENTS AND DISCOVERY**

24.1 Within sixty (60) Days after the Effective Date, Class Counsel agrees to take steps necessary to destroy or erase all documents and data provided by UPS in the Litigation. Upon request from UPS, Class Counsel shall certify in writing to UPS their compliance with this section. Nothing in this section or the Agreement shall prohibit Class Counsel from retaining a case file, including all pleadings, motion papers, court filings, deposition transcripts, legal memoranda, correspondence, notes, and work product, so long as any exhibits to such documents that contain documents or data marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" continue to be treated as such under the Protective Orders in this case. Further, nothing in this section or in the Agreement shall prohibit Class Counsel from retaining the identifying

information of all Settlement Class Members, nor from contacting those persons, as Class Counsel's clients, regarding this Settlement.

**25. NOTICE**

25.1 All notices, requests, demands, and other communications to the Parties or their counsel required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be emailed and mailed postage prepaid by First Class U.S. Mail to the following persons at their addresses as set forth as follows:

**Plaintiff's and Class Counsel**

Andrew J. McGuinness
ANDREW J. MCGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI 48107-7711
drewmcg@topclasslaw.com

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave. Ste. 200
Cleveland, OH 44113
dkaron@karonllc.com

Sanford P. Dumain
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
sdumain@milberg.com

**Counsel for Defendant United Parcel Service, Inc.**

Gregory B. Koltun
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
gkoltun@mofo.com

25.2 The notice recipients and addresses designated in Section 25.1 above may be changed by written notice pursuant to this Section.

WHEREFORE, the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on the last date of execution by all undersigned representatives of the Parties.

___/s/ Richard L. Immerman___________________________ Date: August 20, 2021

By: Richard L. Immerman
Title: President

**Authorized Representative of Plaintiff and Class Representative BleachTech L.L.C.**

____/s/ Jill Termini________________ ___________________ Date: August 20, 2021

By: Jill Termini

Title: Senior Attorney, UPS Corporate Legal

**Authorized Representative of United Parcel Service, Inc.**

APPROVED AS TO FORM:

___/s/ Andrew McGuinness___________________________ Date: August 20, 2021
ANDREW J. MCGUINNESS, ESQ.

**Plaintiff's and Class Counsel**

___/s/ Gregory Koltun____________ ____________________ Date: August 20, 2021
Gregory Koltun
MORRISON & FOERSTER LLP

**Counsel for United Parcel Service, Inc.**

LIST OF EXHIBITS

A.      (Proposed) Judgment

B       Long Form Notice

C       Short Form Notice & Postcard Notice

D       Form of Publication Notice

E.      (Proposed) Preliminary Approval Order

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and on behalf of all others similarly situated,

Plaintiff

v.

UNITED PARCEL SERVICE, INC., an Ohio Corporation,

Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

**[PROPOSED] JUDGMENT**

The parties having submitted a duly executed Amended Class Action Settlement seeking to settle this action on a classwide basis, the Court having entered a separate Opinion and Order finally approving certification of this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) ("Opinion and Order"), and the Court being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1. This Judgment incorporates the capitalized terms and their definitions as set forth in the Settlement Agreement, attached as Exhibit A and incorporated herein.

2. The Court has jurisdiction over the subject matter of this action,

Plaintiff, individually and as Class Representative, the Class Members, and Defendant.

3.      The Class Notice constituted the best notice practicable under the circumstances and fully complied with the requirements of due process, Federal Rule of Civil Procedure 23, and all applicable statutes and laws.

4.      For the reasons given in the Opinion and Order, the Court finds that the Settlement Agreement is in all respects, fair, reasonable, adequate, and in the best interest of the Class. Any objections to the settlement have been considered and are hereby overruled. Accordingly, the settlement is approved. The Court hereby enters final Judgment approving the settlement as set forth in the Settlement Agreement.

5.      The Court hereby directs the Parties, their counsel, and the Settlement Administrator to implement and consummate the settlement in accordance with the terms of the Settlement Agreement and this Court's orders.

6.      Pursuant to Federal Rule of Civil Procedure 23, the Court finally certifies, for settlement purposes only, the Settlement Class defined as follows:

> Except as excluded below, all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates.

Specifically excluded from the scope of the Class are any packages with a declaration of value that was later voided, any packages shipped under an account of a The UPS Store location, and any packages shipped through any other Third-Party Retailer (as defined by the July 8, 2013, UPS Tariff/Terms and Conditions of Service—United States, attached as Exhibit A to Plaintiff's Amended Complaint) to the extent the claim is asserted by a customer of such Third-Party Retailer, which packages will not be deemed Covered Packages. Also excluded is any entity in which Defendant has or had a controlling interest or that has a controlling interest in Defendant and all The UPS Store locations, and all other authorized UPS shipping agents and partners, including authorized outlets, to the extent packages were not shipped pursuant to a contract with UPS during the Class Period to purchase declared value coverage at the rates set forth in the pricing tables published in the applicable UPS Service Guide. Also excluded are UPS's legal representatives, assigns, and successors; the Court and any member of its staff; and any Putative Class Member who timely submitted a valid Request for Exclusion or was found by the Court to have adequately opted out of the Class.

7.    All Persons who are included within the definition of the Settlement Class and who did not properly file Requests for Exclusion are hereby bound by

this Judgment and by the settlement. Attached as Exhibit B to this Judgment is a list setting forth the name of each Person who the Court finds has properly submitted a Request for Exclusion from the Class. The Persons identified shall not be entitled to benefits from the settlement and are not bound by this Judgment.

8.     The Court further finds that all Class Members and Releasing Parties who have not timely and properly excluded themselves shall, by operation of this Judgment, do fully and irrevocably release and forever discharge the Released Parties, from any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, including any claim under any federal or state law, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any claim under any federal or state law, asserted or which could have been asserted arising from or relating to allegations in the Complaint or an incremental charge for the first $100 of declared value on a package tendered for shipment before December 29, 2013, where the declared value charge was above the minimum charge (collectively the "Released Claims"). Notwithstanding the foregoing, nothing in the Agreement or this Judgment shall release any claim by a shipper arising from or relating to charges for protection other than for the first $100 of declared value for carriage. The Released Claims

specifically encompass all packages shipped by any Class Member before December 29, 2013, including packages shipped prior to January 1, 2011, and specifically exclude packages shipped after December 29, 2013.

9. For a period of three years from the date of the signing of the Settlement Agreement, UPS is hereby enjoined as follows:

(a) United Parcel Service, Inc., in its U.S. Rate and Service Guides shall include the following text in the "fee" column of its Declared Value for Carriage pricing tables:

| | |
|---|---|
| – Value from $100.01 to $300.00 | [fee in dollars] |
| – Value over $300.00, charge for each $100.00 (or portion of $100.00) of the total value declared (from $0.00 to total value declared) | [fee in dollars] |

(c) Without limiting the generality of the foregoing, the following example[1] will be deemed compliant with the foregoing Injunctive Relief:

[1] All dollar figures—including without limitation the incremental declared value charge and minimum declared value charge—shown in this example are illustrative only, and not mandated by this Judgment.

| Available Options | Description | Fee |
|---|---|---|
| **Declared Value for Carriage** | – UPS's liability for loss or damage for each domestic package or international shipment, or to each pallet in a UPS Worldwide Express Freight® Midday or UPS Worldwide Express Freight® shipment is limited to $100.00 without a declaration of value.<br>– The maximum declared value is $50,000.00 per package/$100,000.00 per pallet shipped via UPS Worldwide Express Freight Midday and UPS Worldwide Express Freight services. UPS's liability for loss or damage can be increased up to $50,000.00 per package or $100,000.00 per pallet by making a declaration of value for an additional charge (subject to terms and conditions). Certain domestic packages are eligible for the enhanced maximum declared value of $70,000.00, subject to restrictions set forth in the "UPS Tariff/Terms and Conditions of Service – United States" available at ups.com/terms and also set forth in "Maximum Declared Values" on page 8.<br>– Declarations of value from $100.01 to $300.00 are subject to a charge of $3.45. Declarations of value over $300.00 incur a charge for each $100.00 (or portion of $100.00) of the total value declared, including the first $100.00. For example, a declaration of $950.00 value incurs a charge of $11.50 (10 times $1.15).<br>– For international shipments with a declared value of more than $50,000.00, multiply the total declared value by the rate to determine the declared value charge for the shipment.<br>– For packages tendered to a UPS driver with a declared value amount of more than $1,000.00, the shipper must retain a high-value shipment summary signed by the driver. The UPS Shipping System provides this form when the shipping label is requested.<br>– Declared value charges can be included in charges billed to receivers or third parties. | – Value from $100.01 to $300.00 $3.45<br>– Value over $300.00, charge for each $100.00 (or portion of $100.00) of the total value declared (from $0.00 to total value declared) $1.15<br>– For international shipments with a declared value of more than $50,000.00: $0.009 times the declared value |

(b) UPS may during the period when this injunction is in effect notify Class Counsel of a proposed change of the language or format of the language required by such Injunctive Relief to reflect changes in the law or a change in UPS's business practices (including, for example, changes in the appearance or format of the U.S. Rate and Service Guide). Font or type size do not require advance notice; nor does a change to reflect a change in declared value pricing that does not assess a charge for the first increment of protection (currently $100). If Class Counsel notifies UPS Counsel within seven (7) Days of an objection to the proposed change, and the objection cannot be resolved amicably, UPS may seek leave of Court on shortened notice prior to its proposed modification(s), or, at UPS's option and sole expense, any dispute regarding the proposed change shall be resolved through expedited mediation with the Hon. Gerald Rosen (Ret.) or other

mediator mutually agreeable to the parties.

10. The Court hereby grants Class Counsel's request for attorneys' fees in the amount of $_________, representing ___% of the Settlement Common Fund. The Court next grants Class Counsels' application for reimbursement of costs and expenses in the amount of $________. Finally, the Court awards a Service Award to the Class Representative in the amount of $_______. The Settlement Administrator is hereby directed to pay each of these amounts from the Settlement Common Fund as provided in the Settlement Agreement. Fifty percent of reasonable costs of Notice and administration of the settlement will be paid from the Settlement Common Fund; UPS will pay the other fifty percent.

11. In accordance with Section 3.2.4 of the Settlement Agreement, Class Members with an Active Account with UPS shall receive their calculated distribution of the Net Settlement Fund via account credit. These account credits will be issued by UPS no later than 45 days after this settlement's Effective Date. As to Class Members who do not use their credits, UPS will attempt to locate the Class Member and pay the unused credits in accordance with UPS's regular business practices as to credit balances in inactive accounts. UPS will in no event retain unused credits.

12. For Class Members who do not have an Active Account with UPS, the Settlement Administrator is directed to distribute checks to these Class

Members in the amount of their share of the Net Settlement Fund in accordance with Sections 3.2.6 and 12.3 of the Settlement Agreement.

13. Distribution checks uncashed after 90 days, shall constitute "Unused Class Funds." Unused Class Funds will be donated to the National Consumer Law Center, a § 501(c)(3) non-profit public interest law firm engaged in the education, training, and promotion of consumer protection law, as *cy pres* award, or such other suitable non-profit organization as recommended by Class Counsel and approved by the Court.

14. Neither this Judgment, the Settlement Agreement, the fact of settlement, the settlement proceedings, settlement negotiations, or any related document shall be used as an admission of any act or omission by UPS or any Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by UPS or any other Released Parties, in any action or proceeding in any court, administrative panel or proceeding, or other tribunal, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement.

15. The Parties are authorized without further approval from the Court to agree to such amendments or modifications of the Settlement Agreement and all of its exhibits as shall be consistent in all respects with this Judgment and do not limit the rights of Class Members.

16. Without affecting the finality of this Judgment, this Court retains jurisdiction to enforce and administer the settlement.

**IT IS SO ORDERED.**

Dated: ____________, 2021

______________________________
Hon. Denise Page Hood
United States District Judge

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

| | |
|---|---|
| BLEACHTECH L.L.C., on behalf of itself and all others similarly situated, | Case No. 2:14-cv-12719 |
| Plaintiff, | Hon. Denise Page Hood |
| vs. | CLASS ACTION |
| UNITED PARCEL SERVICE, INC., an Ohio Corporation, | |

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT, FINAL APPROVAL HEARING, AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

This notice ("Notice") advises you of the proposed Class Action Settlement ("Settlement") of the class action lawsuit, *Bleachtech LLC v. United Parcel Service*, Case No. 2:14-cv-12719 (E.D. Mich.) ("Lawsuit"). In the Lawsuit, Plaintiff seeks relief on behalf of itself and all persons or entities who, from January 1, 2011, through December 29, 2013, tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates. In such instances, Plaintiff alleges UPS breached its and Class Members' shipping contracts by overcharging them for the first $100 of declared value for such shipments. UPS denies all allegations of wrongdoing.

Plaintiff's claims ("Class Claims") are described more fully below. You may have received a postcard notice or email if UPS's records reflect that you are a member of the proposed Settlement Class (defined below).

**PLEASE READ THIS NOTICE CAREFULLY.**
**A FEDERAL COURT AUTHORIZED THIS NOTICE.**
**THIS IS NOT A SOLICITATION.**
**YOU HAVE NOT BEEN SUED.**

This case concerns UPS's shipping contract where a shipper, like Plaintiff, purchased additional protection for loss of damage beyond the $100 protection provided by UPS without additional charge. UPS's shipping contract allows shippers to increase UPS's liability beyond $100 by declaring a higher value and paying an additional incremental charge "for each $100.00 (or portion of $100.00) of the total value declared." Plaintiff alleges that from January 1, 2011, through December 29, 2013, UPS breached its shipping contract with Plaintiff and Class Members by

applying the incremental charge to the total value that Plaintiffs declared instead of only to that portion of declared value over $100.

UPS maintains it did not breach its contracts with Plaintiff and Class Members and denies all allegations of wrongdoing. The Court has not determined whether the allegations made by Plaintiffs are correct.

To resolve the Lawsuit, UPS has agreed to pay as part of a Settlement Common Fund $4,850,000, and to pay one-half of the settlement administration expenses, including notice costs. Class Members who do not exclude themselves from the Settlement will be paid from the Net Settlement Fund, via checks to Class Members without active UPS accounts and via credits to Class Members with active UPS accounts. As part of the Settlement, UPS will also stipulate to injunctive relief in the form of changes to language in its applicable U.S. Rate and Service Guides for three years.

**The Settlement resolves all claims against UPS and applies to all members of the Class who do not exclude themselves from the Class by the opt-out deadline.**

The Court in charge of the case still must decide whether to approve the Settlement. The payments and other settlement terms described above will happen only if the Court approves the Settlement and that approval is upheld if there are any appeals. This process is explained in greater detail below.

Your legal rights are affected if you are a member of the Settlement Class, whether or not you act.

**"Settlement Class" means:** Except as excluded below, all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates.

The Settlement Class excludes:

a. Any shipments with a declaration of value that was later voided.

b. Any packages shipped under an account of a The UPS Store.

c. Any entity in which UPS has or had a controlling interest or which has a controlling interest in UPS.

d. The UPS Store locations, and all other UPS Third Party Retailers, including authorized shipping outlets, to the extent their packages were not shipped pursuant to a contract with UPS during the Class Period to purchase declared value coverage at the rates set forth in the pricing tables published in the applicable UPS Service Guide.

e. UPS's legal representatives, assigns, and successors.

f. The Court and any member of its staff.

g. Any Putative Class Member who timely submits a valid Request for Exclusion or is

found by the Court to have adequately opted out of the Class.

**Identification of Other Key Terms:** This Notice contains summary information with respect to the Settlement. The terms and conditions of the Settlement are set forth in the Settlement Agreement signed by the parties (the "Settlement Agreement"). The Settlement Agreement, and additional information with respect to the Lawsuit and the Settlement, is available at **www.UPSdeclaredvaluesettlement.com**. If you do not have access to the Internet, you may obtain a copy of the Settlement Agreement by writing to the Settlement Administrator at the address below.

**Reasons for the Settlement:** The Settlement resolves all claims in the Lawsuit against UPS regarding UPS's charges for protection for the first $100 of declared value for carriage. The Settlement is not, and should not be construed as, an admission of any fault or liability whatsoever by UPS, which continues to deny all allegations of wrongdoing. The Plaintiff and Class Counsel believe the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class. The Plaintiff and Class Counsel believe the Settlement provides substantial benefits to all Settlement Class Members as compared to the risks, significant litigation costs, and delays of proceeding with the Lawsuit.

**Identification of Settlement Administrator and Class Counsel:** The Settlement Administrator is Epiq Class Action & Claims Solutions, Inc. You should first try to answer any questions you may have about the Settlement or the Lawsuit by reviewing the information available on the website for this Settlement, www.UPSdeclaredvaluesettlement.com, or by calling 1-888-XXX-XXX. You can also write to the Settlement Administrator at the following address:

UPS Declared Value Settlement Administrator
P O Box XXX
Portland, OR XXXXX-XXXX

The Court has preliminarily appointed the following attorneys as Class Counsel: Andrew J. McGuinness, Esq. of Ann Arbor, Michigan, Karon LLC of Cleveland, Ohio, and Milberg Phillips Grossman LLP of New York, New York.

**Please do not contact the Court about this settlement**; its personnel will not be able to answer your questions.

**PLEASE READ THIS NOTICE CAREFULLY. IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THE POST CARD OR EMAIL NOTICE WAS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED, YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY, ALTHOUGH YOU MAY HIRE AN ATTORNEY AT YOUR OWN EXPENSE IF YOU SO CHOOSE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING TO RECEIVE YOUR SETTLEMENT BENEFITS. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

3

**Questions? Visit www.UPSdeclaredvaluesettlement.com or call 1-888-XXX-XXXX.**
**DO NOT CALL THE COURT as it cannot answer your questions.**

| ACTIONS YOU MAY TAKE IN THE SETTLEMENT | |
|---|---|
| NO ACTION IS NECESSARY. | If you want to remain in the Settlement Class and do not wish to object to the Settlement, you do not need to do anything. |
| YOU CAN OPT OUT by [Date], 2021. | If you do not want to be part of the Settlement Class or to participate in the Settlement, you can exclude yourself ("opt out") by following the instructions below. You must opt out by the deadline to preserve claims you may have against UPS that are being released or resolved as part of the Settlement. |
| CLASS MEMBERS CAN OBJECT NO LATER THAN [Date], 2021]. | If do not opt out and you wish to object to any part of the Settlement, you can write to the Court and explain why you do not like the Settlement. |
| CLASS MEMBERS CAN ATTEND THE HEARING ON [Date] 2021, BY FILING A NOTICE OF INTENTION TO APPEAR NO LATER THAN [Date], 2021. | If you have not opted out and have submitted a written objection to the Court, you can ask to address the Court about the fairness of the Settlement during the Final Approval Hearing. You may enter your appearance in Court through an attorney (at your own expense) if you wish. |
| | |

## WHAT THIS NOTICE CONTAINS

**Summary of Settlement ..... 5**

**Basic Information ..... 6**

1. Why did I get the postcard or email notice ..... 6
2. What is the lawsuit about? What has happened so far? ..... 7
3. Why is this case a class action? ..... 8
4. Why is there a Settlement? ..... 8

**Who Is In The Settlement? ..... 8**

5. How do I know whether I am part of the Settlement? ..... 8

**The Settlement Benefits – What you Get ..... 9**

6. What does the Settlement provide? ..... 9
7. How will the Settlement be distributed? ..... 9
8. How much will my payment be? ..... 10
9. When will I Receive my payment? ..... 10

4

**Questions? Visit www.UPSdeclaredvaluesettlement.com or call 1-888-XXX-XXXX.**
**DO NOT CALL THE COURT as it cannot answer your questions.**

10. What rights am I giving up in the Settlement? ........................................................ 10
**The Lawyers Representing You ........................................................................................ 11**
11. Do I have a lawyer in the case? ...................................................................................... 10
12. How will the lawyers be paid?........................................................................................ 10
**Excluding Yourself From the Settlement ......................................................................... 11**
13. Can I exclude myself from the Settlement?............................................................. 11
14. If I do not exclude myself from the Class, can I sue UPS for the same thing later? ........11
15. If I exclude myself, can I get money from this Settlement? ...................................... 12
**Objecting to the Settlement ................................................................................................ 12**
16. How do I tell the Court if I don't like the Settlement? ............................................... 12
17. What is the difference between objecting and requesting Exclusion?........................ 13
**The Court's Final Approval Hearing .................................................................................. 14**
18. When and where will the Court decide whether to approve the Settlement? ............. 14
19. Do I have to attend the hearing? ..................................................................................... 15
20. May I speak at the hearing? .......................................................................................... 15
**If You Do Nothing.............................................................................................................. 14**
21. What happens if I do nothing at all? ............................................................................ 15
**Getting More Information .................................................................................................. 15**
22. How do I get more information?.................................................................................... 15

As discussed more fully below, the Lawsuit was filed against UPS in federal district court in Detroit, Michigan. The named plaintiff ("Named Plaintiff" or "Class Representatives") is BleachTech LLC.

A copy of the Amended Complaint and other documents relevant to this Settlement are available at www.UPSdeclaredvaluesettlement.com.

## SUMMARY OF SETTLEMENT

The Settlement Class is defined above, and generally consist of all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates. The Settlement provides monetary benefits to the Settlement Class of $4,850,000 into a Settlement Common Fund, and UPS will also pay one-half of the settlement administration and notice costs. In addition, the Settlement provides changes to the language of UPS's U.S. Rate and Service Guide's pricing tables for at least three years.

Class Counsel believe the Settlement provides substantial benefits to the Class. UPS disputes that it has overcharged under the language of its U.S. Rate and Service Guides, and a jury might agree. Moreover, UPS asserts that only claims dating back 180 days or less from December 29, 2013,

potentially qualify for Plaintiff's claim as opposed to those dating back to January 1, 2011, which is the scope of the Settlement Class.

As with any litigation, the Parties would face an uncertain outcome if the case were to continue. Continued litigation of this case may result in a judgment or verdict greater or less than the recovery under the Settlement Agreement, or result in no recovery at all. Throughout the Lawsuit, Plaintiff and UPS have disagreed on liability and damages. UPS denies all allegations of wrongdoing. Plaintiff disagrees.

Class Counsel represent that, among other things, (1) they have conducted an extensive investigation into the facts, circumstances, and legal issues associated with the allegations made in this case; (2) they believe, based on the risks of litigation, the time necessary to achieve a complete resolution through litigation, the complexity of the claims set forth in the Amended Complaint, and the benefit accruing to Class Members under the Settlement, that the Settlement will provide a substantial benefit to the Settlement Class, and that, when that benefit is weighed against the risks of continuing the Litigation, the Settlement represents a reasonable, fair, and adequate resolution of the claims presented; and (3) they believe the Settlement will provide the Settlement Class with much of the benefits and protections they would have received if the case were litigated to a conclusion and Plaintiff prevailed.

UPS has denied, and continues to deny, the validity of all claims asserted in the Amended Complaint. The Settlement is not evidence of liability of any type. Plaintiff, on the other hand, continues to deny the validity of all defenses asserted by UPS. Nevertheless, the Parties have taken into account the uncertainty and risks inherent in the Lawsuit and have concluded that it is desirable that the Lawsuit be fully and finally settled on the terms and conditions set forth in the Settlement Agreement solely to avoid further risk, significant cost, expense, and time associated with continued litigation.

