UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and on behalf of all others similarly situated,

        Plaintiff,

           v.

UNITED PARCEL SERVICE, INC.,

        Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

---

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
P.O. Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Daniel R. Karon (admitted)
Beau D. Hollowell
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

Sanford P. Dumain (admitted)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC
100 Garden City Plaza, Ste 500
Garden City, NY  11530
Phone: (212) 594-5300
sdumain@milberg.com

*Class Counsel*

Paul T. Friedman (admitted)
Caitlin Sinclair Blythe (admitted)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Phone: (415) 268-7000
cblythe@mofo.com

Gregory B. Koltun (admitted)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
Phone: (213) 892-5200
gkoltun@mofo.com

Sonal Hope Mithani (P51984)
MILLER CANFIELD PADDOCK & STONE PLC
101 North Main Street, 7th Floor
Ann Arbor, MI  48104
Phone: (734) 668-7786
mithani@millercanfield.com

*Counsel for Defendant*

---

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES,
APPROVAL OF SERVICE AWARD, AND FOR REIMBURSEMENT OF
EXPENSES, AND BRIEF IN SUPPORT

Plaintiff respectfully move this Court for entry of an order that:

- Awards Class Counsel attorneys' fees in the amount of $1,894,400;

- Directs reimbursement of Class Counsel counsel in the amount of $54,882 for expenses reasonably and necessarily incurred in prosecuting this action; and

- Award the Class Representative a service award in the amount of $5,000; with

- Each of these amounts to be paid from the Settlement Common Fund in accord with the Class Action Settlement Agreement as approved or modified by this Court.

In support of their Motion, Plaintiff submits the attached Brief in Support and accompanying Exhibits.

Dated: May 16, 2022

<div style="margin-left:auto;">

Respectfully submitted,

*/s/Andrew J. McGuinness*
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

</div>

Daniel R. Karon (*admitted*)
Beau D. Hollowell
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com
bhollowell@Karon.com

Sanford P. Dumain (admitted)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC
100 Garden City Plaza, Ste 500
Garden City, NY  11530
Phone: (212) 594-5300
sdumain@milberg.com

*Class Counsel*

# TABLE OF CONTENTS

ISSUES PRESENTED.......................................................................................... iii

CONTROLLING OR MOST PERTINENT AUTHORITY ................................. ivv

INTRODUCTION ..............................................................................................1

BACKGROUND ................................................................................................2

ARGUMENT ......................................................................................................7

    I.    Class Counsel are entitled to an award of attorneys' fees from the Settlement Common Fund..............................................................7

    II.    Class Counsel's request for attorneys' fees of one-third of the Settlement Common Fund is reasonable................................................8

    IV.    The fee requested satisfies the Sixth Circuit's standard for evaluating fee requests. ....................................................................12

        A.    The Class is receiving an excellent settlement benefit. ............12

        B.    Society benefits from rewarding lawyers like Class Counsel who, when fairly rewarded, incentivize other lawyers to do similar good work...............................................13

        C.    Class Counsel risked their time and money for a contingent fee..........................................................................14

        D.    Class Counsel provided valuable hourly services. ...................14

        E.    This litigation was complicated and included challenging discovery and legal issues.......................................................15

        F.    All counsel are highly respected lawyers. ................................16

    V.    Class Counsel incurred reasonable expenses necessary to achieve settlement. ..............................................................................17

    VI.    Class Counsel seek a reasonable service award for the class representative......................................................................................18

i

CONCLUSION ......................................................................................................20

CERTIFICATE OF SERVICE ...............................................................................22

## ISSUES PRESENTED

1.      Should the Court award Class Counsel attorneys' fees in the amount of $1,894,400, equal to 33 1/3% of the Settlement Common Fund?

2.      Should the Court authorize reimbursement of Class Counsel's expenses of $54,882;

4.      Should the Court grant the Class Representative a service award of $5,000?

Plaintiff answer "Yes" to each of these questions.

Plaintiff is informed and believes that Defendant does not oppose this Motion.

# CONTROLLING OR MOST PERTINENT AUTHORITY

**Page(s)**

## CASES

*Bateman Eichler, Hill Richard, Inc. v. Berner,*
    472 U.S. 299 (1985) .............................................................................13

*Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 U.S. Dist.
    LEXIS 79606 (W.D. Mich. Oct. 26, 2007) ..........................................7

*Boeing v. Van Gemert,*
    444 U.S. 472 (1980) ..............................................................................7

*Bowling v. Pfizer, Inc.,*
    102 F.3d 777 (6th Cir. 1996) ...............................................................10

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ..................................................8, 17

*Gascho v. Global Fitness Holdings, LLC,*
    822 F.3d 269 (6th Cir. 2016) ...........................................................8, 10

*Martin v. Trott Law, P.C.*, No. 15-12838, ECF No. 198, Page ID.
    5077-5079 (E.D. Mich. Sept. 28, 2018) ..........................................9, 16

*Moore v. Aerotek,*
    Nos. 2:15-cv-2701, 2:16-cv-1066, 2017 WL 2838148 (S.D. Ohio
    June 30, 2017) ........................................................................... 12-14. 16

*Moulton v. United States Steel Corp.,*
    581 F.3d 344 (6th Cir. 2009) ..........................................................12, 20

*Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 311 (6th
    Cir. 2016) ............................................................................................19

*Smillie v. Park Chemical Co.,*
    710 F.2d 271 (6th Cir. 1983) ...................................................8, 12, 16

## OTHER AUTHORITIES

4 *Conte & Newberg on Class Actions*, § 14:6 (4th ed. 2002) ..................10

iv

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
AWARD OF ATTORNEYS' FEES, APPROVAL OF SERVICE AWARD,
AND FOR REIMBURSEMENT OF EXPENSES

## **INTRODUCTION**

Class Counsel has obtained a Settlement Common Fund (the "Fund") of approximately $5.7 million —including a cash recovery of $4.85 million and payment by UPS of one-half of the settlement administration costs—for the benefit of the Class.[1] In addition to the Fund, their efforts over eight years of complex litigation (including three successful appeals) have resulted in agreed injunctive relief whereby United Parcel Service, Inc. ("UPS"), has changed the rate table in its Service Guide to address Plaintiff's claims and to clarify its business practices. Accordingly, Class Counsel respectfully submit this memorandum of law in support of their Rule 23(h) motion for an award of attorneys' fees of 33 1/3% of the Fund. Class Counsel also request reimbursement of the $54,882 in litigation expenses that they reasonably and necessarily incurred prosecuting and resolving the Litigation, as well a $5,000 service awards for Class Representative BleachTech LLC.

---

[1] Unless otherwise noted, capitalized terms have the meanings set out in the Amended Class Action Settlement Agreement ("Settlement Agreement") dated April 20, 2021, filed as Exhibit 1 to Plaintiffs' Unopposed Motion and Brief in Support for Preliminary Approval of Class Settlement. (ECF #144.)

## BACKGROUND

This is a class action against UPS, one of the largest parcel delivery companies in the world with annual revenues approximating $100 billion. *See* Declaration of Class Counsel McGuinness, Exhibit 1 (attached) ¶ 2 & n.1. Plaintiff alleges in its Amended Complaint (ECF No. 141) that UPS breached its shipping contracts with millions of shippers who paid for UPS's "declared value service." This service provides extra protection for loss or damage above the $100 coverage provided at no additional charge for each package (i.e., even if the customer did not opt for the declared value service). *Id.*

In the July 9, 2013, UPS Rate and Service Guide ("Service Guide"; Amended Complaint Exh. B) UPS states that its "liability for loss or damage to a shipment is limited to $100 without a declaration of value." The pricing table for "Value Added Services" for "Declared Value for Carriage" in the Service Guide then specifies in table form the price for additional declared value coverage as follows for each package:

| | |
|---|---|
| $0.00-$100.00 | $0.00 |
| $100.01–$50,000.00 for each $100.00 (or portion of $100.00) of the total value declared | $0.85 |
| Minimum | $2.55 |

Plaintiff contends that the phrase "total value declared" in this table must be read *in context* to refer to the range stated in that paragraph ($100.01-$50,000.00). UPS

contends that this phrase must be read *literally*, and on this basis admits that it has charged the $0.85 incremental amount on the *first* $100 of value for those shipments with a declared value in excess of the minimum charge.[2] Judge Rosen granted UPS's motion to dismiss the contract claim as a matter of law on this reading, and dismissed the case.

Plaintiff appealed (first appeal) and the Sixth Circuit reversed this holding. The Sixth Circuit held that "[b]ecause the provision is at least ambiguous, its meaning is a question of fact that is not properly answered by the court at this early stage in the proceedings." *Solo v. UPS Co.,* 819 F.3d 788, 796 (6th Cir. March 18, 2016). The court of appeals remanded to this Court the contract claim and an unjust enrichment claim pleaded in the alternative.[3] McGuinness Decl. ¶¶ 3-5.

From the Spring of 2016 through the Fall of that year the parties engaged in discovery. Discovery was contentious, with numerous meet-and-confers, ESI

---

[2] Plaintiff has not challenged UPS's minimum Declared Value Service charge, the consequence of which is that the Settlement provide relief to shippers who declared a value in excess of $200 under UPS's Retail Rates, and over $300 under UPS's Standard Rates. The incremental charge has fluctuated over the Class Period.

[3] A more detailed procedural history may be found in the "Procedural History" section of Plaintiff's Unopposed Motion and Brief in Support for Preliminary Approval of Class Settlement, ECF No. 144, Page ID. 3098-3100, incorporated herein by this reference. This litigation originated on December 27, 2013, with the filing of a pair of related complaints in this Court and in the Central District of California. These filings pre-dated UPS's adoption of an arbitration clause in its Tariff/Terms & Conditions.

protocol negotiations, and motion practice over, *inter alia*, the scope of a protective order; adequacy of UPS's answers to interrogatories and requests to admit; and appeal of the Executive Magistrate's order that had the potential of exposing Plaintiff's counsel to over $100,000 of costs associated with UPS de-archiving records that were hosted live on its servers when the case(s) were originally filed, but which it had subsequently moved offline. Plaintiffs objected to the Executive Magistrate's order, which objection has not yet been resolved. McGuinness Decl. ¶¶ 6-7.

During discovery the parties took corporate representative Rule 30(b)(6) depositions, and exchanged documents and other written discovery responses. UPS produced over 23,000 documents for review by Class Counsel. *Id*. ¶ 8.

Seven months after remand in the first appeal, in November 2016, UPS filed a motion to stay or dismiss based upon an arbitration clause it adopted at the end of December 2013. UPS argued this clause should be given retroactive application so as to require arbitration of plaintiffs' claims. After briefing and oral argument, this Court denied UPS's motion in September 2017. The Court held that UPS had waived any arbitration agreement that might apply by its delay and conduct in this Litigation. UPS appealed this ruling on an interlocutory basis under Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16 (second appeal). UPS also filed a motion seeking clarification of this Court's arbitration ruling. UPS asked that the Court

clarify that its arbitration ruling applied only to named plaintiffs—not putative class members. This Court denied that motion in February 2018, and UPS appealed that ruling as well (third appeal). McGuinness Decl. ¶ 9.

Plaintiffs filed a motion in the Sixth Circuit to dismiss the third appeal for want of appellate jurisdiction, which was granted in October 2018. In January 2020 after full briefing the Sixth Circuit affirmed this Court's arbitration ruling, finding that UPS had waived any arbitration obligation that might have applied, and also that under the UPS contract terms the arbitration clause does not retroactively apply to shipments made before the arbitration clause went into effect. McGuinness Decl. ¶ 10.

In February 2020 the parties resumed mediation efforts that had been unsuccessful after the first appeal, with Hon. Gerald E. Rosen (ret.), at the JAMS Detroit office. Before and after a second unsuccessful mediation in the summer of 2020, plaintiffs continued to prepare to move forward with litigation and trial if these renewed efforts proved unsuccessful. In a third mediation session in September 2020 the parties reached an agreement in principle to settle the Litigation on a classwide basis. McGuinness Decl. ¶ 11.

Plaintiffs then promulgated additional discovery to test and verify UPS's positions underlying the proposed class settlement. UPS produced hundreds of additional responsive documents and provided other information in response to this

supplemental discovery. Based upon this information and to effectuate the Settlement, Plaintiff with stipulated leave of Court filed an Amended Complaint on December 30, 2020 (ECF 141). The Amended Complaint dropped the unjust enrichment claim and associated named representative (Solo, with his consent) because discovery revealed that he—and virtually all customers who shipped packages at a "third-party retailer" such as Staples, Office Depot, or The UPS Store franchises—did not pay declared value charges under the pricing terms set forth in the Service Guide(s) at issue in this Litigation. McGuinness Decl. ¶ 12.

Considering all this, Plaintiff submits that an award of attorneys' fees to Class Counsel in the amount of 33 1/3% of the Fund, and in addition reimbursement of their expenses of $53,254, is fair and reasonable. This fee is well within the percentage range of attorneys' fees awarded in consumer class actions and other comparable class actions in this district and nationally. And while Plaintiff seeks a fee award based on the percentage-of-the-fund approach, the requested fee represents a *negative* multiplier of -38%, compared with typical award multipliers of two to five times counsel's lodestar in similar cases.[4] For all

---

[4] Accordingly, Class Counsel are seeking a fee award of roughly 62% of their loadstar. McGuinness Decl. ¶ 25. Class Counsel agreed in the Amended Settlement Agreement to limit their fee request to 33 1/3% of the Fund. Settlement Agreement § 5.1, Exhibit 1 to Plaintiff's Unopposed Motion for Preliminary Approval, ECF 144.

of these reasons the Court should grant this Motion.

## ARGUMENT

I.    CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'
      FEES FROM THE SETTLEMENT COMMON FUND.

The Supreme Court has long recognized that "a litigant or a lawyer who

recovers a common fund for the benefit of persons other than himself or his client

is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing v. Van*

*Gemert*, 444 U.S. 472, 478 (1980). S*ee also Geier v. Sundquist*, 372 F.3d 784, 790

(6th Cir. 2004) (describing bases "for a class to recover attorneys' fees pursuant to

the common fund doctrine"); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95,

2007 U.S. Dist. LEXIS 79606, at *13 (W.D. Mich. Oct. 26, 2007) (citing *Van*

*Gemert* and awarding 33% fee ("The court concludes that the percentage of fund

method is the proper method in this case for compensating plaintiffs' counsel. The

fact that the damages which could have been claimed by each class member were

relatively modest provides a strong reason for adopting the percentage of recovery

method, for it rewards counsel for taking on a case which might not otherwise be

economically feasible.").

"The award of attorney's fees is not a special or discretionary remedy;

instead, the award of attorney's fees is intended to encourage consumers to act as

'private attorneys general' . . . ." *Mann v. Acclaim Financial Services, Inc.*, 348 F.

Supp.2d 923, 926-27 (S.D. Ohio 2004); *see also In re: Southeastern Milk Antitrust*

7

*Litig.*, No. 2:08-MD-1000, 2012 WL 12875983, at *4 (E.D. Tenn. July 11, 2012) (attorneys' fees in successful cases should encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.).

## II.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF ONE-THIRD THE SETTLEMENT COMMON FUND IS REASONABLE.

"An award of attorneys [*sic*] fees lies within the sound discretion of the district court." *Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983). Class Counsel ask this Court to employ the percentage-of-the-fund method with a lodestar cross-check for their fee's reasonableness because "courts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common-fund cases." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003); *see also Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 517 (6th Cir. 1993) (observing that "use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common-fund cases").

Where the district court chooses "a percentage of the fund calculation, [it should] value the benefit to the class based on the total relief class counsel makes available to all the class members." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016). In particular, "courts must calculate the ratio between attorney's fees and benefit to the class. Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which

8

includes the 'benefit to class members,' the attorney' fees and may include costs of administration)." *Id*. at 282. This means that courts are to calculates attorneys' fees without first deducting expenses from the denominator. *Martin v. Trott Law, P.C.*, Case No. 15-12838, ECF No. 198, Page ID. 5077-5079 (Sept. 28, 2018) (Lawson, J.) (granting 33.3% fee award on total common settlement fund before deduction of expenses).