## BASIC INFORMATION

### 1.  Why did I get the postcard or email notice?

If you received a postcard or email or learned of one addressed to you associated with this class action, then according to UPS's records during the Class Period you contracted with UPS to ship one or more packages on which you purchased additional protection for loss or damage from UPS over $100 and are a member of the Settlement Class (or paid charges for such packages).

The Court has directed that postcard and/or email notice be sent to you, and that this Class Notice be made available to you because as a potential member of the Settlement Class you have a right to know about the proposed Settlement before the Court decides whether to approve it. If the Court approves the Settlement, and all related objections and appeals are favorably resolved, UPS will provide to the Class the $4,8500,000 and additional monetary relief in the form of payment of one-half of settlement administration and notice costs, as described in this Class Notice and as detailed in the Settlement Agreement.

This Notice explains generally the case, the Settlement, and your legal rights. It also informs you of a hearing (the "Final Approval Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement and to consider Class Counsel's application for their attorneys' fees and reimbursement of litigation expenses, as well as an application for any service awards for the Class Representative.

The Final Approval Hearing will be held at [____ p.m. on Date], 2021, before the Honorable Denise Page Hood, Courtroom 701, in the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231, W. Lafayette Blvd., Detroit, Michigan. The Court may schedule the hearing via video conference or teleconference. At or following the hearing, the Court will determine:

(a) Whether the Settlement Class should be certified as a class under the requirements of Federal Rules of Civil Procedure 23;

(b) Whether the Settlement Class has received adequate notice of the Settlement to satisfy due process;

(c) Whether the requirements of the Class Action Fairness Act have been satisfied;

(d) Whether the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

(e) Whether final judgment approving the Settlement Agreement should be entered;

(f) Whether to grant a Service Award to Plaintiff as the Class Representative, and, if so, the amount; and

(g) Whether to award attorneys' fees and litigation expenses to counsel who represent members of the Settlement Class and, if so, in what amounts.

This Notice is not an expression of the Court's opinion on the merits of any claim in this case, and the Court still needs to decide whether to approve the Settlement. If the Court approves the Settlement, the payments by UPS described above will be made after all related appeals, if any, are favorably resolved. It is always uncertain whether such appeals can be favorably resolved, and resolving them can take time, perhaps more than a year.

**2. What is the lawsuit about? What has happened so far?**

On July 11, 2014, plaintiffs Joe Solo and BleachTech filed a putative class action complaint against UPS in the United States District Court for the Eastern District of Michigan, Case No. 2:14-cv-12719. On December 30, 2020, with leave of Court, BleachTech filed an Amended Complaint that excluded Joe Solo as a party, and Mr. Solo is not party to the Settlement Agreement between Plaintiff BleachTech and UPS.

Plaintiff's Amended Complaint alleges that UPS breached its contracts with Plaintiff and Class Members and seeks compensatory, declaratory, and injunctive relief. Plaintiff seeks relief on behalf of itself and all persons or entities who, during the Class Period, tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates. In such instances, Plaintiff alleges UPS breached its and Class Members' shipping contracts by overcharging them for the first $100 of declared value for such shipments. UPS denies Plaintiff's allegations and denies that it committed any wrongdoing.

The Parties and Class Counsel have been actively engaged in this and related litigation for almost seven years. UPS has filed several motions to dismiss Plaintiff's claims. Three appeals to the United States Court of Appeals for the Sixth Circuit have occurred. The Parties have taken depositions. Written discovery has also occurred, and counsel for the Parties have engaged in and

attempted to resolve numerous discovery disputes related to written discovery. Counsel for both sides have reviewed voluminous documents produced in response to their contentious discovery requests. The discovery process has involved substantial expense to UPS in its gathering and review of documents and electronically stored information.

The Parties participated in three mediation sessions before the Hon. Gerald E. Rosen (Ret.), on June 27, 2018, June 26, 2020, and September 1, 2020. At the third session, the Parties reached an agreement in principle to settle the Litigation on the terms set forth in the Settlement Agreement. This process led to a Settlement Agreement signed by the Parties on [Date], 2021.
The Settlement is the product of intensive, arm's length negotiations between Class Counsel and UPS's Counsel, with the assistance of an experienced third-party mediator.

**3. Why is this case a class action?**

In a class action, one or more plaintiffs, called "named plaintiff," or (where a class is certified) "class representative," sue on behalf of people who have similar claims. In this case, the Court has determined that it will likely be able to certify the Settlement Class at or after the Final Approval Hearing. The Class Representative (Named Plaintiff) is seeking relief on behalf of the Settlement Class. All the individuals on whose behalf the Class Representative is suing are "Class Members," and they are also referred to in this Notice as members of the Settlement Class. If the Court approves the proposed Settlement, it will resolve the claims of all Class Members on the issues raised in this case. The Honorable Denise Hood Page, Chief United States District Judge for the Eastern District of Michigan, is presiding over this Lawsuit. The Lawsuit seeks relief on behalf of UPS customers nationwide.

In this case, the Named Plaintiff is BleachTech LLC, and it is Class Representative for purposes of this Settlement.

**4. Why is there a Settlement?**

Under the proposed Settlement, the Court will not decide the merits of the case in favor of either the Plaintiff or UPS. By agreeing to a Settlement, Plaintiff and UPS avoid the significant costs, risks, and delays of litigating the Lawsuit.

This Settlement is the product of extensive arm's length negotiations between Class Counsel and UPS's Counsel, including utilizing the services of an experienced mediator. Class Counsel believes that the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the Class.

## WHO IS IN THE SETTLEMENT?

**5. How do I know whether I am part of the Settlement?**

The Court has preliminarily certified this case as a class action for settlement purposes only. You are a member of the Settlement Class if, from January 1, 2011, through December 29, 2013, you tendered to UPS (or you paid for a package to be tendered to UPS if the package was billed to a different account than the shipper) a U.S. origin package under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates. You may have received a postcard or email from the Settlement Administrator or seen a notice published on the internet if you are a member of the Settlement Class.

If you believe you may be a member of the Settlement Class but did not receive a postcard or email notice, immediately contact the Settlement Administrator by mail or phone to confirm from a review of the applicable records whether you are Settlement Class member.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 6.  What does the Settlement provide?

The Settlement provides monetary and non-monetary benefits to the Settlement Class.

Under the Settlement, UPS will make a $4,850,000 payment to a Settlement Common Fund, less the amount that will be distributed via account credit. The Settlement Common Fund also includes UPS's separate payment of 50% of settlement administration costs, including notice costs. UPS will pay the cash payment initially into an interest-bearing account to be established by the Settlement Administrator upon final approval of the Settlement. UPS will issue account credits to Class Members with active UPS accounts. The Settlement Administrator will distribute checks to Class Members who no longer have an active UPS account. The amounts paid (by check or account credit) to each Class Member will be made from the Net Settlement Fund on per claim point basis. This means that, based on data supplied from UPS's records, Class Members will receive two claim points for each Covered Package shipped between July 1, 2013, and December 29, 2013. Class Members will receive one claim point for each Covered Package shipped between January 1, 2011, and June 30, 2013. Class Members who do not exclude themselves from the settlement will not receive compensation for packages shipped prior to January 1, 2011. The Settlement Administrator or UPS will allocate the amount remaining in the Settlement Common Fund after payment of attorneys' fees, litigation expenses, any service awards, and settlement administration expenses, to each Class Member based upon such Class Member's combined claim points relative to the total number of claim points.

Checks issued to Class Members for their settlement payment that remain uncashed after 90 days will constitute "Unused Class Funds." Unused Class Funds will be donated to the National Consumer Law Center, a § 501(c)(3) non-profit public interest law firm engaged in the education, training, and promotion of consumer protection law, including recovery of overcharges of consumers by companies, as a *cy pres* award, or such other suitable non-profit organization as recommended by Class Counsel and approved by the Court.

UPS has also agreed to an injunction requiring certain negotiated changes to the language of its applicable U.S. Rate and Service Guides for three years. Specifically, all future UPS published pricing guides and/or price lists shall include the following text in the "fee" column of its Declared Value for Carriage pricing tables:

| | |
|---|---|
| – Value from $100.01 to $300.00 | [fee in dollars] |
| – Value over $300.00, charge for each $100.00 (or portion of $100.00) of the total value declared (from $0.00 to total value declared) | [fee in dollars] |

After the Settlement becomes final, and during the three-year injunctive relief period, UPS may notify Class Counsel of a proposed change in language or format to reflect changes in the law or a change in UPS's business practices. Font or type size do not require advance notice; nor does a change to reflect a change in declared value pricing that does not assess a charge for the first increment of protection (currently $100). If Class Counsel timely objects to the proposed change and the Parties cannot resolve the dispute, then UPS may seek leave of Court to modify the language or pay for the Parties to resolve the dispute through mediation.

Once the Settlement becomes effective, payment will be credited to Class Members' active accounts or paid by check to Class Members with no active accounts.

The above description of the Settlement is only a summary. The governing provisions are set forth in the Settlement Agreement, which is available at www.UPSdeclaredvaluesettlement.com.

**7. How will the Settlement be distributed?**

This Settlement provides for a non-reversionary common fund settlement, whose net proceeds are to be distributed by the Settlement Administrator and UPS to Class Members. Claims forms are not required; however, Class Members may be required reasonably to (1) attest to the number of Covered Packages they shipped between January 1, 2011, and June 30, 2013, or (2) verify their identity and payment information to the Settlement Administrator if UPS's records are not sufficient to verify the same.

Class Members with Active Accounts with UPS will receive an account credit. These account credits will be issued by UPS no later than 45 days after the Effective Date, as defined in the Settlement Agreement available on the website. If such account credits are not applied (used), UPS will attempt to refund the unused credits in accordance with UPS's regular business practices as to unused account credits. No unapplied account credits will be retained by UPS. UPS shall document by amount and Class Member each account credit issued and certify under oath or declaration the total amount of such credits within 10 days of issuing the credits.

For Class Members who do not have Active Accounts, the Settlement Administrator shall mail checks to each such Class Member for its, his, or her distribution. Distribution checks will be good for 90 days after the date on the check.

**8. How much will my payment be?**

You will receive a share of the Net Settlement Fund on a per claim point basis based on your number of Covered Packages shipped during the Class Period relative to the total such Covered Packages. Class Members will receive two claim points for each Covered Package shipped between July 1, 2013, and December 29, 2013. Class Members will receive one claim point for each Covered Package shipped between January 1, 2011, and June 30, 2013. The Settlement Administrator will divide the Net Settlement Fund by the total number of claim points earned by the Class to determine the value of one claim point ("Claim Point Value"). Each Class Member will be entitled to a share of the Net Settlement Fund equal to the number of claims points that Class Member is entitled to multiplied by the Claim Point Value. The amount of payment per Claim Point Value is unknown at this time.

**9. When will I Receive my Payment?**

The Court will hold a hearing on **[Date], 2021, to decide whether to approve the Settlement. If the Court approves the Settlement, there might be appeals. It is always uncertain how any such appeal will be resolved, and resolving them can take time, perhaps more than a year. After any approval by the Court and assuming that any appeals are decided favorably, it may take several months for the Settlement Administrator to pay the ultimate distribution amounts.

**10. What rights am I giving up in the Settlement?**

If the Settlement is approved, the Court will enter a judgment. This judgment, when it becomes effective, will fully, finally, and forever release all claims asserted or which could have been asserted by Class members against UPS and its past or present employees, agents, officers, directors, shareholders, insurers, attorneys, advisors, consultants, representatives, parents, subsidiaries, affiliates, joint venturers, and divisions, and each of their predecessors, successors, heirs, and assigns (the "Released Parties") based upon the facts alleged in the Complaint. These claims described above are referred to as the "Released Claims." Class Members will release claims as to packages shipped before December 29, 2013, including before January 1, 2011, but not packages shipped after December 29, 2013. See Section 13 of the Settlement Agreement, available at www.UPSdeclaredvaluesettlement.com for details of the release.

**THE LAWYERS REPRESENTING YOU**

**11. Do I have a lawyer in the case?**

Andrew J. McGuinness of Andrew J. McGuinness, Esq., Daniel R. Karon of Karon LLC, and Sanford P. Dumain of Milberg Phillips Grossman LLP, represent Plaintiff and the Settlement Class ("Class Counsel"). You will not be charged by any lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**12. How will the lawyers be paid?**

At the Final Approval Hearing, Class Counsel will apply for an award of attorneys' fees from the Settlement Common Fund, as defined in the Settlement Agreement. The application for attorneys' fees will not exceed 33⅓ % calculated as a percentage of the total Settlement Common Fund (i.e., before deduction of any litigation expenses, settlement administration costs, or other amounts). Class Counsel will also seek reimbursement of litigation costs and any settlement administration expenses they incur from the Settlement Common Fund. These applications are subject to approval by the Court, which may award amounts less that the those requested.

To date, Class Counsel have not received any payment for their services in prosecuting this case on behalf of the Class, nor have Class Counsel been reimbursed for their out-of-pocket expenses. The fees requested by Class Counsel would compensate Class Counsel for their unpaid efforts over seven years to achieve this Settlement for the benefit of Class Members and for their risk in undertaking this representation on a contingency basis.

Class Counsel may also seek approval at the Final Approval Hearing for payment of a service award of up to $5,000 to BleachTech, the Named Plaintiff and Class Representative. Any approved attorneys' fees, expenses, service awards, and one-half of settlement administration costs will be paid from the Settlement Common Fund.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 13. Can I exclude myself from the Settlement?

Yes. If you exclude yourself ("opt out"), you will not be eligible to receive any credit or cash payment and will not be bound by any judgment or release of claims against UPS under the Settlement.

To opt out Settlement Class members must submit a timely and valid Request for Exclusion. To be timely, the Requests for Exclusion must be emailed or postmarked no later than thirty (30) days before the Final Approval Hearing (the "opt-out deadline"). To be valid, a Request for Exclusion must: (a) identify the full name and address of the Putative Class Member requesting exclusion; (b) be dated and personally signed (original or electronic signatures accepted) by the Putative Class Member or responsible individual requesting exclusion, or by a person documented to be acting under valid power of attorney, guardianship, or other legal authority to sign on behalf of the Putative Class member or his estate; (c) identify the unique ID of the notice received or UPS account numbers under which shipments were made (or paid); and (d) contain a statement that reasonably indicates a desire to be excluded from the settlement.

The following statement shall be deemed to meet the requirement of subpart (c) of the preceding sentence: "I want to opt out of the Settlement Class certified in the *BleachTech v. UPS* case." Additionally, the request for exclusion must provide the unique I.D. number contained on a postcard or email sent by the Settlement Administrator to the potential Settlement Class member; the UPS account number; and the full name and address of the Settlement Class Member. Requests for Exclusion that do not meet these requirements will not operate to exclude a Class member from the Settlement. Mass or class opt-outs will not be allowed.

Please mail requests for exclusion to:

UPS Declared Value Settlement Administrator
P O Box XXX
Portland, OR XXXXX-XXXX

Please email requests for exclusion to: ______________________________

Only Class members who do not opt out may object to the Settlement.

### 14. If I do not exclude myself from the Class, can I sue UPS for the same thing later?

No. Unless you exclude yourself from the Class by submitting a timely and valid Request for Exclusion as detailed above, you may not bring a lawsuit or claim in any forum asserting any of the Released Claims against UPS.

### 15. If I exclude myself, can I get money from this Settlement?

No. But you will retain any right you may have to bring a lawsuit, to continue to pursue an existing lawsuit, or to be part of a different lawsuit asserting a Released Claim against UPS.

## OBJECTING TO THE SETTLEMENT

### 16. How do I tell the Court if I don't like the Settlement?

Class Members who do not request exclusion from the Class may object to the Settlement. Class Members who choose to object to the settlement must file written notices of intent to object with

the Court and serve copies of any such objection on counsel for the Parties. The written objection and supporting papers must: (1) clearly identify the case name and number "*BleachTech v. UPS,* Case No. 2:14-cv-12719"; (2) be filed with the Court no later than 30 Days before the Final Approval Hearing; (3) be postmarked and mailed to Class Counsel and Defendants' Counsel at the addresses listed in this Notice no later than 30 Days before the Final Approval Hearing, (unless the Class Member filed an objection via the Court's ECF system, such that copies will be transmitted electronically to these counsel); (4) set forth the full name, current address, and telephone number, and the unique I.D. number assigned by the Settlement Administrator of the objecting Class Member; (5) set forth a statement of the position the Class Member wishes to assert, including the factual and legal grounds for the position; (6) state whether the Class Member intends to appear and requests to be heard, in person or through counsel, at the Final Approval Hearing, and set forth the names and a summary of testimony of any witnesses that the Class Member might want to call in connection with the objection; (7) provide copies of all documents that the Class Member wishes to submit in support of his or her position; (8) provide the name(s), address(es) and phone number(s) of any attorney(s) representing the Class Member; (9) identify by case name, case number and court each class action settlements objected to by the Class Member and his or her counsel (if any) in the last three years; and (10) include the Class Member's signature. If a Class Member, their counsel, or any person with whom they are working in bringing the objection has objected to a class action settlement on more than 3 occasions, the Class Member shall, (i) list all cases in which such objections were filed, and by whom; (ii) state the outcome of the objection; (iii) state the amount of money, if any, paid in connection with the objection to objector, to their counsel, or to anyone else, including by whom such payment was made and whether it was disclosed to the court overseeing the proposed settlement. Only objections fulfilling these requirements will be deemed adequate.

The addresses for filing objections with the Court and service on counsel are listed below. Written objections must be filed with the Court and mailed to the counsel listed below (postmarked or sent via fax or served via the Court's ECF system) by no later than [Date], 2021:

CLERK OF COURT:

Clerk's Office<br>
Theodore Levin U.S. Courthouse<br>
231 W. Lafayette Blvd., Room 564<br>
Detroit, MI 48226

CLASS COUNSEL:

Andrew J. McGuinness<br>
ANDREW J. MCGUINNESS, ESQ.<br>
P O Box 7711<br>
Ann Arbor, MI 48107<br>
Fax: (734) 786-9935

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave. Ste. 200
Cleveland, OH 44113
Fax: (216) 241-8175

Sanford P. Dumain
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Fax: (212) 868-1229

COUNSEL FOR UPS:

Gregory B. Koltun
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Fax: (310) 892-5454

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY MEMBER OF THE SETTLEMENT CLASS WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFF.**

### 17. What is the difference between objecting and requesting Exclusion?

Objecting is simply telling the Court you do not like something about the proposed Settlement. Objecting does not prevent you from participating and recovering money in the Settlement. But you can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

### 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing at **[Time, on Date], 2021, at the United States District Court for the Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, Michigan, Courtroom No. 716. The Court may schedule the Final Approval Hearing via videoconference or teleconference. Check the settlement website for updates.

**YOU DO NOT NEED TO ATTEND THE FINAL APPROVAL HEARING.**

At the hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the Final Approval Hearing, the Court will decide whether to approve the Settlement. The Court will also rule on the motions for attorneys' fees and expenses and service award to the Plaintiff. It is unknown how long the hearing or these decisions will take.

**19. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. You are welcome to attend at your own expense. If you file and mail an objection, you do not have to attend the hearing to talk about it. If you filed and served on counsel for the Parties your objection on time, it will be before the Court when the Court considers whether to approve the Settlement as fair, reasonable, and adequate. At your own expense, you may also have your own lawyer attend the Final Approval Hearing, but such attendance is not necessary.

**20. May I speak at the hearing?**

If you are a member of the Settlement Class and you have filed a timely objection, you may ask the Court for permission to speak during the Final Approval Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Approval Hearing in *BleachTech v. UPS,* Case No. 2:14-cv-12719." Be sure to include your name, address, telephone number, and signature. Your Notice of Intention to Appear must be served on the attorneys listed in Paragraph 16, above, postmarked no later than **[Date] 2021, and must also be filed with the Clerk of the Court no later than **[Date], 2021.

The Final Approval Hearing may be delayed by the Court without further notice to the Class. If you wish to attend the hearing, you should confirm the date and time on the settlement website or check with Class Counsel.

**IF YOU DO NOTHING**

**21. What happens if I do nothing at all?**

If you do nothing and you are a Class member, your claims against UPS will be released if the Settlement is approved.

**GETTING MORE INFORMATION**

22**. How do I get more information?**

This Notice summarizes the proposed Settlement. Full details of the Settlement are set forth in the Settlement Agreement. You may read or download a copy of the Settlement Agreement at the Settlement website at the URL provided in this Notice, by calling the listed toll-free number, or by making a written request and mailing it to the Settlement Administrator. Copies of the Settlement Agreement, as well as the motion seeking preliminary approval of the Settlement and the Preliminary Approval Order, may be viewed at www.UPSdeclaredvaluesettlement.com. **Do not call UPS or the Court with questions about the settlement.**

DATED: [Date], 2021

By Order of the Court
Hon. Denise P. Hood
United State District Judge

16

**Questions? Visit www.UPSdeclaredvaluesettlement.com or call 1-888-XXX-XXXX.**
**DO NOT CALL THE COURT as it cannot answer your questions.**

# EXHIBIT C

UPS Declared Value Settlement Administrator
PO Box _______
[City], [State] [Zip]

PRESORTED
FIRST-CLASS
MAIL
US POSTAGE
**PAID**
CITY, ST
PERMIT #000

# Important Notice About a Class Action Settlement

<<BARCODE>>
<<First1>> <<Last1>>
<<CO>>
<<Addr2>>
<<Addr1>>
<<CITY, ST, ZIP>>
<<COUNTRY>>

www.UPSdeclaredvaluesettlement.com 1-888-XXX-XXXX

Legal Notice Legal Notice

**If, from January 1, 2011, through December 29, 2013, you shipped directly with UPS a U.S. origin package with a declared value in excess of $300 pursuant to UPS's published non-Retail rates or in excess of $200 pursuant to UPS's published Retail rates, you might be eligible for a payment from a class action settlement.**

A Settlement has been reached in a class action lawsuit involving UPS's charges for its declared value service, which covers liability for loss or damage over $100 for parcels shipped pursuant to UPS's published shipping rates. UPS's shipping contract allows shippers to increase UPS's liability limit by declaring a higher value and paying an additional charge "for each $100.00 (or portion of $100.00) of the total value declared." Plaintiff alleges that from January 1, 2011, through December 29, 2013, UPS breached its shipping contract with Plaintiff and Class Members by applying the incremental charge to the total value that shippers declared instead of only to that portion of declared value over $100. UPS denies all allegations of wrongdoing. The Court has not determined whether the allegations are correct.

**Who's Included?** The Class includes all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates. Excluded from the class are customers who shipped packages through The UPS Store franchises or other Third-Party Retailers as more fully described in the Settlement Agreement and full Notice available at the website below.

**What Are the Settlement Terms?** UPS has agreed to pay $4,850,000 into a Settlement Common Fund and to pay one-half of the settlement administration expenses, including notice costs. The Settlement Common Fund will be used to pay costs, expenses, any service award to the Class Representative, and attorneys' fees. UPS has also agreed to language changes to its Rate and Service Guides.

**How Can I Get a Payment?** Payments owed to Class Members with an active UPS account will receive an account credit. If a Class Member no longer has an active UPS account, the payment will be paid by check. Class Members do not need to file a claim.