When courts use the percentage-of-the-fund method, often they approve a one-third fee request. *See, e.g., id.; In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (Rosen, J.) ("more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *Simpson v. Citizens Bank*, Nos. 2:12-cv-10267, 2:12-cv-11604, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) (Hood, C.J.) ("Class Counsel's request for 33% of the common fund created by their efforts well within the benchmark range and in line with what is often awarded in this Circuit."); *In re Southeastern Milk Antitrust Litig.*, No. 2:03-MD-1000, 2013 WL 2155387, at *3 (E.D. Tenn. July 11, 2012) (approving fee request where "attorneys' fees requested represent one-third of the settlement fund . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."). Other class-action settlements in this Court also support the reasonableness of

Class Counsel's one-third fee request here. *See, e.g.*, *Bourne v. Ansara Rest. Group, Inc.*, No. 16-10332, 2016 WL 7405804, at *3 (E.D. Mich. Dec. 22, 2016) (Lawson, J.) (approving "a third of the potential gross recovery and creation of the common benefit fund" in FLSA class action); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (Cohn, J.) (awarding one-third of the settlement fund as "fair and fully justified," "within the range of fees ordinarily awarded," and "within the range of fee awards in settlements of this type."); *Allan v. Realcomp II, Ltd.*, No. 10-cv-14046, 2014 WL 12656718, at *2 (E.D. Mich. Sept. 4, 2014) (Murphy, J.) (finding award of one-third of the common fund reasonable).

A one-third fee is also consistent with arrangements in the private marketplace for many contingency cases where clients typically agree to a fee based on the amount their attorneys recover. *See, e.g.*, 4 *Conte & Newberg on Class Actions*, § 14:6 at 551 (4th ed. 2002) ("fee awards in class actions average around one-third of the recovery.").

And although "[a] percentage of the fund cross-check is optional," *Gascho*, 822 F.2d at 281, here, cross-checking Class Counsel's fee request against their lodestar enhances the reasonableness of their request. *See, e.g., Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (affirming fee award where "district court based its fee award on a percentage of the common fund and then cross-

checked the fee against class counsel's lodestar); *Bourne v. Ansara Rest. Group, Inc.*, No. 16-10332, 2016 WL 7405804, at *3 (E.D. Mich. Dec. 22, 2016 ("The lodestar, although not the better method to determine the attorney's fee, provides valuable cross-check in the amount requested, which represented a third of the potential gross recovery and creation of the common benefit fund.").

Percentage-of-the-fund recoveries in complex class actions often result in fees representing multiples of Class Counsel's lodestar. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 767–78 (S.D. Ohio 2007) ("Most courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5."); *Manners v. American General Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (awarding multiplier of 3.8 and observing that "this multiplier is well within the range of multipliers for similar litigations, which have ranged from 1-4 and have reached as high as 10.").

Here, cross-checking this fee request against Class Counsel's lodestar (based on their current hourly rates[5]) reflects no multiplier at all—rather, it represents a

---

[5] Because "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed," *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989), "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute." *Id.*

*negative* multiplier.[6] McGuinness Decl. ¶ 25.

## IV. THE FEE REQUESTED SATISFIES THE SIXTH CIRCUIT'S STANDARD FOR EVALUATING FEE REQUESTS.

In *Smillie v. Park Chemical Co.*, 710 F.2d 271 (6th Cir. 1983), the court of appeals articulated six factors for considering the reasonableness of an attorneys' fees awarded from a common fund: (1) the value of the benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent-fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of all counsel. *Id*. at 275. The Sixth Circuit confirmed application of these same six factors in *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

### A. The Class is receiving an excellent settlement benefit.

"The value of the benefit rendered to the plaintiff class is among the most important factors to be considered." *Moore v. Aerotek*, Nos. 2:15-cv-2701, 2:16-cv-1066, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017). To calculate it, "the court should analyze the merits of the case and the risks associated with continued litigation." *Id*.

After more than eight years of litigation, Class Counsel have achieved an

---

[6] McGuinness Declaration at ¶ 25 (calculating a -32% multiplier).

excellent result that is currently estimated to pay class members who do not opt out a significant fraction of their potential claims, which claims would be almost impossible economically to pursue outside of this class action litigation. And because Class Counsel negotiated a settlement with no reverter and no claims forms, virtually 100% of the Fund, net of fees and expenses, will be paid or credited to Class Members.  Particularly when considered in light of UPS's substantial defenses—including a defense that all claims before July 2013 are stale based on its Terms—the result obtained is extremely favorable for the Class. *See* McGuinness Decl. ¶¶ 19-24. As previously discussed in Plaintiff's Motion for Preliminary Approval, the Settlement is structured to provide a higher payout for Covered Packages shipped within the six-month window, and all shippers benefit from the higher recovery that resulted from including prior Covered Shipments in the Class.

> **B.**   **Society benefits from rewarding lawyers like Class Counsel who, when fairly rewarded, incentivize other lawyers to do similar good work.**

 "[A]dequate compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law." *Bateman Eichler, Hill Richard, Inc. v. Berner*, 472 U.S. 299, 310 (1985). "There is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action matters enable this." *Moore*,

2017 WL 2838148, at *8. So "[i]f attorneys are to be encouraged to handle litigation of this nature, attorneys must be awarded fair and reasonable compensation for their efforts." *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991).

### C.    Class Counsel risked their time and money for a contingent fee.

"Where counsel has made significant investments of time, advanced costs, and received no compensation, this typically weighs in favor of grant[ing] the requested attorneys' fees." *Moore*, 2017 WL 2834148, at *8. This is especially true where a "case carries a very real possibility of an unsuccessful outcome, and by their very nature contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *Id*. While Class Counsel believed in their case from the start (after more than a year of investigation), UPS fought hard, denying Plaintiff's claims at every turn. Before long, Class Counsel had spent over eight years of their time and money fighting for their clients and the Class.

### D.    Class Counsel provided valuable hourly services.

Examining the value of the services that Class Counsel provided on an hourly basis "may be done by performing a 'crosscheck' of the requested fees using Class Counsel's lodestar." *Moore*, 2017 WL 2838148, at *7. Doing this "ensure[s] that a fee award is roughly aligned with the amount of work the attorneys contributed." *Id*. (internal quotations and citation omitted). Class

Counsel's ample and necessary lodestar demonstrates the hard work that they performed, collectively representing thousands of hours of attorney time. Class Counsel's declarations reflect loadstar calculations of $990,330 (McGuinness Decl. ¶ 30); $1,145,895 (Karon Decl. ¶ 4); and $926,842 (Dumain Decl. ¶5), respectively, for a total loadstar of $3,063,068 based on counsel's ordinary rates.

### E. This litigation was complicated and included challenging discovery and legal issues.

This litigation involved complex legal and factual issues. As one example, had the asserted retroactive application of UPS's late December 2013 arbitration provision, which bans class proceedings, been resolved against plaintiffs, in this Court or on appeal, it effectively would have ended the case. But Plaintiff's counsel's creativity preserved a large portion of the recovery to which Class Members are now entitled. *See, e.g.*, *Franklin*, 2011 WL 3557033, at *19 (complexity of the litigation supported the requested fee award in a case involving "two rounds of complex motion practice that took over three years to resolve" supported fee award.).

Of course, Class Counsel's successful prosecution of all three appeals substantially improved the value of the case and benefited the Class.

This action also presented vexing ESI and data recovery issues. Even with these problems, Class Counsel reviewed over 23,000 documents and took and defended corporate representative Rule 30(b)(6) depositions. McGuinness Decl.

¶ 8. This case generated a voluminous and heated motion practice as well. *Id.* ¶¶ 6-7.

### F.   All counsel are highly respected lawyers.

Counsel's skill and extensive experience in complex litigation helps determine fair compensation. *See, e.g.*, *Smillie*, 710 F.2d at 275 (evaluating "the professional skill and standing of counsel involved on both sides."). *See also Moore*, WL 2838148, at *8 (internal quotations and citations omitted) ("[T]he ability . . . to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award.").

Class Counsel are experienced consumer law and class actions lawyers. *See* McGuinness Decl. ¶¶ 13-18 & Exh. 1C, attached; Karon Decl. (Exh. 2C), attached; Dumain Decl. (Exh. 3C; attached).[7] UPS was represented by highly qualified and

---

[7] In *Martin v. Trott Law, PC*, Judge Lawson recognized Class Counsel McGuinness and Karon for their efforts and expertise in an action on behalf of a class of hundreds of thousands of Michigan homeowners:

> The value of the services was high, since able counsel secured decisive victories for their clients at every crucial stage of the proceedings, culminating in a very favorable settlement including damages and injunctive relief. Class counsel was retained on a contingent basis and assumed the risk of advancing substantial costs and expenses of the litigation throughout its tortuous course, particularly with respect to the herculean efforts of the parties during the electronic discovery process. As noted above, the litigation was complex, and the proceedings hotly contested. Every indication in the record is that counsel for the plaintiffs fought ably and hard to vindicate their clients' interests, and society would do well to reward those attorneys who engage in such practice to defend the rights of the many thousands of Michigan homeowners who face the potential loss of their homes through foreclosures. Finally, the attorneys

talented counsel as well. McGuinness Decl. ¶ 6.

## V.  CLASS COUNSEL INCURRED REASONABLE EXPENSES NECESSARY TO ACHIEVE SETTLEMENT.

"Under the common fund doctrine, class counsel is entitled to

reimbursement of all reasonable out-of-pocket litigation expenses and costs in the

prosecution of claims and in obtaining settlement, including expenses incurred in

connection with document productions, consulting with experts and consultants,

travel and other litigation-related expenses." *Cardizem CD Antitrust Litig.*, 218

F.R.D. at 535. "Expense awards are customary when litigants have created a

common settlement fund for the benefit of a class." *In re F&M Distribs., Inc. Sec.

Litig.*, No. 95-CV-71778, 1999 WL 35771208 (E.D. Mich. June 29, 1999).

Class Counsel request reimbursement of their reasonable out-of-pocket

expenses, which total $54,882. *See* Exhibit 1B; Exhibit 2B; Exhibit 3B.[8] Also, the

Class Notice informed Class Members that Plaintiff's counsel would seek

reimbursement of their expenses. *See Beattie v. CenturyTel, Inc.*, No. 02-10277,

2010 WL 11545032 (E.D. Mich. July 9, 2010) (notice of the fee and expense

request was adequate and given to the class in a reasonable manner as required by

---

are experienced and well regarded consumer class action counsel, deserving
of the contingent fee compensation for which they have applied.
Case No. 2:15-cv-12838, ECF No. 198, PageID. 5080 (E.D. Mich. Sept. 28, 2028).

[8] $3,740.85 (McGuinness expenses) + $2,161.49 (Karon expenses) + $48,980.59
(Milberg expenses) = $54,882.93.

Rule 23(h)(1)).

## VI.   CLASS COUNSEL SEEK A REASONABLE SERVICE AWARD FOR THE CLASS REPRESENTATIVE.

The Sixth Circuit recognizes that class representatives who have been extensively involved in common-fund cases deserve compensation above and beyond amounts to which they are entitled solely by virtue of being members of the class. *See Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003*)* ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards."). Service awards "are usually viewed as extensions of the common-fund doctrine; [t]hus, when a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool." *Id*.

Consistent with these observations, courts often approve service awards where plaintiffs were "instrumental in bringing [a] lawsuit forward" and where they "perform[] numerous tasks in association with [the]litigation." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio. 2001) (approving $50,000 service award). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 service awards for each class representative because they took "actions [that] protected the interests of the Class Members and . . . resulted in a Settlement that provide[d] substantial economic and

non-economic benefits for the Class Members [and] devoted a substantial amount of time and effort . . . in pursuing [the] litigation."); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. at 373–74 (approving incentive awards from $35,000 to $55,000 out of a $18 million settlement fund).

The Settlement Agreement seeks only $5,000 service awards for the Class Representative, to be paid from the Settlement Common Fund, because of the essential work that it performed for the Class. But to ensure that requested incentive awards "are not in fact a bounty [,] counsel must provide the district court with specific documentation—in the manner of attorney time sheets—of the time actually spent on the case by each recipient of an award." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 311 (6th Cir. 2016).

BleachTech's declaration supports all the good work that its personnel performed, Exhibit 4, attached. This declaration BleachTech's participation in multiple interviews, participation in producing responses to UPS's written discovery, submission to deposition, meetings with Class Counsel, and ongoing attention to the Litigation, including meaningful involvement in the settlement negotiations and mediations.

The Sixth Circuit has accepted service awards of $10,000 each in a less lucrative settlement. *See Moulton v. United States Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (Sutton, J.) (affirming "$10,000 to the seven class representatives" against a $4.45 million settlement). Here, Plaintiff seeks a service award of half that amount.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that this Court award Class Counsel attorneys' fees in the amount of $1,894,400; authorize reimbursement to Class Counsel of $54,882 in expenses; and approve a $5,000 service awards for Class Representative BleachTech LLC, each amount to be paid from the Settlement Common Fund.

Dated: May 16, 2022

Respectfully submitted,

*/s/Andrew J. McGuinness*
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

20

Daniel R. Karon (*admitted*)
Beau D. Hollowell
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com
bhollowell@Karon.com

Sanford P. Dumain (admitted)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC
100 Garden City Plaza, Ste 500
Garden City, NY  11530
Phone: (212) 594-5300
sdumain@milberg.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on the above date he filed the attached document with the Court using the ECF system, which will send notification of his filing to all parties who have appeared through their attorneys of record.

*/s/Andrew J. McGuinness*
Andrew J. McGuinness

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

---

DECLARATION OF ANDREW J. McGUINNESS IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, APPROVAL OF SERVICE AWARD, AND FOR REIMBURSEMENT OF EXPENSES

I, Andrew J. McGuinness, hereby declare:

1.    I am an attorney in good standing admitted to practice in Michigan and in United States District Court for the Eastern District of Michigan. I have served as lead counsel in the above-captioned action. I have practiced law since 1988, and have been litigating class actions since approximately 1989 after serving as law clerk for the Hon. Frank M. Coffin of the U.S. Court of Appeals for the First Circuit. I have been personally involved in all phases of the Litigation, including its investigation, filing, and prosecution.

Litigation Overview and Scope of Work Performed by Class Counsel

2.    This is a class action against UPS, one of the largest parcel delivery

companies in the world with annual revenues approximating $100 billion.[1]

Plaintiff alleges in its Amended Complaint (ECF No. 141) that UPS breached its

shipping contracts with millions of shippers who paid for UPS's "declared value

service." This service provides extra protection for loss or damage above the $100

coverage provided at no additional charge for each package (i.e., even if the

customer did not opt for the declared value service).

3.      In the July 9, 2013, UPS Rate and Service Guide ("Service Guide";

Amended Complaint Exh. B) UPS states that its "liability for loss or damage to a

shipment is limited to $100 without a declaration of value." The pricing table for

"Value Added Services" for "Declared Value for Carriage" in the Service Guide

then specifies in table form the price for additional declared value coverage as

follows for each package:

| | |
|---|---|
| $0.00-$100.00 | $0.00 |
| $100.01–$50,000.00 for each $100.00 (or portion of $100.00) of the total value declared | $0.85 |
| Minimum | $2.55 |

4.      Plaintiff contends that the phrase "total value declared" in this table

must be read *in context* to refer to the range stated in that paragraph ($100.01-

---

[1] UPS reports 2021 Revenue of $97.3 billion, and projects 2022 revenues of $102 billion. https://about.ups.com/be/en/newsroom/press-releases/financials/ups-releases-q4-2021-earnings.html (last visited 5/13/22).

$50,000.00). UPS contends that this phrase must be read *literally*, and on this basis admits that it has charged the $0.85 incremental amount on the *first* $100 of value for those shipments with a declared value in excess of the minimum charge.[2] Judge Rosen granted UPS's motion to dismiss the contract claim as a matter of law on this reading, and dismissed the case.