**Your Rights May Be Affected.** If you do not want to be bound by the Settlement, you must exclude yourself by **[Date, 2021]**. If you do not exclude yourself, you will release claims you may have against UPS as more fully described in the

Settlement Agreement and full Notice available at the website listed below.

If you stay in the Class you may object to the Settlement by **[Date, 2021].** The full Notice explains how to exclude yourself from the Class or object to the Settlement. The Court will hold a hearing on **[Date, 2021]** (subject to change) to consider whether to approve the Settlement and request for attorneys' fees of up to one-third of the total Settlement Common Fund, plus expenses, and a Class Representative service award of up to $5,000. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call 1-888-xxx-xxxx or visit **www.UPSdeclaredvaluesettlement.com.**

UPS Declared Value Settlement Administrator
PO Box _______
[City], [State] [Zip]

Important Notice About a Class Action Settlement

**If, from January 1, 2011, through December 29, 2013, you shipped directly with UPS a U.S. origin package with a declared value in excess of $300 pursuant to UPS's published non-Retail rates or in excess of $200 pursuant to UPS's published Retail rates, you might be eligible for a payment from a class action settlement.**

<<MAIL ID>>

<<NAME LINE 1>>
<<NAME LINE 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A Settlement has been reached in a class action, lawsuit involving UPS's charges for its declared value service, which covers liability for loss or damage over $100 for parcels shipped pursuant to UPS's published shipping rates. UPS's shipping contract allows shippers to increase UPS's liability limit by declaring a higher value and paying an additional charge "for each $100.00 (or portion of $100.00) of the total value declared." Plaintiff alleges that from January 1, 2011, through December 29, 2013, UPS breached its shipping contract with Plaintiff and Class Members by applying the incremental charge to the total value that shippers declared instead of only to that portion of declared value over $100. UPS denies all allegations of wrongdoing. The Court has not determined whether the allegations are correct.

**Who's Included?** The Class includes all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates. Excluded from the class are customers who shipped packages through The UPS Store franchises or other Third-Party Retailers as more fully described in the Settlement Agreement and full Notice available at the website below.

**What Are the Settlement Terms?** UPS has agreed to pay $4,850,000 into a Settlement Common Fund and to pay one-half of the settlement administration expenses, including notice costs. The Settlement Common Fund will be used to pay costs, expenses, any service award to the Class Representative, and attorneys' fees. UPS has also agreed to language changes to its Rate and Service Guides.

**How Can I Get a Payment?** Payments owed to Class Members with an active UPS account will receive an account credit. If a Class Member no longer has an active UPS account, the payment will be paid by check. Class Members do not need to file a claim.

**Your Rights May Be Affected.** If you do not want to be bound by the Settlement, you must exclude yourself by **[Date, 2021]**. If you do not exclude yourself, you will release claims you may have against UPS as more fully described in the Settlement Agreement and full Notice available at the website listed below.

If you stay in the Class you may object to the Settlement by **[Date, 2021]**. The full Notice explains how to exclude yourself from the Class or object to the Settlement. The Court will hold a hearing on **[Date, 2021]** (subject to change) to consider whether to approve the Settlement and request for attorneys' fees of up to one-third of the total Settlement Common Fund, plus expenses, and a Class Representative service award of up to $5,000. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call 1-888-xxx-xxxx or visit **www.UPSdeclaredvaluesettlement.com**.

# EXHIBIT D

*BleachTech v. UPS*

## Banner Advertisement

300x250 Online Display Banner

Frame 1 (Visible 6.5 seconds):

Did you ship a package before December 30, 2013 via UPS with a declared value in excess of $300 (non-Retail rates) or $200 (Retail rates)?

Frame 2 (Visible 4.5 seconds):

Frame 3 (Visible 4 seconds):



*BleachTech v. UPS*

728x90 Online Display Banner

Frame 1 (Visible 6.5 seconds):

Did you ship a package before December 30, 2013
via UPS with a declared value in excess of $300
(non-Retail rates) or $200 (Retail rates)?

Frame 2 (Visible 4.5 seconds):

If so, you may be eligible for a payment
from a class action settlement.

Frame 3 (Visible 4 seconds):

Visit www.UPSdeclaredvaluesettlement.com
for more information.



# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and on behalf of all others similarly situated,

Plaintiff

v.

UNITED PARCEL SERVICE, INC., an Ohio Corporation,

Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CONDITIONAL CLASS ACTION SETTLEMENT AND DIRECTING CLASS NOTICE**

WHEREAS, Plaintiff, BleachTech LLC, and Defendant, United Parcel Service, Inc., an Ohio Corporation (the "Parties") have entered into an Amended Class Action Settlement Agreement ("Settlement Agreement") subject to the Court's final approval;

WHEREAS, Plaintiff has moved pursuant to Rule 23(e), without Defendant's opposition, for preliminary approval of the settlement on a classwide basis under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), conditioned upon the Court's final approval;

WHEREAS, it appears to the Court that the settlement described in the

.

Settlement Agreement was the result of extensive arms'-length settlement negotiations between the Parties with a neutral mediator;

WHEREAS, Plaintiff asks the Court to conditionally certify the Class as defined below for settlement purposes, appoint it as class representative, and appoint class counsel; and

WHEREAS, Plaintiff asks this Court to appoint Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator to authorize class notice as detailed in the moving papers, set a Final Approval Hearing date, and authorize the Parties and Epiq Class Action & Claims Solutions, Inc. to take steps to implement the settlement subject to final approval and certification of a settlement class;

NOW THEREFORE, the Court hereby orders as follows:

1. Plaintiff's motion for preliminary approval is granted. The Court finds, based on the parties' submissions, that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the Class for purposes of judgment on the proposal.

2. The Court hereby directs the Parties and the Settlement Administrator to notify the Class of the proposed settlement pursuant to the notice plan set forth in the Settlement Agreement, as highlighted below.

3. ***Final Approval Hearing.*** The Final Approval Hearing will be held before this Court**, [Zoom hearing information to be obtained from Clerk, or]** in

Courtroom ___, at the United States District Court of the Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, Michigan at __:__ _.m. on _________, 2021, or such other place, time, and date set by the Court.

4. Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meanings in this Order.

5. ***Class.*** For settlement purposes only and contingent upon Final Approval by this Court, the Court provisionally certifies the following class:

> Except as excluded below, all persons or entities who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account than the shipper) one or more U.S. origin packages under contract with UPS with a declared value in excess of $300 charged pursuant to UPS's published non-Retail rates or in excess of $200 charged pursuant to UPS's published Retail rates.

Specifically excluded from the scope of the Class are any packages with a declaration of value that was later voided, any packages shipped under an account of a The UPS Store location, and any packages shipped through any other Third-Party Retailer (as defined by the July 8, 2013, UPS Tariff/Terms and Conditions of Service—United States, attached as Exhibit A to Plaintiff's Amended Complaint) to the extent the claim is asserted by a customer of such Third-Party Retailer, which packages will not be deemed Covered Packages. Also excluded is any entity in which Defendant has or had a controlling interest or that has a controlling interest in Defendant and

all The UPS Store locations, and all other authorized UPS shipping agents

and partners, including authorized outlets, to the extent packages were not

shipped pursuant to a contract with UPS during the Class Period to purchase

declared value coverage at the rates set forth in the pricing tables published

in the applicable UPS Service Guide. Also excluded are UPS's legal

representatives, assigns, and successors; the Court and any member of its

staff; and any Putative Class Member who timely submitted a valid Request

for Exclusion or was found by the Court to have adequately opted out of the

Class.

6. ***Appointments.*** The Court appoints BleachTech LLC provisionally as

Class Representative. The Court appoints Andrew J. McGuinness, Daniel R.

Karon, and Sanford P. Dumain as interim Class Counsel pursuant to Rule 23(g)(3).

7. ***Notice.*** The Court approves Epiq Class Action & Claims Solutions,

Inc. to serve as Settlement Administrator. Under Class Counsel's direction and in

accordance with the Court's order, the Settlement Administrator will provide

Notice as provided in the Settlement Agreement, respond to inquiries from

potential Class Members, and receive Requests for Exclusion. Defendant will pay

for fifty percent of the Settlement Administrator's reasonable services and

expenses in connection with administering the settlement. The remaining fifty

percent shall be paid from the Settlement Common Fund, subject to review by

Class Counsel.

8. The Settlement Administrator shall disseminate Notice to the potential Class Members by the following means:

a. For all Class Members for whom Defendant has supplied an email address, the Settlement Administrator shall send via email a Short Form Notice by ***[30 days after this order's entry]*** (the "Notice Date").

b. The email Short Form Notice shall direct Class Members to the Settlement Website, www.UPSdeclaredvaluesettlement.com where the full Long Form Notice, including opt out instructions and electronic Request for Exclusion Form, is available.

c. For Class Members without an email address on file with Defendant or whose Short Form Notice sent via email is returned as undeliverable, the Settlement Administrator will send via United States Mail, First Class postage prepaid, a copy of the Postcard Notice by the Notice Date.

d. The Postcard Notice shall direct Class Members to the Settlement Website where the full Long Form Notice, including opt out instructions and electronic Request for Exclusion Form, is available.

e.        The Postcard Notice shall be sent to the last addresses provided to the Settlement Administrator by UPS.

f.        For Class Members whose Postcard Notices are returned as undeliverable, the Settlement Administrator shall use commercially reasonable efforts to locate forwarding or updated addresses and resend the Postcard Notice to such updated addresses.

g.        No later than the Notice Date, the Settlement Administrator shall implement an Internet publication notice program through the Google Display Network for 30 days duration targeting at least 14 million impressions. The Publication Notice shall use banner advertisements substantially in the form of Exhibit D to the Settlement Agreement.

h.        Defendant is responsible for notifying the appropriate federal and state officials of this Settlement Agreement as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

i.        No fewer than 15 days before the Final Approval Hearing, the Settlement Administrator shall provide the following information to counsel for the Parties:

        i.   The number of email Short Form Notices sent to Putative Class Members;

ii. The number of Postcard Notices sent to Putative Class Members;

iii. The approximate number of visits to the Settlement Website from the date of this Order's entry;

iv. Any information about objections to the settlement that the Settlement Administrator has not previously forwarded;

v. Any other tracking information reasonably requested by either Party's counsel; and

vi. A report stating the number of Putative Class Members who have submitted timely and valid Requests for Exclusion, including a listing of the names and addresses of such Opt Outs, and reporting the number of claim points allocated to the Putative Class Members who have submitted timely and valid Requests for Exclusion divided by the total claim points available to the Settlement Class, as calculated by the Settlement Administrator (the "Exclusion Percentage").

j. Class Counsel shall file the list of Opt-Outs not less than seven (7) days before the Final Approval Hearing. Class Counsel's submission shall differentiate between valid Opt-Outs and invalid Opt-Outs as determined by the Settlement Administrator.

9. The Court finds that the dissemination of Notice in the manner described above constitutes reasonable notice and the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, and is consistent with Federal Rule of Civil

Procedure 23 and the Due Process Clause of the United States Constitution.

10. ***Opting Out.*** Putative Class Members who wish to exclude themselves from the Class, the Settlement, its benefits, and the release of claims pursuant to the Settlement must submit a Request for Exclusion. To be effective, the Request for Exclusion must be valid and timely.

11. To be valid, a Request for Exclusion must:

    a. identify the full name and address of the Putative Class Member requesting exclusion;

    b. be dated and personally signed (original or electronic signatures accepted) by the Putative Class Member, responsible individual requesting exclusion, or person documented to be acting under valid power of attorney, guardianship, or other legal authority to sign on behalf of the Putative Class member or his or her estate;

    c. contain a statement that reasonably indicates a desire to be excluded from the settlement. The following statement meets this requirement: "I want to opt out of the Settlement Class certified in the Bleachtech v. UPS case"; and

    d. provide the unique I.D. number contained in the Settlement Administrator's email or postcard sent or the Putative Class Member's UPS account number(s).

12. To be timely, the Requests for Exclusion must be emailed or postmarked no later than 30 days before the Final Approval Hearing (the "opt-out deadline"). If the opt-out deadline falls on a Sunday or federal holiday, the deadline is the next day that is not a Sunday or federal holiday.

13. Requests for Exclusion that do not meet these requirements will not

exclude a Putative Class Member from the Settlement. Mass or class opt-outs are not allowed.

14.    The Short Form, Postcard, and Long Form Notices shall state the opt-out deadline. Request for Exclusion Forms shall be available for download from the Settlement Website and available by the Settlement Administrator through First Class Mail. A Class Member who submits a valid and timely Request for Exclusion is not eligible to receive any Settlement Benefit.

15.    The Settlement Administrator shall log all Requests for Exclusion and shall forward the log to counsel for the Parties by 15 business days after the opt-out deadline.

16.    By seven business days after the opt-out deadline, counsel for the Parties shall forward to the Settlement Administrator any Requests for Exclusion they have received.

17.    ***Objections.*** Class Members who do not request exclusion from the Class may object to the Settlement. Class Members who object must file with the Court written notices of their intent to object and must serve copies of their objection on counsel for the Parties as set forth below.

18.    Any Class Member who submits a valid objection may appear at the Final Approval Hearing in person, by video or audio feed if the Court orders, or by counsel and may be heard to the extent permitted under applicable law and allowed

by the Court concerning the fairness, reasonableness, and adequacy of the settlement and Class Counsel's application for Service Award, attorneys' fees, and reimbursement of costs and expenses.

19.     Class Members must individually exercise their right to object to the settlement and, except in the case of a deceased or incapacitated Class Member or where a Class Member is represented by counsel, not by another Person acting or purporting to act in a representative capacity.

20.     To be considered valid, an objection must:

a.     identify the case name and number "*BleachTech v. UPS,* Case No. 2:14-cv-12719";

b.     be filed with the Court no fewer than 30 days before the Final Approval Hearing;

c.     be postmarked and mailed to counsel for the Parties at the addresses listed in the Long Form Notice no fewer than 30 days before the Final Approval Hearing (unless the Class Member filed an objection via the Court's ECF system such that copies are transmitted electronically to counsel for the Parties);

d.     set forth the full name, current address, telephone number, and unique I.D. number of the objecting Class Member assigned by the Settlement Administrator;

e.     set forth a statement of the position the Class Member wishes to assert, including the factual and legal grounds for the position;

f.     state whether the Class Member intends to appear and requests to be heard in person or through counsel at the Final Approval Hearing and state the names of any witnesses the Class Member might call in connection with the Objection and summarize these witnesses' testimony;

      g.    provide copies to counsel for the Parties of all documents the Class Member wishes to submit in support of their position;

      h.    provide the names, addresses, and phone numbers of any attorneys representing the Class Member;

      i.    identify by case name, case number, and court all class action settlements objected to by the Class Member and their counsel in the last three years; and

      j.    include the Class Member's signature.

17.    If a Class Member, their counsel, or any person with whom they are working in bringing the objection has objected to a class action settlement on more than three occasions, the Class Member shall:

      a.    list all cases in which such objections were filed, including by whom;

      b.    state the outcome of the objection;

      c.    state the amount of money, if any, paid in connection with the objection to the objector, their counsel, or anyone else, and state by whom such payment was made and whether it was disclosed to the court overseeing the proposed settlement.

18.    Only objections fulfilling the foregoing requirements will be deemed adequate.

19.    Any Class Member who does not file a timely and adequate notice of intent to object in accordance with the foregoing requirements waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the settlement.

20.    To the extent any Class Member objects to the settlement and their

objection is overruled in whole or in part, the Class Member will be forever bound by the Judgment of the Court.

21.    Counsel for the Parties may seek expedited leave from the Court to depose any objector before the scheduled Final Approval Hearing if an objector does not agree to an expedited deposition. Counsel for the Parties may also request expedited production before the deposition of any nonprivileged materials relevant to the objection and proportionate to the needs of this case.

21.    ***Final Approval.*** Class Counsel shall submit a motion for final approval of the settlement by the Court, as well as a motion for attorneys' fees, expenses, and Service Award and any supporting memoranda, declarations, or other statements and materials, no later forty-five (45) days before the Final Approval Hearing. The Parties may submit supplemental memoranda in support of the motions for final settlement approval and attorneys' fees, expenses, and Service Awards no fewer than seven (7) days before the Final Approval Hearing.

22.    The Notice to the Class shall contain a date, time, and location of the Final Approval Hearing, subject to later change by the Court. A Final Approval Hearing will occur seventy-five (75) days from the date the Court enters its order granting preliminary approval of the Settlement Agreement but not less than 100 days after Class Counsel files the Motion for Preliminary Approval of the settlement.

23. At the Final Approval Hearing the Court will consider:

a. the fairness, reasonableness, and adequacy of the settlement and whether to approve it;

b. whether to grant the Injunctive Relief set forth in the Settlement Agreement;

c. whether to retain jurisdiction to enforce the Settlement and to dismiss the action with prejudice; and

d. whether to grant Class Counsel's application for attorneys' fees, expenses, and Service Awards for the Class Representative.

24. In the event the Settlement Agreement is terminated in accordance with its provisions, the settlement shall be null and void, except insofar as expressly provided in the Settlement Agreement, and without prejudice to the *status quo ante* rights of the Parties.

25. ***Summary of Dates.*** The following chart contains a summary of Dates and Deadlines:

| Event | Date |
|---|---|
| Defendant causes to be provided to the Settlement Administrator an Excel spreadsheet of the names and last known email addresses and mailing addresses of Putative Class Members ("Class Member List")[1] | 10 days after the date of this Order. |

[1] The Settlement Administrator shall maintain the confidentiality of the Class Member List, Class Member account data, or other Class Member information and shall use the information contained in the Class Member List and other Class Member information solely for purposes of implementing this Settlement or as directed by the Court.

| Event | Date |
|---|---|
| Deadline for Defendants to fund $700,000 of the Settlement Common Fund. | 15 Days after the date of this Order. |
| Deadline to disseminate Notice to the Class ("Notice Date") | 30 days after the date of this Order. |
| Plaintiff to File Motion for Final Approval and Fee and Cost Application | At least 45 days before the Final Approval Hearing. |
| Last day for objections to settlement or opposition to Motion for Final Approval and/or Application for Fees, Costs, and Service Award | 30 days before the Final Approval Hearing |
| Last day for potential Class Members to file Requests for Exclusion | 30 days before the Final Approval Hearing. |
| Counsel for the Parties to forward to the Settlement Administrator copies of any Requests for Exclusion received by them | Seven business days after the Opt-Out deadline. |
| Settlement Administrator to log each Request for Exclusion received and forward copies of the log and all Requests for Exclusion counsel for the Parties. | 15 business days after the Opt-Out deadline. |
| Settlement Administrator to provide counsel for the Parties: (1) number of email Short Form Notices it sent to Putative Class Members; (2) number of Postcard Notices it sent to Putative Class Members; (3) approximate number of visits to the Settlement Website from the date of this Order's entry; (4) any information about objections to the settlement that it has not previously forwarded; (5) any other tracking information reasonably requested by either Party's counsel; (6) a report stating the number of Putative Class Members who have submitted timely and valid Requests for | 15 Days before the Final Approval Hearing. |

| Event | Date |
|---|---|
| Exclusion, including a listing of the names and addresses of such Opt-Outs, and reporting the number of claim points allocated to the Putative Class Members who have submitted timely and valid Requests for Exclusion divided by the total claim points available to the Settlement Class, as calculated by the Settlement Administrator (the "Exclusion Percentage"). | |
| Last day for the Parties to file supplemental papers in support of Motion for Final Approval and/or Fee Cost and Service Award Applications | Seven Days before the Final Approval Hearing. |
| Deadline for Class Counsel to file report regarding Requests for Exclusion | Seven Days before the Final Approval Hearing. |
| Final Approval Hearing | ***[Date]*** (75 days from the date of this Order but not less than 100 days following the filing of Plaintiff's Preliminary Approval Motion). |
| Defendant to cause the amount approved by the Court for attorneys' fees and expenses and the Service Award to be paid into the Qualified Settlement Fund. | 10 Days of the Effective Date, "Effective Date" defined as the later of: (i) 37 Days after the entry of the judgment or entry of the Court's order on attorneys' fees and costs, whichever occurs later, where the time for appeal has expired and no appeal has been filed; or (ii) if any appeal, petition for rehearing, motion to reconsider, or other review of the judgment has been filed or sought, 37 Days after the judgment is affirmed without substantial or material change or the appeal is dismissed or otherwise disposed of (unless any substantial or material change is accepted by the Parties), and no other appeal, petition for rehearing, or other review is |

| **Event** | **Date** |
|---|---|
| | pending, and the time for further appeals, petitions, requests for rehearing, or other review has expired; or<br>(iii) if any appeal, petition for rehearing, motion to reconsider, or other review of the Court's order on attorneys' fees and costs has been filed or sought, 37 Days after the Court's order on attorneys' fees and costs is resolved, or the appeal is resolved, dismissed or otherwise disposed of and no other appeal, petition for rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired. |
| Settlement Administrator to divide the Net Settlement Fund by the total number of claim points calculated under Sections 3.2.1 and 3.2.2 of the Settlement Agreement to determine the value of one claim point ("Claim Point Value"). | 10 Days of the Effective Date. |
| Settlement Administrator to withdraw 50 percent of its Notice and Administration Expenses from the Settlement Common Fund. | 20 Days of the Effective Date. |
| Deadline for Settlement Administrator to pay Class Counsel Court-approved fees, expenses, and Service Award out of the Settlement Common Fund. | 20 Days of the Effective Date. |
| Defendant to cause the estimated remainder of the Cash Payment to be paid into the Qualified Settlement Fund—$4,850,000 less amounts previously paid to the Qualified Settlement Fund and less estimated Total Account Credits. | 30 days of the Effective Date. |

| Event | Date |
|---|---|
| Deadline for Defendant to issue account credits. | 45 Days after the Effective Date. |
| Deadline for Defendant to document by amount and Class Member each account credit issued and certify under oath or declaration subject to penalty of perjury the total amount of such credits. | 10 days after Defendant issues Class Members' credits. |
| Deadline for Settlement Administrator to mail checks. | 60 Days after the Effective Date or receipt of the mailing addresses from Defendant, whichever comes later. |
| Class Counsel to take steps necessary to destroy or erase all documents and data provided by Defendant. | Within 60 Days after the Effective Date. |
| Donation of Unused Class Funds (i.e., uncashed checks) to the National Consumer Law Center, a § 501(c)(3) non-profit public interest law firm engaged in the education, training, and promotion of consumer protection law, as *cy pres* award, or such other suitable non-profit organization as recommended by Class Counsel and approved by the Court. | 90 days after checks are mailed. |
| Injunction expires | ***[Date]*** (Three years after signing of the Settlement Agreement) |

**IT IS SO ORDERED.**

DATED: ____________________, 2021

____________________________
Hon. Denise Page Hood
United States District Judge

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

DECLARATION OF ANDREW J. McGUINNESS IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Andrew J. McGuinness, hereby declare:

1. I am an attorney in good standing admitted to practice in Michigan and in United States District Court for the Eastern District of Michigan. I am lead counsel of record in the above-captioned action. I have practiced law since 1988, and have been litigating class actions since approximately 1989.