5.     Plaintiff appealed and the Sixth Circuit reversed this holding (first appeal). The Sixth Circuit held that "[b]ecause the provision is at least ambiguous, its meaning is a question of fact that is not properly answered by the court at this early stage in the proceedings." *Solo v. UPS Co.,* 819 F.3d 788, 796 (6th Cir. March 18, 2016). The court of appeals remanded to this Court the contract claim and an unjust enrichment claim pleaded in the alternative.

6.     UPS has vigorously defended this action throughout. It has retained as its lead defense counsel a large, international law firm, Morrison & Foerster (known colloquially as "MoFo"), with hundreds of highly qualified and skilled attorneys, and a reputation for aggressive litigation. Together with its counsel, UPS has been a formidable opponent.

7.     UPS, pre-settlement, forcefully resisted written discovery—

---

[2] Plaintiff has not challenged UPS's minimum Declared Value Service charge, the consequence of which is that the Settlement provide relief to shippers who declared a value in excess of $200 under UPS's Retail Rates, and over $300 under UPS's Standard Rates. The incremental charge has fluctuated over the Class Period.

necessitating multiple motions to compel even after concerted attempts to resolve differences through numerous meet-and-confer conferences. These conferences entailed numerous ESI protocol negotiations as well. The parties engaged in motion practice over, *inter alia*, the scope of a protective order; adequacy of UPS's answers to interrogatories and requests to admit; and appeal of the Executive Magistrate's order that had the potential of exposing Plaintiff to over $100,000 of costs associated with UPS de-archiving records that were hosted live on its servers when the case(s) were originally filed, but which it had subsequently moved offline. Plaintiffs objected to the Executive Magistrate's order, which objection has not yet been resolved.

8.      As a result of Plaintiff's persistent efforts, however, UPS produced over 23,000 documents in this case pre-settlement. UPS also promulgated responses to numerous interrogatories and requests to admit. Plaintiff was also successful in procuring the Rule 30(b)(6) deposition of a UPS corporate representative covering a wide range of subject matter pertinent to the Litigation.

9.      Seven months after remand in the first appeal, in November 2016, UPS filed a motion to stay or dismiss based upon an arbitration clause it adopted at the end of December 2013. UPS argued this clause should be given retroactive application so as to require arbitration of plaintiffs' claims. After briefing and oral argument, this Court denied UPS's motion in September 2017. The Court held that UPS had waived any arbitration agreement that might apply by its delay and

conduct in this Litigation. UPS appealed this ruling on an interlocutory basis under Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16 (second appeal). UPS also filed a motion seeking clarification of this Court's arbitration ruling. UPS asked that the Court clarify that its arbitration ruling applied only to named plaintiffs— not putative class members. This Court denied that motion in February 2018, and UPS appealed that ruling as well (third appeal).

10.     Plaintiffs filed a motion in the Sixth Circuit to dismiss the third appeal for want of appellate jurisdiction, which the court of appeals granted in October 2018. In January 2020 after full briefing the Sixth Circuit affirmed this Court's arbitration ruling, finding that UPS had waived any arbitration obligation that might have applied, and also that under the UPS contract terms the arbitration clause does not retroactively apply to shipments made before the arbitration clause went into effect.

11.     In February 2020 the parties resumed mediation efforts that had been unsuccessful after the first appeal, with Hon. Gerald E. Rosen (ret.), at the JAMS Detroit office. Before and after a second unsuccessful mediation in the summer of 2020, plaintiffs continued to prepare to move forward with litigation and trial if these renewed efforts proved unsuccessful. In a third mediation session with Judge Rosen in September 2020 the parties reached an agreement in principle to settle the Litigation on a classwide basis.

12.     Plaintiffs next promulgated additional discovery to test and verify UPS's positions underlying the proposed class settlement. UPS produced hundreds of additional responsive documents and provided other information in response to this supplemental discovery. Based upon this information and to effectuate the settlement, Plaintiff filed a stipulated Amended Complaint on December 30, 2020 (ECF 141). The Amended Complaint dropped the unjust enrichment claim and associated named representative (Solo, with his consent) because discovery revealed that he—and virtually all customers who shipped packages at a "third-party retailer" such as Staples, Office Depot, or The UPS Store franchises—did not pay declared value charges under the pricing terms set forth in the Service Guide(s) at issue in this Litigation.

Class Counsel Background and Experience

13.     Over the 30-plus years I have been litigating class actions, I have developed extensive class action experience in the areas of consumer, financial services, antitrust, products, and securities class actions. I have represented both defendants and plaintiffs in class actions over the years. I was lead counsel for Ford Motor Company in the then-largest automobile recall multi-district litigation, *In re. Speed Control Deactivation Switch*, MDL 1718 (E.D. Mich.) (Friedman, C.J.). Other class action clients have included Best Buy, T-Mobile, Federal Mogul, Honeywell, Aventis Pharmaceuticals, and Abbott Laboratories, and numerous plaintiffs.

14.     I served as head of the class action defense practice at the Dykema Gossett PLLC firm for approximately 5 years. During and after my time as an equity partner at that firm, I have served as class counsel in consumer actions against Apple Computer, Lumber Liquidators, GAF, Trott Law PC, and others.

15.     For the past 13 years I have served as a Planning Committee Member for the ABA Annual National Institute on Class Actions, where I teach a class that I developed called "Class Actions 101." I have moderated numerous panel discussions on class actions at the Institute, including panels on class action trials, class action experts, ethics in class actions, "issue" classes, predominance, proposed changes to Rule 23 (featuring members of the Federal Rules of Civil Procedure Class Action Subcommittee), arbitrability, circuit splits, and other topics. I am also the co-founder and planning committee member of the ABA's Annual Regional Class Action Program.

16.     I regularly publish on class action matters. I am the author of the chapter on Class Certification and editor of the chapter on Cass Action Experts in the ABA's Antitrust Class Action Handbook. I am an author of the ABA Section of Litigation "Class Action Strategy" book, where I co-authored the chapters on Class Action Strategy and Trial Plans, and helped edit the Settlements chapter.

17.     I am personally familiar with the professional backgrounds, experience, and expertise of my co-counsel, Daniel R. Karon and Sanford P. Dumain. Mr. Karon's practice at Karon LLC in Cleveland, Ohio, focuses on class

actions, representing primarily plaintiffs in consumer and antitrust cases. He has been Chair of the Planning Committee of the ABA National Institute on Class Actions for the past 13 years, and moderated numerous panels on a variety of class action topics. For most of that time he has co-taught Class Actions 101 at the Institute. He regularly publishes in a variety of journals on class actions, and teaches a seminar on Consumer Class Actions at the University of Michigan Law School. He also taught a class on complex litigation at Columbia School of Law, and has lectured on class actions at Notre Dame Law School, Vanderbilt Law School, University of Georgia Law School, and Ohio State University Law School.

18.    Mr. Dumain practices class actions and complex litigation at Milberg Coleman Bryson Phillips Grossman PLLP, in Garden City, New York, where he is of counsel. Over his decades at Milberg and its predecessor firms, which have been among the nation's leading class action firms for many years, he has represented numerous consumers and investors in consumer, antitrust, and securities class actions. He is also Chair of the Emeritus Board of Public Justice, a nonprofit law firm based in Washington, D.C., that advocates on behalf of consumers and other social justice causes.

<u>The Proposed Settlement Represents an Excellent Result for the Class</u>

19.    Substantively, Plaintiff's claim on the merits is strong but not invincible. This is demonstrated by the fact that the first judge assigned to this matter dismissed the central contract claim primarily based on a determination that

the contract reads in UPS's favor as a matter of law. While the Sixth Circuit reversed this ruling, finding the pricing table "at least ambiguous," it nonetheless highlights the risk that a jury may be persuaded to side with UPS's interpretation. And UPS's contention that claims predating the original complaint by more than six months are stale under its Tariff/Terms has not yet by tested by any court ruling in this case.

20.     The Settlement Common Fund amount of approximately $5.7 million represents a very strong result for the Class. Compared with the core claims that fall within the 180-day UPS Tariff/Terms notice period, that amount represents approximately half of the disputed $0.85 per Covered Package disputed charge. It represents substantially less spread out over the entire Class Period, but the allocation formula negotiated by Class Counsel fairly allocates the recovery between those Covered Packages shipped within and before the 180-day period.[3] Moreover, the bulk of Covered Packages were shipped by Class Members who

---

[3] As set forth more fully in Plaintiff's Brief in Support of the Motion for Preliminary Approval, in the opinion of Class Counsel the two-tier allocation system set forth in the Settlement—assigning 2 credits for every Covered Shipment within that period and 1 credit for every Covered Shipment before that period— maximizes the recovery for the Class as a whole. Those who shipped Covered Packages both before and during the 180-day billing disputes period benefit from this structure. Class Counsel refused to extend the Class Period (and Release) to any category of shippers for whom UPS refused to offer substantial compensation.

shipped in both periods, and Class Members generally benefited by expanding the scope of the Class to maximize the recovery.

21.     One of the key benefits of the Settlement is the lack of a claims process. Typically, in consumer class actions with claims forms required, only an average of seven percent or so of class members wind up submitting claim forms. Here, all Class Members will automatically receive their share of the Net Settlement Fund based on UPS's records. We anticipate that only a relatively few percent will not cash their distribution checks within 90 days or, for those with active accounts, not use their account credits within 45 days or cash their corresponding refund from UPS.

22.     Another important feature of the settlement is that it is on *a non-reverter basis*: UPS will not retain any unused funds. Instead, those funds will be donated to the approved *cy pres* recipient or handled via UPS's normal practice in the case of unused account credits. Plaintiff has proposed the National Consumer Law Center, a non-profit consumer advocacy organization, as the *cy pres* recipient.

23.     Particularly in light of the size of the class—over 2.1 million Class Members—UPS's agreement to fund half of the notice and administrative costs, on top of the cash consideration, is a major benefit to the Class. In most consumer class actions, such costs are paid from the common settlement fund, leaving less to distribute to class members after fees and expenses.

24.     I believe that the injunctive relief obtained as part of the settlement provides a significant benefit to Class Members and the public. The negotiated clarified language greatly reduces the ambiguity in the pricing table. Moreover, as a leader in the domestic shipping industry, UPS often sets the standard for other shippers, who are more likely to clarify their own pricing guides as a result of the injunctive relief obtained here.

Lodestar Cross-Check

25.     The combined lodestar of Class Counsel is $3,063,068 *See* Exhs. 1A, 2A & 3A, attached to the Motion. When compared to Class Counsel's 33 1/3% fee request of $1,894,400, this represents a *negative* multiplier of –38% (i.e., the total fee request is only 62% of the lodestar). This is far below the normal *positive* multiplier awarded by courts in consumer class actions undertaken on a contingent compensation basis.

McGuinness Fee Lodestar and Expenses Reimbursement Request

26.     I have acted as lead counsel throughout this Litigation, and was appointed interim Class Counsel by this Court in its order granting preliminary approval, along with Mr. Karon and Mr. Dumain. ECF No. 148, Page ID. 3314. Together our firms carried out the duties of Class Counsel including conducting discovery (including, among other things, review of document production, review of privilege log, and conducting depositions), briefing discovery motions and other motions, prosecuting three appeals, and, ultimately, undertaking the extensive

11

settlement negotiations that led to the Settlement presently before this Court.

27.     Over the last eight years, I have analyzed and developed plaintiffs'

legal theories and causes of action; conducted a thorough and ongoing

investigation of matters pertinent to the Litigation; marshalled the legal and

technical resources required to pursue an action of this complexity and challenge;

orchestrated, strategized, and took discovery essential to the development of the

claims; interviewed consulting and potential trial experts; coordinated the review

of a large amount of Electronically Stored Information (ESI) produced by UPS;

engaged in robust motions practice; and, ultimately, played the key role in

resolving this action in a manner favorable to the Class. I have worked hard to

ensure that the class claims would survive UPS's dispositive motions, attempts to

limit recovery, and appeals. Also, I have worked to resolve several hard-fought

discovery disputes with efficiency and effectiveness.

28.     The table attached as Exhibit A, and incorporated herein, is a

summary of the amount of time spent by me to date. The lodestar calculation is

based on my firm's current billing rates for complex commercial and consumer

class actions. Exhibit A was prepared from contemporaneous time records

regularly prepared and maintained by my firm, which I will make available to the

Court for *in camera ex-parte* review upon request of the Court.

29.     The hourly rate included in Exhibit 1A are the usual and customary

hourly rates I charged for my services in complex litigation. I am familiar with and

have reviewed rates routinely charged for complex class actions by attorneys of similar experience in Michigan, in Detroit, and in comparable Midwest cities, and have adjusted my rate to account for my smaller firm size. *See Shane Grp. v. Blue Cross Blue Shield*, Case No. 2:10-cv-14360, Doc # 170-1 (filed 10/24/14), at Pg 5 of 109, Pg ID 5788 et seq. (documenting hourly rates of up to $800 for plaintiffs' class action lawyers in Detroit in 2014*.) See also, id*., ECF # 213, at 35-39 (03/31/15) (approving 1/3 award backed up by lodestar cross-check using above-referenced rates), *rev'd on other grounds, Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016). My hourly rate as reflected on Exhibit A is comparable to what I currently charge for defense or plaintiff complex class action work on a non-contingent basis. In this Litigation, my work has been performed entirely on a contingent fee basis.

30.     The total number of hours reasonably expended on this litigation by my firm to date is 1,200.40. The total lodestar for my firm at current rates is $990,330. I have reviewed time and billing records to confirm that the lodestar submitted is accurate. Expense items are billed separately and are not duplicated in my firm's lodestar.

31.     For almost 30 years I have worked primarily on complex litigation matters, with an emphasis on class actions.  The devotion of much of my time, energy and resources to this Action over the eight years has been in lieu of other cases and opportunities that I would otherwise have devoted my resources to.

32.     The expenses my firm incurred in litigating this action are reflected in the books and records of my firm.  These books and records are prepared from expense vouchers, receipts, and check records and other source materials and accurately reflect the expenses incurred.

33.     My firm incurred a total of $3,740.85 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this Litigation. A summary of those expenses by category is attached as Exhibit 1B.

34.     A concise summary of my background and experience is attached as Exhibit 1C hereto.

*       *       *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 16, 2022.


/s/ *Andrew J. McGuinness*
Andrew J. McGuinness

Exhibit 1A

BLEACHTECH LLC  V. UNITED PARCEL SERVICE, INC.
CASE NO. 14-12719 DPH-RSW

**LODESTAR REPORT**

FIRM NAME:  ANDREW J. MCGUINNESS, ESQ.

REPORTING PERIOD: Dec. 13, 2013, through May 16, 2022

| Legal Professional | | Billing Rate | Number of Hours | Lodestar ($) |
|---|---|---|---|---|
| McGuinness, Andrew | P | $825 | 1,200.4 | $990,330.00 |
| | | | | |
| PARALEGALS | | | | |
| N/A | PL | | | |
| | | | | |
| **Total** | | | **1,200.4** | **$990,330.00** |

P = Partner
A = Associate
OC = Of Counsel
PL = Paralegal

# Exhibit 1B

BLEACHTECH LLC V. UNITED PARCEL SERVICE, INC.
Case No. 14-12719 DPH-RSW

**EXPENSE REPORT**

FIRM NAME:  ANDREW J. MCGUINNESS, ESQ.

REPORTING PERIOD:  Dec. 27, 2013 through May 16, 2022

| DESCRIPTION | TOTAL |
|---|---|
| Court Fees | $803.00 |
| Mail/Courier: | $89.90 |
| Lexis | $2,340. |
| Transportation Expenses: | |
| Transportation (mileage) | $425.95 |
| Parking Charges | $82.00 |
| **TOTAL EXPENSES** | **$3,740.85** |

# Exhibit 1C

# ANDREW J. MCGUINNESS, ESQ.

## Background

Andrew ("Drew") McGuinness attended the University of Michigan Law School, where he served as Article Editor of the Michigan Law Review and was active in Moot Court and a member of the Campbell Moot Court Board.  He graduated *magna cum laude* and was elected to the Order of the Coif.  After law school he clerked for the Hon. Frank M. Coffin of the United States First Circuit Court of Appeals. He was first admitted to practice in Michigan in 1988, and is admitted to practice in numerous federal courts.