2. I make this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").

Class Counsel Background and Experience

3. Over the 30-plus years I have been litigating class actions, I have developed extensive class action experience in the areas of consumer, financial services, antitrust, products, and securities class actions. I have represented both defendants and plaintiffs in class actions over the years. I was lead counsel for

Ford Motor Company in the then-largest automobile recall multi-district litigation, *In re. Speed Control Deactivation Switch*, MDL 1718 (E.D. Mich.) (Friedman, J.). Other class action clients have included Best Buy, T-Mobile, Federal Mogul, Honeywell, Aventis Pharmaceuticals, and Abbott Laboratories, and numerous plaintiffs.

4. I served as head of the class action defense practice at the Dykema Gossett PLLC firm for approximately 5 years. During and after my time as an equity partner at that firm, I have served as class counsel in consumer actions against Apple Computer, UPS, Lumber Liquidators, GAF, Trott Law PC, and others.

5. For the past 13 years I have served as a Planning Committee Member for the ABA Annual National Institute on Class Actions, where co-teach a course I developed called "Class Actions 101." I have moderated numerous panel discussions on class actions at the Institute, including panels on class action trials, class action experts, ethics in class actions, "issue" classes, predominance, proposed changes to Rule 23, arbitrability, circuit splits, and other topics. I am also the co-founder and planning committee member of the ABA's Annual Regional Class Action Program in San Francisco.

6. I regularly publish on class action matters. I am the author of the chapter on Class Certification and editor of the chapter on Cass Action Experts in the ABA's Antitrust Class Action Handbook. I am an author of the ABA Section

of Litigation "Class Action Strategy" book, where I co-authored the chapters on

Class Action Strategy and Trial Plans, and helped edit the Settlements chapter.

7.      I am personally familiar with the professional backgrounds,

experience, and expertise of my co-counsel, Daniel R. Karon and Sanford P.

Dumain. Mr. Karon's practice at Karon LLC in Cleveland, Ohio, focus on class

actions, representing primarily plaintiffs in consumer and antitrust cases. He has

been Chair of the Planning Committee of the ABA National Institute on Class

Actions for the past 13 years, and moderated numerous panels on a variety of class

action topics. For most of that time he has co-taught Class Actions 101 at the

Institute. He regularly publishes in a variety of journals on class actions, and

teaches a class on Consumer Class Actions at the University of Michigan Law

School. He also taught a class on complex litigation at Columbia School of Law,

and has lectured on class actions at Notre Dame Law School, Vanderbilt Law

School, University of Georgia Law School, and Ohio State University Law School.

8.      Mr. Dumain practices class actions and complex litigation at Milberg

Coleman Bryson Phillips Grossman PLLP, in Garden City, New York, where he is

of counsel. Over his decades at Milberg and its predecessor firms, which have been

among the nation's leading class action firms for many years, he has represented

numerous consumers and investors in consumer, antitrust, and securities class

actions. He is also Chair of the Emeritus Board of Public Justice, a nonprofit law

firm based in Washington, D.C., that advocates on behalf of consumers and other

social justice causes.

Litigation Background and Prospects

9. I have been personally involved in all phases of this litigation, including its investigation, filing, and prosecution.

10. Plaintiff and the Class have a solid breach of contract claim that faces several material procedural and substantive risks.

11. Defendant UPS has vigorously defended this action throughout. It has retained as its lead defense counsel a large, international law firm, Morrison & Foerster (known colloquially as "MoFo"), with hundreds of attorneys and a reputation for aggressive litigation.

12. UPS has, in my view, very aggressively resisted written document discovery—necessitating multiple motions to compel even after concerted attempts to resolve differences through numerous meet-and-confer conferences. I expect that if the settlement is not approved and the case proceeds to litigation there will be numerous additional discovery disputes, consuming the time and resources of the Parties and the Court and delaying any eventual recovery by Plaintiff and the Class, if certified.[1]

13. Another procedural challenge concerns the prospect for class

[1] Notwithstanding UPS's resistance, Class Counsel has succeeded in securing substantial discovery so far. *See* "Status of Discovery," *infra*.

certification. While Class Counsel believe the prospect for certification of a breach of contract action based on the form contract in dispute in this case is strong, it is not certain. In particular, I anticipate that UPS will challenge certification, *inter alia*, on manageability grounds.[2] I anticipate that UPS will argue that various (particularly large) shippers understand and have, by their conduct, tacitly agreed with UPS's interpretation of its pricing table for declared value coverage. I further anticipate that UPS will seek to introduce at trial extrinsic evidence of these asserted facts, and that it will argue in opposition to class certification that the necessity of calling numerous witnesses on this point will make any class trial unmanageable.

14. Substantively, Plaintiff's claim on the merits is strong but not invincible. This is demonstrated by the fact that the first judge assigned to this matter dismissed primarily based on a determination that the contract reads in UPS's favor as a matter of law. While the Sixth Circuit reversed this ruling, finding the pricing table "at least ambiguous," it nonetheless highlights the risk that a jury may be persuaded to side with UPS's interpretation.

15. It is my belief that if litigation of this case proceeds, there is a substantial likelihood that UPS will seek dismissal of the claims through a Rule 56

[2] Manageability is one of the factors for the Court to consider in determining whether to certify a damages class. Fed. R. Civ. P. 23(b)(3)(D).

summary judgment motion, in whole or in part based upon the asserted extrinsic evidence referred to above.

Status of Discovery

16.     At the time of settlement negotiations UPS had produced over 23,000 pages of documents. Class Counsel reviewed these documents and that review informed our understanding of the strengths and weaknesses of the claims and defenses.

17.     Class Counsel also took the Rule 30(b)(6) deposition of UPS designated witness Karl Wixtrom, Senior Program Manager, Customer Information Systems. Wixtrom testified on a range of topics including UPS systems for customer interactions, package claims, enterprise management, customer communications (email), account management, and particulars relating to Plaintiff's UPS account. Here again, this information informed Class Counsel's understanding of the merits of Plaintiff's and the Class's claim in this action prior to settlement negotiations.

18.     UPS took the Rule 30(b)(6) deposition of Richard Immerman, BleachTech LLC President. This deposition similarly informed Class Counsel of the strength of and potential challenges to the claims (and UPS's defense strategies) in this case.

19.     Before settlement negotiations, Class Counsel served two Requests for Production, comprised of a comprehensive list of 45 categories of document

requests. Additionally, Class Counsel served three Requests to Admit seeking 17 admissions relevant to the claims. Moreover, Class Counsel sought by interrogatory detailed information about class size and composition and moved to compel adequate responses by UPS to obtain this information.

20. UPS took the position that to provide a comprehensive response to Plaintiff's discovery requests concerning class size and composition, it would have remount backup tapes of detailed transactional data going back several years. UPS projected that the costs of doing so would approximate $120,000 and took the position that Plaintiff should bear these costs even though UPS had backed up this data after the litigation had commenced.

21. The magistrate judge issued an opinion and order in response to Plaintiff's Motion to Compel directing the Parties to meet and confer to attempt to agree upon an "acceptable" sampling methodology to reduce the costs of determining the class size (though not composition) of a subset of the alleged class. Because Plaintiff bears the burden of proof, the only acceptable methodology would be one whose admissibility at trial UPS would stipulate to. But UPS had already supplied its own estimate of class size and had expressly refused Plaintiff's request that it stipulate to its admissibility.

22. Importantly, the magistrate judge's order provided that if the Parties could not agree upon an acceptable sampling methodology, *Plaintiff would bear the entire costs of UPS restoring the shipping data to provide actual data*.

Accordingly, by simply refusing to stipulate to admissibility, under the ruling UPS could unilaterally shift to Plaintiff the entire cost of de-archiving its own data. Plaintiff timely objected to the magistrate judge's opinion and order under Rule 72. ECF 93 (filed 1/24/17). The Court has not yet resolved the objection.[3]

Settlement Negotiations.

23. The Parties negotiated the Class Action Settlement Agreement ("Settlement Agreement; Exhibit 1 to the Motion) after three mediation sessions during more than seven years of litigation. These sessions were conducted by the Hon. Gerald E. Rosen (ret.) of JAMS/Detroit. All parties were represented by highly experienced counsel. Co-Counsel Karon, Dumain, and I attended the mediation sessions, and Plaintiff participated indirectly and was consulted by phone.

24. The mediation sessions occurred on June 27, 2018, June 26, 2020, and September 1, 2020. No settlement was reached at the first session, while the first appeal was pending. The second and third sessions occurred after Plaintiff won the second and third appeals. At the third session, the Parties agreed in principle to settle this case on a class basis according to the terms in the Settlement Agreement.

[3] In this context it is noteworthy that UPS has agreed to absorb the internally the costs of identifying Class Members and their corresponding Covered Shipments as part of the proposed settlement. This expense is over an above the one-half of notice and settlement administration costs UPS has agreed to fund.

25. As a result of documents and information exchanged during the mediation sessions, Class Counsel learned that plaintiff Joe Solo had not paid the allegedly excessive $0.85 overcharge for declared value coverage as alleged. Based on further information exchanged informally and through discovery, Class Counsel has confirmed that the indirect shippers that Solo had sought to represent as a class had similarly not paid the challenged incremental charge when they shipped through Third-Party Retailers, such as The UPS Store franchise outlets. This information permitted the Parties to negotiate a narrower settlement class based on direct shippers only (like BleachTech).

26. As set forth more fully in Plaintiff's Brief in Support of the Motion, in the opinion of Class Counsel the two-tier allocation system set forth in the settlement maximizes the recovery for the Class. Those who shipped Covered Packages both before and during the 180-day billing disputes period benefit from this structure. Class Counsel refused to extend the Class Period (and Release) to any category of shippers for whom UPS refused to offer substantial compensation.

<u>Class Counsel's Assessment of the Proposed Settlement</u>

27. Class Counsel believe that the benefits conferred by the settlement are substantial and represent a very good result for the class in light of the risks, costs, and delays attendant to further litigation. We each believe that the settlement is fair, reasonable, and adequate and recommend its approval. Plaintiff participated in the mediation and fully supports the settlement.

28.     The Settlement Common Fund amount of approximately $5.6 million is fair, reasonable, and adequate. Compared with the core claims that fall within the 180-day notice period, that amount represents approximately half of the disputed $0.85 per Covered Package disputed charge. It represents substantially less spread out over the entire Class Period, but the allocation formula negotiated by Class Counsel fairly allocates the recovery between those Covered Packages shipped within and before the 180-day period. Moreover, the bulk of Covered Packages were shipped by Class Members who shipped in both periods, and Class Members generally benefited by expanding the scope of the Class to maximize the recovery.

29.     One of the key benefits of the proposed settlement is the lack of a claims process. Typically, in consumer class actions with claims forms required, only an average of seven percent or so of class members wind up submitting claim forms. Here, all Class Members will automatically receive their share of the Net Settlement Fund based on UPS's records. We anticipate that only a relatively few percent will not cash their distribution checks within 90 days or, for those with active accounts, not use their account credits within 45 days or cash their corresponding refund from UPS.

30.     Another important feature of the settlement is that it is on a non-reverter basis: UPS will not retain any unused funds. Instead, those funds will be donated to the approved *cy pres* recipient or handled via UPS's normal practice in

the case of unused account credits.

31.     Particularly in light of the size of the class—over 1.5 million putative Class Members—UPS's agreement to fund half of the notice and administrative costs, on top of the cash consideration, is a major benefit to the Class. In most consumer class actions, such costs are paid from the common settlement fund, leaving less to distribute to class members after fees and expenses.

32.     I believe that the injunctive relief obtained in as part of the settlement provides a significant benefit to Class Members and the public. The negotiated clarified language greatly reduces the ambiguity in the pricing table. Moreover, as a leader in the domestic shipping industry, UPS often sets the standard for other shippers, who are more likely to clarify their own pricing guides as a result of the injunctive relief obtained here.

33.     Epiq Class Action & Claims Solutions, Inc. (Epiq), is an experienced, qualified, and highly regarded service provider of class action administration and notice. In the experience of Class Counsel, Epiq has provided superior service in administering consumer class action settlements. Cameron Azari, a nationally recognized expert in the field, a Senior Vice President of Epiq and Director of Epiq unit Hilsoft, has assisted in developing the proposed notice program in this settlement.

The Proposed *Cy Pres* Recipient

34.     I have investigated the proposed *cy pres* recipient, the National

Consumer Law Center (NCLC). Class Counsel do not have any affiliation with

NCLC, nor do they serve on any board or hold any executive position there.

35.     NCLC is a nonprofit, nonpartisan organization dedicated to promoting

fairness and economic justice in the marketplace. NCLC's staff of experts provides

a wide range of direct assistance to nonprofit and legal services organizations and

private consumer rights attorneys, including consultation on legal issues, legal

research, continuing legal education and the production of widely respected legal

treatises and other publications. NCLC is a leading source of legal and public

policy expertise on consumer issues not only for lawyers but also for policymakers,

regulators, consumer advocates, journalists, and community-based organizations.

36.     NCLC's goal is to protecting consumers from, and redressing injuries

caused by, inaccurate, false, and misleading statements or omissions by businesses.

NCLC has trained and advised tens of thousands of advocates on consumer legal

issues, appeared in cases throughout the nation, worked with state and federal

commissions and legislatures, written investigative reports, and published leading

legal practice manuals and consumer guides.

37.     Courts have long considered NCLC to be a worthy recipient of *cy pres*

awards. Since 1996 courts have awarded NCLC over 500 *cy pres* and class action

settlement awards, all of which have been used to promote consumer protections

and equal access to justice for consumers in need of effective legal representation.

*     *     *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 20, 2021.

/s/ *Andrew J. McGuinness*
Andrew J. McGuinness

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH L.L.C., on behalf of itself and all others similarly situated,

Plaintiff,

vs.

UNITED PARCEL SERVICE CO.,

Defendant.

Case No. 2:14-cv-12719

Hon. Denise Page Hood

CLASS ACTION

**DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PROGRAM**

I, Cameron Azari, declare as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice, and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3. I am a Senior Vice President with Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale legal notification plans. Hilsoft is a business unit of Epiq.

4. Hilsoft has been involved with some of the most complex and significant notice programs in recent history, examples of which are discussed below. With experience in more than 500 cases, including more than 40 multi-district litigations, Hilsoft has prepared notices which have appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world. Courts have recognized and approved numerous notice plans developed by Hilsoft, and those decisions have invariably withstood appellate and collateral review.

**EXPERIENCE RELEVANT TO THIS CASE**

5. I have served as a notice expert and have been recognized and appointed by courts

to design and provide notice in many large and significant cases, including:

a) *In re Takata Airbag Products Liability Litigation*, 1:15-md-02599-FAM (S.D. Fla), involved $1.49 billion in settlements with BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford regarding Takata airbags. The notice plans in those settlements included individual mailed notice to more than 59.6 million potential class members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and behaviorally targeted digital media. Combined, the notice plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, with a frequency of 4.0 times each.

b) *Hale v. State Farm Mutual Automobile Insurance Company, et al.*, 12-cv-00660 (S.D. Ill.), involved a $250 million settlement with approximately 4.7 million class members. The extensive notice program provided individual notice via postcard or email to approximately 1.43 million class members and implemented a robust publication program which, combined with individual notice, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each.

c) *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.), involved a comprehensive notice program that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort.

d) *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.), involved a $6.05 billion settlement reached by Visa and MasterCard in 2012 with an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in

eight languages, and acquisition of sponsored search listings to facilitate locating the website. For the subsequent superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication units and banner notices, which generated more than 689 million adult impressions.

e) *In Re: Premera Blue Cross Customer Data Security Breach Litigation*, 3:15-md-2633 (D. Ore.), involved an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices. The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised. The individual notice efforts reached 93.3% of the settlement class. A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts.

f) *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), involved dual landmark settlement notice programs to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes for BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill. Notice efforts included more than 7,900 television spots, 5,200 radio spots, and 5,400 print insertions and reached over 95% of Gulf Coast residents.

g) *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.), for multiple bank settlements from 2010-2020, the notice programs involved direct mail and email to millions of class members, as well as publication in relevant local newspapers. Representative banks included Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank, and Synovus are among the more than 20 banks.

6. Courts have recognized our testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a

certain method of notice represents the best notice practicable under the circumstances. For example:

      a)     *In re: Lithium Ion Batteries Antitrust Litigation*, 4:13-md-02420, MDL No. 2420 (N.D. Cal.), Judge Yvonne Gonzalez Rogers stated on December 10, 2020:

> *The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.*

      b)     *Lusnak v. Bank of America, N.A.*, CV 14-1855 (C.D. Cal.), Judge George H. Wu stated on August 10, 2020:

> *The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

c) *Cook, et al. v. South Carolina Public Service Authority, et al.*, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.), Judge Jean Hoefer Toal stated on July 31, 2020:

> *Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.*

d) *Waldrup v Countrywide Financial Corporation, et al.*, 2:13-cv-08833 (C.D. Cal.), Judge Christina A. Snyder stated on July 16, 2020:

> *The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

e) *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) Judge Margo K. Brodie stated on December 13, 2019:

> *The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

f) *In re: Takata Airbag Products Liability Litigation (Ford),* MDL No. 2599 (S.D. Fla.), Judge Federico A. Moreno stated on December 20, 2018:

> *The record shows and the Court finds that the Class Notice has been given to*

*the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

g) *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 3:12-cv-00660-DRH-SCW (S.D. Ill.), Judge Herndon stated on December 16, 2018:

*The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.*

h) *Vergara, et al., v. Uber Technologies, Inc.,* 1:15-CV-06972 (N.D. Ill.), Judge Thomas M. Durkin stated on March 1, 2018:

*The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

> *Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.*

i) *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.), Judge Charles R. Breyer stated on May 17, 2017:

> *The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.).*

j) *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.), Judge Carl J. Barbier stated on January 11, 2013:

> *The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*
>
> *The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*
>
> *The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

7. Numerous other court opinions and comments regarding my testimony, and the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as **Attachment 1**.

In forming expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences. I am an active member of the Oregon State Bar, having received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs during that time. Before assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising). Overall, I have over 21 years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs.

8. The facts in this declaration are based on my personal knowledge, as well as information provided to me in by my colleagues in the ordinary course of my business at Hilsoft and Epiq.

**OVERVIEW**

9. This declaration will describe the Settlement Notice Program ("Notice Program" or "Notice Plan") and notice (the "Notice" or "Notices") proposed here for *BleachTech L.L.C. v. United Parcel Service Co.,* 2:14-cv-12719 in the United States District Court for the Eastern District of Michigan. Hilsoft developed the Notice Program based on our prior experience and research into the notice issues in this case. We have analyzed and propose the most effective method practicable of providing notice for this Settlement Class.

10. It is my understanding from counsel for the parties that data will be available to provide individual notice to approximately 1.6 million identified Class Members. The data (in the form of physical addresses and/or email addresses) will be available for virtually every Class Member who can be identified in the records of the Defendant.

11. Upon receipt of Class Member data, all lists that Epiq receives will be combined and de-duplicated in order to find the most likely current address and/or email address for each identified Class Member. The Class Member data will be used to provide individual notice with

an Email Notice or a summary Postcard Notice to the Settlement Class. The individual notice effort will be supplemented by internet banner advertising.

12. In my opinion, the proposed Notice Program is designed to reach the greatest practicable number of Class Members through the use of individual notice (supplemented with internet banner advertising).

## NOTICE PROGRAM METHODOLOGY

13. Federal Rule of Civil Procedure 23 directs that notice must be the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."[1] The proposed Notice Program will satisfy this requirement.

## NOTICE PROGRAM DETAIL

14. I have reviewed the proposed Class Action Settlement Agreement and understand that the Settlement Class is defined as:

> All persons or companies who, from January 1, 2011, through December 29, 2013 (the "Class Period"), tendered to UPS (or paying party if the package was billed to a different account) one or more U.S. origin packages with a declared value in excess of $300 under contract with UPS and were charged pursuant to its published non-Retail rates, or shipped one or more U.S. origin packages with a declared value in excess of $200 and were charged pursuant to its published Retail rates.
>
> Specifically excluded are any packages with a declaration of value that was later voided, any packages shipped through a The UPS Store location, and any packages shipped through any other Third-Party Retailer (as defined by the July 8, 2013 UPS Tariff/Terms and Conditions of Service – United States (attached as Exhibit A to the Amended Complaint) to the extent the claim is asserted by a customer of such Third-Party Retailer, which packages will not be deemed Covered Packages. Also excluded is any entity in which Defendant has or had a controlling interest or which has a controlling interest in Defendant and all The UPS Store locations, and all other authorized UPS shipping agents and partners, including authorized outlets, to the extent that their packages were not shipped pursuant to a contract with UPS during the Class Period to purchase declared value coverage at the rates set forth in the pricing tables published in the applicable UPS Service Guide. Also excluded are UPS's legal

[1] Fed. R. Civ. P. 23(c)(2)(B).

representatives, assigns, and successors; the Court and any member of its staff; and any Putative Class Member who timely submits a valid Request for Exclusion or is found by the Court to have adequately opted out of the Class.

15. Given our experience with similar notice efforts, we expect that the proposed Notice Program individual notice efforts will reach well in excess of 90% of the Settlement Class. The reach will be further enhanced by internet banner advertising and a settlement website, which are not included in the estimated reach calculation. In my experience, the projected reach of the Notice Program is consistent with or exceeds other court-approved notice programs, is the best notice practicable under the circumstances of this case and has been designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.[2]

**INDIVIDUAL NOTICE**

***Email Notice***

16. Epiq will send an Email Notice to all identified Class Members for whom a facially valid email address is available. Industry standard best practices will be followed for the Email Notice efforts. The Email Notice will be drafted in such a way that the subject line, the sender, and the body of the message overcome SPAM filters and ensure readership to the fullest extent reasonably practicable. For instance, the Email Notice will use an embedded html text format. This format will provide easy to read text without graphics, tables, images, attachments, and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters. The Email Notices will be sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts. Each Email Notice will be transmitted with a digital signature to the header and content of the Email Notice, which will allow ISPs to programmatically authenticate that the Email Notices are from our

[2] *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

authorized mail servers. Each Email Notice will also be transmitted with a unique message identifier. The Email Notice will include an embedded link to the settlement website. By clicking the link, recipients will be able to easily access the Long Form Notice, Settlement Agreement and other information about the Settlement.

17. If the receiving email server cannot deliver the message, a "bounce code" will be returned along with the unique message identifier. For any Email Notice for which a bounce code is received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical auto-replies, etc., at least two additional attempts will be made to deliver the Notice by email.

***Direct Mail***

18. A summary Postcard Notice will be sent to all identified Class Members for whom a facially valid email address is not available, but a physical address is available. A Postcard Notice will also be sent to all identified Class Members with an undeliverable Email Notice after several attempts. The Postcard Notice will direct the recipients to the settlement website where they can access additional information. The Postcard Notice will be sent via the United States Postal Service ("USPS") first class mail.

19. Prior to mailing, all mailing addresses provided will be checked against the National Change of Address ("NCOA") database maintained by the USPS.[3] In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

20. Postcard Notices returned as undeliverable will be re-mailed to any new address available through USPS information, for example, to the address provided by the USPS on

---

[3] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated, or to better addresses that may be found using a third-party lookup service. Upon successfully locating better addresses, Postcard Notices will be promptly re-mailed.

***Media Plan***

***Targeted Internet Banner Advertising***

21. Internet advertising has become a standard component in legal notice programs. The internet has proven to be an efficient and cost-effective method to target class members as part of providing notice of class certification and/or a settlement for a class action case. According to MRI-Simmons syndicated research, 89.5% of adults, aged 18+ in the United States are online.