## Experience

Mr. McGuinness has trained and practiced at some of the most respected law firms in the country. He spent several years at Skadden, Arps (Chicago), where he developed a broad range of skills engaging in all aspects of complex commercial litigation, including securities, control contests, and antitrust matters. At Dykema Gossett, where he was an equity member of the firm, he served as head of the Class Action Defense Team and was active in training and mentoring the firm's litigation associates.

In the twenty years Drew worked at these two firms he represented numerous clients in securities, antitrust, and consumer class actions, including claims under various sections of the Securities Act, the Securities Exchange Act, the Williams Act, the Sherman Act, the Clayton Act, and various state "blue sky", antitrust, and consumer protection laws. He has litigated numerous issues under the Private Securities Litigation Reform Act ("PSLRA"), the Securities Litigation Uniform Standards Act ("SLUSA"), the Class Action Fairness Act ("CAFA"), and the Federal Arbitration Act ("FAA").  He has arbitrated and mediated numerous disputes and has negotiated many settlements. His previous clients include Sears, Best Buy, Federal Mogul, Honeywell, Comshare, ProQuest, Abbott Laboratories, and many others. Mr. McGuinness served as lead counsel for Ford Motor Company for over five years in *In re Speed Control Deactivation Switch Products Liability Litigation*, Case No. MDL-1718, in the Eastern District of Michigan (Friedman, C.J.) (believed to be the largest auto recall in history before the Takata Air Bag recall).

In 2010 he founded Andrew J. McGuinness, Esq., a litigation boutique centered on class actions, antitrust, and other complex commercial litigation. Since forming his own practice, Mr. McGuinness has been co-lead counsel or played a substantial role in numerous complex class actions representing plaintiffs. Among these are *In re:*

*Lumber Liquidators Chinese-Manufactured Flooring Products Marketing Durabilty Marketing and Sales Practices and Products Liability Litigation,* No. 1:15-md-2627 (E.D. Va.); *Gordon, et al., v. Amadeus IT Group, S.A., et al.*, No. 1:15-cv-05457 (S.D.N.Y.); *In Re: Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation,* MDL NO. 2577 (D.N.J.)*; Martin v. Trott Law, P.C.*, No. 15-12838 (E.D. Mich.); *Adams v. Seterus*, Inc., No. 2:18-cv-12731 (E.D. Mich.) (Hood, C.J.); *Garland v Orlans PC*, No. 2:18-cv-11561 (E.D. Mich.) (Hood, C.J.); *Hawkins v. Flagstar Bank,* 2:21-cv-11165 (E.D. Mich.); and *Solo v. United Parcel Service Co.,* Case No. 2:14-cv-12719 (E.D. Mich.).

## Bar Leadership and Peer Recognition

Mr. McGuinness is a member of the State Bar of Michigan, the Federal Bar Association, and the American Bar Association, where he is a member of its Litigation Section. He has served on the Planning Committee of the ABA National Institute on Class Actions for 13 years, where he has moderated numerous panels on class action topics.  Mr. McGuinness teaches the ABA-sponsored course "Class Actions 101," which he developed, annually in conjunction with the Institute. He has served as co-chair of the ABA Class Action Committee Antitrust Subcommittee since 2005. He is past co-editor of the ABA's Securities Litigation News.

Mr. McGuinness has authored numerous publications and presented at many seminars about class actions, including the Impact Fund's Class Action Seminar (Berkeley, CA).  Most recently, he co-authored two chapters for the ABA Litigation Section's new Class Action Strategy and Practice Guide:  Class Certification Strategy, and Trial Plans.

In 2018 the ABA Antitrust Section published a new edition of their book, Antitrust Class Actions Handbook, Second Edition.  Mr. McGuinness authored the chapter: Antitrust Class Certification Standards.  He also edited the chapter The Role of Experts in Antitrust Class Certification for this book

Mr. McGuinness periodically teaches at ethics programs and regularly serves on moot courts at the University of Michigan Law School. He has tried cases on behalf of *pro bono* clients through the Chicago Lawyer's Committee on Civil Rights, including a landmark familial discrimination case, and through Legal Services for South Central Michigan. He is a member of Public Justice, a social and economic justice non-profit legal advocacy organization headquartered in Washington, D.C.

Additional information regarding Mr. McGuinness' background, experience, recognition and legal writing can be found at  www.topclasslaw.com .

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### Southern Division

BLEACHTECH LLC, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

UNITED PARCEL SERVICE CO.,

        Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

Mag. Judge R. Steven Whalen

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P.O. Box 7711
Ann Arbor, MI 48107
Telephone: (734) 274-9374
drewmcg@topclasslaw.com

Daniel R. Karon (admitted)
Beau D. Hollowell (admitted)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH 44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

Sanford P. Dumain (admitted)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLP
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Telephone: 212.594.5300
sdumain@milberg.com

*Counsel for Plaintiff and the Proposed Class*

Paul T. Friedman (admitted)
Caitlin Sinclair Blythe (admitted)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
CBlythe@mofo.com

Gregory B. Koltun (admitted)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 892-5200

Sonal Hope Mithani (P51984)
Joseph Vernon (P68951)
Caroline Giordano (P76658)
MILLER CANFIELD PADDOCK & STONE PLC
101 North Main Street, 7th Floor
Ann Arbor, MI 48104
Telephone: (734) 668-7786
mithani@millercanfield.com
vernon@millercanfield.com
giordano@millercanfield.com

*Counsel for Defendant*

## DECLARATION OF DANIEL R. KARON IN SUPPORT
## OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES

I, Daniel R. Karon, declare:

1.      I am an attorney admitted to practice in the Eastern District of Michigan and an attorney of record in the above-captioned lawsuit ("Action") against UPS.  I have practiced law since 1991. I am a partner with the firm of Karon LLC ("Karon") in Cleveland, Ohio.  I have been litigating class actions since 1992.  I make this declaration in support of Plaintiff's Motion for an Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives (the "Motion").

2.      My firm acted as Plaintiff's Co-Counsel in this case along with Andrew J. McGuinness, Esq. and Milberg Coleman Bryson Phillips Grossman PLLP ("Co-Lead Counsel").  Together with Co-Lead Counsel, my firm conducted and responded to discovery (including, among other things, review of document production, review of privilege log, and assisting with depositions) and briefing dispositive motions.

3.      Over the past eight years, we (and Co-Lead Counsel) have analyzed and developed Plaintiff's legal theories and causes of action, conducted discovery, and engaged in robust motion practice. We have worked hard to ensure that numerous claims would survive the Defendant's dispositive motions and attempts to limit recovery on a classwide basis.  Also, we have worked to resolve several hard-fought discovery disputes with efficiency and effectiveness.

4.      The schedule attached as Exhibit A, and incorporated herein, is a detailed summary of the amount of time spent by my firm's and my predecessor firm's attorneys and professional support staff who were involved in this litigation through May 16, 2022. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion. The lodestar calculation is based on my firm's current billing rates or in the case of my predecessor firm, historical billing rates because that firm is dissolved. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm and my predecessor firm. The hourly rates for my firm's and my predecessor firm's attorneys and professional support staff included in Exhibit A are the usual and customary hourly rates charged for their services in similar complex litigation. In addition, my firm and my predecessor firm have submitted fee petitions in other cases that have reported hourly rates at amounts identical to those sought herein, and courts have approved an award of attorneys' fees in these cases.  *See, e.g.*, *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801 (N.D. Cal); *Schwartz v. Avis Rent-A-Car System, LLC,* No. 11-cv-04052 (D.N.J.); *Traxler v. PPG Indus., Inc*, No. 15-cv-00912 (N.D. Ohio.).  The total number of hours reasonably expended on this litigation by my firm and my predecessor firm to May 16, 2022, is 1,545.70.  The total lodestar for my firm at current rates and my predecessor firm at historical rates because the firm is dissolved is $1,145,895.50.  My firm conducted internal audits to ensure that the lodestar submitted is accurate. Expense items are billed separately and are not duplicated in

my firm's or my predecessor firm's lodestar.

5.      The expenses my firm and my predecessor firm incurred in litigating

this action are reflected in the books and records of my firm and my predecessor firm.

These books and records are prepared from expense vouchers, receipts, and check

records and other source materials and accurately reflect the expenses incurred.

6.      Karon LLC and my predecessor firm work/worked on a host of

complex-litigation matters.  Devotion of our considerable time, energy and resources

to this matter has been in lieu of that which might have been devoted to other matters

7.      My firm and my predecessor firm incurred a total of $2,161.49 in

unreimbursed expenses, all of which were reasonable and necessary for the

prosecution of this litigation. A summary of those expenses by category is attached as

Exhibit B.

8.      I will make my and my predecessor firm's time-and-expense records

available to the Court for *in camera ex-parte* review upon request.

9.      A copy of my firm's CV is attached as Exhibit C.

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Executed on May 16, 2002

*s/Daniel R. Karon*
Daniel R. Karon

4

**LODESTAR REPORT**

FIRM NAMES: Karon LLC and Goldman Scarlato Karon & Penny, PC

REPORTING PERIOD: Inception through May 16, 2022

| LEGAL PROFESSIONAL | BILLING RATE | NUMBER OF HOURS | LODESTAR |
|---|---|---|---|
| Daniel Karon, Karon LLC (O) | $845 | 628.9 | $531,420.50 |
| Daniel Karon, GSKP (PT) | $685 | 55.9 | $38,291.00 |
| Beau Hollowell, Karon LLC (PR) | $680 | 790 | $537,200.00 |
| Laura Mummert, GSKP (A) | $525 | 69 | $36,225.00 |
| Douglas Bench, GSKP (A) | $385 | 3.8 | $1,463.00 |
| Cindy Good, Karon LLC (PL) | $180 | 7.2 | $1,296.00 |
| **TOTAL** | | 1,554.80 | $1,145,895.50 |

A = Associate
O = Owner
PT = Partner
PR = Principal
PL = Paralegal

# EXHIBIT B

**Solo, et al. v. United Parcel Service Co.**

Civil Action No. 2:14-cv-12719-DPH-RSW

**EXPENSE REPORT**

FIRM NAMES: Karon LLC and Goldman Scarlato Karon & Penny, PC

REPORTING PERIOD: Inception through May 16, 2022

| DESCRIPTION | TOTAL |
|---|---|
| PACER | $136.56 |
| Telephone | 63.75 |
| Photocopies | $81.20 |
| Notary Fee | $90.00 |
| Lexis | $322.35 |
| Travel Expenses: | |
| Meals | $269.84 |
| Parking and Tolls | $89.00 |
| Hotels | $416.48 |
| Mileage | $692.31 |
| **TOTAL EXPENSES** | $2,161.49 |

# EXHIBIT C



# KARON LLC

700 W. St. Clair Ave., Suite 200
Cleveland, OH  44113–1998
Telephone: (216) 622–1851
Facsimile: (216) 241–8175
E–mail: dkaron@karonllc.com
Web: www.karonllc.com

**SUMMARY**

Karon LLC specializes in antitrust, consumer–fraud, and wage-and-hour litigation. The firm represents individuals in antitrust, consumer-fraud, wage-and-hour, and other class-actions and has represented domestic and international corporations in domestic and international antitrust class-action matters. The firm also defends corporations in consumer-fraud and antitrust class actions.

Mr. Karon teaches complex litigation and class-action law at the University of Michigan Law School and The Ohio State University College of Law and taught complex litigation at Columbia Law School. He has also been a lecturer in law at Cleveland State University's Cleveland-Marshall College of Law. He lectures on class-action law at multiple other law schools and serves on Loyola University Chicago School of Law's Institute for Consumer Antitrust Studies' U.S. Advisory Board. He chairs the ABA's National Institute on Class Actions, writes a bimonthly column for Law360, was an editorial board member and contributing author to the ABA's Litigation Section's *Class Actions Today-Jurisdiction to Resolution* magazine, was a member of the Ohio Association of Justice's Board of Trustees, and served as an editorial board member for the Ohio Academy of Justice's *Ohio Trial* magazine. He has published multiple law review and bar journal articles on class-action topics, and he lectures nationally on class actions for the ABA and other bar associations.

In addition to various antitrust and consumer-fraud class actions, Mr. Karon was extensively involved in the *LCD–TFT Indirect Purchaser Antitrust Litigation*, No. C07-1827 (N.D. Cal. 2007) (nationwide price-fixing class action that settled for $1.1 billion), *Vitamins Direct Purchaser Antitrust Litigation*, MDL 1285 (D.C. 2002) (nationwide price-fixing class action that resolved for $2 billion), *NASDAQ Market-Makers Antitrust Litigation*, No. 94 Civ. 3996 (S.D.N.Y. 1994) (nationwide price-fixing class action that settled for $1.027 billion), *Cathode Ray Tubes (CRT) Antitrust Litigation*, MDL 1917 (N.D. Cal. 2007) (nationwide price-fixing class action that settled for $500 million), *Monosodium Glutamate Antitrust Litigation* (nationwide price-fixing class action that settled for $130 million), *Methionine Antitrust Litigation*, No. 00-MDL-1328 (D. Minn. 2000) (nationwide price-fixing class action that settled for $101 million), and *Sorbates Direct Purchaser Antitrust Litigation*, No. C 98-4886 (N.D. Cal. 1998) (nationwide price-fixing class action that settled for $94.5 million). He serves or served as lead counsel in multiple class-action cases, including *Magnesium Oxide Antitrust Litigation,* No. 2:10-cv-05943 (D.N.J. 2011), *Aftermarket Sheet Metal Indirect Purchaser Antitrust Litigation,* No. 2:09-cv-00852 (E.D. Wis. 2009), *City of Lorain v. Medical Mutual Insurance Co.,* No. 17 CV 191670 (Lorain Cty. Cir. Ct. 2017), *Dairy Indirect-Purchaser Antitrust Litigation,* No. 2:08-MD-100 (E.D. Tenn. 2008), *Johnson v. Evangelical Lutheran Church of America,* No. 11-00023 (D. Minn. 2011), *Schwartz v. Avis Rent-A-Car Corp.,* No. 11-4052 (D.N.J. 2011), *Savett v. Great American,* No. 20 cv 42 (N.D. Ohio 2020), *Klein v. Budget Rent-A-Car Group*, No. 12-7300 (D.N.J. 2012), *Bausch & Lomb Contact*

*Lens Product Liability Litigation,* No. 2:06-MN-7777 (D.S.C. 2010), *Roth v. Life Time Fitness,* No. 16-2476 (D. Minn. 2016), *Grissom v. Antero Energy Corp.,* 2:20-cv-02028 (S.D. Ohio 2020), *Savett v. SP Plus,* No. 17 CH 2437 (Cook Cty. Chancery Ct.), *Ezold v. Tracfone Wireless, Inc.,* 1:2020 cv 21346 (S.D. Fla. 2020), and *Schwartz v. Alltel Corp.,* No. 86810 (Cuyahoga Cty. Common Pleas). He is on the executive committee in the *Beef Antitrust Litigation,* 19-cv-1222 (D. Minn.), was discovery co-chair in the *Bulk Graphite Antitrust Litigation,* No. 02-6030 (D.N.J. 2006), class-certification co-chair in the *Pressure Sensitive Labelstock Antitrust Litigation,* MDL 1556 (2006), and briefing co-chair in the *EPDM Antitrust Litigation,* 3:3mdl1542 (D. Conn. 2003), and *Carbon Black Antitrust Litigation,* No. 03-10191 (2003).

Mr. Hollowell focuses his national practice on antitrust, consumer fraud, employment, and securities fraud class action litigation. He has won multiple bench and jury trials and has successfully argued federal- and state-court appeals.

Mr. Hollowell has represented and advised clients in proceedings before state and federal courts in Alabama, California, Delaware, Hawaii, Illinois, New Jersey, New York, Ohio, Oklahoma, Texas, Puerto Rico, Wisconsin, and the U.S. Virgin Islands. He began his career with one of the premier trial firms in Cleveland, Ohio. He next handled complex commercial litigation matters for two sophisticated investor groups with approximately $600 million in assets throughout the United States and Europe. After that, he led a statewide practice group for one of the largest litigation firms in the country.