22. The Notice Program includes targeted banner advertising on a selected advertising network, which will be targeted to adults 18+ to reach Class Members. The internet Banner Notices will link directly to the settlement website, thereby allowing visitors easy access to relevant information and documents. The internet Banner Notices will use language from the Notices, which will allow users to identify themselves as potential Class Members.

23. The Notice Program includes internet Banner Notices in various sizes (728x90, 300x250, 300x600, and 970x250), which will be placed on the advertising network, *Google Display Network*. All internet Banner Notices will run on desktop, mobile and tablet devices and will be distributed and targeted to adults 18+ nationwide. Internet Banner Notices will also be targeted (remarketed) to people who visit the settlement website. The internet Banner Notices will run for 30 days and will generate approximately 14.5 million impressions.[4] Clicking on the Banner Notices will link the reader to the settlement website, where detailed information about the case will be available.

[4] The third-party ad management platform, ClickCease will be used to audit the digital Banner Notice ad placements. This type of platform tracks all Banner Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

***Settlement Website, Toll-free Telephone Number, and Postal Mailing Address***

24. A settlement website will be established with an easy to remember domain name. The settlement website will allow Class Members to obtain detailed information about the case and review key documents, including the Long Form Notice, Request for Exclusion Form, Settlement Agreement, Preliminary Approval Order, Final Approval Order, and other important documents, as well as answers to frequently asked questions ("FAQs"). The website address will be displayed prominently on all Notice documents.

25. A toll-free telephone number will also be established to allow Class Members to call for additional information, listen to answers to FAQs, and request that a Notice be mailed to them. The toll-free telephone number will be prominently displayed on all Notice documents as well. The automated telephone system will be available 24 hours per day, 7 days per week.

26. A post office box for correspondence about the case will also be established and maintained, allowing Class Members to contact the Settlement Administrator by mail with any specific requests or questions.

**CONCLUSION**

27. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, and by case law pertaining to the recognized notice standards under Rule 23. This framework directs that the notice plan be optimized to reach the class and, in a settlement notice situation such as this, that the notice or notice plan itself not limit knowledge of legal rights—nor the ability to exercise other options—to class members in any way. Based on the information that has been provided to me at this point, all of these requirements will be met in this case.

28. The Notice Program includes individual notice to millions of identified Class Members and supplemental media. With the address updating protocols that will be employed, we reasonably expect the Notice Program (individual notice) will reach in excess of 90% of identified Class Members. The reach will be further enhanced by internet banner advertising and a settlement website. In 2010, the Federal Judicial Center issued a Judges' Class Action Notice

and Claims Process Checklist and Plain Language Guide. This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." Here, we have developed a Notice Program that will readily achieve a reach within that standard.

29. The proposed Notice Program follows the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

> A. "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).
>
> B. "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.

30. The Notice Program described in this declaration provides for the best notice practicable under the circumstances of this case, conforms to all aspects of the Rule 23, and comports with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth.

31. The Notice Program schedule affords sufficient time to provide full and proper notice to Class Members before the exclusion request and objection deadlines.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on August 6, 2021, at Beaverton, Oregon.

Cameron R. Azari

# Attachment 1

# HILSOFT NOTIFICATIONS

Hilsoft Notifications ("Hilsoft") is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, and notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq"). Hilsoft has been retained by defendants or plaintiffs for more than 500 cases, including more than 40 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. For more than 25 years, Hilsoft's notice plans have been approved and upheld by courts. Case examples include:

- Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford vehicles as part of $1.49 billion in settlements regarding Takata airbags. The Notice Plans included individual mailed notice to more than 59.6 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio, internet banners, mobile banners, and other behaviorally targeted digital media. Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each. ***In re: Takata Airbag Products Liability Litigation*** **(OEMS – BMW, Mazda, Subaru, Toyota, Honda, Nissan and Ford)**, MDL No. 2599 (S.D. Fla.).

- For a landmark $6.05 billion settlement reached by Visa and MasterCard in 2012, Hilsoft implemented an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. For the subsequent, superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication insertions and banner notices, which generated more than 689 million adult impressions. ***In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,*** 05-MD-1720, MDL No. 1720 (E.D.N.Y.).

- For a $250 million settlement with approximately 4.7 million class members, Hilsoft designed and implemented a notice program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each. ***Hale v. State Farm Mutual Automobile Insurance Company, et al.,*** 12-cv-00660 (S.D. Ill.).

- Hilsoft designed and implemented an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices. The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised. The individual notice efforts reached 93.3% of the settlement class. A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts. ***In re: Premera Blue Cross Customer Data Security Breach Litigation***, 3:15-md-2633 (D. Ore.).

- Hilsoft provided notice for the $113 million lithium-ion batteries antitrust litigation settlements, which included individual notice via email to millions of class members, banner and social media ads, an informational release, and a settlement website. ***In re: Lithium Ion Batteries Antitrust Litigation***, 4:13-md-02420, MDL No. 2420 (N.D. Cal.).

- Hilsoft designed a notice program that included extensive data acquisition and mailed notice to inform owners and lessees of specific models of Mercedes-Benz vehicles. The notice program reached approximately 96.5% of all class members. ***Callaway v. Mercedes-Benz USA, LLC***, 8:14-cv-02011 (C.D. Cal.).

- Hilsoft provided notice for a $520 million settlement, which involved utility customers (residential, commercial, industrial, etc.) who paid utility bills. The notice program included individual notice to more than 1.6 million known class members via postal mail or email and a supplemental publication notice in local newspapers, banner notices, and a settlement website. The individual notice efforts alone reached more than 98.6% of the class. ***Cook, et al. v. South Carolina Public Service Authority, et al.***, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.).

- For a $20 million TCPA settlement that involved Uber, Hilsoft created a notice program, which resulted in notice via mail or email to more than 6.9 million identifiable class members. The combined measurable notice effort reached approximately 90.6% of the settlement class with direct mail and email, newspaper and internet banner ads. ***Vergara, et al., v. Uber Technologies, Inc.***, 1:15-CV-06972 (N.D. Ill.).

- A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 vehicle owners via email. A targeted internet campaign further enhanced the notice effort. ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)***, MDL No. 2672 (N.D. Cal.).

- Hilsoft designed and implemented a comprehensive notice plan, which included individual notice via an oversized postcard notice to more than 740,000 class members as well as email notice to class members. Combined the individual notice efforts delivered notice to approximately 98% of the class. Supplemental newspaper notice in four large-circulation newspapers and a settlement website further expanded the notice efforts. ***Lusnak v. Bank of America, N.A.***, CV 14-1855 (C.D. Cal.).

- Hilsoft provided notice for both the class certification and the settlement phases of the case. The individual notice efforts included sending postcard notices to more than 2.3 million class members, which reached 96% of the class. Publication notice in a national newspaper, targeted internet banner notices and a settlement website further extended the reach of the notice plan. ***Waldrup v. Countrywide Financial Corporation, et al.***, 2:13-cv-08833 (C.D. Cal.).

- An extensive notice effort regarding asbestos personal injury claims and rights as to Debtors' Joint Plan of Reorganization and Disclosure Statement that was designed and implemented by Hilsoft. The notice program included nationwide consumer print publications, trade and union labor publications, internet banner advertising, an informational release, and a website. ***In re: Kaiser Gypsum Company, Inc., el al.***, 16-31602 (Bankr. W.D. N.C.).

- Hilsoft designed and implemented an extensive settlement notice plan for a class period spanning more than 40 years for smokers of light cigarettes. The notice plan delivered a measured reach of approximately 87.8% of Arkansas adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas adults 55+ with a frequency of 10.8 times. Hispanic newspaper notice, an informational release, radio public service announcements ("PSAs"), sponsored search listings and a case website further enhanced reach. ***Miner v. Philip Morris USA, Inc.***, 60CV03-4661 (Ark. Cir. Ct.).

- A large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. ***In re: Energy Future Holdings Corp., et al.***, 14-10979 (Bankr. D. Del.).

- Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements from 2010-2020, Hilsoft has developed programs that integrate individual notice, and in some cases paid media efforts. Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M& I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank and Synovus are among the more than 20 banks that have retained Epiq (Hilsoft). ***In re: Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.).

- For one of the largest and most complex class action case in Canadian history, Hilsoft designed and implemented groundbreaking notice to disparate, remote indigenous people in the multi-billion-dollar settlement. ***In re: Residential Schools Class Action Litigation***, 00-CV-192059 CPA (Ont. Super. Ct.).



- BP's $7.8 billion settlement related to the Deepwater Horizon oil spill emerged from possibly the most complex class action case in U.S. history. Hilsoft drafted and opined on all forms of notice. The 2012 dual notice program to "Economic and Property Damages" and "Medical Benefits" settlement classes designed by Hilsoft reached at least 95% Gulf Coast region adults via more than 7,900 television spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications, and trade journals, digital media, and individual notice. Subsequently, Hilsoft designed and implemented one of the largest claim deadline notice campaigns ever implemented, which resulted in a combined measurable paid print, television, radio and internet effort, which reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each. ***In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010***, MDL No. 2179 (E.D. La.).

- Extensive point of sale notice program of a settlement, which provided payments of up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period. ***Vereen v. Lowe's Home Centers***, SU10-CV-2267B (Ga. Super. Ct.).

## LEGAL NOTICING EXPERTS

***Cameron Azari, Esq., Epiq Senior Vice President, Hilsoft Director of Legal Notice***

Cameron Azari, Esq. has more than 21 years of experience in the design and implementation of legal notice and claims administration programs. He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes. Cameron has been responsible for hundreds of legal notice and advertising programs. During his career, he has been involved in an array of high profile class action matters, including *In re: Takata Airbag Products Liability Litigation, In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, In re: Checking Account Overdraft Litigation,* and *In re: Residential Schools Class Action Litigation*. He is an active author and speaker on a broad range of legal notice and class action topics ranging from FRCP Rule 23 to email noticing, response rates, and optimizing settlement effectiveness. Cameron is an active member of the Oregon State Bar. He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College. Cameron can be reached at caza@legalnotice.com.

***Lauran Schultz, Epiq Managing Director***

Lauran Schultz consults with Hilsoft clients on complex noticing issues. Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration since 2005. High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation. Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio. Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies. Lauran can be reached at lschultz@hilsoft.com.

***Kyle Bingham, Manager of Strategic Communications***

Kyle Bingham has 15 years of experience in the advertising industry. At Hilsoft and Epiq, Kyle is responsible for overseeing the research, planning, and execution of advertising campaigns for legal notice programs including class action, bankruptcy and other legal cases. Kyle has been involved in the design and implementation of numerous legal notice campaigns, including *In re: Takata Airbag Products Liability Litigation, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch), In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice), In re: Residential Schools Class Action Litigation, Hale v. State Farm Mutual Automobile Insurance Company,* and *In re: Checking Account Overdraft Litigation*. Prior to joining Epiq and Hilsoft, Kyle worked at Wieden+Kennedy for seven years, an industry-leading advertising agency where he planned and purchased print, digital and broadcast media, and presented strategy and media campaigns to clients for multi-million dollar branding campaigns and regional direct response initiatives. He received his B.A. from Willamette University. Kyle can be reached at kbingham@epiqglobal.com.



## ARTICLES AND PRESENTATIONS

- **Cameron Azari** Speaker, "Virtual Global Class Actions Symposium 2020, Class Actions Case Management Panel." November 18, 2020.
- **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop." Federal Trade Commission, Washington, DC, October 29, 2019.
- **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases." ACI's Automotive Product Liability Litigation Conference." American Conference Institute, Chicago, IL, July 18, 2019.
- **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, November 6, 2018.
- **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability." 30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.
- **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration." PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.
- **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements." 5th Annual Western Regional CLE Program on Class Actions and Mass Torts. Clyde & Co LLP, San Francisco, CA, June 22, 2018.
- **Cameron Azari** Co-Author, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice*. E-book, published, May 2017.
- **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.
- **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration." Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.
- **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.
- **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.
- **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.
- **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.
- **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.
- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.
- **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.



- **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.
- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.
- **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.
- **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.
- **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.
- **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.
- **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.
- **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.
- **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.
- **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.
- **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.
- **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.
- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.
- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.
- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.
- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.
- **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.
- **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.



## JUDICIAL COMMENTS

**Judge Anne-Christine Massullo, *Morris v. Provident Credit Union*** (June 23, 2021) CGC-19-581616, Sup. Ct. Cal. Cty. of San Fran.:

> *The Notice approved by this Court was distributed to the Classes in substantial compliance with this Court's Order Certifying Classes for Settlement Purposes and Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") and the Agreement. The Notice met the requirements of due process and California Rules of Court, rules 3.766 and 3.769(f). The notice to the Classes was adequate.*

**Judge Esther Salas, *Sager, et al. v. Volkswagen Group of America, Inc., et al.*** (June 22, 2021) 18-cv-13556 (D.N.J.):

> *The Court further finds and concludes that Class Notice was properly and timely disseminated to the Settlement Class in accordance with the Class Notice Plan set forth in the Settlement Agreement and the Preliminary Approval Order (Dkt. No. 69). The Class Notice Plan and its implementation in this case fully satisfy Rule 23, the requirements of due process and constitute the best notice practicable under the circumstances.*

**Judge Josephine L. Staton, *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.*** (June 10, 2021) 8:17-CV-00838 & 18-cv-02223 (C.D. Cal.):

> *The Class Notice was disseminated in accordance with the procedures required by the Court's Orders … in accordance with applicable law, and satisfied the requirements of Rule 23(e) and due process and constituted the best notice practicable for the reasons discussed in the Preliminary Approval Order and Final Approval Order.*

**Judge Harvey Schlesinger, *In re: Disposable Contact Lens Antitrust Litigation* (ABB Concise Optical Group, LLC)** (May 31, 2021) 3:15-md-02626 (M.D. Fla.):

> *The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Order; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of (i) the pendency of the Action; (ii) the effect of the Settlement Agreement (including the Releases to be provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreement, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Class; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement; and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Haywood S. Gilliam, Jr. *Richards, et al. v. Chime Financial, Inc.*** (May 24, 2021) 4:19-cv-06864 (N.D. Cal.):

> *The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B)… The Court ordered that the third-party settlement administrator send class notice via email based on a class list Defendant provided… Epiq Class Action & Claims Solutions, Inc., the third-party settlement administrator, represents that class notice was provided as directed… Epiq received a total of 527,505 records for potential Class Members, including their email addresses…. If the receiving email server could not deliver the message, a "bounce code" was returned to Epiq indicating that the message was undeliverable…. Epiq made two additional attempts to deliver the email notice… As of Mach 1, 2021, a total of 495,006 email notices were delivered, and 32,499 remained undeliverable… In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.*

**Judge Henry Edward Autrey, *Pearlstone v. Wal-Mart Stores, Inc.*** (Apr. 22, 2021) 4:17-cv-02856 (C.D. Cal.):

> *The Court finds that adequate notice was given to all Settlement Class Members pursuant to the terms of the Parties' Settlement Agreement and the Preliminary Approval Order. The Court has further determined that the Notice Plan fully and accurately informed Settlement Class Members of all material elements of the Settlement, constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule 23(c)(2) and 23(e)(1), applicable law, and the Due Process Clause of the United States Constitution.*



**Judge Lucy H. Koh, *Grace v. Apple, Inc.*** (Mar. 31, 2021) 17-CV-00551 (N.D. Cal.):

> *Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The Court finds that the Notice Plan, which was direct notice sent to 99.8% of the Settlement Class via email and U.S. Mail, has been implemented in compliance with this Court's Order (ECF No. 426) and complies with Rule 23(c)(2)(B).*

**Judge Gary A. Fenner, *In re: Pre-Filled Propane Tank Antitrust Litigation*** (Mar. 30, 2021) MDL No. 2567, 14-2567 (W.D. Mo.):

> *Based upon the Declaration of Cameron Azari, on behalf of Epiq, the Administrator appointed by the Court, the Court finds that the Notice Program has been properly implemented. That Declaration shows that there have been no requests for exclusion from the Settlement, and no objections to the Settlement. Finally, the Declaration reflects that AmeriGas has given appropriate notice of this settlement to the Attorney General of the United States and the appropriate State officials under the Class Action Fairness Act, 28 U.S.C. § 1715, and no objections have been received from any of them.*

**Judge Richard Seeborg, *Bautista v. Valero Marketing and Supply Company*** (Mar. 17, 2021) 3:15-cv-05557 (N.D. Cal.):

> *The Notice given to the Settlement Class in accordance with the Notice Order was the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Settlement Agreement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge James D. Peterson, *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health*** (Mar. 4, 2021) 18-cv-327 (W.D. Wis.):

> *The approved Notice plan provided for direct mail notice to all class members at their last known address according to UnityPoint's records, as updated by the administrator through the U.S. Postal Service. For postcards returned undeliverable, the administrator tried to find updated addresses for those class members. The administrator maintained the Settlement website and made Spanish versions of the Long Form Notice and Claim Form available upon request. The administrator also maintained a toll-free telephone line which provides class members detailed information about the settlement and allows individuals to request a claim form be mailed to them.*
>
> *The Court finds that this Notice (i) constituted the best notice practicable under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class members of the Settlement, the effect of the Settlement (including the release therein), and their right to object to the terms of the settlement and appear at the Final Approval Hearing; (iii) constituted due and sufficient notice of the Settlement to all reasonably identifiable persons entitled to receive such notice; (iv) satisfied the requirements of due process, Federal Rule of Civil Procedure 23(e)(1) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all applicable laws and rules.*

**Judge Larry A. Burns, *Trujillo, et al. v. Ametek, Inc., et al.*** (Mar. 3, 2021) 3:15-cv-01394 (S.D. Cal.):

> *The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 181-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.*



**Judge Sherri A. Lydon, *Fitzhenry v. Independent Home Products, LLC*** (Mar. 2, 2021) 2:19-cv-02993 (D.S.C.):

*Notice was provided to Class Members in compliance with Section VI of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (iii) provided procedures for Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.*

**Judge James V. Selna, *Alvarez v. Sirius XM Radio Inc.*** (Feb. 9, 2021) 2:18-cv-8605 (C.D. Cal.):

*The Court finds that the dissemination of the Notices attached as Exhibits to the Settlement Agreement: (a) was implemented in accordance with the Notice Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the Releases to be provided thereunder); (v) Named Plaintiffs' application for the payment of Service Awards; (vi) Class Counsel's motion for an award an attorneys' fees and expenses; (vii) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for attorneys' fees and expenses (including a Service Award to the Named Plaintiffs and Mr. Wright); and (viii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.*

**Judge Jon S .Tigar, *Elder v. Hilton Worldwide Holdings, Inc.*** (Feb. 4, 2021) 16-cv-00278 (N.D. Cal.):

*"Epiq implemented the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court." ECF No. 162 at 9-10. Epiq sent initial notice by email to 8,777 Class Members and by U.S. Mail to the remaining 1,244 Class members. Id. at 10. The Notice informed Class Members about all aspects of the Settlement, the date and time of the fairness hearing, and the process for objections. ECF No. 155 at 28-37. Epiq then mailed notice to the 2,696 Class Members whose emails were returned as undeliverable. Id. "Of the 10,021 Class Members identified from Defendants' records, Epiq was unable to deliver the notice to only 35 Class Members. Accordingly, the reach of the notice is 99.65%." Id. (citation omitted). Epiq also created and maintained a settlement website and a toll-free hotline that Class Members could call if they had questions about the settlement. Id.*

*The Court finds that the parties have complied with the Court's preliminary approval order and, because the notice plan complied with Rule 23, have provided adequate notice to class members.*

**Judge Michael W. Jones, *Wallace, et al, v. Monier Lifetile LLC, et al.*** (Jan. 15, 2021) SCV-16410 (Sup. Ct. Cal.):

*The Court also finds that the Class Notice and notice process were implemented in accordance with the Preliminary Approval Order, providing the best practicable notice under the circumstances.*

**Judge Kristi K. DuBose, *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC*** (Dec. 23, 2020) 1:19-cv-00563 (S.D. Ala.):

*The Court finds that the Notice and the claims procedures actually implemented satisfy due process, meet the requirements of Rule 23(e)(1), and the Notice constitutes the best notice practicable under the circumstances.*

**Judge Haywood S. Gilliam, Jr., *Izor v. Abacus Data Systems, Inc.*** (Dec. 21, 2020) 19-cv-01057 (N.D. Cal.):

*The Court finds that the notice plan previously approved by the Court was implemented and that the notice thus satisfied Rule 23(c)(2)(B). [T]he Court finds that the parties have sufficiently provided the best practicable notice to the class members.*



**Judge Christopher C. Conner, *Al's Discount Plumbing, et al. v. Viega, LLC*** (Dec. 18, 2020) 19-cv-00159 (M.D. Pa.):

> *The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Fed. R. Civ. P. 23(c)(2)(B) and due process. Specifically, the Court ordered that the third-party Settlement Administrator, Epiq, send class notice via email, U.S. mail, by publication in two recognized industry magazines, Plumber and PHC News, in both their print and online digital forms, and to implement a digital media campaign. (ECF 99). Epiq represents that class notice was provided as directed. See Declaration of Cameron R. Azari, ¶¶ 12-15 (ECF 104-13).*

**Judge Naomi Reice Buchwald, *In re: Libor-Based Financial Instruments Antitrust Litigation*** (Dec. 16, 2020) MDL No. 2262 1:11-md-2262 (S.D.N.Y.):

> *Upon review of the record, the Court hereby finds that the forms and methods of notifying the members of the Settlement Classes and their terms and conditions have met the requirements of the United States Constitution (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all members of the Settlement Classes of these proceedings and the matters set forth herein, including the Settlements, the Plan of Allocation and the Fairness Hearing. Therefore, the Class Notice is finally approved.*

**Judge Larry A. Burns, *Cox, et al. Ametek, Inc., et al.*** (Dec 15, 2020) 3:17-cv-00597 (S.D. Cal.):

> *The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 129-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.*

**Judge Timothy J. Sullivan*, Robinson v. Nationstar Mortgage LLC*** (Dec. 11, 2020) 8:14-cv-03667 (D. Md.):

> *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the United States Constitution, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The Class Notice fully satisfied the requirements of Due Process.*

**Judge Yvonne Gonzalez Rogers, *In re: Lithium Ion Batteries Antitrust Litigation*** (Dec. 10, 2020) 4:13-md-02420, MDL No. 2420 (N.D. Cal.):

> *The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.*



**Judge Katherine A. Bacal, *Garvin v. San Diego Unified Port District*** (Nov. 20, 2020) 37-2020-00015064 (Sup. Ct. Cal.):

> *Notice was provided to Class Members in compliance with the Settlement Agreement, California Code of Civil Procedure §382 and California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing notice to all individual Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Class Members. The Notice fully satisfied the requirements of due process.*

**Judge Catherine D. Perry*, Pirozzi, et al. v. Massage Envy Franchising, LLC*** (Nov. 13, 2020) 4:19-cv-807 (E.D. Mo.):

> *The COURT hereby finds that the CLASS NOTICE given to the CLASS: (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the time and manner by which CLASS MEMBERS could submit a CLAIM under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances, constituted a reasonable manner of notice to all class members who would be bound by the SETTLEMENT, and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Robert E. Payne, *Skochin, et al. v. Genworth Life Insurance Company, et al.*** (Nov. 12, 2020) 3:19-cv-00049 (E.D. Vir.):