Mr. Hollowell has represented large businesses and insurance companies in high-value cases in various practice areas. He has also lectured and written extensively, including co-authoring an article that appeared in a national publication and reappeared in a national online journal with 45,000 monthly readers. Beau continues to write articles discussing recent trends, while also presenting seminars on numerous topics at national and regional conferences.

After earning his Bachelor of Arts in English from Westminster College in 2002, Beau graduated from Case Western Reserve University School of Law in 2006. The School of Law awarded him the Paul J. Hergenroeder Award and CALI Award for his achievement as top student in Trial Tactics. He also served as a research assistant for two nationally known and published professors: Professor William Carter (dean of the University of Pittsburgh School of Law), whose articles have been published in many well-known journals, including the *Harvard Civil Rights-Civil Liberties Law Review,* and Professor Peter Gerhart (former dean of Case Western's Law School). Through Case Western's International War Crimes Lab, Beau also prepared a memorandum addressing the jurisdiction of military commissions to preside over trials in Guantanamo Bay Naval Base—a topic debated nationally in many fora, including National Public Radio. Beau prepared this memorandum at the direction of the United States Department of Defense.

Mr. Hollowell is a member of various professional bar associations and was selected to serve as president of the New Partners Board for the Cleveland Hearing and Speech Center. The Center is the nation's oldest freestanding speech center and is Northeast Ohio's only nonprofit organization directed solely to serving those with special communication needs. Beau has also participated in Big Brothers of America. Recently, Westminster College selected Beau to serve on its Alumni Council, where he emphasizes alumni relations and donations through the Council's Annual Giving Committee, which committee the College selected Beau to chair.

## Daniel R. Karon

## EDUCATION

J.D., 1991
    Michael E. Moritz College of Law, The Ohio State University
    Member, *The Ohio State Journal on Dispute Resolution*
    Quarterfinalist, First-Year Moot Court Competition

B.A., Speech Communication and Rhetorical Studies, 1988
Certificate, Jewish Studies, 1988
    Indiana University-Bloomington
    Dean's List, 1984–1987

## TEACHING EXPERIENCE

Lecturer in Law, University of Michigan Law School
January 2020–Present
    Complex litigation and class-action law

Lecturer in Law, Columbia Law School
January 2018–August 2019
    Complex litigation and class-action law

Lecturer in Law, Michael E. Moritz College of Law, The Ohio State University
January 2022–Present
    Complex litigation and consumer law

Lecturer in Law, Cleveland-Marshall College of Law, Cleveland State University
February 2005–2007
    Class-action law

Lecturer, Michael E. Moritz College of Law, The Ohio State University
February 2008–Present
    Class-action law

Lecturer, Columbia Law School
February 2013–February 2017
    Class-action law

Lecturer, University of Michigan Law School
October 2018
    Class-action law

Lecturer, Vanderbilt Law School
April 2013
    Class-action law

Lecturer, Notre Dame Law School
February 2015
    Class-action law

Lecturer, Tulane Law School
November 2013
    Class-action law

Lecturer, University of San Francisco School of Management
January 2021
    Class-action law

Lecturer, University of Georgia School of Law
November 2015
    Class-action law

Lecturer, Benjamin N. Cardozo School of Law, Yeshiva University
April 2014
    Class-action law

Lecturer, Loyola University Chicago School of Law
November 2013, February 2019, October 2020
    Class-action law

## BAR ADMISSIONS

United States Court of Appeals for the Third Circuit 2016

United States District Court for the Eastern District of Michigan, 2015

United States Court of Appeals for the Sixth Circuit 2013

United States District Court for the Southern District of Ohio, 2004

United States District Court for the Northern District of Ohio, 1998

United States Court of Appeals for the Seventh Circuit, 1995

United States District Court for the Northern District of Illinois, 1991

Ohio, 1997

Illinois, 1991

## CLASS-ACTION EXPERIENCE

Karon LLC, Cleveland, OH
Owner, 2014–Present

Goldman Scarlato Karon & Penny, P.C., Cleveland, OH
Owner, 2002–2014

Gallagher Sharp Fulton & Norman, Cleveland, OH
Attorney, 2000–2002

Law Offices of Daniel R. Karon, Cleveland, OH
Owner, 1998–2000

Much Shelist Freed Denenberg Ament & Rubenstein, P.C., Chicago, IL
Attorney, 1994–1998

# PUBLICATIONS

*A Letter to New (and Old) Lawyers: Why You Need to Write Well and How to Do It*, 20 SCRIBES J. OF LEGAL WRITING 93 (2022)

*The cure for COVID nobody is talking about*, CLEVELAND PLAIN DEALER (Jan. 2, 2022)

*To Vax or Not to Vax is Not a Constitutional Question*, LAW360 (Nov. 19, 2021)

*3 Keys to Winning Your Next Oral Argument*, LAW360 (June 14, 2021)

*Surefire Marketing Methods To Build Your Legal Practice*, INT'L COMPARATIVE LEGAL GUIDES (Apr. 14, 2021)

*Top 10 Techniques for Crafting a Dazzling Brief*, INT'L COMPARATIVE LEGAL GUIDES (Apr. 14, 2021)

*Simple Secrets for Writing a Killer Brief*, INT'L COMPARATIVE LEGAL GUIDES (Apr. 14, 2021)

*In the room where it's happening*, CLEVELAND PLAIN DEALER (Apr. 11, 2021)

*The Problem—and Opportunity—of Implicit Bias in the Bar*, AMERICAN INNS OF COURT (Mar. 22, 2021)

*What the Biden Administration Means for Class Actions*, LAW360 (Feb. 11, 2021)

*To Mask or Not to Mask? Not a Constitutional Question*, THE CLS BLUE SKY BLOG—COLUMBIA LAW SCHOOL BLOG ON CORPORATIONS AND THE CAPITAL MARKETS, (Oct. 27, 2020)

*Companies Should Not Illegally Profit From Our Pandemic Pain*, LAW360 (Apr. 15, 2020)

*Surefire Marketing Methods to Build Your Legal Practice*, LAW360 (Jan. 28, 2020)

*The Problem—and Opportunity—of Implicit Bias in the Bar*, LAW360 (Oct. 2, 2019)

*Why Can't We All Just Get Along?*, 45:3 LITIGATION 8 (Winter 2019)

*Ten Techniques for Crafting a Dazzling Brief*, LAW360 (June 21, 2019)

*"Can't We All Just Get Along?" Civility Across the V.*, THE BENCHER (May/June 2019)

*Simple Secrets for Writing a Killer Brief*, LAW360 (Feb. 28, 2019)

*Class Action Strategy & Practice Guide,* Chapter 8, Managing Multiple Class and Enforcement Actions (2019)

*Simple Secrets for Improving Your CLE*, LAW360 (Nov. 14, 2018)

*Kavanaugh and the Confirmation of Third-Branch Bias*, OurFuture.org (Oct. 9, 2018)

*It's Prime Time for a Dose of Reality on Brett Kavanaugh*, LAW360 (Aug. 2, 2018)

*After Trump's Policy Purges, Who Speaks for the Victims?*, LAW360 (May 2, 2018)

*Why Contempt for the CFPB Is a Big Business Mistake*, LAW360 (Oct. 28, 2017)

*How Plaintiffs and Defense Counsel Misperceive Each Other*, LAW360 (Sept. 25, 2017)

*Why "Class Action Attorney Fees" Are Such Dirty Words*, NATIONAL ASSOCIATION OF LEGAL FEE ANALYSIS (July 18, 2017)

*Why "Class Action Attorney Fees" Are Such Dirty Words,* LAW360 (July 14, 2017)

*Bundle Up Defense Counsel. Winter's Coming,* LAW360 IN-DEPTH (May 2, 2017)

*Killing Class Actions Means Everybody Loses,* THE CLS BLUE SKY BLOG—COLUMBIA LAW SCHOOL BLOG ON CORPORATIONS AND THE CAPITAL MARKETS, (Apr. 7, 2017)

*The Death of Class Actions?,* ACSBLOG, AMERICAN CONSTITUTION SOCIETY (Mar. 3, 2017)

*Killing Class Actions Means Everybody Loses,* LAW360 (Mar. 17, 2017)

*The "Fairness" in Class Action Litigation Act,* 42:4 LITIGATION 8 (Summer 2016)

*Dow Chemical's Post-Scalia Settlement is a Spin Doctor's Delight,* THE NATIONAL LAW JOURNAL, SUPREME COURT BRIEF (Apr. 25, 2016)

*Dow Chemical's Post-Scalia Settlement is a Spin Doctor's Delight,* THE NATIONAL LAW JOURNAL (Apr. 25, 2016)

*Federal Class-Action Reform Effort Courts Serious Risks,* CLEVELAND PLAIN DEALER (Nov. 20, 2015)

*Is it CAFA or Kafka? Effectively Pleading Multistate Class-action cases after the Class Action Fairness Act,* THE OHIO ASSOCIATION FOR JUSTICE QUARTERLY 21 (Oct. 2014)

*Reflections from the 2013 National Institute on Class Actions,* 24 ABA's CLASS ACTIONS & DERIVATIVE SUITS 1 (Fall 2013)

*Suspicionless Strip Searches—What's Next?,* 39:1 LITIGATION 8 (Winter 2013)

*Ripped from the Headlines—Ten Lawyers Look at the Story,* 38:2 LITIGATION 25 (Winter 2012)

*"T'was Three Years After Twombly and All Through the Bar, Not a Plaintiff Was Troubled From Near or From Far."
The Unremarkable Effect of the U.S. Supreme Court's Re-expressed Pleading Standard in Bell Atlantic Corp. v. Twombly,*
44 U.S.F. L. REV. 571 (2010)

*The Unremarkable Effect of Bell Atlantic Corp. v. Twombly on Pleading Class–Action Complaints,* 11:2 ABA's
COMM'L & BUS. LITIG. 6 (Spring 2010)

*Is it CAFA or Kafka,* AAJ's TRIAL MAGAZINE 24 (July 2009)

*ABA's Consumer Protection Law Developments,* Chapter 5 State Consumer Law, § 36 Ohio (2009).

*"When Congress Gives You Lemons . . ." Plaintiffs' Attorneys are Forced by the Class Action Fairness Act to Devise
Innovative New Ways to Prosecute Interstate Class Actions,* PLAINTIFF MAGAZINE 1 (Feb. 2008)

*Multi–State Class Actions After CAFA—Preserving Consumers' Rights by Pleading Creatively,* ABA's CLASS
ACTIONS TODAY 9 (2007)

*"How Do You Take Your Multi–State, Class action Litigation?  One Lump or Two?"  Infusing State Class action
Jurisprudence into Federal, Multi-State Class-Certification Analyses in a "CAFA-nated" World,* 46 SANTA CLARA
L. REV. 567 (2006)

*Unjust Enrichment's Application to Consumer Price fixing, Class action Claims,* 16 ABA's CLASS ACTIONS &
DERIVATIVE SUITS 1 (Winter 2006)
*Undoing the Otherwise Perfect Crime. Applying Unjust Enrichment to Consumer Price fixing Claims,* 108 W. VA. L.
REV. 395 (2005)

*A Non-Class-action lawyer's Guide to Ohio Consumer Class Actions—Understanding the Basics and Recognizing
Opportunities,* 14:3 OHIO TRIAL 26 (2005)

*Price Fixing and Market Allocation—What to Avoid, What to Watch For,* 2.2 ABA'S ANTITRUST
COUNSELOR 1 (2005)

*"Your Honor, Tear Down that Illinois Brick Wall!" The National Movement Toward Indirect Purchaser Antitrust
Standing and Consumer Justice,* 30 WM. MITCHELL L. REV. 1351 (2004)

*Price Fixing, Market Allocation and Bid Rigging Conspiracies: How to Counsel Your Clients to Detect Violations and
Inform You of Potential Claims,* 25 AMER. J. TRIAL  ADVOC. 241 (2002)

*Collusion Central. Helping Your Clients Deal with Price Fixers,* 11:3 ABA'S BUS. L. TODAY 9 (2002)

*A Practitioner's Primer on Securities Fraud Class Action Litigation,* 69:6 CLEV. BAR J. 8 (1998)

*Kicking Our Gift Horse in the Mouth—Arbitration and Arbitrator Bias: Its Source, Symptoms and Solutions,*
7 OHIO ST. J. ON DISP. RESOL. 315 (1992)

*Winning Isn't Everything, It's the Only Thing. Violence in Professional Sports: The Need for Federal Regulation and
Criminal Sanctions,* 25 IND. L. REV. 147 (1991)

## SPEAKING ENGAGEMENTS

Program Chair and Moderator, ABA's 25th Annual National Institute on Class Actions, Class-Action Conniption! How In-House Counsel Lasso Class Actions on "Class Actions Live!", Gather 'Round the Campfire for the Tale of Arthur Miller's Lifetime Contribution to Class Actions, Mamas, Don't Let Your Babies Grow Up to be Class-Action Lawyers (or at Least Make Sure They Look Before They Leap, Austin, TX, February 10–11, 2022, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Speaker, "US Securities Fraud Class Actions," Annual Conference of the Financial Street Forum hosted by the People's Government of Beijing Municipality, the People's Bank of China, Xinhua News Agency, China Banking and Insurance Regulatory Commission, China Securities Regulatory Commission, and the State Administration of Foreign Exchange, Beijing, China, Oct. 22, 2021

Speaker, "Quarterly Section Meeting—Consumer Law," Ohio Association for Justice, April 27, 2021

Speaker, "The Not-Unconstitutionality of Mask Mandates," Irish-American Law Society, April 21, 2021

Speaker, "Business Development & Networking: Advice on Steps to Take Today," Cleveland Metropolitan Bar Association, February 22, 2021

Speaker, "New Trends in Consumer Law," Ohio Association for Justice, February 11, 2021

Speaker, Kappa Alpha Pi Pre-Law Fraternity, University of Michigan, November 17, 2020

Program Chair and Moderator, ABA's 24th Annual National Institute on Class Actions, "Interview with Rep. Katie Porter and Rich Cordray: A Life in Class Actions," October 13–15, 2020, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, "Ethical Issues in Class Actions," NCLC Annual Consumer Rights Litigation Conference, Boston, MA, November 14–17, 2019, sponsored by the National Consumer Law Center

Program Chair and Moderator, ABA's 23rd Annual National Institute on Class Actions, "Second to None. Class Actions 101," "Write to the Point. Class Actions 201," Nashville, TN, October 17–18, 2019, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Speaker, AAJ's 2019 Annual Convention, "The Craft of Beautiful Legal Writing," San Diego, CA, July 28, 2019, sponsored by American Association for Justice

Program Chair and Moderator, "Who Needs *Playhouse Square*?" Class Certification from A(rsenio) to (O)Z: A Three-Act Play," Cleveland, OH, March 13, 2019, sponsored by the William K. Thomas Inns of Court

Speaker, "Class Actions 101," January 17, 2019, New York, NY, sponsored by the New York State Bar Association

Panelist, "Why Antitrust Matters," October 30, 2018, Cleveland, OH, sponsored by the ABA's Antitrust Section

Program Chair and Moderator, ABA's 22nd Annual National Institute on Class Actions, "Second to None. Class Actions 101," "Write to the Point. Class Actions 201," Chicago, IL, October 18–19, 2018, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, GMA Legal **Conference, "**What in the World was He Thinking?  A Look Inside the Mind of a Plaintiff's Attorney, and How to Respond," February 26–27, 2018, sponsored by the Grocery Manufacturers Association

Plenary Moderator, ABA's Corporate Counsel Seminar, "Class Actions Scared Straight: Real Class-Action Stories, Strategies, and Solutions from Both Sides of the 'v.,'" La Quinta, CA, February 17, 2018, sponsored by the ABA's Corporate Counsel Section

Panelist, ABA Environmental & Energy, Mass Torts, and Products Liability Litigation Committees' Joint CLE Seminar, "Brave New World: Perspectives on the Regulatory and Legal Landscape One Year into Trump's Administration," January 27, 2018, Whistler, BC, sponsored by the ABA's Environmental & Energy, Mass Torts, and Products Liability Litigation Committees