> *For the reasons set forth in the Court's Memorandum Opinion addressing objections to the Settlement Agreement, . . . the plan to disseminate the Class Notice and Publication Notice, which the Court previously approved, has been implemented and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process.*

**Judge Jeff Carpenter*, Eastwood Construction LLC, et al. v. City of Monroe*** (Oct. 27, 2020) 18-cvs-2692 and ***The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe*** (Oct. 27, 2020) 19-cvs-1825 (Sup. Ct. N.C.):

> *Therefore, the Court GRANTS the Final Approval Motion, CERTIFIES the class as defined below for settlement purposes only, APPROVES the Settlement, and GRANTS the Fee Motion…*
> *The Settlement Agreement and the Settlement Notice are found to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and are hereby approved pursuant to North Carolina Rule of Civil Procedure 23. The Parties are hereby authorized and directed to comply with and to consummate the Settlement Agreement in accordance with the terms and provisions set forth in the Settlement Agreement, and the Clerk of the Court is directed to enter and docket this Order and Final Judgement in the Actions.*

**Judge M. James Lorenz, *Walters, et al. v. Target Corp.*** (Oct. 26, 2020) 3:16-cv-1678 (S.D. Cal.):

> *The Court has determined that the Class Notices given to Settlement Class members fully and accurately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members consistent with all applicable requirements. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Maren E. Nelson, *Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company*** (Oct. 26, 2020) BC 579498 (Sup. Ct Cal.):

> *Distribution of Notice directed to the Settlement Class Members as set forth in the Settlement has been completed in conformity with the Preliminary Approval Order, including individual notice to all Settlement Class members who could be identified through reasonable effort, and the best notice practicable under the circumstances. The Notice, which reached 99.9% of all Settlement Class Members, provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement, to all persons entitled to Notice, and the Notice and its distribution fully satisfied the requirements of due process.*



**Judge Vera M. Scanlon, *Lashambae v. Capital One Bank, N.A.*** (Oct. 21, 2020) 1:17-cv-06406 (E.D.N.Y.):

> *The Class Notice, as amended, contained all of the necessary elements, including the class definition, the identifies of the named Parties and their counsel, a summary of the terms of the proposed Settlement, information regarding the manner in which objections may be submitted, information regarding the opt-out procedures and deadlines, and the date and location of the Final Approval Hearing. Notice was successfully delivered to approximately 98.7% of the Settlement Class and only 78 individual Settlement Class Members did not receive notice by email or first class mail.*
>
> *Having reviewed the content of the Class Notice, as amended, and the manner in which the Class Notice was disseminated, this Court finds that the Class Notice, as amended, satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules. The Class Notice, as amended, provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances and provided this Court with jurisdiction over the absent Settlement Class Members. See Fed. R. Civ. P. 23(c)(2)(B).*

**Chancellor Walter L. Evans, *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals*** (Oct. 14, 2020) CH-13-04871-1 (30th Jud. Dist. Tenn.):

> *Based upon the filings and the record as a whole, the Court finds and determines that dissemination of the Class Notice as set forth herein complies with Tenn. R. Civ. P. 23.03(3) and 23.05 and (i) constitutes the best practicable notice under the circumstances, (ii) was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of Class Settlement, their rights to object to the proposed Settlement, (iii) was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, (iv) meets all applicable requirements of Due Process; (v) and properly provides notice of the attorney's fees that Class Counsel shall seek in this action. As a result, the Court finds that Class Members were properly notified of their rights, received full Due Process . . . .*

**Judge Sara L. Ellis, *Nelson v. Roadrunner Transportation Systems, Inc.*** (Sept. 15, 2020) 1:18-cv-07400 (N.D. Ill.):

> *Notice of the Final Approval Hearing, the proposed motion for attorneys' fees, costs, and expenses, and the proposed Service Award payment to Plaintiff have been provided to Settlement Class Members as directed by this Court's Orders,*
>
> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge George H. Wu, *Lusnak v. Bank of America, N.A.*** (Aug. 10, 2020) CV 14-1855 (C.D. Cal.):

> *The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

**Judge James Lawrence King, *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A.*** (Aug. 10, 2020) 1:10-cv-22190 (S.D. Fla.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

> *The Court finds that the members of the Settlement Class were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement was widely publicized, and any member of the Settlement Class who wished to express comments or objections had ample opportunity and means to do so.*



**Judge Jeffrey S. Ross, *Lehman v. Transbay Joint Powers Authority, et al.*** (Aug. 7, 2020) CGC-16-553758 (Sup. Ct. Cal.):

> *The Notice approved by this Court was distributed to the Settlement Class Members in compliance with this Court's Order Granting Preliminary Approval of Class Action Settlement, dated May 8, 2020. The Notice provided to the Settlement Class Members met the requirements of due process and constituted the best notice practicable in the circumstances. Based on evidence and other material submitted in conjunction with the final approval hearing, notice to the class was adequate.*

**Judge Jean Hoefer Toal, *Cook, et al. v. South Carolina Public Service Authority, et al.*** (July 31, 2020) 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.):

> *Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.*

**Judge Peter J. Messitte, *Jackson, et al. v. Viking Group, Inc., et al.*** (July 28, 2020) 8:18-cv-02356 (D. Md.):

> *[T]he Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order as amended. The Court finds that the Notice Plan: (i) constitutes the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Lawsuit and the terms of the Settlement, their right to exclude themselves from the Settlement, or to object to any part of the Settlement, their right to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Approval Order and the Final Judgment, whether favorable or unfavorable, on all Persons who do not exclude themselves from the Settlement Class, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.*

**Judge Michael P. Shea, *Grayson, et al. v. General Electric Company*** (July 27, 2020) 3:13-cv-01799 (D. Conn.):

> *Pursuant to the Preliminary Approval Order, the Settlement Notice was mailed, emailed and disseminated by the other means described in the Settlement Agreement to the Class Members. This Court finds that this notice procedure was (i) the best practicable notice; (ii) reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Civil Action and of their right to object to or exclude themselves from the proposed Settlement; and (iii) reasonable and constitutes due, adequate, and sufficient notice to all entities and persons entitled to receive notice.*

**Judge Gerald J. Pappert, *Rose v. The Travelers Home and Marine Insurance Company, et al.*** (July 20, 2020) 19-cv-00977 (E.D. Pa.):

> *The Class Notice . . . has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. Such Class Notice (i) constituted the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency and nature of this Action, the definition of the Settlement Class, the terms of the Settlement Agreement, the rights of the Settlement Class to exclude themselves from the settlement or to object to any part of the settlement, the rights of the Settlement Class to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Settlement Agreement on all persons who do not exclude themselves from the Settlement Class, (iii) provided due, adequate, and sufficient notice to the Settlement Class; and (iv) fully satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

**Judge Christina A. Snyder, *Waldrup v. Countrywide Financial Corporation, et al.*** (July 16, 2020) 2:13-cv-08833 (C.D. Cal.):

> *The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members*



*and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

**Judge James Donato, *Coffeng, et al. v. Volkswagen Group of America, Inc.*** (June 10, 2020) 17-cv-01825 (N.D. Cal.):

*The Court finds that, as demonstrated by the Declaration and Supplemental Declaration of Cameron Azari, and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with FED. R. CIV. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Michael W. Fitzgerald, *Behfarin v. Pruco Life Insurance Company, et al.*** (June 3, 2020) 17-cv-05290 (C.D. Cal.):

*The Court finds that the requirements of Rule 23 of the Federal Rule of Civil Procedure and other laws and rules applicable to final settlement approval of class actions have been satisfied . . . .*

*This Court finds that the Claims Administrator caused notice to be disseminated to the Class in accordance with the plan to disseminate Notice outlined in the Settlement Agreement and the Preliminary Approval Order, and that Notice was given in an adequate and sufficient manner and complies with Due Process and Fed. R. Civ. P. 23.*

**Judge Nancy J. Rosenstengel, *First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.*** (Apr. 27, 2020) 3:13-cv-00454 (S.D. Ill.):

*The Court finds that the Notice given to the Class Members was completed as approved by this Court and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The settlement Notice Plan was modeled on and supplements the previous court-approved plan and, having been completed, constitutes the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, the Plan of Distribution, these proceedings, and the rights of Class members to opt-out of the Class and/or object to Final Approval of the Settlement, as well as Plaintiffs' Motion requesting attorney fees, costs, and Class Representative service awards.*

**Judge Harvey Schlesinger, *In re: Disposable Contact Lens Antitrust Litigation* (CooperVision, Inc.)** (Mar. 4, 2020) 3:15-md-02626 (M.D. Fla.):

*The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Orders; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to the provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Classes; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Amos L. Mazzant, *Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Mar. 3, 2020) 4:17-cv-00001 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Equitable Relief Settlement Class; (iii) the claims and issues of the*



*Equitable Relief Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Michael H. Simon, *In re: Premera Blue Cross Customer Data Security Breach Litigation*** (Mar. 2, 2020) 3:15-md-2633 (D. Ore.):

*The Court confirms that the form and content of the Summary Notice, Long Form Notice, Publication Notice, and Claim Form, and the procedure set forth in the Settlement for providing notice of the Settlement to the Class, were in full compliance with the notice requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e), fully, fairly, accurately, and adequately advised members of the Class of their rights under the Settlement, provided the best notice practicable under the circumstances, fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and afforded Class Members with adequate time and opportunity to file objections to the Settlement and attorney's fee motion, submit Requests for Exclusion, and submit Claim Forms to the Settlement Administrator.*

**Judge Maxine M. Chesney, *McKinney-Drobnis, et al. v. Massage Envy Franchising*** (Mar. 2, 2020) 3:16-cv-6450 (N.D. Cal.):

*The COURT hereby finds that the individual direct CLASS NOTICE given to the CLASS via email or First Class U.S. Mail (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the manner in which CLASS MEMBERS could submit a VOUCHER REQUEST under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Harry D. Leinenweber, *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy*** (Feb. 6, 2020) 1:18-cv-1061 (N.D. Ill.):

*The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

*The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order (i) constitute the most effective and practicable notice of the Final Approval Order, the relief available to Settlement Class Members pursuant to the Final Approval Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.*

**Judge Robert Scola, Jr., *Wilson, et al. v. Volkswagen Group of America, Inc., et al.*** (Jan. 28, 2020) 17-cv-23033 (S.D. Fla.):

*The Court finds that the Class Notice, in the form approved by the Court, was properly disseminated to the Settlement Class pursuant to the Notice Plan and constituted the best practicable notice under the circumstances. The forms and methods of the Notice Plan approved by the Court met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution (including the Due Process Clause), and any other applicable law.*

**Judge Michael Davis, *Garcia v. Target Corporation*** (Jan. 27, 2020) 16-cv-02574 (D. Minn.):

*The Court finds that the Notice Plan set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final*



*Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Bruce Howe Hendricks, *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation*** (Jan. 9, 2020) MDL No. 2613, 6:15-MN-02613 (D.S.C.):

*The Classes have been notified of the settlement pursuant to the plan approved by the Court. After having reviewed the Declaration of Cameron R. Azari (ECF No. 220-1) and the Supplemental Declaration of Cameron R. Azari (ECF No. 225-1), the Court hereby finds that notice was accomplished in accordance with the Court's directives. The Court further finds that the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfies the requirements of due process and Federal Rule 23.*

**Judge Margo K. Brodie, *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*** (Dec. 13, 2019) MDL No. 1720, 05-md-1720 (E.D.N.Y.):

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

**Judge Steven Logan, *Knapper v. Cox Communications, Inc.*** (Dec. 13, 2019) 2:17-cv-00913 (D. Ariz.):

*The Court finds that the form and method for notifying the class members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order (Doc. 120). The Court further finds that the notice satisfied due process principles and the requirements of Federal Rule of Civil Procedure 23(c), and the Plaintiff chose the best practicable notice under the circumstances. The Court further finds that the notice was clearly designed to advise the class members of their rights.*

**Judge Manish Shah, *Prather v. Wells Fargo Bank, N.A.*** (Dec. 10, 2019) 1:17-cv-00481 (N.D. Ill.):

*The Court finds that the Notice Plan set forth in Section VIII of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Liam O'Grady, *Liggio v. Apple Federal Credit Union*** (Dec. 6, 2019) 1:18-cv-01059 (E.D. Vir.):

*The Court finds that the manner and form of notice (the "Notice Plan") as provided for in the this Court's July 2, 2019 Order granting preliminary approval of class settlement, and as set forth in the Parties' Settlement Agreement was provided to Settlement Class Members by the Settlement Administrator. . . The Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement. The Notice Plan met the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances.*

**Judge Brian McDonald, *Armon, et al. v. Washington State University*** (Nov. 8, 2019) 17-2-23244-1 (consolidated with 17-2-25052-0) (Sup. Ct. Wash.):

*The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied CR 23(c)(2), was the best Notice practicable under the circumstances, was reasonably calculated to provide-and did provide-due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class Members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate*



*instructions as to how to obtain additional information regarding this Litigation and the Settlement. In addition, pursuant to CR 23(c)(2)(B), the Notice properly informed Settlement Class Members that any Settlement Class Member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.*

**Judge Andrew J. Guilford, *In re: Wells Fargo Collateral Protection Insurance Litigation*** (Nov. 4, 2019) 8:17-ml-02797 (C.D. Cal.):

*Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the parties' settlement administrator, was able to deliver the court-approved notice materials to all class members, including 2,254,411 notice packets and 1,019,408 summary notices.*

**Judge Paul L. Maloney, *Burch v. Whirlpool Corporation*** (Oct. 16, 2019) 1:17-cv-00018 (W.D. Mich.):

*[T]he Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and applicable state laws and due process.*

**Judge Gene E.K. Pratter, *Tashica Fulton-Green, et al. v. Accolade, Inc.*** (Sept. 24, 2019) 2:18-cv-00274 (E.D. Pa.):

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge Edwin Torres, *Burrow, et al. v. Forjas Taurus S.A., et al.*** (Sept. 6, 2019) 1:16-cv-21606 (S.D. Fla.):

*Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).*

**Judge Amos L. Mazzant, *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Aug. 30, 2019) 4:19-cv-00248 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified 2011 Settlement Class; (iii) the claims and issues of the 2011 Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Karon Owen Bowdre, *In re: Community Health Systems, Inc. Customer Data Security Breach Litigation*** (Aug. 22, 2019) MDL No. 2595, 2:15-cv-222 (N.D. Ala.):

*The court finds that the Notice Program: (1) satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process; (2) was the best practicable notice under the circumstances; (3) reasonably apprised Settlement Class members of the pendency of the Action and their right to object to the settlement or opt-out of the Settlement Class; and (4) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Approximately 90% of the 6,081,189 individuals identified as Settlement Class members received the Initial Postcard Notice of this Settlement Action.*

*The court further finds, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that the Class Notice adequately informed Settlement Class members of their rights with respect to this action.*



**Judge Christina A. Snyder, *Zaklit, et al. v. Nationstar Mortgage LLC, et al.*** (Aug. 21, 2019) 5:15-cv-02190 (C.D. Cal.):

> *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

**Judge Brian M. Cogan, *Luib v. Henkel Consumer Goods Inc.*** (Aug. 19, 2019) 1:17-cv-03021 (E.D.N.Y.):

> *The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.*

**Judge Yvonne Gonzalez Rogers, *In re: Lithium Ion Batteries Antitrust Litigation*** (Aug. 16, 2019) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

> *The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. [T]he notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each. As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims. That includes 51,961 new claims, and 973,488 claims filed under the prior settlements.*

**Judge Jon Tigar, *McKnight, et al. v. Uber Technologies, Inc., et al.*** (Aug. 13, 2019) 3:14-cv-05615 (N.D. Cal.):

> *The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval. ECF No. 162 at 17-18. Notices were mailed to over 22 million class members with a success rate of over 90%. Id. at 17. Epiq also created a website, banner ads, and a toll free number. Id. at 17-18. Epiq estimates that it reached through mail and other formats 94.3% of class members. ECF No. 164 ¶ 28. In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.*

**Judge Gary W.B. Chang, *Robinson v. First Hawaiian Bank*** (Aug. 8, 2019) 17-1-0167-01 (Cir. Ct. of First Cir. Haw.):

> *This Court determines that the Notice Program satisfies all of the due process requirements for a class action settlement.*

**Judge Karin Crump, *Hyder, et al. v. Consumers County Mutual Insurance Company*** (July 30, 2019) D-1-GN-16-000596 (D. Ct. of Travis County Tex.):

> *Due and adequate Notice of the pendency of this Action and of this Settlement has been provided to members of the Settlement Class, and this Court hereby finds that the Notice Plan described in the Preliminary Approval Order and completed by Defendant complied fully with the requirements of due process, the Texas Rules of Civil Procedure, and the requirements of due process under the Texas and United States Constitutions, and any other applicable laws.*

**Judge Wendy Bettlestone, *Underwood v. Kohl's Department Stores, Inc., et al.*** (July 24, 2019) 2:15-cv-00730 (E.D. Pa.):

> *The Notice, the contents of which were previously approved by the Court, was disseminated in accordance with the procedures required by the Court's Preliminary Approval Order in accordance with applicable law.*



**Judge Andrew G. Ceresia, J.S.C., *Denier, et al. v. Taconic Biosciences, Inc.*** (July 15, 2019) 00255851 (Sup Ct. N.Y.):

> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of the CPLR.*

**Judge Vince G. Chhabria, *Parsons v. Kimpton Hotel & Restaurant Group, LLC*** (July 11, 2019) 3:16-cv-05387 (N.D. Cal.):

> *Pursuant to the Preliminary Approval Order, the notice documents were sent to Settlement Class Members by email or by first-class mail, and further notice was achieved via publication in People magazine, internet banner notices, and internet sponsored search listings. The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members. The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiff. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.*

**Judge Daniel J. Buckley, *Adlouni v. UCLA Health Systems Auxiliary, et al.*** (June 28, 2019) BC589243 (Sup. Ct. Cal.):

> *The Court finds that the notice to the Settlement Class pursuant to the Preliminary Approval Order was appropriate, adequate, and sufficient, and constituted the best notice practicable under the circumstances to all Persons within the definition of the Settlement Class to apprise interested parties of the pendency of the Action, the nature of the claims, the definition of the Settlement Class, and the opportunity to exclude themselves from the Settlement Class or present objections to the settlement. The notice fully complied with the requirements of due process and all applicable statutes and laws and with the California Rules of Court.*

**Judge John C. Hayes III, *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.*** (June 11, 2019) 2017-CP-25-335 (Ct. of Com. Pleas., S.C.):

> *These multiple efforts at notification far exceed the due process requirement that the class representative provide the best practical notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140 (1974); Hospitality Mgmt. Assoc., Inc. v. Shell Oil, Inc., 356 S.C. 644, 591 S.E.2d 611 (2004). Following this extensive notice campaign reaching over 1.6 million potential class member accounts, Class counsel have received just two objections to the settlement and only 24 opt outs.*

**Judge Stephen K. Bushong, *Scharfstein v. BP West Coast Products, LLC*** (June 4, 2019) 1112-17046 (Ore. Cir., County of Multnomah):

> *The Court finds that the Notice Plan was effected in accordance with the Preliminary Approval and Notice Order, dated March 26, 2019, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Cynthia Bashant, *Lloyd, et al. v. Navy Federal Credit Union*** (May 28, 2019) 17-cv-1280 (S.D. Cal.):

> *This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments. The Court affirms once more that notice was adequate.*

**Judge Robert W. Gettleman, *Cowen v. Lenny & Larry's Inc.*** (May 2, 2019) 1:17-cv-01530 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the elements specified by the Court in the preliminary approval order. Adequate notice of the amended settlement and the final approval hearing has also been given. Such notice informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a means to obtain additional information; was adequate notice under the circumstances; was valid, due, and sufficient notice to all Settlement Class [M]embers; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*



**Judge Edward J. Davila, *In re: HP Printer Firmware Update Litigation*** (Apr. 25, 2019) 5:16-cv-05820 (N.D. Cal.):

> *Due and adequate notice has been given of the Settlement as required by the Preliminary Approval Order. The Court finds that notice of this Settlement was given to Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.*

**Judge Claudia Wilken, *Naiman v. Total Merchant Services, Inc., et al.*** (Apr. 16, 2019) 4:17-cv-03806 (N.D. Cal.):

> *The Court also finds that the notice program satisfied the requirements of Federal Rule of Civil Procedure 23 and due process. The notice approved by the Court and disseminated by Epiq constituted the best practicable method for informing the class about the Final Settlement Agreement and relevant aspects of the litigation.*

**Judge Paul Gardephe, *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)*** (Mar. 31, 2019) 15-cv-9924 (S.D.N.Y.):

> *The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and provided due and adequate notice to the Class.*

**Judge Alison J. Nathan, *Pantelyat, et al. v. Bank of America, N.A., et al.*** (Jan. 31, 2019) 16-cv-08964 (S.D.N.Y.):

> *The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice. The notice fully satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules.*

**Judge Kenneth M. Hoyt, *Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.*** (Jan. 30, 2019) 4:17-cv-3852 (S.D. Tex.):

> *[T]he Court finds that the class has been notified of the Settlement pursuant to the plan approved by the Court. The Court further finds that the notice program constituted the best practicable notice to the class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1) and 28 U.S.C. § 1715.*

**Judge Robert M. Dow, Jr., *In re: Dealer Management Systems Antitrust Litigation*** (Jan. 23, 2019) MDL No. 2817, 18-cv-00864 (N.D. Ill.):

> *The Court finds that the Settlement Administrator fully complied with the Preliminary Approval Order and that the form and manner of providing notice to the Dealership Class of the proposed Settlement with Reynolds was the best notice practicable under the circumstances, including individual notice to all members of the Dealership Class who could be identified through the exercise of reasonable effort. The Court further finds that the notice program provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715(b), and constitutional due process.*

**Judge Federico A. Moreno, *In re: Takata Airbag Products Liability Litigation* (Ford)** (Dec. 20, 2018) MDL No. 2599 (S.D. Fla.):

> *The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States*



*Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Herndon, *Hale v. State Farm Mutual Automobile Insurance Company, et al.*** (Dec. 16, 2018) 3:12-cv-00660 (S.D. Ill.):

*The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.*

**Judge Jesse M. Furman, *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.*** (Nov. 13, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing and distribution of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice efforts described in the Motion for Final Approval, as provided for in the Court's June 26, 2018 Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge William L. Campbell, Jr., *Ajose, et al. v. Interline Brands, Inc.*** (Oct. 23, 2018) 3:14-cv-01707 (M.D. Tenn.):

*The Court finds that the Notice Plan, as approved by the Preliminary Approval Order: (i) satisfied the requirements of Rule 23(c)(3) and due process; (ii) was reasonable and the best practicable notice under the circumstances; (iii) reasonably apprised the Settlement Class of the pendency of the action, the terms of the Agreement, their right to object to the proposed settlement or opt out of the Settlement Class, the right to appear at the Final Fairness Hearing, and the Claims Process; and (iv) was reasonable and constituted due, adequate, and sufficient notice to all those entitled to receive notice.*

**Judge Joseph C. Spero, *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN*** (Oct. 15, 2018) 3:16-cv-05486 (N.D. Cal.):