Panelist, Harris Martin Plaintiff Opioid MDL Conference, "Third-Party Payor, Class, and Hospital Claims," January 8, 2018, sponsored by Harris Martin

Program Chair and Moderator, ABA's 21st Annual National Institute on Class Actions, "Debating the Language. Class Actions 101," "Let's Vote on It. Class Actions 201," "Join the Writing Revolution. Class Actions 301," "Build That Wall . . . or Maybe Not. H.R. 985 and the End of Class Actions?" Washington, DC, October 26–27, 2017, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Speaker, AAJ's 2017 Annual Convention, "How to Grow Your Practice by Recognizing Antitrust Cases" and "The Art of Beautiful Legal Writing," Boston, MA, July 22, 2017, sponsored by American Association for Justice

Speaker, AAJ Continuing Legal Education Conference, "The Future of Class Actions: Teamwork, Savvy Defense, and Smart Offense," Nashville, TN, May 11, 2017, sponsored by American Association for Justice

Panelist, GMA 2017 Legal Conference, "Fighting Back Against Class Action Litigation," San Diego, CA, February 27–28, 2017, sponsored by the Grocery Manufacturers Association

Panelist, OSBA Federal Courts & Practice Committee Bench Bar Conference, "Class Certification Analysis after *Duke* & *Comcast*, October 27–28, 2016, sponsored by the Ohio State Bar Association

Program Chair and Moderator, ABA's 20th Annual National Institute on Class Actions, "'Coming Out!' It's Class Actions 101," "'Box the Trifecta.' Let's Play Class Actions 301," "'From Mirage to Immense.' The Genesis, Creation, and Evolution of Rule 23 with Professor Arthur Miller," and "'Hitting the Jackpot!' A One-on-One Class-Action Conversation with Judge Richard Posner," Las Vegas, NV, October 19–20, 2016, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, "No BigLaw? No Problem! How Small-Firm Plaintiff and Defense Lawyers Are Managing Some of the Largest Class-Action Litigation Matters," May 27, 2016, sponsored by the ABA

Panelist, "Cross-Industry Interdisciplinary Summit on Class Actions*,"* New York, NY, April 11–12, 2016, sponsored by American Conference Institute

Panelist, "Is this CAFA or Kafka?  Multi-State Actions in a Time of Metamorphosis," Litigation Section Annual Conference, Chicago, IL, April 14, 2016, sponsored by the ABA

Program Chair and Moderator, ABA's 19th Annual National Institute on Class Actions, "'Who Dat?!' It's the Return of Class Actions 101 and Class Actions 201" and "You Have a Choice, *Picayune*—'Economic Loss' or 'No-Injury' Class Actions. Either Way, Does a Legal Claim Exist?" New Orleans, LA, October 22–23, 2015, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Program Chair, "Antitrust for Non-Antitrust Lawyers: How to Grow Your Business by Recognizing New Opportunities," National Teleseminar, January 15, 2015, sponsored by American Association for Justice

Program Chair and Moderator, ABA's 18th Annual National Institute on Class Actions, "Second to None. Class Actions 101" and "Who Needs *The Second City*?" Class Certification from A(kroyd) to (Lovit)Z: A Three-Act Play," Chicago, IL, October 23–24, 2014, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Lecturer, Ohio Association of Justice's Annual Convention, "Class Actions for Non-Class Action Attorneys. How to Grow Your Business by Recognizing New Opportunities," Columbus, OH, May 8, 2014, sponsored by Ohio Association for Justice

Panelist, Article III Standing and Rule 23(b)(3) Certification: Emerging Litigation Trends, December 3, 2013, National Teleseminar, sponsored by Strafford Publications

Program Chair and Moderator, ABA's 17th Annual National Institute on Class Actions, "Listen Co-Counsel, You'll Learn a Ton, It's Time for Class Actions 101" and "'Show Me the Money!!! . . . or Don't.' *Cy Pres* Recoveries, Requests for Attorneys' Fees, and Does This Amount to a Hill of Beans?" Boston, MA, October 23–24, 2013, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, Ohio State Bar Association's 2012 Great Lakes Antitrust Institute, "New Developments in Antitrust Law," Columbus, OH, November 2, 2012, sponsored by the Ohio State Bar Association

Program Chair and Moderator, ABA's 16th Annual National Institute on Class Actions, "'The Class Definition that Works . . . or Does It?' Strategies for Pleading and Attacking Class Definitions—The Most Basic and Most Ignored Step in a Class-action lawsuit's Success or Failure," Chicago, IL October 25, 2012, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Program Chair and Moderator, "Reexamining the Class Action Practice and Considering Where it—Indeed, *We*—Go From Here," Chicago, IL, August 3, 2012, sponsored by the ABA

Moderator and Panelist, "Everything MDL. First-Hand Perspectives from MDL Panel Judges, MDL District Court Judges, and MDL Lawyers," Cleveland, OH, July 25, 2012, sponsored by the Cleveland Metropolitan Bar Association and the Federal Bar Association, Northern District of Ohio Chapter

Panelist, "Litigating Class Actions Between Class Certification and Trial," National Teleseminar, January 31, 2012, sponsored by Strafford Publications

Panelist, "Trends in Federal Circuit Class Certification Rulings," National Teleseminar, January 19, 2012, Law Seminars International

Program Chair and Moderator, ABA's 15th Annual National Institute on Class Actions, "The Practice that Never Sleeps: Reexamining the Class action Practice and Considering Where it—Indeed, *We*—Go From Here," New York, NY, October 14, 2011, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, *Wal–Mart v. Dukes,* Practical Implications of the Supreme Court's Landmark Class Action Ruling, National Teleseminar, June 30, 2011, sponsored by Law Seminars International

Panelist, ABA's 59th Annual Antitrust Law Spring Meeting, "Guilt by Association?  Trade Associations, Cartel Investigations, and *Twombly,*" Washington, D.C., March 30, 2011, sponsored by the ABA's Antitrust Law Section

Panelist, "Pleading and Defending Class Actions: Leveraging the Latest Developments in CAFA Removal Jurisdiction**,"** National Teleseminar, December 8, 2010, sponsored by Strafford Publications

Panelist, "Litigating Class Actions Between Class Certification and Trial," National Teleseminar, November 2, 2010, sponsored by Strafford Publications

Program Chair and Moderator, ABA's 14th Annual National Institute on Class Actions, "'The Standard that Works . . . or Does It?'  Deciding Choice–of–Law and Reliance/Causation/ Deception Standards in Multistate, Consumer fraud Class actions After CAFA," Chicago, IL., October 14, 2010, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, "Consumer Class action Litigation:  Leveraging New Developments in Class Certification, Causation, and Reliance," National Teleseminar, April 20, 2010, sponsored by Strafford Publications

Panelist and Moderator, ABA's 13th Annual National Institute on Class Actions, "A *Funny Thing Happened on the Way to the Courthouse . . . I Had to Litigate an Arbitration Clause!* Crafting, Opposing, and Arguing Arbitration Clauses and Class action Waivers in Three Scenes," Washington DC, November 20, 2009, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist and Moderator, ABA's 13th Annual National Institute on Class Actions, A *Funny Thing Happened on the Way to the Courthouse . . . I Had to Litigate an Arbitration Clause!* Crafting, Opposing, and Arguing Arbitration Clauses and Class action Waivers in Three Scenes, San Francisco, CA, October 30, 2009, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, "Litigating Class Actions Between Class Certification and Trial," National Teleseminar, August 11, 2009, sponsored by Strafford Publications

Panelist, "It Ain't Over Till it's Over:  Litigating Class Actions After Class Certification and Before Trial," National Teleseminar, May 27, 2009, sponsored by ABA Litigation Section

Panelist, "Antitrust 101: Understanding, Pleading, and Defending Price fixing Claims," ABA Brown Bag Teleseminar, February 18, 2009, sponsored by the ABA's Section on Litigation

Panelist, "Pleading, Defending, and Settling Class Actions. Emerging Trends," National Teleseminar, December 9, 2008, sponsored by Strafford Publications

Panelist, Ohio State Bar Association's 2008 Antitrust Program, "When Opportunity Knocks . . . . Growing Your Business or Company's Bottom Line by Recognizing When, Whether, and How to Pursue Class action, Price fixing Claims," Columbus, OH, November 14, 2008, sponsored by the Ohio State Bar Association

Panelist and Moderator, ABA's 12th Annual National Institute on Class Actions, "'I Could Have Sworn It was CAFA, *not Kafka*!' The Metamorphosis of Pleading, Defending, and Settling Multi-State Class Actions—A Surreal-Life, Three-Act Play," New York, NY, November 7, 2008, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Lecturer, "Class Actions:  Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, October 31, 2008, sponsored by the Cleveland Bar Association

Panelist, "Pleading, Defending, and Settling Class Actions. Emerging Trends," National Teleseminar, May 13, 2008, sponsored by Strafford Publications

Panelist, Ohio Association for Justice's 2008 Annual Convention, "New Developments in Plaintiffs' Antitrust Law," Columbus, OH, May 9, 2008, sponsored by the Ohio Association for Justice

Lecturer, "Class Actions for Non-Class-action lawyers. Growing Your Business by Understanding the Basics and Recognizing Opportunities," Los Angeles, CA, February 21, 2008, sponsored by the Los Angeles County Bar Association

Panelist, "Class Action Removal Standards in Flux. New Litigation Strategies for Plaintiff and Defense Counsel," National Teleseminar, February 19, 2008, sponsored by Strafford Publications

Panelist and Moderator, ABA's 11th Annual National Institute on Class Actions, "The Nationwide Class: White Elephant, Endangered Species, or Alive and Well?" Chicago, IL, October 19, 2007, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panel Co–Chair, ABA's 2007 Annual Meeting, "'Is this CAFA or Kafka?'  Multi–State Class Actions in a Time of Metamorphosis—A Surreal-Life, Three-Act Play," San Francisco, CA, August 9–12, 2007, sponsored by the ABA

Panelist, ABA's 2007 Litigation Section Annual Conference, "The Last Laugh-Perspectives on CAFA," San Antonio, TX, April 11–14, 2007, sponsored by the ABA

Lecturer, "Class Actions for Non–Class-action lawyers," Los Angeles, CA, February 23, 2007, sponsored by the Los Angeles County Bar Association

Moderator, ABA's 10th Annual National Institute on Class Actions, Chicago, IL, October 27, 2006, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Lecturer, "The Business Litigation Seminar," Cleveland, OH, June 21, 2006, sponsored by the Cleveland Bar Association

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business—How to Avoid Being a Victim," Cleveland, OH, June 16, 2006, sponsored by the Cleveland Chemical Association

Lecturer, "Class Actions:  Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, June 6, 2006, sponsored by the Cleveland Bar Association Lecturer/Panelist, "Civil Practice and Litigation Techniques in Federal and State Courts," Charleston, SC, May 31, 2006, sponsored by ALI-ABA

Lecturer, "Class Actions for Non–Class-action lawyers," Los Angeles, CA, February 25, 2006, sponsored by the Los Angeles County Bar Association

Lecturer, "Class Actions:  Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, December 6, 2005, sponsored by the Cleveland Bar Association

Lecturer, "Class Actions: Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, November 18, 2005, sponsored by the Cuyahoga County Bar Association

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business-How to Avoid Being a Victim," Pittsburgh, PA, November 11, 2005, sponsored by the Pittsburgh Chemical Association

Moderator, "ABA's 9th Annual National Institute on Class Actions," Chicago, IL, September 23, 2005, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business-How to Avoid Being a Victim," Cleveland, OH, September 16, 2005, sponsored by the Cleveland Chemical Association

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business–How to Avoid Being a Victim," Vail, CO, July 26, 2005, sponsored by the OC Chemical Dealers' Association

Lecturer, "Class Actions: Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, May 20, 2005, sponsored by the Cleveland Bar Association

Lecturer, "Class Actions for Non-Class-action lawyers," Miami, FL, May 13, 2005, sponsored by Lighthouse Seminar Group, Dallas, TX

Lecturer, "Class Actions for Non-Class-action lawyers: Understanding the Basics and Recognizing Opportunities," Phoenix, AZ, March 25, 2005, sponsored by the Maricopa County Bar Association

Lecturer, "Class Actions for Non-Class-action lawyers," Chicago, IL, January 21, 2005, sponsored by Lighthouse Seminar Group, Dallas, TX

Lecturer, "Recognizing Class Action Opportunities," Columbus, OH, December 12, 2004, sponsored by the Columbus Bar Association

Lecturer, "Class Actions: Understanding the Basics and Recognizing Opportunities," Cleveland, OH, May 28, 2004, sponsored by the Cleveland Bar Association

Lecturer, "Select Topics for Trial Lawyers, A Primer on Class Actions for the Non–Class Action Litigator in New York," New York, NY, August 11, 2004, sponsored by Lorman Educational Services, Eau Claire, WI

Lecturer, "The Business Litigation Seminar—Advanced Tactics and Motions," Cleveland, OH, December 12, 2003, sponsored by the Cleveland Bar Association

Lecturer, "Community Litigation Workshop," Detroit, MI, June 5, 1998, sponsored by the Firearms Litigation Clearinghouse, Washington D.C.

## PROFESSIONAL ACTIVITIES

American Bar Association, 2003–Present
    Chairperson, National Institute on Class Actions, 2010–2022
    Litigation Section, Co-Chair, Class Action and Derivative Suits Committee's Antitrust
    Subcommittee, 2007–2008
    Antitrust Section, 2008–2010

Host, Your Lovable Lawyer, [www.yourlovablelawyer.com](http://www.yourlovablelawyer.com), 2020–Present

Contributor, A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* (2012)

Law360, Columnist, 2017–Present

American Society of Writers on Legal Subjects, 2004–Present
    Law Review Award Committee, 2004–2009
    Brief-Writing Committee, 2004–2009

American Association for Justice, 1998–Present
    Co-Chair, Class Action Litigation Group, 2018–2020
    Co-Vice Chair, Class Action Litigation Group, 2016–2018
    Secretary, Class Action Litigation Group, 2015–2016
    Litigation Group Leaders Council, 2018–Present
    Co-Chair, Antitrust Subcommittee, 2016–Present
    Vice Co–Chair, Antitrust Subcommittee, 2015–2016
    ABA Liaison Committee, 2014–Present
    Rule 23 Subcommittee, 2014–Present

Loyola Chicago Consumer Law Review Advisory Board, 2018–Present

The William K. Thomas American Inn of Court—American Inns of Court, 2018–Present

Class Action Trial Lawyers' Association, 2011–Present
    Executive Committee, 2011–Present

Cleveland Bar Association, 1997–2009

National Association for Consumer Advocates, 2003–2013

## BOARD MEMBERSHIPS AND CIVIC ACTIVITIES

Ohio Association for Justice, 2003–Present
    Board of Trustees, 2012–2016
    Chair, Consumer Law Section, 2014–2016

Nueva Luz Urban Resource Center
    Board Member, 2021–Present

Cleveland Metropolitan Bar Association, Multidistrict Litigation Task Force, 2010–2012

Consumer-law correspondent, Your Legal Minute with the Lovable Lawyer, The Weekly Pulse, WKYC-Cleveland, 2018–2019

Loyola University Chicago School of Law, Institute for Consumer Antitrust Studies' U.S. Advisory Board, 2004–Present

IUvisors Student Advisors, Indiana University Alumni Foundation, 2014–Present

Student Mentor, Loyola Consumer Antitrust Institute's Mentoring Program, Loyola University Chicago School of Law, 2018–Present

Antitrust Section Council Member, Ohio State Bar Association, 2007–Present
    Great Lakes Antitrust Institute Planning Committee, 2013

Cleveland Legal Aid Society
    Volunteer Attorney, 2014–2016

Public Justice, 2011–Present

Editorial Board, Ohio Academy of Trial Lawyers' *Ohio Trial* Magazine, 2004–2010

Class Action Advisory Board, Strafford Legal Publications, 2008–Present

Editorial Board, American Bar Association, Litigation Section's *Class Actions Today. Jurisdiction to Resolution* (special publication), 2007–2008