*[T]the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B)…The notice program included notice sent by first class mail to 1,750,564 class members and reached approximately 95.2% of the class.*

**Judge Marcia G. Cooke, *Dipuglia v. US Coachways, Inc.*** (*Sept. 28, 2018)* 1:17-cv-23006 (S.D. Fla.):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the Case 1:17-cv-23006-MGC Document 66 Entered on FLSD Docket 09/28/2018 Page 3 of 7 4 proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Beth Labson Freeman, *Gergetz v. Telenav, Inc.*** (Sept. 27, 2018) 5:16-cv-04261 (N.D. Cal.):

*The Court finds that the Notice and Notice Plan implemented pursuant to the Settlement Agreement, which consists of individual notice sent via first-class U.S. Mail postcard, notice provided via email, and the posting of relevant Settlement documents on the Settlement Website, has been successfully implemented and was the best notice practicable under the circumstances and: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons*



*entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Rules of this Court.*

**Judge M. James Lorenz, *Farrell v. Bank of America, N.A.*** (Aug. 31, 2018) 3:16-cv-00492 (S.D. Cal.):

*The Court therefore finds that the Class Notices given to Settlement Class members adequately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Dean D. Pregerson, *Falco, et al. v. Nissan North America, Inc., et al.*** (July 16, 2018) 2:13-cv-00686 (C.D. Cal.):

*Notice to the Settlement Class as required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such Notice by first-class mail was given in an adequate and sufficient manner, and constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Lynn Adelman, *In re: Windsor Wood Clad Window Product Liability Litigation*** (July 16, 2018) MDL No. 2688, 16-md-02688 (E.D. Wis.):

*The Court finds that the Notice Program was appropriately administered, and was the best practicable notice to the Class under the circumstances, satisfying the requirements of Rule 23 and due process. The Notice Program, constitutes due, adequate, and sufficient notice to all persons, entities, and/or organizations entitled to receive notice; fully satisfied the requirements of the Constitution of the United States (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law; and is based on the Federal Judicial Center's illustrative class action notices.*

**Judge Stephen K. Bushong, *Surrett, et al. v. Western Culinary Institute, et al.*** (June 18, 2018) 0803-03530 (Ore. Cir. County of Multnomah):

*This Court finds that the distribution of the Notice of Settlement was effected in accordance with the Preliminary Approval/Notice Order, dated February 9, 2018, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Jesse M. Furman, *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.*** (June 1, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice distribution efforts described in the Motion for Final Approval, as provided for in the Court's October 24, 2017 Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge Brad Seligman, *Larson v. John Hancock Life Insurance Company (U.S.A.)*** (May 8, 2018) RG16813803 (Sup. Ct. Cal.):

*The Court finds that the Class Notice and dissemination of the Class Notice as carried out by the Settlement Administrator complied with the Court's order granting preliminary approval and all applicable requirements of law, including, but not limited to California Rules of Court, rule 3.769(f) and the Constitutional requirements of due process, and constituted the best notice practicable under the circumstances and sufficient notice to all persons entitled to notice of the Settlement.*

*[T]he dissemination of the Class Notice constituted the best notice practicable because it included mailing individual notice to all Settlement Class Members who are reasonably identifiable using the same method used to inform class members of certification of the class, following a National Change of Address search and run through the LexisNexis Deceased Database.*



**Judge Federico A. Moreno, *Masson v. Tallahassee Dodge Chrysler Jeep, LLC*** (May 8, 2018) 17-cv-22967 (S.D. Fla.):

> *The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Chancellor Russell T. Perkins, *Morton v. GreenBank*** (Apr. 18, 2018) 11-135-IV (20th Jud. Dist. Tenn.):

> *The Notice Program as provided or in the Agreement and the Preliminary Amended Approval Order constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class members who could be identified through reasonable effort. The Notice Plan fully satisfied the requirements of Tennessee Rule of Civil Procedure 23.03, due process and any other applicable law.*

**Judge James V. Selna, *Callaway v. Mercedes-Benz USA, LLC*** (Mar. 8, 2018) 8:14-cv-02011 (C.D. Cal.):

> *The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.*
>
> *The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement and how to object to the Settlement.*
>
> *The Court has considered and rejected the objection . . . [regarding] the adequacy of the notice plan. The notice given provided ample information regarding the case. Class members also had the ability to seek additional information from the settlement website, from Class Counsel or from the Class Administrator*

**Judge Thomas M. Durkin, *Vergara, et al., v. Uber Technologies, Inc.*** (Mar. 1, 2018) 1:15-cv-06972 (N.D. Ill.):

> *The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.*

**Judge Federico A. Moreno, *In re: Takata Airbag Products Liability Litigation* (Honda & Nissan)** (Feb. 28, 2018) MDL No. 2599 (S.D. Fla.):

> *The Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED R. CIV. R. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Susan O. Hickey, *Larey v. Allstate Property and Casualty Insurance Company*** (Feb. 9, 2018) 4:14-cv-04008 (W.D. Kan.):

> *Based on the Court's review of the evidence submitted and argument of counsel, the Court finds and concludes that the Class Notice and Claim Form was mailed to potential Class Members in accordance with the provisions of the Preliminary Approval Order, and together with the Publication Notice, the automated toll-free telephone number, and the settlement website: (i) constituted, under the circumstances, the most effective and practicable notice of the pendency of the Lawsuit, this Stipulation, and the Final Approval*



*Hearing to all Class Members who could be identified through reasonable effort; and (ii) met all requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law.*

**Judge Muriel D. Hughes, *Glaske v. Independent Bank Corporation*** (Jan. 11, 2018) 13-009983 (Cir. Ct. Mich.):

*The Court-approved Notice Plan satisfied due process requirements . . . The notice, among other things, was calculated to reach Settlement Class Members because it was sent to their last known email or mail address in the Bank's files.*

**Judge Naomi Reice Buchwald, *Orlander v. Staples, Inc.*** (Dec. 13, 2017) 13-CV-0703 (S.D.N.Y.):

*The Notice of Class Action Settlement ("Notice") was given to all Class Members who could be identified with reasonable effort in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and the terms and conditions of the proposed Settlement met the requirements of Federal Rule of Civil Procedure 23 and the Constitution of the United States (including the Due Process Clause); and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

**Judge Lisa Godbey Wood, *T.A.N. v. PNI Digital Media, Inc.*** (Dec. 1, 2017) 2:16-cv-132 (S.D. Ga.):

*Notice to the Settlement Class Members required by Rule 23 has been provided as directed by this Court in the Preliminary Approval Order, and such notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.*

**Judge Robin L. Rosenberg, *Gottlieb v. Citgo Petroleum Corporation*** (Nov. 29, 2017) 9:16-cv-81911 (S.D. Fla):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Donald M. Middlebrooks, *Mahoney v. TT of Pine Ridge, Inc.*** (Nov. 20, 2017) 9:17-cv-80029 (S.D. Fla.):

*Based on the Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement Agreement, and upon the Declaration of Cameron Azari, Esq. (DE 61-1), the Court finds that Class Notice provided to the Settlement Class was the best notice practicable under the circumstances, and that it satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e)(1).*

**Judge Gerald Austin McHugh, *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.*** (Nov. 8, 2017) 2:14-cv-04464 (E.D. Pa.):

*Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby. The Court finds that the notice provided was the best notice practicable under the circumstances to all persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Federico A. Moreno, *In re: Takata Airbag Products Liability Litigation* (BMW, Mazda, Toyota, & Subaru)** (Nov. 1, 2017) MDL No. 2599 (S.D. Fla.):

*[T]he Court finds that the Class Notice has been given to the Class in the manner approved in the Preliminary Approval Order. The Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the orders and Final Order and Final Judgment in the Action, whether*



*favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Charles R. Breyer,** ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*** (May 17, 2017) MDL No. 2672 (N.D. Cal.):

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

**Judge Rebecca Brett Nightingale,** ***Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.*** (May 15, 2017) CJ-2015-00859 (Dist. Ct. Okla.):

*The Court-approved Notice Plan satisfies Oklahoma law because it is "reasonable" (12 O.S. § 2023(E)(I)) and it satisfies due process requirements because it was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).*

**Judge Joseph F. Bataillon,** ***Klug v. Watts Regulator Company*** (Apr. 13, 2017) No. 8:15-cv-00061 (D. Neb.):

*The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*

**Judge Yvonne Gonzalez Rogers,** ***Bias v. Wells Fargo & Company, et al.*** (Apr. 13, 2017) 4:12-cv-00664 (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia,** ***Whitton v. Deffenbaugh Industries, Inc., et al.*** (Dec. 14, 2016) 2:12-cv-02247 and ***Gary, LLC v. Deffenbaugh Industries, Inc., et al.*** 2:13-cv-02634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane,** ***In re: Shop-Vac Marketing and Sales Practices Litigation*** (Dec. 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*



**Judge Timothy D. Fox, *Miner v. Philip Morris USA, Inc.*** (Nov. 21, 2016) 60CV03-4661 (Ark. Cir. Ct.):

> *The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.*

**Judge Eileen Bransten, *In re: HSBC Bank USA, N.A.,* as part of *In re: Checking Account Overdraft Litigation*** (Oct. 13, 2016) 650562/2011 (Sup. Ct. N.Y.):

> *This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.*

**Judge Jerome B. Simandle, *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*** (Sept. 20, 2016) MDL No. 2540 (D.N.J.):

> *The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.*

**Judge Marcia G. Cooke, *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.*** (Apr. 11, 2016) 14-23120 (S.D. Fla.):

> *Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.*

**Judge Yvonne Gonzalez Rogers, *In re: Lithium Ion Batteries Antitrust Litigation*** (Mar. 22, 2016) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

> *From what I could tell, I liked your approach and the way you did it. I get a lot of these notices that I think are all legalese and no one can really understand them. Yours was not that way.*

**Judge Christopher S. Sontchi, *In re: Energy Future Holdings Corp, et al.*** (July 30, 2015) 14-10979 (Bankr. D. Del.):

> *Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.*

**Judge David C. Norton, *In re: MI Windows and Doors Inc. Products Liability Litigation*** (July 22, 2015) MDL No. 2333, 2:12-mn-00001 (D.S.C.):

> *The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.*
>
> *The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and*



*preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.*

**Judge Robert W. Gettleman, *Adkins, et al. v. Nestlé Purina PetCare Company, et al.*** (June 23, 2015) 1:12-cv-02871 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King, *Steen v. Capital One, N.A.*** (May 22, 2015) 2:10-cv-01505 (E.D. La.) and 1:10-cv-22058 (S.D. Fla.) as part of ***In re: Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.):

> *The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.*

**Judge Rya W. Zobel, *Gulbankian et al. v. MW Manufacturers, Inc.*** (Dec. 29, 2014) 1:10-cv-10392 (D. Mass.):

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila, *Rose v. Bank of America Corporation, et al.*** (Aug. 29, 2014) 5:11-cv-02390 and 5:12-cv-0400 (N.D. Cal.):

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II, *Wong, et al. v. Alacer Corp.*** (June 27, 2014) CGC-12-519221 (Sup. Ct. Cal.):

> *Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*



**Judge John Gleeson, *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*** (Dec. 13, 2013) MDL No. 1720, 05-md-01720 (E.D.N.Y.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

**Judge Lance M. Africk, *Evans, et al. v. TIN, Inc., et al.*** (July 7, 2013) 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen, *Marolda v. Symantec Corporation*** (Apr. 5, 2013) 3:08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . . The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process. Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications. These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery, *In re: Zurn Pex Plumbing Products Liability Litigation*** (Feb. 27, 2013) MDL No. 1958, 08-md-1958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*
>
> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart, *Gessele, et al. v. Jack in the Box, Inc.*** (Jan. 28, 2013) 3:10-cv-960 (D. Ore.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing. Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*** *(Medical Benefits Settlement)* (Jan. 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed. Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.) Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements). Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.) All notice documents were designed to be clear, substantive, and informative. (Id. ¶ 5.)*



*The Court received no objections to the scope or content of the [Medical Benefits] Notice Program. (Azari Supp. Decl. ¶ 12.) The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort. Likewise, the Notice and Notice Plan satisfied the requirements of Due Process. The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*

**Judge Carl J. Barbier, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*** *(Economic and Property Damages Settlement)* (Dec. 21, 2012) MDL No. 2179 (E.D. La.):

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval. The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers. Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights. See Azari Decl. ¶¶ 8, 15, 68. The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris, *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.*** (Aug. 17, 2012) 12-C-1599 (27th Jud. D. Ct. La.):

*Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King, *Sachar v. Iberiabank Corporation*** (Apr. 26, 2012) as part of ***In re: Checking Account Overdraft*** MDL No. 2036 (S.D. Fla):

*The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re: Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class*



> *Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*

**Judge Bobby Peters, *Vereen v. Lowe's Home Centers*** (Apr. 13, 2012) SU10-cv-2267B (Ga. Super. Ct.):

> *The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

> *The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal, *In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation*** (Mar. 2, 2012) MDL No. 2046 (S.D. Tex.):

> *The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re: Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates, *Trombley v. National City Bank*** (Dec. 1, 2011) 1:10-cv-00232 (D.D.C.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

> *The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr., *Schulte v. Fifth Third Bank*** (July 29, 2011) 1:09-cv-06655 (N.D. Ill.):

> *The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle, *Williams v. Hammerman & Gainer Inc.*** (June 30, 2011) 11-C-3187-B (27th Jud. D. Ct. La.):

> *Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court*



*to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Stefan R. Underhill, *Mathena v. Webster Bank, N.A.*** (Mar. 24, 2011) 3:10-cv-01448 (D. Conn.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart, *Miller v. Basic Research, LLC*** (Sept. 2, 2010) 2:07-cv-00871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi, *Pavlov v. Continental Casualty Co.*** (Oct. 7, 2009) 5:07-cv-2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson, *In re: Department of Veterans Affairs (VA) Data Theft Litigation*** (Sept. 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

## LEGAL NOTICE CASES

Hilsoft has served as a notice expert for planning, implementation and/or analysis in the following partial list of cases:

| | |
|---|---|
| ***Yamagata et al. v. Reckitt Benckiser LLC*** | N.D. Cal., No. 3:17-cv-03529 |
| ***Thompson et al. v. Community Bank, N.A.* (Overdraft)** | N.D.N.Y., No. 8:19-cv-0919 |
| ***Silveira v. M&T Bank*** | C.D. Cal., No. 2:19-cv-06958 |
| ***In re Toll Roads Litigation; Borsuk et al. v. Foothill/Eastern Transportation Corridor Agency, et al.* (OCTA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |
| ***In Re: Toll Roads Litigation* (3M/TCA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |



| | |
|---|---|
| ***Pearlstone v. Wal-Mart Stores, Inc.*** **(Sales Tax)** | C.D. Cal., No. 4:17-cv-02856 |
| ***Zanca, et al. v. Epic Games, Inc.*** **(Fortnite or Rocket League Video Games)** | Sup Ct. Wake Cnty., N.C., No. 21-CVS-534 |
| ***In re: Flint Water Cases*** | E.D. Mich., No. 5:16-cv-10444 |
| ***Kukorinis, et al. v. Walmart, Inc.*** | S.D. Fla., No. 1:19-cv-20592 |
| ***Grace v. Apple, Inc.*** | N.D. Cal., No. 17-CV-00551 |
| ***Alvarez v. Sirius XM Radio Inc.*** | C.D. Cal., No. 2:18-cv-8605 |
| ***In re: Pre-Filled Propane Tank Antitrust Litigation*** | W.D. Mo., No. MDL No. 2567, No. 14-2567 |
| ***In re: Disposable Contact Lens Antitrust Litigation*** **(ABB Concise Optical Group, LLC)** | M.D. Fla., No. 3:15-md-02626 |
| ***Bally v. State Farm Insurance Company*** | N.D. Cal., No. 3:18-cv-04954 |
| ***Morris v. Provident Credit Union*** **(Overdraft)** | Sup. Ct. Cal. Cty. of San Fran., No. CGC-19-581616 |
| ***Pennington v. Tetra Tech, Inc. et al.*** | N.D. Cal., No. 3:18-cv-05330 |
| ***Maldonado et al. v. Apple Inc, et al.*** | N.D. Cal., No. 3:16-cv-04067 |
| ***UFCW & Employers Benefit Trust v. Sutter Health, et al.*** | Sup. Ct. of Cal., Cnty of San Fran., No. CGC 14-538451 Consolidated with CGC-18-565398 |
| ***Fitzhenry v. Independent Home Products, LLC*** **(TCPA)** | D.S.C., No. 2:19-cv-02993 |
| ***In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.*** | C.D. Cal., Nos. 8:17-CV-00838 & 18-cv-02223 |
| ***Sager, et al. v. Volkswagen Group of America, Inc., et al.*** | D.N.J., No. 18-cv-13556 |
| ***Bautista v. Valero Marketing and Supply Company*** | N.D. Cal., No. 3:15-cv-05557 |
| ***Snee Farm Lakes Homeowner's Association Inc. v. The Commissioners of Public Works for the Town of Mount Pleasant d/b/a Mount Pleasant Waterworks*** | Ct. of Com. Pleas., S.C., No. 2018-CP-10-2764 |
| ***Richards, et al. v. Chime Financial, Inc.*** | N.D. Cal., No. 4:19-cv-06864 |
| ***In re: Health Insurance Innovations Securities Litigation*** | M.D. Fla., No. 8:17-cv-02186 |
| ***Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health*** **(Data Breach)** | W.D. Wis., No. 18-cv-327 |
| ***Smith v. Costa Del Mar, Inc.*** | M.D. Fla., No. 3:18-cv-1011 |
| ***Al's Discount Plumbing, et al. v. Viega, LLC*** **(Building Products)** | M.D. Pa., No. 19-cv-00159 |
| ***The Weinstein Company Holdings, LLC*** | Bankr. D. Del., No. 18-10601 |
| ***Rose v. The Travelers Home and Marine Insurance Company, et al.*** | E.D. Pa., No. 19-cv-00977 |
| ***Paris et al. v. Progressive American Insurance Company, et al.*** | S.D. Fla., No. 19-cv-21761 |
| ***Chinitz v. Intero Real Estate Services*** | N.D. Cal., No. 5:18-cv-05623 |
| ***Eastwood Construction LLC, et al. v. City of Monroe*** <br> ***The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe*** | Sup. Ct. N.C., Nos. 18-CVS-2692 & 19-CVS-1825 |

| | |
|---|---|
| ***Garvin v. San Diego Unified Port District*** | Sup. Ct. Cal., No. 37-2020-00015064 |
| ***Consumer Financial Protection Bureau v. Siringoringo Law Firm*** | C.D. Cal., No. 8:14-cv-01155 |
| ***Robinson v. Nationstar Mortgage LLC*** | D. Md., No. 8:14-cv-03667 |
| ***Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC (TCPA)*** | S.D. Ala., No. 1:19-cv-00563 |
| ***In re: Libor-Based Financial Instruments Antitrust Litigation*** | S.D.N.Y., MDL No. 2262, No. 1:11-md-2262 |
| ***Izor v. Abacus Data Systems, Inc.* (TCPA)** | N.D. Cal., No. 19-cv-01057 |
| ***Cook, et al. v. South Carolina Public Service Authority, et al.*** | Ct. of Com. Pleas. 13th Jud. Cir. S.C., No. 2019-CP-23-6675 |
| ***K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals*** | 30th Jud. Dist. Tenn., No. CH-13-04871-1 |
| ***In re: Roman Catholic Diocese of Harrisburg*** | Bank. Ct. M.D. Pa., No. 1:20-bk-00599 |
| ***Denier, et al. v. Taconic Biosciences, Inc.*** | Sup Ct. N.Y., No. 00255851 |
| ***Robinson v. First Hawaiian Bank* (Overdraft)** | Cir. Ct. of First Cir. Haw., No. 17-1-0167-01 |
| ***Burch v. Whirlpool Corporation*** | W.D. Mich., No. 1:17-cv-00018 |
| ***Armon, et al. v. Washington State University* (Data Breach)** | Sup. Ct. Wash., No. 17-2-23244-1 consolidated with No. 17-2-25052-0 |
| ***Wilson, et al. v. Volkswagen Group of America, Inc., et al.*** | S.D. Fla., No. 17-cv-23033 |
| ***Prather v. Wells Fargo Bank, N.A.* (TCPA)** | N.D. Ill., No. 1:17-cv-00481 |
| ***In re: Wells Fargo Collateral Protection Insurance Litigation*** | C.D. Cal., No. 8:17-ml-02797 |
| ***Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.*** | D. Ore., No. 3:16-cv-00580 |
| ***Coffeng, et al. v. Volkswagen Group of America, Inc.*** | N.D. Cal., No. 17-cv-01825 |
| ***In re: Disposable Contact Lens Antitrust Litigation* (CooperVision, Inc.)** | M.D. Fla., No. 3:15-md-02626 |
| ***Audet, et al. v. Garza, et al.*** | D. Conn., No. 3:16-cv-00940 |
| ***Hyder, et al. v. Consumers County Mutual Insurance Company*** | D. Ct. of Travis County Tex., No. D-1-GN-16-000596 |
| ***Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** | E.D. Tex., No. 4:19-cv-00248 |
| ***In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation*** | D.S.C., MDL No. 2613, No. 6:15-MN-02613 |
| ***Liggio v. Apple Federal Credit Union*** | E.D. Vir., No. 1:18-cv-01059 |
| ***Garcia v. Target Corporation* (TCPA)** | D. Minn., No. 16-cv-02574 |
| ***Albrecht v. Oasis Power, LLC d/b/a Oasis Energy*** | N.D. Ill., No. 1:18-cv-1061 |
| ***McKinney-Drobnis, et al. v. Massage Envy Franchising*** | N.D. Cal., No. 3:16-cv-6450 |