Assistant Coach, Northern Ohio Warriors Traveling Youth Baseball Club, 2014–2016

Fellow, Litigation Counsel of America Trial Lawyer Honorary Society, 2008–2010

Women's Community Foundation, Men's Executive Committee, 2004–2010

Judge, Landskroner Foundation for Children's 9th Annual Law Student Closing Argument Competition, 2007

Anti-Defamation League's Steinberg Leadership Institute, 1998–2000

Associate Attorney's Committee Co-Chair, Lawyers' Division, Jewish Federation of Metropolitan Chicago, 1995–1997

DePaul University College of Law, Moot Court Judge, 1993–1994

Sigma Alpha Mu, Sigma Zeta Housing Corporation, 2004–2009

Young Leadership Board, Jewish Federation of Metropolitan Chicago, 1993–1997

Young Leadership Board, Jewish Community Federation of Cleveland, 1997–2000

**MEDIA APPEARANCES**

*WIFR (CBS),* "Did you read the fine print? Know your rights as a consumer," Apr. 11, 2022

*The Elliott Sheppard Show*, "Did you read the fine print? Know your rights as a consumer," Apr. 11, 2022

*WAGT (NBC),* "Did you read the fine print? Know your rights as a consumer," Apr. 10, 2022

*Top Class Actions,* "TCA Explains: What Are Arbitration Agreements And How Do They Affect Class Actions," Apr. 4, 2022

*WSAZ NewsChannel 3 Midday*, "Did you read the fine print? Know your rights as a consumer," Feb. 23, 2022

*WOIO CBS 19News*, "Did you read the fine print? Know your rights as a consumer," Feb. 22, 2022

*Top Class Actions*, "Michigan Parking Chalk Class Action Could Lead to Similar Lawsuits Across the US," Feb. 16, 2022

*Top Class Actions*, "As Mask Mandates Return, So Do Lawsuits," Feb. 4, 2022

*WOIO CBS 19News,* "Scams to watch out for this holiday season," Dec. 17, 2021

*Top Class Actions*, Class Action Lawsuits Target Alleged Beef Price-Fixing Scheme, Dec. 8, 2021

*Top Class Actions,* "Meet Danny Karon, Your Lovable Lawyer," September 17, 2021

*WKYC NBC3*, "The constitutionality of President Biden's compulsory vaccination decree," Sept. 10, 2021

*WOIO CBS 19News*, "Court case from 1905 holds up Ohio state vaccine mandates today," Aug. 25, 2021

*WEWS News Channel 5*, "Some businesses reinstate mask mandates as COVID cases rise*,"* August 3, 2021

*WOSU-NPR,* "All Sides with Ann Fisher," July 22, 2021

*WOIO CBS 19News*, "Know your rights: how condo owners can get action for safety problems," July 2, 2021

*Top Class Actions*, "Supreme Court Ruling on NCAA Suggest Potential for Future Changes," June 22, 2021

*Top Class Actions,* "10 Largest Class Action Settlements in American History," June 9, 2021

*WKYC NBC3*, "George Clooney to produce docuseries on Ohio State sexual abuse scandal," Feb. 22, 2021

*WKYC NBC3*, "COVID-Q9 vaccine: Your legal questions answered," Dec. 15, 2020

*WKYC NBC3*, "Exclusive: OSU sex abuse survivors say 'gender bias' is stalling settlement talks," Oct. 13, 2020

*Law360*, "6 Law Firms Vie To Head FirstEnergy Shareholder Suit," Sept. 29, 2020

*Top Class Actions*, "Tyson Class Action Lawsuit Says Beef Prices are Inflated," Sept. 17, 2020

*Law360*, "Investor Claims Ohio Utility Played Role In $60M Bribery Plot," Aug. 21, 2020

*WKYC NBC3*, "Evenflo accused of defective car seats," August 5, 2020

*Law360*, OSU Says Sex Assault Claims Against Doctor Are Too Old, July 8, 2020

*Fair Cattle Markets,* Interview with Daniel Karon, Attorney representing Central Grocers, June 23, 2020

*The Fence Post*, "Grocers File Lawsuit Against Meatpackers for Violating the Sherman Act," June 15, 2020

*Tri-State Livestock News*, "Lawsuit Number 3," June 12, 2020

*Law360*, Hottest Legal Industry Guest Topics Of 2019, December 23, 2019

*Beef Magazine*, "Class action lawsuit filed against beef packers," June 11, 2020

*Feedstuffs*, "Class action lawsuit filed against beef packers," June 9, 2020

*Bloomberg Law*, "Cargill, JBS, Top Meatpackers Accused of Driving Up Prices," June 8, 2020

*WKYC NBC3*, "What are Workers' Rights During the Coronavirus Outbreak?" March 26, 2020

*Law360,* "OSU And Sex Abuse Accusers Ordered To Continue Deal Talks," March 19, 2020

*WEWS NewsChannel 5*, "Corona Virus: How You Can Still Plan for Big Events," March 14, 2020

*Law360*, "OSU Reaches Settlement With Some Sex Abuse Accusers," May 6, 2020

*Law360*, "OSU Not Handling Sex Abuse Talks In Good Faith, Judge Told," February 25, 2020

*WOIO CBS 19News*, "Myles Garrett in the News," November 15, 2019

*WEWS NewsChannel 5*, "Corona Virus: How You Can Still Plan for Big Events," March 14, 2020

*Law360*, OSU Reaches Settlement With Some Sex Abuse Accusers, May 6, 2020

*Law360*, OSU Not Handling Sex Abuse Talks In Good Faith, Judge Told, February 25, 2020

*WOIO CBS 19News*, "Myles Garrett in the News," November 15, 2019

*WOIO CBS 19News*, More Than 100 Former OSU Students Come Forward with Allegations of Sexual Misconduct by Team Doctor, July 21, 2019

*WOIO CBS 19News*, "Ohio State Sex Abuse Interview," May 20, 2019

*WEWS NewsChannel 5*, "Ohio State Sex Abuse Interview," May 20, 2019

*Fox News 8 Cleveland*, "Cleveland Attorney Represents Alleged Victim, Fights for Justice in OSU Sexual Abuse Case," May 18, 2019

*Fox News 8 Cleveland—Live Facebook feed*, "Cleveland Attorney Represents Alleged Victim, Fights for Justice in OSU Sexual Abuse Case," May 18, 2019

*Cleveland Jewish News*, "OSU Investigation: Doctor Strauss Abused at Least 177 Students," May 17, 2019

*Columbus Jewish News*, "OSU Investigation: Doctor Strauss Abused at Least 177 Students," May 17, 2019

*All Rise—the Ohio State University Moritz College of Law*, Alumni Profile, Winter 2019

*Cleveland.com*, "State's high court says customers must show damages in class action case

*WKYC NBC3 Cleveland*, "Cleveland Attorney Represents Alleged Victim, Fights for Justice in OSU Sexual Abuse Case," July 18, 2018

*The Lantern*, "Ohio State Faces Second Class Action Lawsuit Pertaining to Doctor's Sexual Abuse," July 17, 2018

*The Daily Record*, Ex-Wrestlers Sue Ohio State, Say Officials Knew of Doctor's Sexual Abuse," July 17, 2018

*The Columbus Dispatch*, Ex-Wrestlers Sue Ohio State, Say Officials Knew of Doctor's Sexual Abuse," July 17, 2018

*Side Bar: the Moritz Newsletter*, Expose, October 30, 2017

*Bloomberg BNA*, "Posner: Class Action Rules, Constitution Overrated," October 28, 2016

*Cleveland Plain Dealer*, "Ruling May Make Class-Action Suits Harder to Mount," September 9, 2015

*21WFMJ*, Warren woman files $5,000,000 suit against hospital operator over data breach, Mar. 6, 2015

*Cleveland.com*, State's high court says customers must show damage in class action case, September 5, 2015

*Law360*, "BASF, Others Face Price-Fixing Suit for Polyurethane Input," July 9, 2013

*Cleveland Plain Dealer*, "Grove City Truck Firm is Latest to Sue Pilot Flying J," June 1, 2013

*Madison Record*, "ABA—Panel Discusses Class Action Lawsuits and their Bad Reputation, August 6, 2012

*Cleveland Plain Dealer*, "Take Me Out to a Ballpark—Midday Makeup Game Draws Determined Crowd," September 21, 2011

*Lawyers and Settlements*, Featured Case, March 22, 2010

*ABA Journal*, "A Step Up in Class," May 1, 2008

*Miami Herald*, "Banana Battle Heads to Court," September 2, 2005

*National Law Journal*, "Antitrust Dilemma Emerges in U.S. Courts," September 19, 2005

*Cleveland.com*, State's high court says customers must show damages in class action case, September 8, 2015

*RDS Business and Management Practices*, "Banana Battle Heads to Court," September 1, 2005

*The Palm Beach Daily Business Review*, Kimball on Real Estate, March 24, 2015

*St. Paul Pioneer Press*, "Assault on a System," March 14, 2004

## PODCASTS

*The Mogabr Show*, May 13, 2022

*Your Lot & Parcel Podcast*, May 12, 2022

*The Kimberly Cloud Show*, May 9, 2022

*5 Minutes With,* Buzz Media, Oct. 13, 2021

*Health Yeah! With Monica Robins*, The Legal Wellness Advice You Didn't Know You Needed, Oct. 7, 2021

*Ask the Attorney,* Buzz Media, Sept. 8, 2021

*Emerging Litigation Podcast*, HB Litigation Conferences LLC, Sept. 2, 2021

*Our Curious Amalgam*, sponsored by the American Bar Association, Mar. 29. 2021

*Common Questions*, sponsored by the American Bar Association, August 10, 2021

## HONORS AND AWARDS

Norvelle Scholarship for Academic Excellence, Indiana University, 1986

Ohio Super Lawyer, 2012–Present

Super Lawyer, Top 100 in Ohio, 2022–Present

Super Lawyer, Top 50 in Cleveland, 2022–Present

Global Directory of Who's Who (Top Lawyer), 2015–Present

Chambers and Partners, USA Antitrust-Ohio, 2020–Present ("Daniel Karon is an experienced antitrust litigator who is well known for his deft handling of high-profile class action litigation. He is a thought leader in the class action space.")

ABA Center for Professional Development Partner Appreciation Award Winner for Most Innovative Presentation, 2015

ABA Award for Outstanding Subcommittee Chair for the Class Actions & Derivative Suits Committee 2010–2011

Who's Who in America, 2021–Present

Top Attorneys of North America, 2017–Present

Best Lawyers in America, Mass Tort Litigation/Class Actions—Plaintiffs, 2018–Present

Martindale-Hubbell AV Preeminent® Peer-Review Rating (reflecting combination of very high general ethical standards and legal ability and measuring legal knowledge, analytical capabilities, judgment, communication ability, and legal experience), 2012–Present

AcademicKeys Who's Who in Law Higher Education, 2017–Present

US News Best Lawyers–Best Law Firms, 2019–Present

Best Lawyers Business Edition—The Litigation Issue 2019

Best Consumer Law & Antitrust Law Firm 2019—Ohio Leading Legal Mind in Class Action Lawsuits (Ohio)

America's Top 100 High Stakes Litigators, 2020

America's Most Honored Lawyers, The American Registry, 2020


**Beau D. Hollowell**


**EDUCATION**

J.D., 2006
    Case Western Reserve University School of Law
    Dean's List
    Paul J. Hergenroeder Award for Trial Tactics
    CALI Award (highest grade) for Trial Tactics

B.A., English, 2002
    Westminster College
    Dean's List

**BAR ADMISSIONS**

Ohio, 2006
Illinois (inactive), 2009

United States Court of Appeals for the Sixth Circuit, 2007

United States District Court for the Northern District of Ohio, 2008

United States District Court for the Southern District of Ohio, 2011

**EXPERIENCE**

Karon LLC, Cleveland, OH
Attorney, 2014–Present

Marshall Dennehey Warner Coleman & Goggin, Cleveland, OH
Attorney, 2010–2014

Sarles & Ouimet, LLC, Chicago, IL
Attorney, 2008–2010

Reminger & Reminger, Co., LPA, Cleveland, OH
Attorney, 2006–2008
Law Clerk, 2004–2006

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and       Case No. 14-12719 DPH-RSW
on behalf of all others similarly situated,

    Plaintiff,

                       Honorable Denise Page Hood

        v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

---

DECLARATION OF SANFORD P. DUMAIN IN SUPPORT OF
PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, APPROVAL OF
SERVICE AWARD, AND FOR REIMBURSEMENT OF EXPENSES

I, Sanford P. Dumain, declare as follows:

1.    I am of counsel with the law firm, Milberg Coleman Bryson Phillips Grossman, PLLC, in New York, New York, and was a partner of Milberg LLP. I am a member of the bar of this Court, and I submit this declaration in support of the Motion for Attorneys' Fees and Reimbursement of Expenses (the "Motion") in connection with services rendered in this litigation (the "Action"), as well as the reimbursement of expenses incurred by Milberg LLP in connection with this Action.

2.    My firm, primarily through Paul F. Novak, Diana Gjonaj, Elizabeth McKenna, myself and others.

3.    Milberg acted as co-counsel in this Action and worked in coordination with other counsel. Work assignments in this Action were regularly made by co-

counsel to avoid duplicative efforts. Among the tasks undertaken by Milberg LLP include the following:

- Assisted in drafting opposition to motions to dismiss the complaint;

- Assisted in briefing multiple appeals to the Sixth Circuit regarding arbitration issues;

- Assisted in propounded and analyzing discovery;

- Prepared for and attended multiple mediation sessions;

- Reviewed documents prepared in connection with the settlement of this Action.

## TIME AND EFFORT DEDICATED TO THE CASE

4.      The schedule attached as Exhibit A, and incorporated herein, is a detailed summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation through May 13, 2022. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion. The lodestar calculation is based on my firm's current billing rates. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm, which I will make available to the Court for *in camera ex-parte* review upon request of the Court. The hourly rates for my firm's partners, attorneys, and professional support staff included in Exhibit A are the usual and customary hourly rates at amounts comparable to those sought herein, and courts have approved an award of attorneys' fees in such cases.

5.     The total number of hours reasonably expended on this litigation by my firm from inception to August 2021 is 1,711.85. The total lodestar for my firm at current rates is $926,842.  Expense items are billed separately and are not duplicated in my firm's lodestar.  Those hours and lodestar were reduced with respect to time spent by lawyers assigned to the case after the closing of my firm's Detroit office.

6.     The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, receipts, and check records and other source materials and accurately reflect the expenses incurred.