| | |
|---|---|
| ***In re: Optical Disk Drive Products Antitrust Litigation*** | N.D. Cal., MDL No. 2143, No. 3:10-md-2143 |
| ***Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** | E.D. Tex., No. 4:17-cv-00001 |
| ***In re: Kaiser Gypsum Company, Inc., el al.* (Asbestos)** | Bankr. W.D. N.C., No. 16-31602 |
| ***Kuss v. American HomePatient, Inc., et al.* (Data Breach)** | M.D. Fla., No. 8:18-cv-2348 |
| ***Lusnak v. Bank of America, N.A.*** | C.D. Cal., No. 14-cv-1855 |
| ***In re: Premera Blue Cross Customer Data Security Breach Litigation*** | D. Ore., No. 3:15-md-2633 |
| ***Elder v. Hilton Worldwide Holdings, Inc.* (Hotel Stay Promotion)** | N.D. Cal., No. 16-cv-00278 |
| ***Grayson, et al. v. General Electric Company* (Microwaves)** | D. Conn., No. 3:13-cv-01799 |
| ***Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company*** | Sup. Ct Cal., No. BC 579498 |
| ***Lashambae v. Capital One Bank, N.A.* (Overdraft)** | E.D.N.Y., No. 1:17-cv-06406 |
| ***Trujillo, et al. v. Ametek, Inc., et al.* (Toxic Leak)** | S.D. Cal., No.3:15-cv-01394 |
| ***Cox, et al. v. Ametek, Inc., et al.* (Toxic Leak)** | S.D. Cal., No. 3:17-cv-00597 |
| ***Pirozzi, et al. v. Massage Envy Franchising, LLC*** | E.D. Mo., No. 4:19-CV-807 |
| ***Lehman v. Transbay Joint Powers Authority, et al.* (Millennium Tower)** | Sup. Ct. Cal., No. GCG-16-553758 |
| ***In re: FCA US LLC Monostable Electronic Gearshift Litigation*** | E.D. Mich., MDL No. 2744 & No. 16-md-02744 |
| ***Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A.*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., No. 1:10-CV-22190, as part of MDL No. 2036 |
| ***Behfarin v. Pruco Life Insurance Company, et al.*** | C.D. Cal., No. 17-cv-05290 |
| ***In re: Renovate America Finance Cases*** | Sup. Ct, Cal., County of Riverside, No. RICJCCP4940 |
| ***Nelson v. Roadrunner Transportation Systems, Inc.* (Data Breach)** | N.D. Ill., No. 1:18-cv-07400 |
| ***Skochin, et al. v. Genworth Life Insurance Company, et al.*** | E.D. Vir., No. 3:19-cv-00049 |
| ***Walters, et al. v. Target Corp.* (Overdraft)** | S.D. Cal., No. 3:16-cv-1678 |
| ***Jackson, et al. v. Viking Group, Inc., et al.*** | D. Md., No. 8:18-cv-02356 |
| ***Waldrup v. Countrywide Financial Corporation, et al.*** | C.D. Cal., No. 2:13-cv-08833 |
| ***Burrow, et al. v. Forjas Taurus S.A., et al.*** | S.D. Fla., No. 1:16-cv-21606 |
| ***Henrikson v. Samsung Electronics Canada Inc.*** | Ontario Sup. Ct., No. 2762-16cp |
| ***In re: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation*** | E.D. Pa., No. 2:09-md-02034 |
| ***Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.*** | Ct. of Com. Pleas., S.C., No. 2017-CP-25-335 |

| ***Rabin v. HP Canada Co., et al.*** | Quebec Ct., Dist. of Montreal, No. 500-06-000813-168 |
|---|---|
| ***McIntosh v. Takata Corporation, et al.; Vitoratos, et al. v. Takata Corporation, et al.; and Hall v. Takata Corporation, et al.*** | Ontario Sup Ct., No. CV-16-543833-00CP; Quebec Sup. Ct of Justice, No. 500-06-000723-144; & Court of Queen's Bench for Saskatchewan, No. QBG. 1284 or 2015 |
| ***Di Filippo v. The Bank of Nova Scotia, et al.* (Gold Market Instrument)** | Ontario Sup. Ct., No. CV-15-543005-00CP & No. CV-16-551067-00CP |
| ***Adlouni v. UCLA Health Systems Auxiliary, et al.*** | Sup. Ct. Cal., No. BC589243 |
| ***Lloyd, et al. v. Navy Federal Credit Union*** | S.D. Cal., No. 17-cv-1280 |
| ***Luib v. Henkel Consumer Goods Inc.*** | E.D.N.Y., No. 1:17-cv-03021 |
| ***Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (TCPA)** | C.D. Cal., No. 5:15-cv-02190 |
| ***In re: HP Printer Firmware Update Litigation*** | N.D. Cal., No. 5:16-cv-05820 |
| ***In re: Dealer Management Systems Antitrust Litigation*** | N.D. Ill., MDL No. 2817, No. 18-cv-00864 |
| ***Mosser v. TD Bank, N.A. and Mazzadra, et al. v. TD Bank, N.A.*, as part of *In re: Checking Account Overdraft*** | E.D. Pa., No. 2:10-cv-00731, S.D. Fla., No. 10-cv-21386 and S.D. Fla., No. 1:10-cv-21870, as part of S.D. Fla., MDL No. 2036 |
| ***Naiman v. Total Merchant Services, Inc., et al.* (TCPA)** | N.D. Cal., No. 4:17-cv-03806 |
| ***In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation*** | Sup. Ct. Cal., No. CV2016-013446 |
| ***Parsons v. Kimpton Hotel & Restaurant Group, LLC* (Data Breach)** | N.D. Cal., No. 3:16-cv-05387 |
| ***Stahl v. Bank of the West*** | Sup. Ct. Cal., No. BC673397 |
| ***37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)*** | S.D.N.Y., No. 15-cv-9924 |
| ***Tashica Fulton-Green, et al. v. Accolade, Inc.*** | E.D. Pa., No. 2:18-cv-00274 |
| ***In re: Community Health Systems, Inc. Customer Data Security Breach Litigation*** | N.D. Ala., MDL No. 2595, No. 2:15-CV-222 |
| ***Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.*** | S.D. Tex., No. 4:17-cv-3852 |
| ***Cowen v. Lenny & Larry's Inc.*** | N.D. Ill., No. 1:17-cv-01530 |
| ***Martin v. Trott* (MI - Foreclosure)** | E.D. Mich., No. 2:15-cv-12838 |
| ***Knapper v. Cox Communications, Inc.* (TCPA)** | D. Ariz., No. 2:17-cv-00913 |
| ***Dipuglia v. US Coachways, Inc.* (TCPA)** | S.D. Fla., No. 1:17-cv-23006 |
| ***Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (TCPA)** | N.D. Cal., No. 3:16-cv-05486 |
| ***First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.*** | S.D. Ill., No. 3:13-cv-00454 |
| ***Raffin v. Medicredit, Inc., et al.*** | C.D. Cal., No. 15-cv-4912 |



| | |
|---|---|
| ***Gergetz v. Telenav, Inc.* (TCPA)** | N.D. Cal., No. 5:16-cv-04261 |
| ***Ajose, et al. v. Interline Brands Inc.* (Plumbing Fixtures)** | M.D. Tenn., No. 3:14-cv-01707 |
| ***Underwood v. Kohl's Department Stores, Inc., et al.*** | E.D. Pa., No. 2:15-cv-00730 |
| ***Surrett, et al. v. Western Culinary Institute, et al.*** | Ore. Cir., County of Multnomah, No. 0803-03530 |
| ***Vergara, et al., v. Uber Technologies, Inc.* (TCPA)** | N.D. Ill., No. 1:15-CV-06972 |
| ***Watson v. Bank of America Corporation, et al.; Bancroft-Snell et al. v. Visa Canada Corporation, et al.; Bakopanos v. Visa Canada Corporation, et al.; Macaronies Hair Club and Laser Center Inc. operating as Fuze Salon v. BofA Canada Bank, et al.; Hello Baby Equipment Inc. v. BofA Canada Bank and others (Visa and Mastercard Canadian Interchange Fees)*** | Sup. Ct. of B.C., No. VLC-S-S-112003; Ontario Sup. Ct., No. CV-11-426591; Sup. Ct. of Quebec, No. 500-06-00549-101; Ct. of QB of Alberta, No. 1203-18531; Ct. of QB of Saskatchewan, No. 133 of 2013 |
| ***In re: Takata Airbag Products Liability Litigation* (OEMs – BMW, Mazda, Subaru, and Toyota)** | S.D. Fla., MDL No. 2599 |
| ***In re: Takata Airbag Products Liability Litigation* (OEMs – Honda and Nissan)** | S.D. Fla., MDL No. 2599 |
| ***In re: Takata Airbag Products Liability Litigation* (OEM – Ford)** | S.D. Fla., MDL No. 2599 |
| ***Poseidon Concepts Corp., et al.* (Canadian Securities Litigation)** | Ct. of QB of Alberta, No. 1301-04364 |
| ***Callaway v. Mercedes-Benz USA, LLC* (Seat Heaters)** | C.D. Cal., No. 8:14-cv-02011 |
| ***Hale v. State Farm Mutual Automobile Insurance Company, et al.*** | S.D. Ill., No. 3:12-cv-0660 |
| ***Farrell v. Bank of America, N.A.* (Overdraft)** | S.D. Cal., No. 3:16-cv-00492 |
| ***In re: Windsor Wood Clad Window Products Liability Litigation*** | E.D. Wis., MDL No. 2688, No. 16-MD-02688 |
| ***Wallace, et al, v. Monier Lifetile LLC, et al.*** | Sup. Ct. Cal., No. SCV-16410 |
| ***In re: Parking Heaters Antitrust Litigation*** | E.D.N.Y., No. 15-MC-0940 |
| ***Pantelyat, et al. v. Bank of America, N.A., et al.* (Overdraft / Uber)** | S.D.N.Y., No. 16-cv-08964 |
| ***Falco et al. v. Nissan North America, Inc., et al.* (Engine – CA & WA)** | C.D. Cal., No. 2:13-cv-00686 |
| ***Alaska Electrical Pension Fund, et al. v. Bank of America N.A., et al.* (ISDAfix Instruments)** | S.D.N.Y., No. 14-cv-7126 |
| ***Larson v. John Hancock Life Insurance Company (U.S.A.)*** | Sup. Ct. Cal., No. RG16813803 |
| ***Larey v. Allstate Property and Casualty Insurance Company*** | W.D. Kan., No. 4:14-cv-04008 |
| ***Orlander v. Staples, Inc.*** | S.D.N.Y., No. 13-cv-0703 |
| ***Masson v. Tallahassee Dodge Chrysler Jeep, LLC (TCPA)*** | S.D. Fla., No. 1:17-cv-22967 |
| ***Gordon, et al. v. Amadeus IT Group, S.A., et al.*** | S.D.N.Y., No. 1:15-cv-05457 |
| ***Alexander M. Rattner v. Tribe App., Inc., and Kenneth Horsley v. Tribe App., Inc.*** | S.D. Fla., Nos. 1:17-cv-21344 & 1:14-cv-2311 |

| | |
|---|---|
| ***Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.*** | E.D. Pa., No. 2:14-cv-04464 |
| ***Mahoney v. TT of Pine Ridge, Inc.*** | S.D. Fla., No. 9:17-cv-80029 |
| ***Ma, et al. v. Harmless Harvest Inc.*** **(Coconut Water)** | E.D.N.Y., No. 2:16-cv-07102 |
| ***Reilly v. Chipotle Mexican Grill, Inc.*** | S.D. Fla., No. 1:15-cv-23425 |
| ***The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)*** | D. Puerto Rico, No. 17-04780 |
| ***In re: Syngenta Litigation*** | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| ***T.A.N. v. PNI Digital Media, Inc.*** | S.D. Ga., No. 2:16-cv-132 |
| ***Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)*** | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| ***McKnight, et al. v. Uber Technologies, Inc., et al.*** | N.D. Cal., No. 14-cv-05615 |
| ***Gottlieb v. Citgo Petroleum Corporation*** **(TCPA)** | S.D. Fla., No. 9:16-cv-81911 |
| ***Farnham v. Caribou Coffee Company, Inc.*** **(TCPA)** | W.D. Wis., No. 16-cv-00295 |
| ***Jacobs, et al. v. Huntington Bancshares Inc., et al.*** **(FirstMerit Overdraft Fees)** | Ohio C.P., No. 11CV000090 |
| ***Morton v. Greenbank*** **(Overdraft Fees)** | 20th Jud. Dist. Tenn., No. 11-135-IV |
| ***Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.*** **(Overdraft Fees)** | Dist. Ct. Okla., No. CJ-2015-00859 |
| ***Klug v. Watts Regulator Company*** **(Product Liability)** | D. Neb., No. 8:15-cv-00061 |
| ***Bias v. Wells Fargo & Company, et al.*** **(Broker's Price Opinions)** | N.D. Cal., No. 4:12-cv-00664 |
| ***Greater Chautauqua Federal Credit Union v. Kmart Corp., et al.*** **(Data Breach)** | N.D. Ill., No. 1:15-cv-02228 |
| ***Hawkins v. First Tennessee Bank, N.A., et al.*** **(Overdraft Fees)** | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation*** **(Bosch Settlement)** | N.D. Cal., MDL No. 2672 |
| ***In re: HSBC Bank USA, N.A.*** | Sup. Ct. N.Y., No. 650562/11 |
| ***Glaske v. Independent Bank Corporation*** **(Overdraft Fees)** | Cir. Ct. Mich., No. 13-009983 |
| ***MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company*** | 11th Jud. Cir. Fla, No. 15-27940-CA-21 |
| ***In re: Lithium Ion Batteries Antitrust Litigation*** | N.D. Cal., MDL No. 2420, No. 4:13-MD-02420 |
| ***Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.*** | S.D. Fla., No. 14-cv-23120 |
| ***Small v. BOKF, N.A.*** | D. Colo., No. 13-cv-01125 |
| ***Forgione v. Webster Bank N.A.*** **(Overdraft Fees)** | Sup. Ct. Conn., No. X10-UWY-CV-12-6015956-S |



| | |
|---|---|
| ***Swift v. BancorpSouth Bank*, as part of *In re: Checking Account Overdraft*** | N.D. Fla., No. 1:10-cv-00090, as part of S.D. Fla, MDL No. 2036 |
| ***Whitton v. Deffenbaugh Industries, Inc., et al.*<br>*Gary, LLC v. Deffenbaugh Industries, Inc., et al.*** | D. Kan., No. 2:12-cv-02247<br>D. Kan., No. 2:13-cv-02634 |
| ***In re: Citrus Canker Litigation*** | 11th Jud. Cir., Fla., No. 03-8255 CA 13 |
| ***In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*** | D.N.J., MDL No. 2540 |
| ***In re: Shop-Vac Marketing and Sales Practices Litigation*** | M.D. Pa., MDL No. 2380 |
| ***Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.*** | 27th Jud. D. Ct. La., No. 12-C-1599 |
| ***Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.*** | 27th Jud. D. Ct. La., No. 13-C-5380 |
| ***Russell Minoru Ono v. Head Racquet Sports USA*** | C.D. Cal., No. 2:13-cv-04222 |
| ***Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.*** | 27th Jud. D. Ct. La., No. 13-C-3212 |
| ***Gattinella v. Michael Kors (USA), Inc., et al.*** | S.D.N.Y., No. 14-civ-5731 |
| ***In re: Energy Future Holdings Corp., et al.* (Asbestos Claims Bar Notice)** | Bankr. D. Del., No. 14-10979 |
| ***Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.*** | Cir. Ct., Lawrence Cnty, Ala., No. 42-cv-2012- 900001.00 |
| ***Kota of Sarasota, Inc. v. Waste Management Inc. of Florida*** | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., No. 2011-CA-008020NC |
| ***Steen v. Capital One, N.A.*, as part of *In re: Checking Account Overdraft*** | E.D. La., No. 2:10-cv-01505 and 1:10-cv-22058, as part of S.D. Fla., MDL No. 2036 |
| ***Childs, et al. v. Synovus Bank, et al.*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***In re: MI Windows and Doors Inc. Products Liability Litigation* (Building Products)** | D.S.C., MDL No. 2333 |
| ***Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Scharfstein v. BP West Coast Products, LLC*** | Ore. Cir., County of Multnomah, No. 1112-17046 |
| ***Adkins, et al. v. Nestlé Purina PetCare Company, et al.*** | N.D. Ill., No. 1:12-cv-02871 |
| ***Smith v. City of New Orleans*** | Civil D. Ct., Parish of Orleans, La., No. 2005-05453 |
| ***Hawthorne v. Umpqua Bank* (Overdraft Fees)** | N.D. Cal., No. 11-cv-06700 |
| ***Gulbankian, et al. v. MW Manufacturers, Inc.*** | D. Mass., No. 1:10-cv-10392 |
| ***Costello v. NBT Bank* (Overdraft Fees)** | Sup. Ct. Del Cnty., N.Y., No. 2011-1037 |
| ***In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)*** | E.D.N.Y., MDL No. 2221, No. 11-MD-2221 |



| | |
|---|---|
| ***Wong, et al. v. Alacer Corp.*** **(Emergen-C)** | Sup. Ct. Cal., No. CGC-12-519221 |
| ***Mello et al. v. Susquehanna Bank*****, as part of** ***In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***In re: Plasma-Derivative Protein Therapies Antitrust Litigation*** | N.D. Ill., No. 09-CV-7666 |
| ***Simpson v. Citizens Bank*** **(Overdraft Fees)** | E.D. Mich., No. 2:12-cv-10267 |
| ***George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.*** | 27th Jud. D. Ct. La., No. 09-C-5242-B |
| ***Simmons v. Comerica Bank, N.A.*****, as part of** ***In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***McGann, et al., v. Schnuck Markets, Inc.*** **(Data Breach)** | Mo. Cir. Ct., No. 1322-CC00800 |
| ***Rose v. Bank of America Corporation, et al.*** **(TCPA)** | N.D. Cal., Nos. 5:11-cv-02390 & 5:12-cv-0400 |
| ***Johnson v. Community Bank, N.A., et al.*** **(Overdraft Fees)** | M.D. Pa., No. 3:12-cv-01405 |
| ***National Trucking Financial Reclamation Services, LLC, et al. v. Pilot Corporation, et al.*** | E.D. Ark., No. 4:13-cv-00250 |
| ***Price v. BP Products North America*** | N.D. Ill., No. 12-cv-06799 |
| ***Yarger v. ING Bank*** | D. Del., No. 11-154-LPS |
| ***Glube, et al. v. Pella Corporation, et al.*** **(Building Products)** | Ont. Super. Ct., No. CV-11-4322294-00CP |
| ***Fontaine v. Attorney General of Canada*** **(Mistassini Hostels Residential Schools)** | Qué. Super. Ct., No. 500-06-000293-056 & No. 550-06-000021-056 |
| ***Miner v. Philip Morris Companies, Inc., et al.*** **(Light Cigarettes)** | Ark. Cir. Ct., No. 60CV03-4661 |
| ***Williams v. SIF Consultants of Louisiana, Inc., et al.*** | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| ***Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.*** | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| ***Evans, et al. v. TIN, Inc., et al.*** **(Environmental)** | E.D. La., No. 2:11-cv-02067 |
| ***Anderson v. Compass Bank*****, as part of** ***In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Casayuran v. PNC Bank*****, as part of** ***In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Eno v. M & I Marshall & Ilsley Bank*** **as part of** ***In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Blahut v. Harris, N.A.*****, as part of** ***In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***In re: Zurn Pex Plumbing Products Liability Litigation*** | D. Minn., MDL No. 1958, No. 08-md-1958 |
| ***Saltzman v. Pella Corporation*** **(Building Products)** | N.D. Ill., No. 06-cv-4481 |
| ***In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*** **(Mastercard & Visa)** | E.D.N.Y., MDL No. 1720, No. 05-MD-1720 |
| ***RBS v. Citizens Financial Group, Inc.*****, as part of** ***In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |

| | |
|---|---|
| ***Gessele, et al. v. Jack in the Box, Inc.*** | D. Ore., No. 3:10-cv-960 |
| ***Vodanovich v. Boh Brothers Construction* (Hurricane Katrina Levee Breaches)** | E.D. La., No. 05-cv-4191 |
| ***In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Medical Benefits Settlement)** | E.D. La., MDL No. 2179 |
| ***In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Economic & Property Damages Settlement)** | E.D. La., MDL No. 2179 |
| ***Marolda v. Symantec Corporation* (Software Upgrades)** | N.D. Cal., No. 3:08-cv-05701 |
| ***Opelousas General Hospital Authority v. FairPay Solutions*** | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| ***Fontaine v. Attorney General of Canada* (Stirland Lake and Cristal Lake Residential Schools)** | Ont. Super. Ct., No. 00-CV-192059 CP |
| ***Nelson v. Rabobank, N.A.* (Overdraft Fees)** | Sup. Ct. Cal., No. RIC 1101391 |
| ***Case v. Bank of Oklahoma*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Harris v. Associated Bank*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Wolfgeher v. Commerce Bank*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***McKinley v. Great Western Bank*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Lawson v. BancorpSouth* (Overdraft Fees)** | W.D. Ark., No. 1:12cv1016 |
| ***LaCour v. Whitney Bank* (Overdraft Fees)** | M.D. Fla., No. 8:11cv1896 |
| ***Sachar v. Iberiabank Corporation*, as part of *In re: Checking Account Overdraft*** | S.D. Fla., MDL No. 2036 |
| ***Williams v. S.I.F. Consultants* (CorVel Corporation)** | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| ***Gwiazdowski v. County of Chester* (Prisoner Strip Search)** | E.D. Pa., No. 2:08cv4463 |
| ***Williams v. Hammerman & Gainer, Inc.* (SIF Consultants)** | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| ***Williams v. Hammerman & Gainer, Inc.* (Risk Management)** | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| ***Williams v. Hammerman & Gainer, Inc.* (Hammerman)** | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| ***Gunderson v. F.A. Richard & Assocs., Inc.* (First Health)** | 14th Jud. D. Ct. La., No. 2004-002417 |
| ***Delandro v. County of Allegheny* (Prisoner Strip Search)** | W.D. Pa., No. 2:06-cv-00927 |
| ***Mathena v. Webster Bank, N.A.*, as part of *In re: Checking Account Overdraft*** | D. Conn, No. 3:10-cv-01448, as part of S.D. Fla., MDL No. 2036 |
| ***Vereen v. Lowe's Home Centers* (Defective Drywall)** | Ga. Super. Ct., No. SU10-CV-2267B |
| ***Trombley v. National City Bank*, as part of *In re: Checking Account Overdraft*** | D.D.C., No. 1:10-CV-00232, as part of S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| ***Schulte v. Fifth Third Bank* (Overdraft Fees)** | N.D. Ill., No. 1:09-cv-06655 |
| ***Satterfield v. Simon & Schuster, Inc.* (Text Messaging)** | N.D. Cal., No. 06-CV-2893 |
| ***In re: Heartland Data Payment System Inc. Customer Data Security Breach Litigation*** | S.D. Tex., MDL No. 2046 |
| ***Coyle v. Hornell Brewing Co.* (Arizona Iced Tea)** | D.N.J., No. 08-CV-2797 |
| ***Holk v. Snapple Beverage Corporation*** | D.N.J., No. 3:07-CV-03018 |
| ***Weiner v. Snapple Beverage Corporation*** | S.D.N.Y., No. 07-CV-08742 |
| ***Gunderson v. F.A. Richard & Assocs., Inc.* (Cambridge)** | 14th Jud. D. Ct. La., No. 2004-002417 |
| ***Miller v. Basic Research, LLC* (Weight-loss Supplement)** | D. Utah, No. 2:07-cv-00871 |
| ***In re: Countrywide Customer Data Breach Litigation*** | W.D. Ky., MDL No. 1998 |
| ***Boone v. City of Philadelphia* (Prisoner Strip Search)** | E.D. Pa., No. 05-CV-1851 |
| ***Little v. Kia Motors America, Inc.* (Braking Systems)** | N.J. Super. Ct., No. UNN-L-0800-01 |
| ***Opelousas Trust Authority v. Summit Consulting*** | 27th Jud. D. Ct. La., No. 07-C-3737-B |
| ***Steele v. Pergo* (Flooring Products)** | D. Ore., No. 07-CV-01493 |
| ***Pavlov v. Continental Casualty Co.* (Long Term Care Insurance)** | N.D. Ohio, No. 5:07-cv-2580 |
| ***Dolen v. ABN AMRO Bank N.V.* (Callable CD's)** | Ill. Cir. Ct., Nos. 01-L-454 & 01-L-493 |
| ***In re: Department of Veterans Affairs (VA) Data Theft Litigation*** | D.D.C., MDL No. 1796 |
| ***In re: Katrina Canal Breaches Consolidated Litigation*** | E.D. La., No. 05-4182 |

Hilsoft-cv-146