7.     My firm incurred a total of $48,980 in unreimbursed expenses, all of which are reasonable and necessary for the prosecution of this litigation. A summary of those expenses by category is attached as Exhibit B.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 16, 2022

                                        _/s/ Sanford P. Dumain_____
                                                Sanford P. Dumain

# EXHIBIT A

**Solo, et al. v. United Parcel Services Co.**

Civil Action No. 2:14-cv-12719-DPH-RSW

**LODESTAR REPORT**

FIRM NAME: Milberg Coleman Bryson Phillips Grossman, PLLC

REPORTING PERIOD: Inception through August 2021

| LEGAL PROFESSIONAL | BILLING RATE | NUMBER OF HOURS | LODESTAR |
|---|---|---|---|
| Sanford P. Dumain (OC) | $1,025.00 | 121.3 | $124,332.50 |
| Elizabeth McKenna (P) | $850.00 | 277.3 | $235,705.00 |
| Paul Novak (P) | $800.00 | 119.65 | $95,720.00 |
| John Hughes (SC) | $676.00 | 62.7 | $42,385.20 |
| Jennifer S. Czeisler (P) | $676.00 | 110 | $74,360.00 |
| Charles Slidders (SC) | $575.00 | 30 | $17,250.00 |
| Michelle Petrick (I) | $475.00 | 12 | $5,700.00 |
| Diana Gjonaj (A) | $350.00 | 688.1 | $240,835.00 |
| Gregory Stamatopoulos (A) | $350.00 | 34.5 | $12,075.00 |
| Ray Velazquez (DC) | $350.00 | 21.5 | $7,525.00 |
| Cindy Bomzer (PL) | $325.00 | 23.8 | $7,735.00 |
| Jason Joseph (PL) | $325.00 | 46.9 | $15,242.50 |
| Halene Bricker (PL) | $325.00 | 57 | $18,525.00 |
| Mark Andrews (PL) | $275.00 | 107.1 | $29,452.50 |
| **TOTAL** | | 1,711.85 | $926,842.70 |

A = Associate
DC = Document Clerk
I = Investigator
P = Partner
PL = Paralegal
OC = Of Counsel
SC = Senior Counsel

# EXHIBIT B

**Solo, et al. v. United Parcel Service Co.**

Civil Action No. 2:14-cv-12719-DPH-RSW

**EXPENSE REPORT**

FIRM NAME: Milberg Coleman Bryson Phillips Grossman, PLLC

REPORTING PERIOD: Inception through August 2021

| DESCRIPTION | TOTAL |
|---|---|
| Filing Fees | $505.01 |
| Court Reporting/Transcripts | $555.02 |
| Exhibits | $1,548.22 |
| Other Court Fees | $236.02 |
| In-House Duplicating | $1,211.57 |
| Long Distance Telephone (Internal) | $21.78 |
| Postage | $52.16 |
| Lexis/Westlaw | $16,291.48 |
| Office Supplies | $74.20 |
| Travel Expenses: | |
| Meals | $334.74 |
| Parking Charges | $347.43 |
| Transportation, hotels | $3,915.56 |
| Mediation fees | $23,887.40 |
| **TOTAL EXPENSES** | $48,980.59 |

# EXHIBIT C



Firm Resume



**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC ("MILBERG") IS A LEADING GLOBAL PLAINTIFFS' FIRM,** successfully pioneering and litigating complex litigations in the following practice areas: class actions, antitrust and competition law, securities fraud, consumer protection, cyber security and data breach litigation, financial and insurance litigation, environmental law, securities litigation, and product liability. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride themselves on providing stellar service and achieving extraordinary results for their clients.

Milberg was founded in 1965, taking the lead in landmark cases that have set groundbreaking legal precedents and prompted changes in corporate governance benefiting shareholders and consumers. For more than 50 years, the firm has protected victims' rights, recovering over $50 billion in verdicts and settlements. Milberg was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The firm pioneered this type of litigation and became widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.

Milberg has offices in New York, California, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Kentucky, Tennessee and Puerto Rico.  Recently, Milberg has opened offices in the United Kingdom, Portugal, and Germany. In addition, Milberg has expanded into South America, with primary emphasis in Brazil.

The firm's reputation has been built by successfully taking on challenging cases across a spectrum of practice areas for the past half-century. From resolving business disputes to proving antitrust conspiracies, Milberg is equipped to handle complex, high-stakes cases at any stage of the litigation process.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, and Super Lawyers, among others.

**MILBERG** is comprised of more than 80 attorneys across the country.

Sanford P. Dumain represents plaintiffs in cases involving securities fraud, consumer fraud, insurance fraud, and violations of the antitrust laws.

Mr. Dumain was co-lead counsel in the In re Tyco International, Ltd. Securities Litigation, No. 02-1335 (D.N.H.) in which $3.2 billion was recovered for investors. Mr. Dumain also served as lead counsel in the securities class actions against Nortel and Biovail, which are the highest and third-highest recoveries ever in cases involving Canadian companies. The Nortel settlement was valued at over $1 billion and Biovail settled for over $138 million in cash. Mr. Dumain successfully represented the City of San Jose, California against 13 of the City's broker-dealers and its outside accountants in connection with major losses in unauthorized bond trading.

Mr. Dumain began his career as a law clerk to Judge Warren W. Eginton, United States District Court for the District of Connecticut 1981-1982. During the early years of his practice, he also served as an Adjunct Instructor in Legal Writing and Moot Court at Benjamin N. Cardozo School of Law.

Mr. Dumain has lectured for ALI-ABA concerning accountants' liability and has prosecuted several actions against accounting firms.

Judge Janet C. Hall of the District of Connecticut made the following comment in In re Fine Host Corporation Securities Litigation, No. 97-2619 (D.Conn.): "The court also finds that the plaintiff class received excellent counseling, particularly from the Chair of the Plaintiffs' Executive Committee, Attorney Dumain."

Mr. Dumain is admitted to practice in the State of New York, United States District Court for the Southern, Eastern, and Western Districts of New York, Eastern District of Michigan, District of Colorado, and District of Connecticut, and United States Courts of Appeals for the First, Second, Third, Sixth, Seventh, and Eighth Circuits.

## **Additional Notable Class Action Cases**

### **Antitrust**

*In re: TFT-LCD (Flat Panel) Antitrust Litigation,* No. 3:07-cv-01827, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market) (2012).

### **Appliances**

*Ersler, et. al v. Toshiba America et. al*, No. 07- 2304 (D.N.J.) (settlement of claims arising from allegedly defective television lamps) (2009).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Stalcup, et al. v. Thomson, Inc.* (Ill. Cir. Ct.) ($100 million class settlement of clams that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified) (2004).

*Hurkes Harris Design Associates, Inc., et al. v. Fujitsu Computer Prods. of Am., Inc.* (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives) (2003).

*Turner v. General Electric Company*, No. 2:05-cv-00186 (M.D. Fla.) (national settlement of claims arising from allegedly defective refrigerators) (2006).


## Automobiles

*In re General Motors Corp. Speedometer Prods. Liability Litig.,* MDL 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers) (2007).

*Baugh v. The Goodyear Tire & Rubber Company* (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds;  Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program) (2002).

*Lubitz v. Daimler Chrysler Corp.,* No. L-4883-04 (Bergen Cty. Super. Ct, NJ 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey) (2007).

*Berman et al. v. General Motors LLC,* Case No. 2:18-cv-14371 (S.D. Fla.) (Co-Lead Counsel; national settlement for repairs and reimbursement of repair costs incurred in connection with Chevrolet Equinox excessive oil consumption).

## Civil Rights

*In re Black Farmers Discrimination Litigation*, Case No. 1:08-mc-00511 (D.D.C.) ($1.25 billion settlement fund for black farmers who alleged U.S. Department of Agriculture discriminated against them by denying farm loans) (2013).

*Bruce, et. al. v. County of Rensselaer et. al.,* Case No. 02-cv-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses) (2004).

## Commercial

*In re: Outer Banks Power Outage Litigation,* 4:17-cv-141 (E.D.N.C) (Co-Lead Counsel; $10.35 million settlement for residents, businesses, and vacationers on Hatteras and Ocracoke Islands who were impacted by a 9-day power outage) (2018)

## Construction Materials

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Colo.) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee) (2011).

*Elliott et al v. KB Home North Carolina Inc. et al* 08-cv-21190 (N.C. Super. Ct. Wake County) (Lead Counsel; class action settlement for those whose homes were constructed without a weather-resistant barrier)(2017)

*In re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2514 (D.S.C.)(class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re MI Windows and Doors, Inc., Products Liability Litigation*, MDL No. 2333 (D.S.C) (National class action settlement for homeowners who purchased defective windows; Court-appointed Co-Lead Counsel).

*In re: Atlas Roofing Corporation Chalet Shingle Products Liability Litig.*, MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*Helmer et al. v. Goodyear Tire & Rubber Co*., No. 12-cv-00685-RBJ (D. Colo. 2012) (class action arising from allegedly defective radiant heating systems; Colorado class certified, 2014 WL 3353264, July 9, 2014)).

*In re: Zurn Pex Plumbing Products Liability Litigation*, No. o:08-md-01958, MDL No. 1958 (D. Minn.) (class action arising from allegedly plumbing systems; member of Executive Committee; settlement) (2012).

*Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 , MDL No. 2047 (E.D. La.) ($30 million settlement for remediation of 364 unit residential high-rise constructed with Chinese drywall) (2012).

*In re: Chinese Manufactured Drywall Products Liability Litigation,* No. 2:09-md-02047, MDL No. 2047 (E.D. La.) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee) (2012).

*Galanti v. Goodyear Tire & Rubber Co*., No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems) (2003).

*In re Synthetic Stucco Litig.,* Civ. Action No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Prods. Liability Litig.,* MDL No. 1132 (E.D.N.C.) (represented over 100 individuals homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey, et al. v.  Dryvit Systems, Inc.,* Case No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants) (2002).

*Sutton, et al. v. The Federal Materials Company, Inc., et al*, No. 07-CI-00007 (Ky. Cir. Ct) (Co-Lead Counsel; $10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Staton v. IMI South, et al.* (Ky. Cir. Ct.) ((Co-Lead Counsel; class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation*, No. 15-cv-0018, MDL No. 2577 (D.N.J.) (Lead Counsel; national settlement to homeowners who purchased defective GAF decking and railings).

*Bridget Smith v. Floor and Decor Outlets of America, Inc*., No. 1:15-cv-4316 (N.D. Ga.) (Co-Lead Counsel; National class action settlement for homeowners who purchased unsafe laminate wood flooring).

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation* MDL No. 1:15-md-2627 (E.D.Va.) (Formaldehyde case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Marketing, Sales Practices Litigation* MDL No. 1:16-md-2743 (E.D.Va.) (Co-Lead Counsel; Durability case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Windsor Wood Clad Window Products Liability Litigation* MDL No. 2:16-md-02688 (E.D. Wis.) (National class action settlement for homeowners who purchased defective windows; Court-appointed Lead Counsel).

*In re Allura Fiber Cement Siding Products Liability Litigation* MDL No. 2:19-md-02886 (D.S.C.) (class action arising from allegedly defective cement board siding; Court-appointed Lead Counsel).

## **Environmental**

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station) (2008).

*In re Swanson Creek Oil Spill Litigation*, No. 00-1429 (D. Md.) (Lead Counsel; $2.25 million settlement of litigation arising from largest oil spill in history of State of Maryland) (2001).

## **Fair Labor Standards Act/Wage and Hour**

*Craig v. Rite Aid Corporation*, Civil No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million) (2013).

*Stillman v. Staples, Inc.,* Civil No. 07-849 (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million) (2010).

*Lew v. Pizza Hut of Maryland, Inc.*, Civil No. CBB-09-CV-3162 (D. Md.) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages) (2011).

## Financial

*Roberts v. Fleet Bank (R.I.), N.A.*, Civil Action No. 00-6142 (E. D. Pa.) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.") (2003).

*Penobscot Indian Nation et al v United States Department of Housing and Urban Development*, N. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act) (2008).

## Impact Fees

*Town of Holly Springs,* No. 17-cvs-6244, 17-cvs-6245, 18-cvs-1373 (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $7.9 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the town) (2019).

*Larry Shaheen v. City of Belmont,* No. 17-cvs-394 (Gaston Co., NC) (Court appointed Class Counsel; Class action settlement with a $1.65 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the city) (2019).

*Upright Builders Inc. et al. v. Town of Apex,* No. 18-cvs-3720 & 18-cvs-4384, (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $15.3 million fund for builders and developers to recover improper capacity replacement and transportation paid fees to the town) (2019).

*Mayfair Partners, LLC et al. v. City of Asheville,* No. 18-cvs-04870 (Buncombe County) (Court appointed Class Counsel; Class action settlement with a $1,850,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Shenandoah Homes, LLC v. Town of Clayton*, No. 19-cvs-640 (Johnston County) (Court appointed Class Counsel; Class action settlement with a $2.7 million fund for builders and developers to recover improper impact fees paid to the town) (2020).

*Brookline Homes LLC v. City of Mount Holly*, Gaston County file no. 19-cvs-1163 (Gaston County) (Court appointed Class Counsel; Class action settlement with a $483,468 fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Eastwood Construction, LLC et. al v. City of Monroe*, Union County file nos. 18-CVS-2692 (Union County) (Court appointed Class Counsel; Class action settlement with a $1,750,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

**Insurance**

*Young, et al.  v. Nationwide Mut. Ins. Co, et al*., No. 11-5015 (E.D. Ky.) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir., 2012); settlements with all defendants for 100% refund of taxes collected) (2014).

*Nichols v. Progressive Direct Insurance Co., et al*., No. 2:06cv146 (E.D. Ky.) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million ) (2012).

**Privacy/Data Breach**

*In Re: U.S. Office of Personnel Management Data Security Breach Litigation*, No. 15-1393 (ABJ), MDL No. 2664 (D.D.C.) (court appointed interim Liaison Counsel).

*In re Google Buzz Privacy Litigation,* No. 5:10-cv-00672 (N.D. Cal.) (court-appointed Lead Class Counsel; $8.5 million cy pres settlement) (2010).

*In re: Dept. of Veterans Affairs (VA) Data Theft Litig.,* No. 1:2006-cv-00506, MDL 1796 (D.D.C.) (Co-Lead counsel representing veterans whose privacy rights had been compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations) (2009).

*In re: Adobe Systems Inc. Privacy Litigation,* No. 5:13-cv-05226 (N.D. Cal. 2015) (settlement requiring enhanced cyber security measures and audits) (2015).

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

BLEACHTECH LLC, individually and
on behalf of all others similarly situated,
Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,
Defendant.

Case No. 14-12719 DPH-RSW

Honorable Denise Page Hood

---

**DECLARATION OF RICHARD IMMERMAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, APPROVAL
OF SERVICE AWARD, AND FOR REIMBURSEMENT OF EXPENSES**

BleachTech LLC is the only named Plaintiff in the Amended Complaint filed in this matter. I am the owner of BleachTech LLC. I make this declaration based upon personal knowledge, and I am otherwise competent to be a witness in this matter.

Since I first contacted my attorneys in this matter, BleachTech and I have remained actively involved in the case and have worked with our attorneys as follows:

- Worked with counsel to investigate my claims;

- Conferred with counsel regarding factual issues, including with respect to the following pleadings and filings:

  o original Complaint;

  o Defendant's Motion to Dismiss;

  o Defendant's Answer to Complaint with Affirmative Defenses;

- o  Amended Complaint; and

- o  Three appeals.

- Worked with counsel to prepare Plaintiff's disclosure of corporate affiliations and financial interest as well as initial disclosures to Defendant;

- Consulted with counsel regarding discovery, both to Defendant and from Defendant sent to me, which includeed responding to Defendant's three sets of interrogatories, a set of admission requests, and a set of documents requests sent to BleachTech;

- Prepared and sat for Defendant's deposition of BleachTech as its representative and reviewed my deposition transcript for errors;

- Participated in three mediation sessions;

- Reviewed and approved the settlement agreement; and

- Consulted with counsel regarding the status and progress of the litigation.

In total, my work in this case for BleachTech as Class Representative involved approximately 50 hours of my time.

I understand per the settlement agreement, that BleachTech as plaintiff is asking the Court to award attorneys' fees. I support the attorneys' fee request in this matter, and believe our lawyers have worked hard and efficiently on this case for my benefit and the benefit of the class. I also support Plaintiff's request for the reasonable costs and

expenses incurred by the firms representing BleachTech. I understand these sums will be paid from the settlement fund if approved by the Court.

BleachTech is also respectfully requesting that the Court approve a service award in the amount of $5,000, as contemplated by the settlement agreement. This would be in recogniztion of the service BleachTech rendered to its fellow settlement class members throughout this case, as discussed above. As my lawyers have advised, this sum was negotiated with Defendants following negotiation of class benefits. I submit the information in this declaration in support of BleachTech's request.

Finally, BleachTech supports final approval of the settlement agreement in this matter. BleachTech understands the Court has granted preliminary approval to it, and the Court will hold a final approval hearing on June 28, 2022, per the current schedule. BleachTech believes the settlement, which provides for a gross settlement consisting of $4,850,000 million plus UPS's payment of half of the notice and administration costs, is fair and reasonable to BleachTech and its fellow class members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of May, 2022, at Cleveland, Ohio

<div align="right">

*s/Richard Immerman*
Richard Immerman, Owner of BleachTech

</div>